# EXHIBIT 3

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081-CV-00941

_JAMES KOPPEL_ , PLAINTIFF(S),

V.

_WILLIAM MOSES_ , DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO _____WILLIAM MOSES_____ . (Defendant's name)

**You are being sued.**   The Plaintiff(s) named above has started a lawsuit against you.  A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the ___Middlesex Superior___ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   **You must respond to this lawsuit in writing within 20 days.**  If you do not respond, the court may decide
     the case against you and award the Plaintiff everything asked for in the complaint.  You will also lose the
     opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect
     to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an
     extension of time in writing from the Court.**

2.   **How to Respond.**  To respond to this lawsuit, you must file a written response with the court **and** mail a
     copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

     a.   Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex Sup._ Court,
     _200 Tradecenter Dr., Woburn, MA_ (address), by mail or in person, **AND**

     b.   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
          address: ___60 State Street, Suite 600, Boston, MA 02109___ .

3.   **What to include in your response.**  An **"Answer"** is one type of response to a Complaint.  Your Answer
     must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
     Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
     use them in court.  If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
     based on the same facts or transaction described in the Complaint, then you must include those claims
     in your Answer.  Otherwise, you may lose your right to sue the Plaintiff about anything related to this
     lawsuit.  If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
     Answer or in a written demand for a jury trial that you must send to the other side and file with the
     court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a
     **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient.  A Motion
     to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
     you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
     described in the rules of the Court in which the complaint was filed, available at
     www.mass.gov.courts/case-legal-res/rules of court.

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX                                        SUPERIOR COURT DEPARTMENT

|  |  |
|---|---|
| _____ ) | |
| JAMES KOPPEL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No: |
| ) | |
| v. ) | 4/13/2020 |
| ) | |
| WILLIAM MOSES, ) | NH |
| ) | |
| Defendant. ) | |
| _____ ) | RECEIVED |

### Complaint with Jury Demand

1.      Plaintiff James Koppel is 28 years of age and resides at 70 Pacific St. #224B, Cambridge, MA 02139.

2.      Defendant William Moses is 23 years of age and resides at 70 Pacific St. #491B, Cambridge, MA 02139. Koppel and Moses have been friends since 2015 prior to the events leading to this lawsuit.

3.      Koppel as of March 2020 is a graduate student at a major university in the Boston area. He is working on a PhD in computer science. He has been educated in computer science and has demonstrated substantial talent and promise in that area.

4.      In addition to his work to earn a PhD Koppel in March 2020 was a teaching assistant for computer science undergraduates. In that role he conducted weekly tutorials for undergraduates sponsored by the university as part of its undergraduate curriculum. The weekly tutorials were used by undergraduate computer science students to review classroom subjects and to strengthen their skills outside of scheduled classes.

5.     Koppel after he earns his PhD intends to continue his professional work in computer science in private enterprise or in a startup venture. He is a skilled teacher and researcher and may work also in a university. Because of his advanced skills and training Koppel, but for the events described here, has an excellent reputation in his field and would be an extremely strong candidate for high- level positions and opportunities in his field. Koppel has worked literally for years to develop his skills, excellent reputation and comprehensive knowledge of the field.

6.     Defendant Moses is a graduate student in computer science at the same university in the Boston area.

7.     After first meeting in late 2015 Koppel and Moses over time developed a casual friendship. At various points in 2018 and 2019 they discussed living together as roommates. Moses, because of his friendship as with Koppel as of February 2020, was familiar with private details of the personal and biographical background of the Plaintiff.

a.     The Student Information Processing Board

8.     The Student Information Processing Board ("SIPB") is an informal organization sponsored by the local university. Its purpose is to encourage the high-level informal exchange of concepts and ideas related to computer science among persons within and outside the university, and to provide and support computing services at the university.

9.     The most active SIPB participants are undergraduate and graduate students at the university who are knowledgeable in computer science and enthusiastic about the latest issues and developments. The student participants and hundreds of alumni and other persons not related to the university use and promote SIPB online sites, lectures, chat rooms and other SIPB offerings. The participants and users are a worldwide community with shared interests in computer science.

10.     Over the past several years SIPB has become a recognized and important forum for communications as to extracurricular issues and ideas in the field of computer science. Those are of substantial interest to the computer science community at the local university and worldwide.

11.     SIPB communications and resources, including participation by members and non-members allow for professional development and encouragement of the computer science community at the major university and beyond. SIPB is used for the development of innovative ideas, collegial conversations, and the creation and encouragement of a worldwide virtual community of persons interested in cutting-edge issues in computer science.

12.     The most active members typically are computer science students at the major university. Hundreds of other persons, including former students at the university, participate from locations worldwide.

13.     SIPB is allowed to occupy a large physical working or meeting space or office at the local university. That space is funded by the university. The meeting space is used by students as a work area and as a meeting place for work and social connections. The workspace has printers, computers, and other office equipment and facilities. The meeting space allows for and encourages in-person interactions.

14.     Certain members of SIPB are from time to time elected to keyholder status. A keyholder is a member recognized for significant participation and contributions to SIPB.

15.     Keyholders are elected by existing keyholders. Keyholders are then eligible for election to the executive committee and to other positions of responsibility. Keyholder status is a desirable recognition.

16.     As of February 2020, plaintiff was working on an assigned project for SIPB in order to earn keyholder status. Apart from that project he made a number of significant recognized contributions to SIPB starting in 2018. His project in 2020 was a lecture series. It was launched, successfully and very near to completion in February 2020. Overall the plaintiff had performed in excess of one hundred (100) hours in service to SIPB to qualify for keyholder election.

b.      The February 27 Meeting

17.     On February 27, 2020 defendant Moses asked to meet with the plaintiff. About two (2) days earlier Moses, already a member of the executive committee, had assumed the position of chairperson of the SIPB executive committee.

18.     The two met in person on February 27. Their meeting lasted approximately one (1) hour. The only persons present were the plaintiff and the defendant.

19.     During the meeting Moses told the plaintiff that plaintiff at dates not specified allegedly caused not named members of SIPB to be "uncomfortable" or to "feel uncomfortable." Moses declined to give any details as to who was uncomfortable and said only that keyholders had made the reports. Moses declined to say what conduct by Koppel caused anyone to feel uncomfortable. He did not describe the nature of any offensive speech or conduct by Koppel. Moses did not refer to sexual harassment. He did not refer to racism, sexism, or to politically incorrect ideas or words. He did not allude to or claim the existence of any prior warnings against plaintiff.

20.     Moses declined to mention the name of any persons involved in any conversations or communications with Koppel or the name of any person reporting any offensive acts or communications.

21.     Moses said he became first aware of these unfavorable rumors approximately three (3) weeks prior to February 27. Moses did not say when the offenses allegedly occurred or how often or how many putative reports were involved.

22.     In the course of the conversation Moses told the plaintiff he was going to be expelled from SIPB. He gave no specific reason.

23.     The plaintiff politely made clear the he had not done anything inappropriate. He made clear that without more details he could not respond or refute the accusations. He pointed out accurately that no member or keyholder had reported these rumors to him or anything of the kind.

24.     Koppel made clear that he objected to expulsion. He protested against expulsion and asked that any expulsion decision be reversed. When Moses said the decision was final, plaintiff asked that the baseless expulsion be done privately if at all.

25.     Moses refused to agree to private expulsion. Koppel made clear that if expelled he would not attempt to use SIPB resources or in any way violate the terms of expulsion, however unfair and unsupported. Moses at no time in the February 27 meeting said or suggested that any expulsion would be widely announced.


c.     The Defamatory Communications

26.     On March 2, 2020 without further discussion with plaintiff defendant Moses purporting to act on behalf of the executive committee of SIPB transmitted an email to several hundred persons. That email was defamatory and false in multiple respects.

27.     Plaintiff demanded a retraction and demanded public notice of reinstatement. That retraction demand to Moses and to SIPB was elevated to an attorney at the university. That attorney on information instructed Moses and the SIPB executive committee to publish a retraction.

28.     On March 12, 2020 Moses sent out an email which was a purported retraction on behalf of himself and the executive committee. It did not reinstate plaintiff to membership. The first retraction on March 12 in error enclosed with the putative retraction a complete repetition of the initial March 2 defamatory communication. It thereby repeated the March 2 defamation.

29.     Several hours later on March 12 Moses sent a second retraction without the repetition of the initial defamatory March 2 communication.

30.     The March 2 communication was defamatory and damaging in multiple respects. Without excuse or justification or any rational basis the March 2 defamation was excessively published. On reliable information it was sent to hundreds of email addresses worldwide. It was sent to hundreds of persons who are not keyholders and who are not active members or participants in SIPB as of March 2, 2020.

31.     The March 2 communication need not have been sent to anyone. Public notice of expulsion of a member is not required by any SIPB rule.

d.     Falsity and Damage

32.     The March 2 communication was false and severely damaging in multiple ways. It started by saying that non identified SIPB keyholders within the week prior to March 2 had a "hard conversation" [sic] about the plaintiff. Plaintiff has no way to know if any such communication took place or how many persons participated or knew of it. Nothing in the constitution of SIPB requires or allows keyholder participation in discipline of a member. The written SIPB constitution

on the contrary stipulates that the executive committee alone decides discipline issues by two-thirds vote.

33.     The SIPB constitution requires advance notice to any member as to the reasons for consideration of any discipline, plus an opportunity to respond to the executive committee before imposition of any discipline. That procedure was not followed as to plaintiff.

34.     If there was a conversation about the expulsion of the plaintiff among keyholders, it was needless, defamatory, and improper. If keyholders were informally consulted, that was needless and extraneous to any expulsion and extraneous to the March 2 letter. The March 2 description of the putative keyholder conversation is false, irrelevant, and severely damaging.

35.     The March 2 missive goes on to say that in the so-called hard conversation "many keyholders [sic] shared stories [sic]" about how the plaintiff had made non-identified persons "deeply uncomfortable." It falsely suggests that the unfavorable accounts were universal. It falsely asserts that improper conduct of the plaintiff which caused unnamed persons to be "deeply uncomfortable" continued in spite of requests that Koppel stop the conduct. That is false. That falsity of the March 2 communication is admitted in the March 12 retraction.

36.     The March 2 description of unsuccessful "requests" to Koppel to stop offensive acts and the assertion that he repeatedly refused to stop is inexplicable. It is mean-spirited and severely damaging, compounding the harm.

37.     The offending acts or communications by plaintiff are described in the March 2 missive as severe, persistent, and widespread. That is false. Plaintiff has no information to be able to identify any allegedly offensive communication. All readers of the March 2 missive and the March 12 retraction are likewise kept in the dark as to any inculpatory or supporting facts.

38.     The March 2 communication says that the executive board requested that plaintiff not use any SIPB resources. That is much true. It falsely implies however that plaintiff agreed to expulsion. He did not. He agreed only that if unjustifiably expelled he would not violate the terms of the expulsion. Precisely because plaintiff agreed to honor the illegitimate expulsion, the March 2 letter was not required to prevent or warn local or distant persons to watch out for use of SIPB resources by the plaintiff.

39.     The baseless expulsion of the plaintiff is described on March 2 as a decision "not taken lightly" but as a "necessity" for the organization "to be a place" [sic] where "everyone is comfortable." This falsely portrays the not-identified misconduct of the plaintiff as a threat to the core purposes and the future of a worldwide organization.

40.     This baseless expulsion is described as "quite exceptional" but "required." This falsely portrays the plaintiff as a major ("exceptional") threat to a thriving worldwide organization.

41.     The March 2 letter falsely implies that non-identified destructive wrongdoing by Koppel involved multiple victims over a substantial period of time prior to very recent detection. That is deliberately and inexcusably false. The March 2 communication says that in light of the unnamed wrongdoing by this plaintiff, the organization has realized it needs to "do better" and to establish "mechanisms to make it easy for members to voice their concern when they are made uncomfortable." This falsely suggests that SIPB members were abused over prolonged periods of time and intimidated by this plaintiff to be silent as to his abuse. That is false. The March 2 letter falsely implies that the plaintiff's misconduct alone has caused the executive board to see the need to do better by enactment of sweeping future protections. That is false and severely damaging.

42.     The March 2 letter in referring to future protective measures is baseless and damaging. It slanders this plaintiff by falsely tying his expulsion to organizational resolution of the

much broader issue of anonymous complaints by members against other members. That issue was openly and widely discussed within SIPB long before February 2020. Association of this plaintiff with the recognition and approval of future anonymous complaints as part of an effort to "do better' is contrived, false, and deeply damaging.

43.     The March 2 communication describes SIPB as a place where "everyone should feel safe and supported" [sic], falsely suggesting that the plaintiff's unidentified offenses have caused this worldwide organization to see for the first time that it has failed to provide those protections to participants and needs to do better.

44.     The March 2 letter says that SIPB recognizes it "needs to do better to be a safe environment for everyone," falsely suggesting that this plaintiff is responsible for substantial, prolonged, and concealed harms which escaped detection despite due diligence. This also falsely suggests that detection of the misconduct of this plaintiff has caused the executive board to see that his wrongs alone demonstrate to the executive board that it must do better to protect all SIPB members going forward. This is false and independently damaging. The linkage of these issues in the March 2 letter is false and independently maligns the plaintiff.

45.     The March 2 communication is an artful sly catalogue of deliberately damaging and false accusations. They are inexcusable. The excessive publication was inexcusable.

46.     No expulsion was justified. If the executive board after notice to plaintiff of the allegations and a response by plaintiff had voted for expulsion, the expulsion could and should have been done privately or with minimal publication within SIPB. Not doing that is inexcusable in this instance because the putative expulsion here was flawed by lack of notice and opportunity to respond. It is flawed by multiple instances of egregious and gratuitous falsity.

47.     The March 2 email purports to have been written on behalf of the SIPB executive committee by the chairperson, defendant Moses.

48.     Other persons very likely assisted in and contributed to the March 2 defamation. The identity of those persons is not yet known. All such persons will be named as defendants at the earliest opportunity when the plaintiff is able to identify the persons who assisted and conspired with this defendant as to the conduct described.

49.     All such persons are jointly and severally liable with the defendant to the extent that they wrongfully conspired with the defendant or wrongfully assisted and aided him as to the wrongdoing described here.


e.     Reputational and Professional Damages

50.     Of the hundreds of persons targeted for the public March 2 notice of expulsion, virtually all of them are highly skilled in computer science. Virtually all are affiliated or were affiliated with SIPB by reason of past or current academic activities at the university or very high-level interest in cutting-edge issues as to computer science and information systems and technologies.

51.     The hundreds of persons who received the expulsion email included numerous persons who are social or professional acquaintances or friends of the plaintiff. The distribution list included numerous persons currently involved in professional and academic activities relevant to all forms of future employment of the plaintiff. The persons who received the defamatory communications on March 2 and March 12 included numerous persons who, but for the defamations, were likely to provide favorable references or contact information to the plaintiff and able and willing to give him networking and employment opportunities worldwide.

52.     The excessive distribution included persons located worldwide ranging in age from approximately 18 years to persons in their 60s and 70s and possibly older. SIPB membership and former members and former keyholders are a sophisticated active worldwide community highly relevant to all of the professional skills which the plaintiff has developed in his undergraduate and postgraduate education. The participants are highly relevant to his future employment and professional achievement.

53.     SIPB participants and members, past, present, and future, are a unique and important resource for the career development of any member. Every member of SIPB past, present, and future has or will have multiple contacts within and outside SIPB.

54.     The persons on the SIPB distribution list used for the March 2 letter and persons known to those persons are a vast worldwide network of influential persons highly-skilled in computer science. They are and will be in the future important in the business and practice of highly-developed information technology and systems. That network of persons touches or includes persons likely to be involved at very high levels in every aspect of computer science worldwide in the lifetime of this plaintiff.

55.     The defendant and the SIPB executive committee knew or should have known all of the facts in the preceding five (5) paragraphs as of March 2, 2020. They knew or should have known that the broad distribution of the March 2 notice would result in communication of highly damaging and highly personal information to every member in a large worldwide network of persons actively engaged in the chosen profession of this plaintiff.

56.     The defendant and persons acting in concert with him as of March 2 knew or should have known that the broadcast of the March 2 allegations to hundreds of SIPB members worldwide

would create widespread and irreparable damage to the reputation of the plaintiff personally and in all aspects of his future professional and academic endeavors.

f.      Disclosure of Private Facts in a False Light

57.     Plaintiff throughout his life has been slightly disabled by reason of mild autism. The plaintiff throughout adolescence and to the present has actively struggled to overcome the limitations of that condition. Moses knows this. Moses as of 2020 was very familiar with the fact that the plaintiff has made substantial ongoing successful efforts to overcome any deficits caused by his condition.

58.     Defendant Moses at all times knew that the very limited disability of the plaintiff continues to manifest itself in very limited ways. The plaintiff for example from time to time limits his eye contact with strangers. He can seem to be at times slightly abrupt in conversation. He from time to time has difficulty engaging in small talk with strangers.

59.     Numerous SIPB members know and like the plaintiff. They see and ignore his very limited disability. His very limited disability is visible to anyone who meets him. It offends no one.

60.     Disabilities or personal differences or limitations unique to anyone, however slight, can make some people uncomfortable.

61.     The March 2 letter lacked any objective factual basis and disclosed no factual basis as to what made anyone "uncomfortable."

62.     The March 2 letter makes clear that this defendant and the persons acting in concert with him unilaterally decided to tell hundreds of people worldwide that the plaintiff made others "uncomfortable" without disclosure of any context or explanatory facts.

63.    Absent any other basis for the March 2 allegations, anyone personally acquainted with the plaintiff would conclude that the March 2 letter referred to his limited disability. They would conclude that plaintiff persisted in offensive conduct despite requests to cease.

64.    All persons familiar with the plaintiff's very limited disability would falsely conclude that plaintiff's limited disability was in fact far worse than they observed and far more offensive than anyone had ever observed. Anyone who personally knew the plaintiff would falsely conclude he was, unknown to them, somehow a monstrous and oppressive person who abused others despite requests to cease, and that he was not at all what he seemed to be in person.

65.    Facts as to the very limited disability of this plaintiff were, for anyone who knows him, the sole explanation or available inference for the veiled and vague March 2 accusations that the plaintiff putatively caused non-identified persons to be uncomfortable and that he persisted in doing that, despite requests.

66.    The March 2 publication, fairly read by persons who know James Koppel personally, baselessly and needlessly targeted the plaintiff for public humiliation and reputational damage solely because of his personal affect and manner of speech. It denounced him, based on innocent personal traits, as unacceptable to participate in a "safe" community. The only plausible inference for persons who know James casually, absent disclosure of any specific inculpatory facts, was that his very limited and inoffensive disability concealed traits and deliberate conduct which were far worse.

67.    The March 2 letter falsely alleges that plaintiff persistently caused non-identified persons to be not comfortable to a degree that his actions needed to be stopped and publicly denounced, and that broad new protective measures were needed for hundreds of persons to continue to be "safe."

68.    The March 2 letter is flawed by omissions and reckless, excessive and false descriptions. Those features of the letter caused this plaintiff to be targeted for social and professional ostracism in a specifically outrageous way to those who personally had met him, including his tutorial students and professional colleagues.

69.    Because no facts are disclosed in the March 2 letter as to how plaintiff made people uncomfortable, and because he is alleged to have persisted in offensive conduct, any reader who knew the plaintiff slightly or knew a little about him would, in the absence of explanatory facts, infer or believe his expulsion was based on his very limited disability.

70.    By the combination of false allegations and omissions of facts, the March 2 letter inexcusably violates private and public standards of decency. Pretending to warn against a threat, it shamefully and ignorantly violates the spirit and intent of laws and moral rules which forbid discrimination and oppression of disabled persons. Law and moral rules protect the disabled and many others from ridicule, hatred, and ostracism.

71.    The March 2 letter, if read by persons who know the plaintiff only remotely, shamefully and recklessly turns those moral principles upside down. It invites the strongest disapproval of the plaintiff because of his limited disability. It asserts to be based on facts known to well- informed persons who reluctantly "shared" damning accounts in a "hard" conversation concealed from the public and from the plaintiff. The letter suggests that it is supported by horrific factual accounts of persistent wrongdoing by this plaintiff. To the people who know him best the March 2 letter invites and confirms the need for ostracism of the plaintiff, the "required response." inferably because of his disability. It authoritatively and falsely suggests that ordinary rules of decency do not apply in this "exceptional" case, and that persons with superior factual information have universally endorsed expulsion of Koppel as the "required response" as part of first step in a

14

larger effort to do better" to protect others by implementation of stronger protections against the types of harm inflicted by Koppel. The March 2 letter invites and approves of ostracism of the plaintiff based on his limited disability. The March 2 letter seeks to broadly humiliate the plaintiff based on public reference to private facts which are in fact distorted. The March 2 letter invites ostracism and inferences which distort intimate private facts. It presents private facts in a false light. It recommends ostracism and invites ridicule and disdain for the plaintiff based on a minimal, innocent and entirely human flaw.

g.    The Misconduct Alleged is Severe and Inexcusable

72.    The worldwide public allegation that a person makes other persons "uncomfortable" and therefore must be expelled from a virtual worldwide group is irreparably and severely damaging. Those impacts are worse if the allegation is made without any specification of the cause or any factual corroboration. Those allegations were  used here to cause and recommend extremely damaging social and professional ostracism.

73.    The defendant and the persons acting in concert misused the March 2 email sent to hundreds of persons. They employed it recklessly and wantonly in a deliberate and highly damaging manner. They embroidered the March 2 falsehoods as essential to the survival and maintenance of important professional and academic objectives of a worldwide community of scholars and professionals.

74.    The defamations alleged here and the resulting ostracism and damage are made worse by the false assertions that plaintiff persisted in wrongdoing after requests to stop, and by the baseless assertions that his wrongs make it clear to better informed persons that anonymous reporting and other protections must be enacted so that the executive committee, better informed

as to the relevant the facts as to plaintiff, can "do better" to protect  most important goals of a worldwide association of students, scholars and professionals. The false posturing as to the future need for protective measures makes the defamations and the other wrongdoing described here more severely damaging and more outrageous.

75.     The damages wrongfully caused by this defendant and others acting with him based on presently known facts could be found by a jury to be at least $500,000 based solely on damage to professional reputation and loss of economic opportunities for employment and advancement. That $500,000 figure is based on facts to be shown as to those economic harms alone. It does not include other damages appropriate to compensate plaintiff for anguish, humiliation, opprobrium and other recoverable but not easily quantifiable suffering and losses.


<u>Count I</u>
(Defamation)

76.     Plaintiff repeats and incorporates by reference the allegations above as if fully set forth here.

77.     The letters published by defendant and others on March 2, 2020 and March 12, 2020 were false and purported to be based on facts known to the defendant and others. Those statements were defamatory and inexcusably subjected the plaintiff to professional and personal scorn, ridicule, and disapproval. The defamatory communications were needlessly and excessively published and have directly and severely damaged the plaintiff.

78.     Defendant and others have caused substantial damages to the plaintiff. Plaintiff is entitled to the recovery of damages in amounts to be determined including the dollar amounts identified in paragraph 75  above referring to tangible or measurable economic opportunities, plus

all other recoverable damages for non-economic harms, plus interest, costs, and attorney's fees to the extent permitted by law.

Count II
(Interference with Advantageous Relations)

79.     Plaintiff repeats and incorporates by reference the allegations above as if fully set forth here.

80.     The conduct of the defendant and others described above employs wrongful and improper means and is improperly damaging to the present and future advantageous relations of the plaintiff and has caused severe and substantial damages to the plaintiff.

81.     By reason of the foregoing plaintiff is entitled to the recovery of damages in amounts to be determined including the economic losses identified in paragraph 75 above  plus all other recoverable damages for non-economic harms, plus interest, costs, and attorney's fees to the extent permitted by law.

Count III
(Invasion of Privacy, Including False Disclosure of Private Facts)

82.     Plaintiff repeats and incorporates by reference the allegations above as if fully set forth here.

83.     By publicly disclosing the information contained in the March 2 and March 12 communications defendant and others unreasonably, substantially, and seriously interfered with protected privacy rights and other personal rights of the plaintiff including the right to be protected from public disclosure of personal facts and the right to be free from public disclosure of personal facts in a false light.

84.     Defendant and others have caused the plaintiff substantial damages which are described above. By reason of the foregoing plaintiff is entitled to the recovery of damages in amounts to be determined including the dollar amounts identified in paragraph 75 above referring to tangible or measurable economic opportunities, plus all other recoverable damages, plus interest, costs, and attorney's fees to the extent permitted by law.


Count IV
(Civil Conspiracy)

85.     Plaintiff repeats and incorporates by reference the allegations set forth above as if fully set forth here.

86.     Defendant, together with other persons not yet identified, possessed and grossly misused a unique power to accomplish wrongdoing and to inflict harms and damage which the defendant Moses would not have been able to cause if acting alone.

87.     Defendant and others by reason of a wrongful civil conspiracy have caused substantial damages described above.

88.     By reason of the foregoing plaintiff is entitled to the recovery of damages in amounts to be determined including the dollar amounts identified in the last paragraph of the text of the complaint above referring to tangible or measurable economic opportunities, plus all other recoverable damages, plus interest, costs and attorney's fees to the extent permitted by law.

Jury Demand

The plaintiff James Koppel requests a trial by jury of all issues so triable.

<u>Prayer for Relief</u>

Plaintiff James Koppel requests entry of judgment in his favor on each of the counts in the

complaint plus the award of monetary damages in amounts to be determined, plus interest, costs,

and attorneys' fees to the extent permitted by law plus other relief as is appropriate.


Respectfully submitted,
JAMES KOPPEL,
By his attorneys,


/S/ Paul G. Boylan
Paul G. Boylan, BBO 052320
Thomas Hay, BBO 703481
Freeman Mathis & Gary, LLP
60 State Street, 6th Floor, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
thay@fmglaw.com
(617) 963-5978

Date:  04/13/2020

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX                                          SUPERIOR COURT DEPARTMENT

_____
                                     )
JAMES KOPPEL,                        )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        Civil Action No: 2081-CV-00941
                                     )
WILLIAM MOSES,                       )
                                     )
        Defendant.                   )
_____    )

### Request By Plaintiff for Entry of Default

Pursuant to Mass. R. Civ. P. 55, Plaintiff James Koppel ("Koppel") requests this Court

enter a default as to defendant William Moses ("Moses") for failure to plead or otherwise defend

in response to the Complaint in these proceedings pursuant to Rule 55 of the Massachusetts Rules

of Civil Procedure. In support of this Request Koppel by counsel states:

1.      This case arises out of damaging defamatory communications, interference with

advantageous relations and ongoing reputational and professional damages to Koppel.

2.      Koppel commenced this civil action on or about April 13, 2020.

3.      The appointed special process server, Quikserv Allstate Process Servers, served

Moses with the Complaint on May 4, 2020. See Return of Service filed May 6, 2020, attached

as Exhibit 1.

4.      Pursuant to Mass. R. Civ. P. 12(a) Moses was required to respond to the Complaint

within 20 days of service or by May 24, 2020.

5.      As of the date of this Request, Moses has failed to respond to the Complaint. More than 33 days have passed after the deadline. See Docket Sheet.

6.      Pursuant to Mass. R. Civ. P. 55(a), Plaintiff requests the clerk enter a default of as to defendant William Moses.

WHEREFORE, Plaintiff James Koppel respectfully requests that this Court award him the following relief:

    A.  Grant James Koppel's Request for Entry of Default;

    B.  Enter the default of the defendant, William Moses, in these proceedings; and

    C.  Award James Koppel such further relief as this Court deems appropriate.

> Respectfully submitted,
> JAMES KOPPEL,
> By his attorneys,
>
> /S/ Paul G. Boylan
> Paul G. Boylan, BBO 052320
> Thomas Hay, BBO 703481
> Freeman Mathis & Gary, LLP
> 60 State Street, 6th Floor, Suite 600
> Boston, Massachusetts 02109
> pboylan@fmglaw.com
> thay@fmglaw.com
> (617) 963-5978

Date: 06/26/2020

## Certificate of Service

The undersigned as counsel of record hereby states that he or she on the date listed served a copy of the foregoing document by first-class mail postage prepaid on the following persons:

William Moses
70 Pacific Street #491B
Cambridge, Massachusetts 02139

Dated: 06/26/2020                          /S/ Paul G. Boylan

2

# Exhibit 1

MAY 4, 2020

## RETURN OF SERVICE

*I this day SERVED the within named*   WILLIAM MOSES

*by*                                (2) ATTEMPTS. COPY LEFT POSTED AT DOOR.
                                SECOND COPY MAILED


  **X**   *leaving at last and usual place of abode, to wit:*

*No.*   70 PACIFIC ST #491B
*in the city/town of* CAMBRIDGE, *an attested copy of the SUMMONS; COMPLAINT; CIVIL
ACTION COVER SHEET; REQUESTS FOR PRODUCTION OF DOCUMENTS BY JAMES
KOPPEL WITH MOTION FOR SPECIAL PROCESS SERVER*



*Service and travel*   $   56


*John Rymaszewski*
_____
Process Server/

| DEFAULT ORDER (Mass. R. Civ. P. 55(a)) | DOCKET NUMBER<br>**2081CV00941** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME Koppel, James vs. Moses, William | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|

| TO:<br>William Moses<br>70 Pacific Street #491b<br>Cambridge, MA 02139 | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |
|---|---|

The party(s), named below, having failed to plead or otherwise defend the case as required by the rules of civil procedure, and plaintiff having shown that fact by affidavit or otherwise, is(are) hereby defaulted pursuant to Mass. R. Civ. P. 55(a).

William Moses

The plaintiff shall file one of the following, if not already entered:

    1. in accordance with Mass. R. Civ. P. 55(b)2 and subject to Mass. R. Civ. P. 54(b) and 55(b)4, file a motion for an assessment of damages and default judgment by, 07/29/2020.

or

    2. in accordance with Mass.R.Civ.P. 55(b)(1) (for a sum certain or for a sum which can by computation be made certain) and subject to Mass.R. Civ. P. 54(b) and 55(b)4, file a request for default judgment by, 07/29/2020.

| DATE ISSUED<br>**06/29/2020** | CLERK OF COURTS<br>**Michael A. Sullivan, Clerk of Court** | ASSISTANT CLERK<br>X | SESSION PHONE#<br>**(781)939-2760** |
|---|---|---|---|

SCV039I.05/2014

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX                                            SUPERIOR COURT DEPARTMENT

_____
                                                )
JAMES KOPPEL,                                   )
                                                )
    Plaintiff,                  )
                                                )        Civil Action No:  2081-CV-00941
    v.                          )
                                                )
WILLIAM MOSES,                                  )
                                                )
    Defendant.                  )
_____ )

### First Request by Plaintiff for Disclosure of Documents by the Defendant

Pursuant to Rule 34 of the Massachusetts Rules of Civil Procedure the plaintiff James Koppel requests that the defendant William Moses ("Moses") disclose the documents and tangible things described in each category set forth below in the possession, custody, or control of the defendant. Disclosures are requested to be made to the offices of plaintiff's attorneys, Paul G. Boylan, et al., Freeman Mathis & Gary, LLP, 60 State Street, Suite 600, Boston, MA 02109 within thirty (30) days of the date of service.

### Definitions

All requirements and definitions of Mass. R. Civ. P. Rule 34 and Rule 30A of the Superior Court Rules are incorporated by reference. Plaintiff additionally sets forth the following definitions:

1.      The term "SIPB" refers to the Student Information Processing Board at the Massachusetts Institute of Technology ("MIT") located in Boston, Massachusetts.

2.      The term "email" refers to electronic messages including any and all attachments and all successive responses.

3.      The term "document" includes emails and any writing or thing which can be the subject of a judicial order to compel disclosure.

4.      The term "March 2 letter" refers to the March 2, 2020 email sent by Moses referred to in the complaint as sent to keyholders and others to describe the expulsion of the plaintiff from SIPB.

5.      The term "chat log" refers to transcripts from online chat and instant messaging conversations.

6.      The term "Zephyr" refers to an online chat and instant messaging software.

7.      The term "Mattermost" refers to an online chat and instant messaging software.

8.      All references to any subject or topic include all communications of any sort referring to, describing, evidencing, or relating to the subject or topic.

9.      The relevant time period for these requests unless otherwise stated is from January 1, 2019 to the present and continuing thereafter without need for separate request for supplementation.

<u>Specific Requests</u>

1. All documents or communications of any kind that refer to, explain or identify any fact or issue mentioned in the March 2 letter by Moses or which in any way support or corroborate any fact or assertion in that letter.

2. All documents or communications at any time that refer to, explain or show any fact relied on by Moses or by the SIPB executive committee or by any keyholder to support expulsion of plaintiff from SIPB.

3. All documents or communications after September 1, 2019 to or from Moses referring to plaintiff.

4. All documents or communications on 'sipb-private@mit.edu' starting circa February 6, 2020 referring to any complaint about plaintiff by anyone or to plaintiff's possible, proposed or actual expulsion from SIPB.

5. All drafts, edits or revisions of any part of the March 2 letter and all comments on all drafts.

6. All documents or communications referring or describing the March 2, 2020 letter or any role of any person including any member of the SIPB executive committee in drafting the March 2 letter or referred to in any discussion of any reason for expulsion of the plaintiff.

7. All documents or communications on 'sipb-ec@mit.edu' referring or related to the plaintiff or to any subject or topic mentioned or described in the March 2 letter.

8. All documents and communications showing or referring to the any vote or decision of the executive committee to banish or expel the plaintiff or to not reinstate the plaintiff.

9. All records of any sort, including notes by any person recording or commenting on the hard conversation referred to in the March 2 letter.

10. All documents and communications on 'sipb-ec@mit.edu' referring or describing any reason for or decision to expel the plaintiff from SIPB.

11. All documents or communications referring or describing to the March 12, 2020 retraction statements in connection with the plaintiff.

12. All communications of any sort referred to by defendant on February 27, 2020 or March 2, 2020 as complaints or reports that Koppel at any time after January 1, 2015 made anyone, including members, uncomfortable or that he acted inappropriately in any way.

13. All documents of any sort identifying the date of any act or omission by plaintiff causing any SIPB member to be uncomfortable or to report to anyone that he or she or they were or was uncomfortable.

14. All documents of any sort referring or describing the related to the nature of any inappropriate conduct by plaintiff at any time including conduct described by anyone as causing any SIPB member to be uncomfortable or to report feeling uncomfortable.

15. All emails or other communications by Koppel at any time which caused any SIPB member to be uncomfortable or to feel threatened or not safe.

16. All documents of any sort complaining about Koppel at any time including all anonymous complaints of any sort.

17. All documents not otherwise specified here supporting in any way any part of the March 2 letter.

3

18. All communications of any sort referred to by defendant Moses in his February 27, 2020 email that anyone expressed surprise as to any allegation or complaint that Koppel made anyone feel uncomfortable.

19. Complete and unredacted copies of any and all complaints to SIPB or to anyone else at any time referring to or related to plaintiff.

20. All meeting minutes of the SIPB executive committee meeting on March 6, 2020 or any other meeting or electronic communication at any time at which any discipline of the plaintiff, any complaints about the plaintiff, or communications regarding the plaintiff were discussed.

21. A full and complete copy of all "Zephyr" chat logs of the defendant and the other 13 individuals who were members of the SIPB Executive Committee in February 2020, including but not limited to the usernames: wmoses, emmbat, yczeng, aalvarez, rsthomp, aathalye, cela, mtheng, npfoss, gshay, bds, jnoguera, and rihn, which refer or describe the plaintiff (including but not limited to the following names/usernames: Jimmy; James; Koppel; Jim; and jkoppel).

22. A full and complete copy of all "Mattermost" chat logs of the defendant which refer or describe the plaintiff (including but not limited to the following names/usernames: Jimmy; James; Koppel; Jim; and jkoppel).

23. A full and complete copy of all "scripts-root" chat logs of the defendant which refer or relate to the plaintiff (including but not limited to the following names/usernames: Jimmy; James; Koppel; Jim; and jkoppel).

24. A full and complete copy of all "scripts-spew" chat logs of the defendant which refer or relate to the plaintiff (including but not limited to the following names/usernames: Jimmy; James; Koppel; Jim; and jkoppel).

25. All documents or communications not already specifically requested that refer or support any statement in the March 2 letter.

Respectfully submitted,
JAMES KOPPEL,
By his attorneys,


 /S/ Paul G. Boylan
Paul G. Boylan, BBO 052320
Thomas Hay, BBO 703481
Freeman Mathis & Gary, LLP
60 State Street, 6th Floor, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
thay@fmglaw.com
(617) 963-5978

Date:  05/01/2020


## Certificate of Service

      The undersigned as counsel of record hereby states that he or she on the date listed caused a copy of the foregoing document to be served by process server QUICKSERV Allstate Process Servers on the following persons:

      William Moses
      70 Pacific Street #491B
      Cambridge, Massachusetts 02139


Date:  05/01/2020                              /S/ Thomas G. Hay