# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES KOPPEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-11479-LTS |
| | ) | |
| WILLIAM MOSES, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

### <u>INTRODUCTION</u>

In this defamation case, graduate student James Koppel has sued his classmate, William Moses, for stating that Koppel had made some members of a computing club feel "deeply uncomfortable." Koppel's complaint fails to state a claim for defamation because the allegedly defamatory communication is an imprecise and "amorphous" statement about the feelings of other people, not a "specific," "significant," and provably false statement of fact concerning Koppel. *Tartaglia v. Townsend*, 19 Mass. App. Ct. 693, 698 (1985). "[V]ague language that is subject to multiple interpretations is generally not actionable" as defamation. *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 355 (D. Mass. 2017)*, citing Gray, v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) (statements that involve "expressions of personal judgment," are non-actionable, "especially as the judgments become more vague and subjective in character."). Koppel's other claims, for tortious interference with advantageous relationships, false light invasion of privacy, and "civil conspiracy," merely re-plead his flawed defamation

claim under different captions, and are meritless on their own terms. Accordingly, the complaint should be dismissed in its entirety.

FACTUAL ALLEGATIONS

William Moses is a graduate student at the Massachusetts Institute of Technology (MIT). Moses serves as the Chair of the Executive Committee of the Student Information Processing Board ("SIPB") at MIT. (Doc. 1, Notice of Removal, Ex. 3, Complaint, ¶¶ 6, 17).

According to the complaint, SIPB is a university-sponsored "informal organization" whose purpose is "to encourage the high-level informal exchange of concepts and ideas related to computer science among persons within and outside the university, and to provide and support computing services at the university." (*Id.*, ¶ 8). SIPB is "a recognized and important forum for communications as to extracurricular issues and ideas in the field of computer science." (*Id.*, ¶ 10). SIPB "is used for the development of innovative ideas, collegial conversations, and the creation and encouragement of a worldwide virtual community of persons interested in cutting-edge issues in computer science." (*Id.*, ¶ 11).

Plaintiff James Koppel is, like Moses, a graduate student at MIT. As of February 2020, he was working on an assigned project for SIPB. (Complaint, ¶ 16).

On February 27, 2020, Moses asked to speak with Koppel, and the two met that day for approximately one hour. (Complaint, ¶¶ 17-18). During the meeting, Moses told Koppel that he had received reports that Koppel had made other SIPB members feel "uncomfortable," and asked Koppel if he would agree to refrain from using SIPB resources on campus in the future. (*Id.*, ¶ 19). Koppel agreed that he would not take part in future SIPB activities. (*Id.* at ¶ 25).

On March 2, 2020, Moses sent an email to "sipb-office@mit.edu," a distribution list of SIPB-affiliated persons. (Complaint, ¶¶ 26, 50). The email states as follows.

2

Hello all,

I am writing to let you know about a hard conversation that SIPB keyholders[1] had this past week about SIPB member Jimmy Koppel (jkoppel).

Many keyholders shared stories about how he had made them deeply uncomfortable, which continued in spite of requests to stop. Given the severity, consistency, and widespread nature of his interactions, we have requested that jkoppel refrain from participating in SIPB any more (interacting in SIPB spaces, participating in SIPB projects & events, etc). I have already spoken with jkoppel informing him of this, which he has agreed to.

This decision was not taken lightly, but is a necessity that and reflects both the need for SIPB to be a place where everyone is comfortable and the will of the current keyholders.

This circumstance and required response was quite exceptional and also reflects a need for SIPB to do better to be a safe environment for everyone. Specifically, we need to establish mechanisms that make it easy for members to voice their concerns when they are made uncomfortable as this had apparently gone on for some time. At minimum, we need to introduce some sort of anonymous reporting as keyholders only felt comfortable sharing anonymously or just to the chair. We will discuss this at the next EC meeting on 3/6 and I would encourage all members to contribute their ideas.

SIPB is not just a club of those who care about computing, but it is first and foremost a community where everyone should feel safe and supported. If someone ever makes you uncomfortable, you can always bring this up to me or any member of the EC. We will respect any requests for confidentiality, including not sharing with other EC members.

Sincerely,
The Chair

A copy of the March 2 email is attached hereto as **Exhibit A**.[2]

---

[1] SIPB has a tier of membership known as "keyholder." (Complaint, ¶ 14). Keyholders are elected by a vote of existing SIPB keyholders, and the status bestows on them increased privileges surrounding the club's activities. (*Id.* at ¶15).

[2] The Court may consider the full text of the allegedly defamatory email without converting this motion into one for summary judgment, notwithstanding the fact that Koppel's complaint does not quote the email in full or attach it as an exhibit. *Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012, 1015 (1st Cir.), *cert. denied*, 488 U.S. 821 (1988) (district court properly considered article, which was "central" to defamation claim, on motion to dismiss); see also *Albright v. Morton*, 321 F. Supp. 2d 130, 134 and n.2

3

3514133.v2

On March 12, 2020, the Executive Committee of SIPB sent a clarifying email to the same

distribution list. (Complaint, ¶¶ 28-29). The email stated:

> Hello all,
>
> We are writing in connection with an email sent on March 2 by William Moses
> <wmoses@mit.edu> on behalf of the SIPB executive board (the email).
>
> We believe that transparency is an important principle, but that email included
> certain details relating to Mr. James Koppel (jkoppel) that, on further reflection,
> we have concluded could have remained within the SIPB leadership. I apologize
> on behalf of the SIPB executive board.
>
> In addition, the email conveyed several points which we wish to clarify. James
> was not informed or "warned" of any prior alleged conduct by SIPB leadership,
> nor did he fail or refuse to cure or alter any conduct after any warning or warnings
> from SIPB leadership.
>
> Although not our intent, the email may have given the impression that any issue
> related to this subject was clear or not disputable. On the contrary those
> communications involved discussion of points on which reasonable persons can
> and do disagree.
>
> We apologize for any resulting confusion or misperceptions.
>
> Sincerely,
> The Executive Committee of the Student Information Processing Board

A copy of the clarifying email is attached hereto as **Exhibit B.**

On April 13, 2020, Koppel filed a complaint against Moses in the Middlesex Superior

Court. After attempted service on May 4 on Moses's vacated dormitory, and the later entry of a

default by the state court clerk, Koppel served Moses's counsel with process on July 17, 2020.

Moses timely removed the case to this court on August 5, 2020, based on diversity of citizenship.

---

(D. Mass. 2004), *aff'd sub nom. Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005) (considering
publications at issue in defamation suit "because they are essential to plaintiffs' complaint").

4

Case 1:20-cv-11479-LTS   Document 6-1   Filed 08/12/20   Page 5 of 21

## ARGUMENT

**I.   THE STATEMENT THAT KOPPEL MADE OTHER PERSONS "DEEPLY UNCOMFORTABLE" IS TOO VAGUE AND IMPRECISE TO SUPPORT A DEFAMATION CLAIM.**

Count I of Koppel's complaint, for defamation, is based entirely on Moses's March 2, 2020 email stating that Koppel had made other students feel "deeply uncomfortable." The email contains no further detail about what Koppel may have done or said, if anything, to cause this reaction. As a matter of law, the statement is too vague to support a defamation claim.

Under Massachusetts common law, a defamation plaintiff must show that the defendant published a false statement of fact concerning the plaintiff that harmed the plaintiff's reputation. *See Ayyadurai*, 270 F. Supp. 3d at 355 (stating elements of defamation claim under Massachusetts law). In addition, "the Supreme Court—reading the First Amendment (made binding on the states through the Fourteenth)—has hedged about defamation suits with lots of safeguards designed to protect a vigorous market in ideas and opinions." *Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 65 (1st Cir. 2015) (cleaned up).[3]

Among these First Amendment "safeguards" is the rule that a defamation claim must be based on a specific and provably false statement of fact. *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 727 (1st Cir. 1992) (any statement "'must be provable as false'

---

[3] Because of these First Amendment protections, pretrial resolution of defamation cases is favored. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (noting in a defamation case that "the high cost of litigation can scare defendants into settling even a weak case pre-summary judgment," and thus "a claim must have some degree of plausibility before the parties are put through their discovery paces."); *see also Appleby v. Daily Hampshire Gazette,* 395 Mass. 32, 37 (1985) ("[a]llowing a trial to take place in a meritless case 'would put an unjustified and serious damper on freedom of expression.'"), quoting *National Ass'n of Government Employees, Inc. v. Central Broadcasting Corp.*, 379 Mass. 220, 231 (1979); *Ayyadurai*, 270 F. Supp. 3d at 352 (dismissing defamation claim for lack of provably false statement of fact, noting that dismissal is appropriate if the facts as alleged do not 'possess enough heft to show that plaintiff is entitled to relief.'"), quoting *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008).

before there can be defamation liability"), quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). "[V]ague language that is subject to multiple interpretations is generally not actionable" as defamation. *Ayyadurai,* 270 F. Supp. 3d at 355. Statements that involve mere "expressions of personal judgment" are likewise non-actionable, "especially as the judgments become more vague and subjective in character." *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000); *Tartaglia*, 19 Mass. App. Ct. at 698 (affirming summary judgment in libel suit based on statement that was "somewhat amorphous" rather than "specific and significant"). "Under the First Amendment there is no such thing as a false idea," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974), and as such, a "subjective view" or "an interpretation" cannot be the subject of liability. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).

Whether a statement constitutes a provably false statement of fact, as opposed to a mere opinion or an "expression[] of personal judgment," *Gray*, 221 F.3d at 248, is a question of law for the court. *Piccone v. Bartels*, 785 F.3d 766, 772 (1st Cir. 2015) ("Whether a statement is a verifiable fact or an opinion can be decided by the court as a matter of law."). The issue is frequently resolved on motions to dismiss. *See, e.g., Ayyadurai,* 270 F. Supp. 3d at 359 (dismissing defamation claim based on statements that plaintiff was a "liar" and a "fraud" for claiming to have invented email because they were incapable of being proved true or false); *Feld v. Conway*, 16 F. Supp. 3d 1, 4 (D. Mass. 2014) (dismissing defamation claim based on statement that plaintiff is "fucking crazy" on ground it did not convey a factual statement).

Here, the statement that Koppel made other members of SIPB feel "deeply uncomfortable" cannot support his defamation because the words cannot "reasonably . . . be understood as having an easily ascertainable and objectively verifiable meaning." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 129 (1st Cir. 1997). "The vaguer a term, or the more

6

meanings it reasonably can convey, the less likely it is to be actionable." *Id.* Here, the statement

that Koppel made some people "deeply uncomfortable" is akin to the kinds of hopelessly

ambiguous statements that courts have held do not support a libel claim. *See, e.g., id.* (statement

that a store is "trashy" non-actionable because it possesses "a multitude of fairly ascribable

meanings"); *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984) ("outspoken proponent of

political Marxism" deemed "indefinite and ambiguous"); *Buckley v. Littell*, 539 F.2d 882, 893,

895 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977) ("fellow traveler" of "fascism" held to be

words of "tremendous imprecision" that were "variously interpretable" or only "loosely

definable"); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 516 (W.D. Va. 2019) ("dishonest,"

"paternalistic," "exploitative," and "bullying" were "'hopelessly imprecise' terms for which

there is no well-accepted, agreed-upon meaning."); *Whyman v. Whalen*, No. 16-CV-10049-LTS,

2018 WL 3130630, at *9 (D. Mass. June 22, 2018) (statement by defendant that he "outta throw

[plaintiff's] ass out of here" stated only general negative opinion, not facts); *Robinson v. Spencer

Stuart, Inc.*, No. CIV.A. 13-10278-RWZ, 2013 WL 3989672, at *8 (D. Mass. Aug. 5, 2013)

(statements that plaintiff was "checked out" and "not in the game," used to describe plaintiff's

work, held to be "broad descriptive terms, susceptible to varying interpretations."); *Coral Ridge

Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019) ("hate

group" non-defamatory because "[u]nlike the accusation of a crime, the accusation of being a

hate group does not derive its meaning from commonly understood social norms.") (internal

quotation omitted); *Clorite v. Somerset Access Television, Inc.*, No. CV 14-10399-DJC, 2016

WL 5334521, at *6 (D. Mass. Sept. 20, 2016) (statements that videographer was "incompetent,"

and "didn't know what he was doing," were non-actionable "generalized statements" that, while

"offensive to the ear," could not "be measured as true or false because they lack specificity").

7

None of these terms have "a precise core of meaning for which consensus of understanding exists;" rather they are "indefinite and ambiguous."[4] *Ollman,* 750 F.2d at 979.

Here, Koppel's complaint effectively concedes that the "deeply uncomfortable" statement is vague and non-factual. Koppel alleges that the email "lacked any objective factual basis;" rather, it merely informed recipients that plaintiff had "made others 'uncomfortable' without disclosure of any context or explanatory facts," or of the "factual basis as to what made anyone 'uncomfortable.'" (Complaint, ¶¶ 61, 62). Likewise, Koppel alleges that "[a]ll readers of the March 2 missive and the March 12 retraction are . . . kept in the dark as to any inculpatory or supporting facts." (Complaint, ¶ 37) (emphasis supplied).

In light of these allegations and the language and context of the email, Koppel cannot argue that the communication implies the existence of undisclosed, defamatory facts. Restatement (Second) of Torts § 566 (1977) (noting that defamatory communication "may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.") The March 2, 2020 email says that Koppel made other SIPB-affiliated persons "deeply uncomfortable." Who? In what context? In what way? What, if anything, did he do? All these

---

[4] Massachusetts state courts frequently deem vague, indefinite, or conclusory statements to be incapable of sustaining a defamation claim. *Nat'l Ass'n of Gov't Emp., Inc. v. Cent. Broad. Corp.*, 379 Mass. 220, 229 (1979) ("communism" was "too vague to be cognizable as the subject of a defamation action"); *Judd v. McCormack*, 27 Mass. App. Ct. 167, 169 (1989) (statement that plaintiff "has not shown the necessary psychological and physiological skills necessary to perform effectively as a firefighter" was non-actionable); *Monfredo v. City of Worcester*, No. CIV.A. WOCV20111122E, 2013 WL 7863712, at *5 (Mass. Super. Nov. 25, 2013) (statement that plaintiff "was not a good employee, and that as a result of his poor performance" he needed to be laid off, did not constitute a "specific and significant" defamatory statement), quoting *Tartaglia*, 19 Mass. App. Ct. at 698.

questions are unanswered—as Koppel says, readers are "kept in the dark as to any inculpatory or supporting facts." (Complaint, ¶ 37).

However, even if Koppel were now to attempt to argue that the March 2 email implies the existence undisclosed facts, his claim would still fail. "[I]n order for an opinion to be actionable, the undisclosed facts must be defamatory," *Cole v. Westinghouse Broad. Co.*, 386 Mass. 303, 313 (1982), meaning they must "tend to injure the plaintiff's reputation, or hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." *Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 221–22 (D. Mass. 2012), *aff'd sub nom. Greenspan v. Random House, Inc.*, No. 12-1594, 2012 WL 5188792 (1st Cir. Oct. 16, 2012) (internal quotation omitted). If "it is unclear what [the undisclosed facts] are," let alone that "they are defamatory facts," then the communication is not "actionable on the basis of underlying assumed defamatory facts." *Cole,* 386 Mass. at 313 (reversing judgment against defendant who accused reporter of "sloppy and irresponsible reporting" and "history of bad reporting techniques").

Here, as Koppel acknowledges, it is entirely unclear what the undisclosed facts suggested by the email (if any) consist of. (Complaint, ¶ 37). Absent such an easily-understood implication, the statement is not actionable as implied libel. *See Boyle v. Barnstable Police Dep't*, No. CIV.A. 09-11435-MBB, 2012 WL 2126868, at *7 (D. Mass. June 11, 2012) (rejecting implied defamation claim based on statement by police sergeant to investigator that he "did not 'want [investigators] to drop anything on this John Boyle because everybody in the [police] department knows all about him and his going ons'"); *Chambers v. The Travelers Companies, Inc.*, 764 F. Supp. 2d 1071, 1086 (D. Minn. 2011), *aff'd sub nom. Chambers v. Travelers Companies, Inc.*, 668 F.3d 559 (8th Cir. 2012) (statement that plaintiff had been fired because of "continuing

9

issues" with her job was "insufficiently precise" where even plaintiff "testified that she was unclear as to what 'continuing issues' meant.").

Additionally, "[c]ontext matters in assessing [defamation] claims: The court must examine the statement in its totality in the context in which it was uttered or published." *Amrak Prods., Inc.*, 410 F.3d at 72-73 (internal quotations omitted). "This task requires an examination of the totality of the circumstances in which the specific challenged statements were made, including the general tenor and context of the [statements] and any cautionary terms used by the person publishing the statement." *Whyman*, 2018 WL 3130630, at *9.

The email's tenor and context reinforce the conclusion that it conveys no defamatory facts. Throughout the email, Moses makes clear that he is describing the subjective feelings of certain SIPB keyholders toward Koppel. (Ex. A). The email states that the decision to ask Koppel to step away from SIPB was made to ensure that "everyone is comfortable" and to reflect "the will of the current keyholders." (*Id.*) SIPB, the email states, is "a community where everyone should *feel* safe and supported." (*Id.*) (emphasis supplied). The emphasis throughout is on the subjective feelings of SIPB keyholders, not on objective, easily-understood, and verifiable facts about what Koppel allegedly did or did not do. *Whyman,* 2018 WL 3130630, at *9 (statement non-defamatory where it implied no defamatory facts but rather stated only one person's "negative opinion" of another).

The Court should also consider that the email was sent in the context of a university. As is well-known, colleges and universities have faced controversy in recent years over issues relating to the emotional comfort of students. Christina Paxson, "Brown University President: A Safe Space for Freedom of Expression," *New York Times,* September 5, 2016 ("New students are entering colleges and universities at a time of fierce debate about whether institutions of higher

education are becoming places that stifle speech in the interest of protecting students from ideas and perspectives they don't want to hear.") Some commentators argue that colleges and universities are creating a culture in which students, faculty, and administrators "overreact to innocuous speech, make mountains out of molehills, and seek punishment for anyone whose words make anyone else feel uncomfortable." Greg Lukianoff and Jonathan Haidt, "The Coddling of the American Mind," *The Atlantic,* September 2015; David Brooks, "Understanding Student Mobbists," *New York Times,* March 8, 2018 (discussing perspective of students who "shut down speakers" they dislike, managing "to combine snowflake fragility and lynch mob irrationalism into one perfectly poisonous cocktail.").

One need not take any "side" in this debate to conclude that in the university context, it is not defamatory to say, without further detail, that one student made other students "deeply uncomfortable." As far the March 2 email conveys, Koppel could just as easily have made other students "deeply uncomfortable" by espousing an unfashionable viewpoint, or by dismissing another person's deeply held beliefs, as anything else.[5] Accordingly, even if the email implies the existence of undisclosed facts, it is "entirely unclear . . . that they are defamatory facts," and therefore the statement cannot sustain a claim of defamation. *Cole*, 386 Mass. at 313.

## II.   THE OTHER STATEMENTS KOPPEL IDENTIFIES DO NOT SUPPORT HIS DEFAMATION CLAIM.

Perhaps realizing the weakness of his claim based on the words "deeply uncomfortable," Koppel cites of a litany of other statements in the email as allegedly false and defamatory. These

---

[5] Indeed, Koppel himself suggests a potential explanation for what made certain SIPB keyholders "uncomfortable" that is non-defamatory: his own personal tendencies, which allegedly derive from mild autism. "The plaintiff for example from time to time limits his eye contact with strangers. He can seem to be at times slightly abrupt in conversation. He from time to time has difficulty engaging in small talk with strangers." (Complaint, ¶ 58). "Disabilities or personal differences or limitations unique to anyone, however, slight, can make some people uncomfortable," Koppel alleges. (Complaint, ¶ 60).

statements fail to support the defamation claim for a variety of reasons, including that they merely refer back to the vague "deeply uncomfortable" statement, are not pleaded to be false, or do not convey the meaning Koppel ascribes to them. We address each in turn.

- "Hard conversation": Koppel takes issue with the following statement in the March 2 email: "I am writing to let you know about a hard conversation that SIPB keyholders had this past week about SIPB member Jimmy Koppel (jkoppel)." (Ex. A; Complaint, ¶¶ 32-34). Koppel complains that the conversation was held outside the provisions of the SIPB constitution, which allegedly provides that expulsion of a member can only occur by a 2/3 vote of the executive committee. Even if true, this fails to establish that the "hard conversation" statement is false, or that it harms Koppel's reputation. Indeed, the statement that the conversation was "hard" serves to lessen any purported defamatory sting of the email by suggesting that the conversation concerned "points on which reasonable persons can and do disagree," as Moses would later affirm in the March 12 explanatory email. (Ex. B).

- "Many keyholders": Koppel alleges that the statement, "Many keyholders shared stories about how [Koppel] had made them deeply uncomfortable," falsely "suggests that the unfavorable accounts were universal." (Complaint, ¶ 35). The email does not say this. "Many" does not mean "all." "Statements alleged to be libelous must be interpreted reasonably." *King v. Globe Newspaper Co.*, 400 Mass. 705, 711–12 (1987) (rejecting "unreasonably strained" interpretations).

- "Which continued in spite of requests to stop": Koppel alleges that the statement that his interactions "continued in spite of requests to stop" is false, and that

12

Moses admitted it was false in the March 12 email. (Complaint, ¶ 35). In fact, Moses merely clarified that Koppel "was not informed or 'warned' of any prior alleged conduct <u>by SIPB leadership</u>, nor did he fail or refuse to cure or alter any conduct after any warning or warnings <u>from SIPB leadership</u>." (Ex. B) (emphasis supplied). The March 2 email does not say who asked Koppel to stop his conduct. (Ex. A). Regardless, Koppel never alleges the falsity of the statement: he does not allege that he never continued in conduct that had made a SIPB member uncomfortable after being asked to stop. *Ayyadurai*, 270 F. Supp. 3d at 358 (compliant must provide "factual underpinnings" to support claim of falsity).

Even accepting Koppel's allegation that the "requests to stop" statement is false for purposes of this motion, it simply refers back to the vague, non-specific statement that Koppel made people uncomfortable. The statement is not made any more definite, nor any more defamatory, by the additional detail that it continued "in spite of requests to stop." It does not harm a person's reputation to say that he did not honor a request to stop engaging in conduct unless the statement makes clear the underlying conduct is blameworthy.

- "<u>Given the severity, consistency, and widespread nature of his interactions</u> . . . ." Koppel alleges that the March 2 email characterizes his behavior as "severe, persistent, and widespread." The actual statement is merely that Koppel's interactions were sufficiently of a sufficient "severity, consistency, and widespread nature" for SIPB leadership to request "that jkoppel refrain from participating in SIPB any more (interacting in SIPB spaces, participating in SIPB projects & events, etc)" because of the need "for SIPB to be a place where

everyone is comfortable," and to carry out "the will of the current keyholders." (Ex. A). As explained above, the statement that Koppel made some SIPB keyholders "deeply uncomfortable" refers only to subjective feelings and is too vague to support a defamation claim. The addition of the identified modifiers does not put factual meat on the bones of this indefinite statement.

- "Plaintiff agreed to expulsion" The March 2 email states that Koppel "has agreed to" the request "to refrain from participating in SIPB any more." Plaintiff admits that he "agreed" that "he would not violate the terms" of his so-called "expulsion" from SIPB, but protests that he deemed the "expulsion" to be "illegitimate." (Complaint, ¶ 38). The email, however, never says otherwise. Accordingly, plaintiff has identified no substantial falsity with this statement. *Pan Am Sys., Inc.,* 804 F.3d at 64 (statement not actionable if it is "substantially true"); *cf. Doe v. Amherst Coll.,* 238 F. Supp. 3d 195, 227 (D. Mass. 2017) (campus-wide email stating that plaintiff had been expelled for sexual misconduct did not imply that plaintiff had received a "thorough, impartial, and fair" hearing: "quite simply, the email accurately stated what had occurred."). Further, the mere statement that Koppel agreed not to participate in any further SIPB events does not harm Koppel's reputation.

- Action Taken Out of "Necessity":  Koppel complains of the statement "This decision was not taken lightly, but is a necessity that and [sic] reflects both the need for SIPB to be a place where everyone is comfortable and the will of the current keyholders." (Ex. A). Koppel asserts that this "[f]alsely portrays the not-identified misconduct of the plaintiff as a threat to the core purposes and the

future of a worldwide organization." (Complaint, ¶ 39). This is another strained and unnatural reading of the email. *King*, 400 Mass. at 711–12. Further, even if the sentence were interpreted to convey that Koppel's behavior was "a threat to the core purposes" of SIPB, it would amount to nothing more than a pure opinion, not a provably false statement of fact. *Phantom Touring, Inc.*, 953 F.2d at 727 ("a statement such as, 'That's the worst play I've ever seen,' . . . is so subjective that it is not susceptible of being proved true or false.")

- "<u>This circumstance and required response was quite exceptional</u>": Koppel, again, strains to interpret this phrase to convey that plaintiff was "a major (exceptional) threat to a thriving worldwide organization," as opposed to the observation that situations like this one happen infrequently. (Complaint, ¶ 40). Even if the statement were construed as Koppel interprets it, it would state another pure opinion, not a provably false fact.

- <u>General statements about SIPB</u>: Finally, Koppel states it was defamatory for Moses to state that the event "reflects a need for SIPB to do better to be a safe environment for everyone. Specifically, we need to establish mechanisms that make it easy for members to voice their concerns when they are made uncomfortable as this had apparently gone on for some time. At minimum, we need to introduce some sort of anonymous reporting as keyholders only felt comfortable sharing anonymously or just to the chair. SIPB is not just a club of those who care about computing, but it is first and foremost a community where everyone should feel safe and supported." (Ex. A).

This passage contains no provably false statement of fact about Koppel. The statement that people had been made uncomfortable "for some time" refers back to the vague and imprecise "deeply uncomfortable" statement referenced earlier. Nor does the email say that SIPB members were "intimidated by this plaintiff to be silent as to his abuse," as Koppel alleges. *King*, 400 Mass. at 711–12. Finally, the association of keyholders' feelings about Koppel with the broader statement that SIPB is "a community where everyone should *feel* safe and supported," conveys no facts about Koppel at all.

## III. PLAINTIFF FAILS TO ALLEGE FACTS SHOWING THE FALSITY OF ANY STATEMENT.

Even if Koppel were deemed to have identified some provably false and defamatory statement in Moses's vague March 2 email, he has not pleaded any facts demonstrating that it is false. "To survive a motion to dismiss, a complaint challenging statements made about a matter of public concern must not only allege that the statements are false, but also provide 'factual underpinning[s] to support that claim.'"[6] *Ayyadurai*, 270 F. Supp. 3d at 358, quoting *Pan Am*

---

[6] There is no doubt that the issue addressed in the email—ensuring that SIPB is a comfortable experience for all participants—is an issue of "public concern" under the liberal standard applicable to that question. "To qualify as a matter of public concern, the speech (based on the content, form, and context) must touch on issues in which the public (even a small slice of the public) might be interested, as distinct, say, from purely personal squabbles." *Pan Am. Sys.,* 804 F.3d at 66. They are issues that can be "fairly considered as relating to any matter of political, social, or other concern to the community," as opposed to "matters only of personal interest." *Levinsky's, Inc.*, 127 F.3d at 132. "[T]he relevant community need not be very large and the relevant concern need not be of paramount importance or national scope. Rather, 'it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested.'" *Id.*, quoting *Roe v. City of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997). Here, Koppel alleges that SIPB is "a recognized and important forum for communications as to extracurricular issues and ideas in the field of computer science." (Complaint, ¶ 10). SIPB, Koppel alleges, "is used for the development of innovative ideas, collegial conversations, and the creation and encouragement of a worldwide virtual community of persons interested in cutting-edge issues in computer science." (Complaint, ¶ 11). Accordingly, Koppel alleges, SIPB's activities, and its effectiveness as a place for "collegial" work on computer science, "are of substantial interest to the computer science community at

16

*Sys., Inc. v. Hardenbergh*, 871 F.Supp.2d 6, 16 (D. Me. 2012) (mere allegations that statements are false is insufficient under *Iqbal* and *Twombly*).

Koppel has not alleged facts showing the falsity of the March 2 email. For example, he has not pleaded: (1) that he never made SIPB keyholders "uncomfortable" in one way or another; (2) that he was never asked to stop engaging in speech or conduct that had made a SIPB keyholder uncomfortable; or (3) that he never persisted in any such identified speech or behavior despite such a request. Absent such factual heft to Koppel's allegations of falsity, he has not stated a claim. *Ayyadurai,* 270 F. Supp. 3d at 358.

## IV. KOPPEL'S ADDITIONAL COUNTS SHOULD BE DISMISSED BECAUSE THEY SEEK IMPROPERLY TO RE-PLEAD HIS MERITLESS DEFAMATION CLAIM, AND BECAUSE THEY FAIL ON THEIR OWN TERMS.

In Counts, II-IV, Koppel asserts claims of "interference with advantageous relations," "false light," and "civil conspiracy." None of these counts state a claim.

First, all three counts are premised upon the same facts as Koppel's defamation claim. A plaintiff cannot perform an end run around the First Amendment simply by "restat[ing] [a] defamation claim under a different heading." *Brown v. Hearst Corp*., 54 F.3d 21, 27 (1st Cir. 1995); see also *Yohe v. Nugent*, 321 F.3d 35, 44 (1st Cir. 2003) (plaintiff cannot evade protections afforded to defamation defendants "merely by re-labeling his claim.").

As explained above, the complaint fails to identify a statement of fact in the March 2 email that is sufficiently specific and definite to ground a defamation claim. This dooms Counts II, III and IV, which all rest on the publication of the same email, and which seek defamation damages under a different guise. *See Piccone,* 785 F.3d at 774–75 (affirming dismissal of interference claim based on same protected opinions as defamation claim); *Brown v. Hearst*

---

[MIT] and worldwide." (*Id.*). These allegations establish that statements about SIPB and actions it takes to remain an environment where all persons feel comfortable are a matter of public concern.

*Corp.*, 54 F.3d 21, 27 (1st Cir. 1995) (false light claim could not "escape the same constitutional constraint as [plaintiff's] defamation claim."); *Ayyadurai*, 270 F. Supp. 3d at 369 (interference claim that "simply recasts the [failed] defamation claim" dismissed).

Counts II-IV also fail on their own terms. A claim for interference with advantageous relationships as pleaded in Count II requires factual allegations that "(1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result." *Malden Transp., Inc. v. Uber Techs., Inc*., 286 F. Supp. 3d 264, 281–82 (D. Mass. 2017). "A plaintiff may not speculate about future business relationships when alleging this tort." *Id.* (internal quotation omitted). Rather, a plaintiff must "allege 'a specific business relationship that was interfered with by [defendant].'" *Id.*

Koppel does not allege the existence of any "business relationship;" he alleges only that recipients of the email included unnamed "social or professional acquaintances" with whom he had the potential to network. (Complaint, ¶ 51). Nor has Koppel alleged facts showing that Moses knew of any "business relationship" between Koppel and any recipient of the email. *Malden Transp., Inc.,* 286 F. Supp. 3d at 281–82. Finally, the complaint fails to allege any improper motive by Moses in sending the email, nor facts showing that his email constituted "improper means" of communicating the action to SIPB members. *Id.*

Count III is variously styled as "false disclosure of private facts," "invasion of privacy," and "false light." It appears to be based on the following allegations: (1) plaintiff is "slightly disabled by reason of mild autism," (Complaint, ¶ 57); (2) SIPB members "know and like the plaintiff," and "see and ignore his very limited disability" (*id.*, ¶ 59); (3) yet "[a]ll persons

familiar with the plaintiff's very limited disability" who received Moses's March 2 email "would falsely conclude that plaintiff's limited disability was far worse than they observed and far more offensive than anyone had ever observed," (*id.*, ¶ 64), and therefore (4) the statement "presents private facts in a false light." (*id.*, ¶ 71).

This sequence of allegations, whatever their plausibility, appears to be an attempt to invoke the tort of "false light." That tort, where it applies, imposes liability for invasion of privacy where a speaker "gives publicity to a matter concerning another that places the other before the public in a false light" where "the false light in which the other was placed would be highly offensive to a reasonable person," and the speaker "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter." Restatement (Second) of Torts § 652E (1977). Massachusetts, however, "does not recognize a cause of action for false light invasion of privacy." *Dasey v. Anderson*, 304 F.3d 148, 154 (1st Cir. 2002); *Bilodeau-Allen v. Am. Media, Inc.*, 549 F. Supp. 2d 129, 130 and n. 6 (D. Mass. 2008) (collecting cases); *ELM Med. Lab., Inc. v. RKO Gen., Inc.,* 403 Mass. 779, 787 (1989) ("This court has not recognized [the false light] tort and does not choose to do so now."). Accordingly, Count III fails to state a claim.[7]

Finally, Count IV, for civil conspiracy, asserts that Moses, "together with other persons not yet identified, possessed and grossly misused a unique power to accomplish wrongdoing and inflict harms and damage which the defendant Moses would not have been able to cause if acting alone." (Complaint, ¶ 86). The complaint is completely silent as to the nature of this "unique power," or why it depended on anyone other than Moses. However, it is apparent that Koppel

---

[7] The complaint also makes reference to "intimate private facts," and more generally, "invasion of privacy," (Complaint, ¶¶ 71, 83), possibly based on a theory that Moses's email conveyed private information about Koppel's disability. Such a claim would fail, because the March 2 email plainly does not include any information about any disability, nor does it make any other "disclosure of facts ... that are of a highly personal or intimate nature" about Koppel. *Dasey*, 304 F.3d at 153; (Exhibit A).

seeks to invoke the "very limited cause of action in Massachusetts for civil conspiracy of a coercive type." *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994) (internal quotation marks omitted). "In order to state a claim of this type of civil conspiracy, plaintiff must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." *Id.* (cleaned up).

Koppel does not allege that he was coerced in any way. Nor does he state any facts (as opposed to bald conclusions) about the supposedly coercive power Moses and other unidentified persons wielded over Koppel. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

<u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Koppel's complaint in its entirety.

Respectfully submitted,

WILLIAM MOSES,

By his attorneys,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO # 647438)
jpyle@princelobel.com
Michael J. Lambert (BBO # 704134)
mlambert@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

Dated: August 12, 2020

20

3514133.v2

Case 1:20-cv-11479-LTS Document 6-1 Filed 08/12/20 Page 21 of 21

## **Certificate of Service**

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle

3514133.v2