UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES KOPPEL,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>WILLIAM MOSES,<br><br>　　　Defendant. | Civil Action No. 1:20-cv-11479-LTS |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**

Plaintiff James Koppel submits this memorandum in support of his motion for remand of this action to Middlesex Superior Court. As shown below, removal was not timely, and there is no diversity jurisdiction because Defendant William Moses is a citizen of Massachusetts. Accordingly, Koppel's motion should be granted, and the action should be remanded.

## I.     Introduction and Background

This case arises out of damaging defamatory communications by Defendant Moses, interference with advantageous relations and ongoing reputational and professional damages to Koppel. Moses and Koppel are PhD students at the Massachusetts Institute of Technology and colleagues in their field of computer science. At all material times, Moses was a resident and citizen of Massachusetts, having moved to the Commonwealth for college at MIT in 2014 and enrolled in the PhD program at MIT in 2017 with intent to remain indefinitely. Moses has resided at 70 Pacific Street, No. 491B, in Cambridge, Massachusetts, since August 2017. All conduct alleged in the Complaint occurred while Moses was located in Cambridge, Massachusetts.

### A. Facts Concerning Untimeliness of Removal

Koppel commenced this civil action by filing the Complaint in Middlesex Superior Court on April 13, 2020. The appointed special process server, Quickserv Allstate Process Servers, served Moses with the Summons and Complaint by leaving a copy at his last and usual abode at 70 Pacific Street, No. 491B, Cambridge, Massachusetts, and by mailing a copy, on May 4, 2020. *See* Return of Service filed May 6, 2020, attached as Exhibit 1.

Pursuant to Mass. R. Civ. P. 12(a) Moses was required to respond to the Complaint within 20 days of service or by May 24, 2020. Moses failed to respond or otherwise appear. Koppel served a Request for Default on Moses by Certified Mail at 70 Pacific Street, No. 491B, on June 26, 2020. The delivery was signed for and the green card was returned to Koppel. On June 29, 2020, the Clerk of the Middlesex Superior Court entered a default against Moses pursuant to Mass. R. Civ. P. 55(a).

On August 5, 2020, more than thirty days after service of the Summons and Complaint, Moses filed a Notice of Removal in this Court. The Notice of Removal filed by Moses asserts that this Court has jurisdiction because there is complete diversity between Plaintiff and Defendant.

### B. Facts Concerning Citizenship of Moses in Massachusetts

Moses has resided at 70 Pacific Street, No. 491B, Cambridge, Massachusetts, since August 2017. Koppel Affidavit, ¶ 7.

Koppel has known Moses since 2015 and has personal knowledge of facts regarding Moses' continuous residence in Massachusetts since 2014. Koppel Affidavit, ¶ 2. Koppel and Moses are colleagues in the field of computer science and are acquainted through their work and

study at MIT. Koppel Affidavit, ¶ 3. In 2019 Koppel and Moses discussed becoming roommates. Koppel Affidavit, ¶ 4.

Moses began his undergraduate studies at MIT in August 2014, shortly after he turned 18. Koppel Affidavit, ¶ 5. He graduated with three degrees in June 2017 and began the PhD program at MIT in August 2017. Koppel Affidavit, ¶ 5. Moses has not taken any "gap semesters" or spent any significant time away from his work at MIT since 2017. Koppel Affidavit, ¶ 8. The typical PhD student in Moses' field (programming languages/compilers) spends no less than six years in PhD work, and the program does not have a particular end date. Koppel Affidavit, ¶ 9. PhD students at MIT typically spend the academic year on their work and their summers either at internships or on research. Koppel Affidavit, ¶ 9. In the summers between 2015 and 2019 Moses was engaged in internships or research and did not live in Virginia at any time. Koppel Affidavit, ¶ 9. During January school breaks in the same period he did not live in Virginia. Koppel Affidavit, ¶ 9.

For example, in January 2015, Moses took courses at MIT and volunteered to be an instructor for a course. Koppel Affidavit, ¶ 10.

In the summer of 2015, Moses was a "software/propulsion engineering intern" at SpaceX in Hawthorne, California. Koppel Affidavit, ¶ 11.

In the summer of 2016, Moses was employed in the Computational Connectomics Group of Harvard and MIT in Cambridge, Massachusetts. Koppel Affidavit, ¶ 12.

In the summer of 2017, Moses was employed by Facebook performing research on artificial intelligence in New York and Paris. Koppel Affidavit, ¶ 13.

In January 2018, Moses attended Student Information Processing Board (SIPB) meetings in Cambridge. Koppel Affidavit, ¶ 14.

Moses spent the bulk of the summer of 2018 at MIT in Cambridge. Koppel Affidavit, ¶ 15.

In January 2019, Moses attended SIPB meetings in Cambridge. Koppel Affidavit, ¶ 16.

In the summer of 2019, Moses was employed at Lawrence Berkeley National Labs in California. Koppel Affidavit, ¶ 17.

In January 2020, Moses attended SIPB meetings in Cambridge. Koppel Affidavit, ¶ 18.

Each fall from 2015 to 2019 Moses returned home to Cambridge, Massachusetts. Koppel Affidavit, ¶ 19. He spent each academic year at his home in Cambridge from 2014 through 2020. Koppel Affidavit, ¶ 19.

Since August 2017, Moses has been an employee of MIT and subject to Massachusetts tax. Koppel Affidavit, ¶ 20. When Moses and Koppel were discussing becoming roommates in 2019, Moses repeatedly informed Koppel that he had no substantial income outside of his MIT earnings. Koppel Affidavit, ¶ 20.

A PhD student working for the University is more like an employee than a college student. Koppel Affidavit, ¶ 21. There is no definite end date for the PhD program, and it typically continues at least six years. Koppel Affidavit, ¶ 22.

In the spring of 2020 Moses was engaged in his PhD work at MIT. Koppel Affidavit, ¶ 23. Koppel has known Moses since 2015, and Moses never expressed any particular intent to leave Massachusetts. Koppel Affidavit, ¶ 24. Moses left Cambridge in March 2020 only because of COVID-19 restrictions. Koppel Affidavit, ¶ 25. He notified MIT Graduate Housing in an email dated March 13, 2020 that he would be returning to 70 Pacific Street, No. 491B when those restrictions were no longer in place, stating "I have a continuing lease, and I'd like to

return to Sidney Pacific once this is all over." *See* March 13 email, Exhibit B to Moses Affidavit dated August 12, 2020 (ECF no. 5-8).

## II.     The Action Must Be Remanded Because Removal Was Not Timely.

To timely remove a civil action to federal district court, a defendant must file a notice of removal within thirty days after being served with the complaint. 28 U.S.C. § 1446(b)(1); *Sindi v. El-Moslimany*, No. 13-10798-GAO, 2014 U.S. Dist. LEXIS 40108, at *1-5 (D. Mass. Mar. 26, 2014). *See also Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347-48 (1999) ("[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."); *Swanston* v. *TAP Pharm. Prods. (In re Pharm. Indus. Average Wholesale Price Litig.)*, 307 F. Supp. 2d 190, 194 (D. Mass. 2004) (30-day removal period begins to run when a defendant is formally served with the complaint) (citing *Murphy Bros.*).

Here, removal was untimely because Moses filed the Notice of Removal on August 5, 2020, ninety-three days after service of the summons and complaint.

"[T]he thirty-day time limitation to file a notice of removal must be strictly construed and is not subject to an extension by consent of the parties or order of the Court." *JJJ Constructora y Agregados v. United States Fid. & Guar. Co.*, 554 F.Supp.2d 100, 101 (D.P.R. 2006) (removal was untimely where notice was filed on the 33rd day after service); *Hill v. Phillips, Barratt, Kaiser Eng'g*, 586 F.Supp. 944, 945 (D. Me. 1984) ("[t]he thirty-day period is strictly applied"); *Citibank (S.D.), N.A. v. Jamil*, 841 F.Supp.2d 453, 456 (D. Mass. 2011) (removal was untimely and action was remanded to state court).

Once the Court has determined service is valid, and the defendant attempts removal more than thirty days after service, removal is untimely and the action must be remanded. *McEachern v. Inter-Country Adoption Bd. of the Republic of the Phil*., 62 F.Supp.3d 187, 191 (D. Mass. 2014) ("Having already determined that the defendant was properly served, the Court rejects the defendant's explanation for its untimely removal").

In determining the validity of service in state court prior to removal, the law of the state under which service was effected must be applied. *Sindi*, 2014 U.S. Dist. LEXIS 40108 at *1-5 (service was valid under Massachusetts rules); *Frankston v. Denniston*, 376 F.Supp.2d 35, 39 (D. Mass. 2005). Massachusetts Rule of Civil Procedure 4(d) authorize service "[u]pon an individual by delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode." Mass. R. Civ. P. 4(d)(1).

Courts have not defined the term, "usual place of abode," but generally require "enough of a nexus or identity between the individual served and the place where service was left to demonstrate that the individual considered that place 'home' at the time of service." *United States v. Tobins*, 483 F.Supp.2d 68, 75 (D. Mass. 2007). In order to be considered the defendant's "last and usual place of abode" under Massachusetts law, there must be evidence that the defendant was continuing to use the address as his home. *Id*. "For purposes of effecting service under Rule 4(e), an individual can have multiple 'dwelling houses or usual places of abode,' provided each contains sufficient indicia of permanence." *Id*. Service may be improper where the defendant moved permanently and had not resided at the address for a number of years. *Farley v. Sprague*, 374 Mass. 419, 420-422 (1978) (defendant had not resided at Massachusetts address for 40 years); *Konan v. Carroll*, 37 Mass. App. Ct. 225, 228-230 (1994) (defendants had not resided in Massachusetts for four years).

Here, Moses has resided at the 70 Pacific Street, No. 491B address since August 2017. He continued to use that address as his home. Koppel Affidavit, ¶¶ 7-20. Moses left temporarily because of COVID-19 related restrictions at MIT. Koppel Affidavit, ¶ 25. He notified his MIT Graduate Housing in an email dated March 13, 2020 that he would be returning to 70 Pacific Street, No. 491B when those restrictions were no longer in place, stating "I have a continuing lease, and I'd like to return to Sidney Pacific once this is all over." *See* Exhibit B to Moses Affidavit dated August 12, 2020 (ECF no. 5-8). The fact that he left Cambridge temporarily because of COVID-19 related restrictions at MIT at some point in March 2020 does not alter his residence. Koppel Affidavit, ¶¶ 7, 25.

Further, the Superior Court has already determined that service was valid. The entry of default by the Middlesex Superior Court on June 29, 2020 demonstrates valid service, and Moses cannot now establish that the thirty-day removal period did not commence when he was served on May 4, 2020. *McEachern*, 62 F.Supp.3d at 191 (where court already determined service was valid, defendant's untimely removal was rejected).

In summary, Koppel effected valid service on Moses on May 4, 2020 by a leaving a copy of the summons and complaint at Moses' last and usual place of abode at 70 Pacific Street, No. 491B. Because the Notice of Removal was filed more than thirty days after the date of service, this action must be remanded.

### III. The Action Must Be Remanded Because Complete Diversity Between Defendant and Plaintiff Does Not Exist.

The Notice of Removal filed by Moses asserts that this Court has jurisdiction because there is complete diversity between Plaintiff and Defendant.

### A. Standard for Removal

Pursuant to 28 U.S.C. §1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

"Subject matter jurisdiction is not a 'nicety of legal metaphysics' but rests instead on the 'central principle of a free society that courts have finite bounds of authority.' Courts must be careful to respect these limits on their authority." *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 101 (1st Cir. 2001) (internal citations omitted). "When federal subject matter jurisdiction is doubtful, those doubts should be resolved in favor of remand." *Toglan v. Marriot Int'l, Inc.*, 2011 U.S. Dist. LEXIS 91313 at *5 (D. Mass. Aug. 15, 2011).

The United States Supreme Court has held that "[t]he burden of persuasion of establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). *See also Mass. Biologic Labs. v. CSL Behring AG*, Civil Action No. 16-11459-FDS, 2016 U.S. Dist. LEXIS 151238, at *5-6 (D. Mass. Nov. 1, 2016) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal") (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). "[T]he party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." *Garcia Perez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004). Here, Moses has not met his burden to show diversity of citizenship, so the action must be remanded.

### B. Requirements of Diversity Jurisdiction

Under 28 U.S.C. § 1332(a)(1), there is diversity of citizenship if the plaintiff is a "citizen" of a different state than the defendant. *Sweeney v. Westvaco Co.*, 926 F.2d 29, 32-33 (1st Cir. 1991). A person is a citizen of the state in which he is domiciled. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991); *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027,

1029 (1st Cir. 1988). A person's domicile is "the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Rodriguez-Diaz*, 853 F.2d at 1029.

Domicile generally requires two elements: (1) physical presence in a state; and (2) the intent to make such a state a home. *Rodriguez-Diaz*, 853 F.2d at 1029. "The relevant standard is 'citizenship,' i.e., 'domicile,' not mere residence; a party may reside in more than one state but can be domiciled, for diversity purposes, in only one." *Lundquist*, 946 F.2d at 10. The question of citizenship is a "mixed question of fact and law." *Id*.

Courts have identified many factors, none of which by itself is controlling, that are relevant to determine a party's domicile. Objective indicia of domicile include: the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment. *Id*. These factors are to be applied in a holistic rather than mechanistic manner, as "no single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." *Garcia-Perez*, 364 F.3d at 351. "Statements of intent are accorded minimal weight measured against these objective factors." *Alicea-Rivera v. Sindicato de Aseguradores Para La Suscripcion Conjunta de Seguro De Responsabilidad Medico-Hospitalaria*, 12 F.Supp.2d 243, 245-246 (D.P.R. 1998). Further, "future conduct is immaterial to domicile, which must be assessed at the time of the filing of suit." *Hearts with Haiti, Inc. v. Kendrick*, 192 F.Supp.3d 181, 194 (D. Me. 2016).

Here, the evidence demonstrates that Moses has resided in Massachusetts since 2014 and he became a domiciliary of Massachusetts no later than 2017. Koppel Affidavit, ¶¶ 6, 7, 8, 9.

Each fall from 2015 to 2019 Moses returned home to Cambridge, Massachusetts. Koppel Affidavit, ¶ 19. He spent each academic year at his home in Cambridge from 2014 through 2020. Koppel Affidavit, ¶¶ 7-19. As a PhD student, Moses has been employed at MIT in Cambridge since 2017. Koppel Affidavit, ¶ 20. A PhD student working for the University is more like an employee than a college student. Koppel Affidavit, ¶ 21. There is no definite end date for the PhD program, and it typically continues at least six years. Koppel Affidavit, ¶ 22. In the spring of 2020 Moses was engaged in his PhD work at MIT. Koppel Affidavit, ¶ 23. Koppel has known Moses since 2015, and Moses never expressed any particular intent to leave Massachusetts. Koppel Affidavit, ¶ 24. Moses left Cambridge after March 2020 only because of COVID-19 restrictions. Koppel Affidavit, ¶ 25.

Once acquired, domicile is presumed to continue until it is shown to have been changed. *Bank One, Tex., N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992). Where a party changes domicile, "domicile at the time suit is filed is the test." *Lundquist*, 946 F.2d at 10. Here, Moses has resided in Massachusetts since 2014 and acquired domicile in Massachusetts no later than 2017, when he enrolled in the Ph D. program at MIT, became an employee of MIT, and moved in to 70 Pacific Street, No. 491B. Koppel Affidavit, ¶¶ 6-7. As Moses asserts he moved to Virginia and is therefore not a domiciliary of Massachusetts, he bears the burden to show that he changed his domicile to Virginia. *Id*. To prove a change in domicile to Virginia, Moses must demonstrate that (1) he was present in the new domicile; and (2) he had an intent to remain there. *Id*. There is no persuasive evidence based on objective factors that at the time suit was filed in April 2020 Moses had any intent to remain in Virginia. To the contrary, the evidence is that Moses left temporarily because of COVID-19 restrictions and intended to return his home in Cambridge to resume work. Koppel

10

Affidavit, ¶¶ 7, 25; *See* March 13 email, Exhibit B to Moses Affidavit dated August 12, 2020 (ECF no. 5-8).

Contrary to the assertions in the Notice of Removal, there is no general rule that PhD students are not citizens of the state where they study and work. Instead, the Court must analyze the objective factors regarding citizenship articulated in *Lundquist* and elsewhere. Moses cites *Alexander v. Trustees of Boston Univ.*, 584 F.Supp. 282 (D. Mass. 1984), a case in which the Court concluded a divinity school student at Boston University was not a citizen of Massachusetts for the purposes of diversity jurisdiction. In that case, the Court did not apply a general rule applicable to graduate students. Instead, the Court analyzed objective factors regarding citizenship, considering the plaintiff's driver's license, voter registration, and, notably, an agreement to practice ministry with the Ohio Methodist Conference after his graduation. *Alexander*, 584 F.Supp. at 287.

Decisions concerning citizenship of college students, as distinct from PhD students, are not readily applicable. Contrast *Garcia Perez v. Santaella*, 364 F.3d 348, 354 (1st Cir. 2004) (addressing citizenship of college student). Factors disfavoring citizenship of college students in the state where they study do not typically apply to a PhD student, who is employed by his institution and is engaged in a longer program of study without a definite end date. A PhD student working for the University is more like an employee than a college student. Koppel Affidavit, ¶ 21. There is no definite end date for the PhD program, and it typically continues at least six years. Koppel Affidavit, ¶ 22. Even with respect to college students, the Court may determine that the state where they attend college is their domicile. *Coma v. De Cuebas*, 356 F.Supp.3d 198, 203 (D.P.R. 2019).

In addition to other factors, the "degree of the college student's financial independence is also a relevant factor, and some courts have held that it is the determinative factor." *Jiminez-Franceschini v. Bentley*, 867 F.Supp.2d 276, 280-281 (D.P.R. 2012). Here, Moses has been employed by MIT since August 2017. Koppel Affidavit, ¶ 20. Based on discussions with Moses, Koppel understands Moses is financially independent and derives substantially all of his income from his earnings at MIT. Koppel Affidavit, ¶ 20. In 2019, Moses repeatedly informed Koppel that he had no substantial income outside of his MIT earnings. Koppel Affidavit, ¶ 20.

Based on the totality of these objective factors, Moses is a citizen of Massachusetts, and therefore no diversity of citizenship exists. Accordingly, this Court has no jurisdiction over this action, and the motion for remand should be granted.

### IV.   Conclusion

As demonstrated above, the Notice of Removal was untimely, because it was filed more than thirty days after service of the summons and complaint. Remand is therefore required. In addition, Moses and Koppel are both citizens of Massachusetts, and thus Moses cannot establish diversity jurisdiction as the basis for removal to this Court. Accordingly, the Motion for Remand should be allowed.

WHEREFORE, Plaintiff James Koppel requests that Court enter an order:

a. Allowing the Motion for Remand;

b. Remanding this action to the Middlesex Superior Court; and

c. Awarding such other relief as the Court deems just.

        Respectfully submitted,

        James Koppel,
        By his attorneys,

        */s/ Ben N. Dunlap*

        Paul G. Boylan, BBO #052320
        Ben Dunlap, BBO #661648
        Freeman Mathis & Gary, LLP
        60 State Street, Suite 600
        Boston, Massachusetts 02109
        pboylan@fmglaw.com
        bdunlap@fmglaw.com
        Tel: (617) 963-5978

Dated:  September 1, 2020

## Certificate of Service

    I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

        */s/ Ben N. Dunlap*

        Paul G. Boylan