UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| JAMES KOPPEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-11479-LTS |
| | ) | |
| WILLIAM MOSES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

On August 5, 2020, William Moses, a domiciliary of Virginia and a graduate student at MIT, properly removed this defamation action by James Koppel, a Massachusetts resident. Moses filed his notice of removal less than 30 days after his counsel received service of the summons and complaint on July 17, 2020.

Plaintiff's motion to remand is based on two incorrect assertions: (1) that Moses was properly served on May 4, 2020, when a process server left a copy of the summons and complaint at Moses's vacant former graduate dormitory, which Moses had stopped leasing and had vacated two months earlier due to the COVID-19 pandemic, and (2) that Moses is really a domiciliary of Massachusetts, not of Virginia.

As explained below, neither contention has any factual or legal basis. The May 4 attempted service was ineffective because the summons and complaint was not left at Moses's "last and usual place of abode." Mass. R. Civ. P. 4. Further, Koppel, who bears the burden of proof, has failed to show that Moses changed his domicile from Virginia to Massachusetts. Accordingly, the motion to remand should be denied.

1

3543998

BACKGROUND

Defendant William Moses is a 24-year-old Virginian, and a graduate student at the

Massachusetts Institute of Technology. (Affidavit of William Moses in Support of Opposition to

Motion to Remand ("Second Moses Aff."), ¶¶ 2, 5). Plaintiff James Koppel is a resident of

Massachusetts. (Complaint, ¶ 1 (Ex. 3 to Notice of Removal, Doc. No. 1)).

Virginia has been William Moses's domicile since birth. (Second Moses Aff., ¶ 2).

Moses holds a Virginia driver's license. (*Id.*, ¶ 4 and Ex. 2). Moses has regularly voted in

Virginia elections since the year 2014, when he turned 18. (*Id.*, ¶ 3 and Ex. 1). Moses has filed

individual tax returns in Virginia in all years when he has had income, and nonresident

Massachusetts tax returns in years when he had Massachusetts income. (*Id.*, ¶ 7). Moses's credit

card bills, tax forms, brokerage and bank statements are all directed to his Virginia address. (*Id.* ¶

8).

During college and graduate school, Moses has lived in student housing at MIT when

physically present on campus. (Second Moses Aff., ¶ 5). He has regularly returned home to

Virginia for various amounts of time during the summers, for Thanksgiving, for winter break, as

well as several times throughout each school year. (*Id.*, ¶ 6). He does not have any post-

graduation commitment to remain in Massachusetts. (*Id.*, ¶ 20). Moses, who received an

undergraduate degree and a masters in 2017 after just three years of study, expects to complete

his doctorate by the end of 2021. (*Id.*).

This defamation case arises from an email Moses sent on March 2, 2020 to the members

of an MIT computing club about plaintiff James Koppel, a fellow MIT student. (*See* Complaint

(Ex. 3 to Notice of Removal, Doc. No. 1)). Around the same time, colleges and universities

around the country were in the process of shutting down or moving to remote learning platforms

due to the COVID-19 pandemic. On March 10, 2020, MIT president Rafael Reif sent an email to the MIT community announcing that classes for the week of March 16-20 would be cancelled, that undergraduates would need to leave campus immediately, and all "[g]raduate students who can work remotely and who can arrange another place to live away from campus are strongly encouraged to do so." (Affidavit of William Moses in Support of Motion to Set Aside Default, ("First Moses Aff."), ¶ 3 and Ex. A thereto).

As of the date of Pres. Reif's announcement, defendant William Moses was renting a unit at the Sidney Pacific Graduate Residence at MIT, a dormitory located at 70 Pacific St., #491B, Cambridge, Massachusetts. (First Moses Aff., ¶ 3). On March 13, 2020, Moses sent an email to MIT asking how he could terminate his lease. (Second Moses Aff., ¶ 19 and Ex. 4). MIT instructed Moses to submit a "Graduate Housing Termination Form," which he did. (*Id.*). After Moses did so, MIT emailed him to confirm the termination of his housing, and to instruct him that after his move-out date of March 13, "you will not have access to return to your housing assignment." (*Id.*). Another MIT email the same day informed Moses that after he turned in his keys, he would not have any further access to the residence hall. (Second Moses Aff., ¶ 19 and Ex. 5). Moses moved himself and his belongings out of the apartment on March 13, turned in his keys, and has not returned to the apartment or to Massachusetts, since that date. (*Id.* ¶ 19). Moses stopped paying rent to MIT for the apartment after he moved out. (*Id.*). On August 5, 2020, Moses submitted a form to MIT cancelling his option to lease Apt. 491B at Sidney Pacific for the 2020-2021 academic year. (*Id.* and Ex. 6).

On April 13, 2020, Koppel sued Moses for defamation in the Middlesex Superior Court. (Doc. No. 1, Notice of Removal, Ex. 3, Complaint). On May 4, 2020, a process server allegedly left a copy of the summons and complaint "posted at [the] door" of the Sidney Pacific dormitory,

3543998

which Moses had vacated two months before. (**Exhibit A**, hereto, Return of Service). The return of service states that another copy of the complaint was "mailed," presumably to the same address. (*Id.*). Moses, who was in Virginia as of May 4, did not receive any mailed copy of the summons and complaint, and did not obtain actual notice of this lawsuit until two months later. (Second Moses Aff., ¶ 21).

On July 6, 2020, Moses received a copy of a motion for entry of default judgment and a default order, which had been entered on June 26, 2020 by clerk of the Superior Court. (Second Moses Aff., ¶ 21; Doc. No. 1, Notice of Removal, Ex. 3 (notice of default)). Moses retained the undersigned counsel. On July 17, 2020, counsel for Moses spoke with counsel for the plaintiff. Moses's counsel noted the defective service, and agreed to accept service of process effective July 17. Plaintiff's counsel did not agree prior service was defective, but agreed to send copies of the summons and complaint to counsel for Moses that day. In a confirming email, Moses's counsel stated, "Dear Paul, Thanks for agreeing to send me a copy of the summons and complaint, and to deem them received as of today. You can send them to this email address." (Opposition to Motion to Remove Default, Doc. No. 12, Ex. 4). Plaintiff's counsel responded by email, "will do," and then addressed other matters. (*Id.*) He sent the summons and complaint to Moses's counsel later that day. (*Id.* Ex. 5). Counsel for Koppel never disputed that the summons and complaint would be deemed "received" as of July 17, 2020 until after Moses removed this action on August 5, 2020. (Doc. No. 1).

ARGUMENT

## I.    MOSES TIMELY REMOVED THIS ACTION.

Moses, through counsel, first received a copy of the summons and complaint from plaintiff's counsel on July 17, 2020. (Opp. to Mot. to Remove Default, Doc. No. 12, Exs. 4 and

4

5). Plaintiff's counsel agreed to deem the summons and complaint received as of that date. *Id.*

Moses removed this action on 19 days later, on August 5, 2020, well within the 30-day window

established by 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding

shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a

copy of the initial pleading setting forth the claim for relief upon which such action or

proceeding is based. . . ."; Notice of Removal, Doc. No. 1). Nonetheless, Koppel now argues that

the August 5 removal was untimely because Koppel's process server had left a copy of the

papers at Moses's vacant dormitory on May 4, two months after Moses terminated his lease and

moved back to Virginia with all his belongings due to the COVID-19 pandemic. The Court

should reject this unseemly argument.

The Supreme Court has held that "formal service must occur before the statutory period

begins to run" on the right to remove an action. *Frankston v. Denniston*, 376 F. Supp. 2d 35, 38–

39 (D. Mass. 2005), citing *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48

(1999). This case was originally filed in Massachusetts Superior Court, so "Massachusetts law

governs the issue regarding validity of service and process." *Id.*

Under the Massachusetts Rules of Civil Procedure, service may be made on an individual

within the Commonwealth "by delivering a copy of the summons and of the complaint to him

personally; or by leaving copies thereof at his last and usual place of abode." Mass. R. Civ. P.

4(d)(1). Here, Koppel asserts that Apt. 491B of the Sidney Pacific dormitory was somehow

Moses's "last and usual place of abode" on May 4, 2020, when Koppel's process server

3543998

allegedly left a copy of the summons and complaint "posted at [the] door" there,[1]

notwithstanding that Moses had moved out on March 13. (Second Moses Aff., Exs. 4-5).

Koppel is incorrect. After Moses terminated his lease by submitting a "housing

termination form," MIT informed Moses that after he moved out and returned his keys, he would

no longer have physical access to the apartment. (Second Moses Aff., ¶ 19 and Ex. 4, 5). Moses

did so on March 13, and has not returned to Massachusetts or to the dormitory since that date,

and he not used it has a residence since then. (*Id.*, ¶ 19). Accordingly, the dormitory was not

Moses's "last and usual place of abode" as of May 4, when Koppel attempted service. *Rogan v.*

*Liberty Mut. Ins. Co.,* 305 Mass. 186, 187 (1940) (no proper service of process where summons

and complaint left at Massachusetts address from which defendant had moved two months prior

to Maryland); *Konan v. Carroll,* 37 Mass. App. Ct. 225, 228–30 (1994) (default judgment

vacated for lack of proper service of process where defendants had not resided at address for

over four years). The attempted service was therefore ineffective, and the time to remove this

action did not begin to run.

Koppel argues that service should be deemed proper because as of March, Moses hoped

to return to living at Sidney Pacific in the fall. (Memorandum re Motion to Remand at 7). This

argument fails, because "in order to be considered the defendant's 'last and usual place of abode'

under Massachusetts law, there must be evidence that the defendant was continuing to use the

address as his home" at the time of service. *United States v. Tobins*, 483 F. Supp. 2d 68, 76 (D.

Mass. 2007). There is no such evidence here. Rather, Moses's sworn testimony and the

---

[1] It is not apparent from the return of service whether Koppel's process server posted the summons and complaint "at the door" of Apartment 491B, or at the main door of the residence hall. (Exhibit A). One may assume the residence hall was locked and not accessible to non-MIT personnel, so likely it was the latter. Not that it makes a difference either way, since Moses was long gone.

3543998

documents he has submitted all show that he terminated his lease and moved out on March 13, 2020, and he has not resumed leasing the apartment, or even returned to Massachusetts, since. (Second Moses Aff., ¶ 19 and Exs. 4-5). Moses was not using Apt. 491B of the Sidney Pacific dormitory "as his home" on May 4—indeed, he did not even have access to the building. (*Id.*)

Koppel lastly asserts that the "Superior Court already determined that service was valid" when the clerk administratively entered a default on June 29—apparently implying that this Court cannot now rule otherwise. (Memorandum in Support of Motion to Remand at 7). The state court clerk's entry of default does not prohibit this court from making a determination that the May 4 attempted service was ineffective. The one case Koppel cites in support of his assertion, *McEachern v. Inter-Country Adoption Bd. of the Republic of the Philippines*, 62 F. Supp. 3d 187, 191 (D. Mass. 2014), is inapposite because that court *itself* determined that service had been proper, and therefore agreed with the plaintiff that the notice of removal was untimely. *Id.* ("Having already determined that the defendant was properly served, the Court rejects the defendant's explanation for its untimely removal.") Regardless, the Superior Court here made no "determination" of proper service. Rather, the clerk entered an order of default based on a *pro forma* motion by Koppel—a motion that did not inform the court that Moses was an MIT graduate student from Virginia; that the address listed for service was an MIT dormitory; nor that Moses had moved out of the dormitory due to the COVID-19 pandemic two months before the attempted service. (Opposition to Motion to Remove Default, Ex. 2). Moses's removal on August 5 was timely.

3543998

II.    **KOPPEL HAS FAILED TO SHOW THAT MOSES CHANGED HIS DOMICILE FROM VIRGINIA TO MASSACHUSETTS.**

Koppel next argues that removal was improper because Moses is a domiciliary of Massachusetts, and therefore there is no diversity of citizenship. Koppel is incorrect.

"Out-of-state students generally have been viewed as temporary residents who are located in the state where their school is located only for the duration and for the purpose of their studies. Consequently, the principle has been well established that they have been presumed to lack the intention to remain in the state indefinitely that is required for the acquisition of a new domicile and to retain their prior, established domiciles while attending school." Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3619 (3d ed.); *see Garcia Perez v. Santaella*, 364 F.3d 348, 354 (1st Cir. 2004) (recognizing the "established principle that out-of-state college students are not domiciliaries of the state in which they go to school.") Courts have "consistently recognized" this presumption "because residence at college is chosen primarily for the short-term purpose of pursuing an education." *Hakkila v. Consolidated Edison Co. of New York, Inc.*, 745 F.Supp. 988, 990 (S.D.N.Y.1990); *Murphy v. Newport Waterfront Landing, Inc.*, 806 F.Supp. 322, 324 (D.R.I.1992) ("Since out-of-state students are often located in the state only for the duration of and for the purpose of their studies, they are generally presumed to lack the intention to remain in the state indefinitely").

A student may change his or her domicile to the state of the educational institution, but "[t]he party charging that a domicile has been changed has the burden of proof on the issue."[2]

---

[2] Koppel tries to flip the presumption on its head by asserting that Moses bears the burden of demonstrating that he changed his domicile from Massachusetts to Virginia. Not so. Moses's affidavit establishes his domicile has always been Virginia, and Koppel's conclusory assertion that he changed his domicile to Massachusetts when he started his Ph.D. program is without factual or legal support.

3543998

*Hamilton v. Accu-Tek*, 13 F. Supp. 2d 366, 369 (E.D.N.Y. 1998). "Factors that courts have looked to in determining a student's intent to change domicile include the issuing state of the student's driver's license, current residence, voter registration, past voting venues, location of bank accounts and personal property, membership in churches and other organizations, tax payments, and automobile registration." *Id.* Courts also look to "[d]eclarations of intent by the person whose domicile is in question," which "are given heavy, but not conclusive, weight." *Id.*

Koppel failed to sustain his burden of showing that Moses changed his domicile to Massachusetts. Koppel's "evidence" for this assertion consists entirely of his own affidavit about Moses's history and intentions. (Koppel Aff., Doc. No. 15). As Moses demonstrates in his affidavit, however, Koppel's statements about Moses are frequently inaccurate, largely owing to the fact that Koppel lacks personal knowledge of Moses's history and intentions. (Second Moses Aff. ¶¶ 10-18). Regardless, the affidavit does not demonstrate an intent by Moses to change his domicile to Massachusetts; at most, it shows that Moses has been physically present at MIT during some of the time that he has been enrolled there.

Moses's affidavit, by contrast, establishes that (1) he has voted regularly in Virginia since he turned 18 (Second Moses Aff., ¶ 3 and Ex. 1); (2) he maintains a Virginia driver's license (*id.*, ¶ 4 and Ex. 2); (3) he has never registered a car in Massachusetts (*id.*); (4) he receives his bank account statements, credit card statements, and tax forms in Virginia (*id.* ¶ 8); (5) he regularly returns home to Virginia during vacations and during other times in the year (*id.* ¶ 6); and (6) he has no intention or commitment to remain in Massachusetts after he receives his Ph.D., which he expects will occur by the end of 2021 (*id.* ¶ 20). Moses's affidavit, and the documents authenticated and attached thereto, establish that his presence in Massachusetts has been for the "short-term purpose of pursuing an education," and therefore he has not changed his domicile to

9

3543998

Massachusetts. *Hakkila*, 745 F.Supp. at 990; *Las Vistas Villas, S.A. v. Petersen*, 778 F. Supp. 1202, 1205 (M.D. Fla. 1991), aff'd sub nom. Las Vistas Villas v. Petersen, 13 F.3d 409 (11th Cir. 1994) (a student's interaction with state of university did not evince "an intent to change domicile, where a student has no postgraduation commitment to the state.")

Contrary to Koppel's argument, the presumption that an out-of-state student does not intend to change his domicile to the state of his institution applies to graduate students no less than to undergraduates. *Alexander v. Trustees of Bos. Univ.*, 584 F. Supp. 282, 283 (D. Mass. 1984), rev'd on other grounds, 766 F.2d 630 (1st Cir. 1985) (student at Boston University School of Theology); *Mas v. Perry*, 489 F.2d 1396, 1400 (5th Cir.1974) (graduate student's presence in Louisiana was only as a student without the requisite intention of remaining there); *Murphy v. Newport Waterfront Landing, Inc*., 806 F. Supp. 322, 324 (D.R.I. 1992). For example, in *Murphy*, the court held that a Massachusetts resident who attended law school in Nebraska was a Massachusetts domiciliary, where, as here, he "retained his Massachusetts driver's license, never registered his car in Nebraska, never registered to vote in Nebraska, never worked in Nebraska, and moved back to Massachusetts during the summers." (*Id.*).

Koppel asserts in his affidavit—without explanation—that Moses became an "employee" of MIT in August 2017. (Koppel Aff., ¶ 20). This statement is apparently based on the fact that Moses began his Ph.D. program in August 2017, and thus started receiving stipends for living expenses as a result. (Moses Aff., ¶ 13). From this, Koppel analogizes Moses to a person who moves to a different state permanently for work. (Memo in Support, Doc. No. 14, at 10).

Moses's affidavit, however, explains that he receives a living stipend from a fellowship with the U.S. Department of Energy in Washington, D.C., and a smaller, similar stipend from MIT. (Second Moses Aff., ¶ 13). The fact that Moses receives the bulk of his living expenses

10

3543998

from the U.S. Department of Energy does not make him a domiciliary of Washington, D.C., any more than his smaller MIT stipend makes Massachusetts his domicile. Moses is not considered an MIT staff member and has no "job" responsibilities independent of the requirements for obtaining his degree. (Second Moses Aff., ¶ 13). Koppel asserts that a Ph.D. student is "more like an employee than a college student," but he cites no authority for this assertion. (Memo in Support, Doc. No. 14 at 10). Whether or not an institution pays for living expenses of a Ph.D. student says nothing about the student's intended domicile. Indeed, the Court may take judicial notice that Ph.D. students frequently are physically present at their graduate institutions for only a few years, and then research and write their dissertations elsewhere.

Moses has pursued his studies in Massachusetts, but has retained his Virginia domicile at all times. There is complete diversity of citizenship, and therefore removal was proper.

CONCLUSION

For the foregoing reasons, the motion to remand should be denied.

Respectfully Submitted,

WILLIAM MOSES,

By his attorneys,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO # 647438)
jpyle@princelobel.com
Michael J. Lambert (BBO # 704134)
mlambert@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

Dated: September 22, 2020

11

3543998

## Certificate of Service

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle

3543998