UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES KOPPEL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 20-11479-LTS |
| WILLIAM MOSES, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON PLAINTIFF'S MOTION TO
REMAND (DOC. NO. 13), DEFENDANT'S MOTION TO SET ASIDE
DEFAULT (DOC. NO. 5), AND DEFENDANT'S MOTION TO DISMISS (DOC. NO. 6)

October 27, 2020

SOROKIN, J.

This action for defamation and associated torts was removed from Massachusetts

Superior Court by Defendant William Moses on August 5, 2020 after an order of default had

been entered against him. Before the Court are Plaintiff James Koppel's Motion to Remand

(Doc. No. 13), Moses's Motion to Set Aside Default (Doc. No. 5), and Moses's Motion to

Dismiss (Doc. No. 6). For the reasons which follow, Koppel's Motion to Remand is DENIED,

Moses's Motion to Set Aside Default is ALLOWED, and Moses's Motion to Dismiss is

ALLOWED IN PART and DENIED IN PART. Specifically, Moses's Motion to Dismiss is

DENIED as to Count I and ALLOWED as to the remaining counts.

## I.   KOPPEL'S MOTION TO REMAND

The Court must first demine whether it has jurisdiction to hear this case. If there is

jurisdiction, it must be through removal of the underlying state action to this Court. Moses

removed under 28 U.S.C. § 1441 which, subject to certain conditions, allows the removal of state

court actions over which this Court may exercise subject-matter jurisdiction. Koppel challenges the removal on two grounds, arguing (1) that removal was untimely and (2) that this Court has no subject-matter jurisdiction to hear his case.

"On a motion for remand, the burden of proving the propriety of removal rests on the party who removed." Societa Anonima Lucchese Olii E. Vini v. Catania Spagna Corp., 440 F. Supp. 461, 464 (D. Mass. 1977) (citation omitted). Moses thus bears the burden of demonstrating both timeliness and subject-matter jurisdiction.

A.      Timeliness of Removal

28 U.S.C. § 1446 allows a defendant to remove a state court action to federal court within thirty days of receipt of service. See Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348–49 (1999). Notice of removal was filed on August 5, 2020. Doc. No. 1. Moses argues he first received the summons and complaint on July 17, 2020 which, if true, would make his removal timely. Doc. No. 20 at 1. Koppel responds that Moses was first served on May 4, 2020 and therefore missed the deadline to remove by several months. Doc. No. 14 at 2. There are no other dates on which Moses might have been served. To decide whether removal was timely, the Court must therefore determine whether Moses was properly served on May 4th of this year.

These are the undisputed facts. Moses is a graduate student at the Massachusetts Institute of Technology (MIT). Doc. No. 20-2 ¶ 5. He took up residence in Apartment 491B of MIT's Sidney Pacific dormitory in Cambridge, Massachusetts some time in 2017. Id. ¶ 15. In early March of this year, MIT responded to the developing COVID-19 pandemic by announcing that it was cancelling classes and encouraging all graduate students to arrange off-campus accommodations. Id. at 25. Three days later, Moses sent the following email to MIT:

> I've cleared out my apartment (491 B) in Sidney Pacific and am planning on leaving tomorrow evening. I have a continuing lease,[1] and I'd like to return to Sidney Pacific once this is all over. How should I terminate my lease / fill out the forms on the housing website?

Id. at 22.

In response to this email, Moses was given a "Graduate Housing Termination Form." Id. ¶ 19. He was told that once he completed and submitted this form, and returned his keys, his rent obligations for the year would end but that he could renew his lease on Apartment 491B at some point before the next academic year. Id. Moses completed the form and returned his keys on March 13, 2020, and thereafter returned to Virginia to live with his parents. Id. He has not returned to the apartment since. Id. The last rental payment he made for Apartment 491B was for the month of March and this payment was partly refunded by MIT after Moses moved out early. Id.

Koppel filed this lawsuit in Massachusetts Superior Court on April 13, 2020. Doc. No. 1-3. On May 4, 2020, two months after Moses moved back to Virginia, a process server hired by Koppel left a copy of the summons and complaint at the door of 70 Pacific St, Apartment 491B.[2] Doc. No. 14-1. The return also states that the summons and complaint were mailed but does not specify to where they were mailed.[3] Moses, who was in Virginia at the time, has submitted an affidavit stating that he did not receive a copy of the summons

---

[1] What Moses meant by his reference to a "continuing lease" is unclear on this record but, in any event, not dispositive—as explained below.

[2] Moses speculates that the complaint and summons may have been left at the front door of the dormitory building rather than at the door of the apartment itself. Doc. No. 20 at 4. But the return specifies the documents were left at the door of the apartment and Moses has not offered evidence to contradict this.

[3] Neither Massachusetts nor Virginia considers service by mail alone to be effective. See Mass. R. Civ. P. 4; Va. Code §§ 8.01-293, 329.

or complaint at his new address. Doc. No. 20-2 ¶ 21. Three weeks later, Koppel moved for

Entry of Default. Doc. No. 1-3 at 22.

Moses alleges he had no knowledge of this lawsuit until July 6, 2020 when he

received by mail a copy of a default order entered by the Clerk of the Massachusetts

Superior Court. Doc. No. 20-2 ¶ 21. Moses then retained counsel. On July 17, 2020,

Moses's counsel reached out to counsel for Koppel, who agreed to provide a copy of the

complaint and summons by email. Doc. No. 20 at 4. Moses then removed the action to this

Court in a timely fashion, if measured from the date Moses's counsel accepted service by

email. Doc. No. 1. The only question is whether Moses was properly served two months

earlier on May 4th, when a process server left a copy of the summons and complaint at the

door of Apartment 491B.

This case was originally filed in Massachusetts Superior Court, so Massachusetts

law governs the validity of service. See Frankston v. Denniston, 376 F. Supp. 2d 35, 39 (D.

Mass. 2005) (citing In re Pharm. Indus. Average Wholesale Price Litig., 307 F. Supp. 2d

190, 195 (D. Mass 2004)). Under the Massachusetts Rules of Civil Procedure, service may

be made on an individual within the Commonwealth "by delivering a copy of the summons

and of the complaint to him personally; or by leaving copies thereof at his last and usual

place of abode." Mass. R. Civ. P. 4(d)(1).

"Massachusetts courts considering whether service was made at an individual's 'last and

usual place of abode' have found service to be improper where the defendant no longer resided at

the address to which the summons and complaint were delivered." United States v. Tobins, 483

F. Supp. 2d 68, 75–76 (D. Mass. 2007); see also Konan v. Carroll, 638 N.E. 2d 936, 938–39

(Mass. Apt. Ct. 1994) (service improper when defendant no longer lived at address).

It is undisputed that Moses was not residing in Apartment 491B on May 4th, the alleged date of service. Moses had moved out of the apartment months earlier, had stopped paying rent on the apartment, and had surrendered his keys to the apartment. Doc. No. 20-2 ¶ 15. Koppel has offered no evidence to the contrary. Thus, by all accounts, Moses stopped residing in Apartment 491B on March 13, 2020, well before service was attempted on May 4th.

These facts are strikingly similar to the facts of Rogan v. Liberty Mut. Ins. Co., 25 N.E.2d 188 (Mass. 1940). There, as here, the plaintiff argued service was performed by leaving process at the defendant's "last and usual place of abode" in Massachusetts. Id. at 188. And there, as here, the defendant no longer lived at that address at the time of the alleged service and, indeed, had moved to another state two months earlier. Id. The Supreme Judicial Court concluded service was invalid in Rogan and this Court holds the same here. Moses was not living in Apartment 491B on May 4, 2020, that apartment was not his "last and usual abode," and the attempted service on that date was therefore invalid.

Koppel argues the contrary. To him, service was effective because Moses only temporarily abandoned Apartment 491B, as evidenced by his assertion that he maintained a "continuing lease" on the property. Doc. No. 14 at 7 (quoting Doc. No. 20-2 at 22). As noted above, the record is unclear on what Moses meant by his reference to a "continuing lease." See supra n.1. The facts, however, foreclose any inference that Moses maintained a current possessory interest in the property, given that he had moved out, surrendered his keys, and stopped paying rent. Doc. No. 20-2 ¶ 15. But even if Moses's "continuing lease" granted him some interest in Apartment 491B on May 4th, it would not matter. It is clear he was not residing in the apartment at the time that service was attempted and a mere interest in a property is not enough to make it one's last and usual abode. See Farley v. Sprague, 372 N.E. 2d 1298, 1299,

1301–02 (Mass. 1978) (holding that property owned, but not lived in, by defendant was not his last and usual abode for purposes of service under Mass. R. Civ. P. 4(d)(1)). Moses's "continuing lease" on the property, whatever its nature, is therefore beside the point.

Koppel's final argument is that entry of default by the Massachusetts Superior Court was a determination that service was proper, and he suggests that this determination is somehow binding on this Court. See Doc. No. 12 at 3. Not so. The adequacy of service was not decided by the Superior Court; entry of default is a pro forma administrative notation entered by the Clerk of Court without litigation or fact finding. Doc. No. 1. Federal courts commonly set aside such entries in cases removed from state court when service was invalid. See, e.g., Wallace v. Interpublic Grp. of Cos., Inc., 09-CV-11510-NGE, 2009 WL 1856543, at *2 (E.D. Mich. June 29, 2009) (rejecting a similar argument).

The May 4th attempted service on Apartment 491B was invalid. Moses was first served on July 17, 2020, meaning his removal to this Court, less than thirty days later, was timely.

B.      Subject-Matter Jurisdiction

Because the Complaint alleges only state law claims, this Court has jurisdiction, if at all, under 28 U.S.C. § 1332, which grants federal district courts subject-jurisdiction over actions between citizens of different states when the amount in controversy exceeds $75,000. Koppel is a citizen of Massachusetts. Doc. No. 14 at 12. Moses was born and raised in the Commonwealth of Virginia but, until March of this year, has resided in Massachusetts since 2014. Doc. No. 20-2 ¶¶ 2, 5. The amount in controversy exceeds $75,000. Doc. No. 1-3 ¶ 75. Thus, this Court's subject-matter jurisdiction turns on whether Moses is a citizen of Virginia or whether the past six years in Massachusetts have turned him into a Bay Stater.

The facts are as follows. Moses was born in Virginia and claims his parents' home as his continuing residence in that state. Id. ¶ 2. He moved to Massachusetts in 2014 to attend MIT,

6

first as an undergraduate and now as a graduate student. Id. ¶ 5. While resident in Massachusetts,

Moses remained registered to vote in Virginia and has voted regularly in Virginia since turning

eighteen. Id. ¶ 3. He holds a Virginian driver's license. Id. ¶ 4. He files tax returns in Virginia

and has filed a nonresident tax return with Massachusetts whenever he has had Massachusetts

income. Id. ¶ 7. His credit card bills, bank and brokerage account statements, and tax forms are

sent to his Virginian address. Id. ¶ 8. As a graduate student, he receives income from stipends for

living expenses from MIT as well as from a fellowship with the U.S. Department of Energy. Id. ¶

13. Moses often returns home to visit his parents during the holidays but has also spent his

holidays in other parts of the world while gaining work experience as an intern. Id. ¶ 14.

A person is a citizen of the state in which they are domiciled. Lundquist v. Precision

Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). A person's domicile is "the place where he

has his true, fixed home and principal establishment, and to which, whenever he is absent, he has

the intention of returning." Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir.

1988) (citation omitted). A person becomes domiciled in a new state through (1) physical

presence in that state and (2) an intent to remain there indefinitely. Id. There is no doubt Moses

was physically present in Massachusetts for quite some time. The issue is whether he ever

intended to remain here.

The First Circuit has recognized several factors which a Court may consider in

determining where a person intends to reside. See Bank One, Texas, N.A. v. Montle, 964 F.2d

48, 50 (1st Cir.1992) (outlining the "Bank One factors"). These factors include "the place where

civil and political rights are exercised, taxes paid, real and personal property (such as furniture

and automobiles) located, driver's and other licenses obtained, bank accounts maintained,

location of club and church membership and places of business or employment." Id.

Additionally, the First Circuit has indicated that "the place a person is registered to vote is a 'weighty' factor in determining domicile." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 32 (1st Cir. 2008) (quoting Lundquist, 946 F.2d at 12).

Applying those factors to this case, it is clear that Moses is a citizen of Virginia. He votes in Virginia, pays taxes in Virginia, has a Virginian driver's license, and receives important documents such as bank statements at his Virginian address.

It is true Moses has built a life for himself here in Massachusetts by renting property, receiving a graduate student stipend from MIT, and becoming a member of at least one school-sponsored club. Doc. No. 20-2 ¶¶ 13, 15; Doc. No. 1-3 ¶ 17. But these activities are consistent with Moses's status as a student at MIT. Absent "objective evidence beyond simply residing in the school state," courts will ordinarily presume that out-of-state students do not intend to remain after their studies. Murphy v. Newport Waterfront Landing, Inc., 806 F. Supp. 322, 324 (D.R.I. 1992) (citation omitted). The ties Moses that has to Massachusetts are in keeping with his status as an out-of-state student and do not indicate an intent to remain past graduation.

Koppel argues the presumption of temporary residence is inapplicable to graduate students, such as Moses, who are "more like an employee than a college student." Doc. No. 14 at 4. But those Courts to have considered the domicile of out-of-state graduate students have concluded that, like undergraduate students, their mere physical presence during their studies, without more, is not indicative of an intent to remain. See Mas v. Perry, 489 F.2d 1396, 1400 (5th Cir. 1974) (graduate student's presence in Louisiana did not establish intent to remain); Alexander v. Trs. of Bos. Univ., 584 F. Supp. 282, 283 (D. Mass. 1984) (graduate student's presence in Massachusetts did not establish intent to remain), rev'd on other grounds, 766 F.2d 630 (1st Cir. 1985).

Narrowing his argument, Koppel insists that Moses has established an intent to remain in Massachusetts indefinitely because MIT's PhD program does not have a definite end date. Doc. No. 14 at 11. But this is merely a play on words. A PhD program is a definite commitment, even if its precise end date may be difficult to forecast. Moses's intent to remain until the completion of his program of study falls short of the open-endedness necessary to establish domicile.

Moses has lived in Massachusetts for six years. This is a significant period of physical presence. But physical presence without an intent remain is insufficient to establish domicile in a new state. See White v. All Am. Cable & Radio, Inc., 642 F. Supp. 69, 72 (D.P.R. 1986) ("[B]oth elements must exist simultaneously to establish domicile; one element alone is insufficient."). The Court concludes that Moses never established domicile in Massachusetts and therefore remains a citizen of Virginia. Diversity of citizenship exists between the parties and, consequently, the Court may exercise subject-matter jurisdiction.

Removal was timely and the Court has subject-matter jurisdiction over the case. Koppel's Motion to Remand (Doc. No. 13) is DENIED.

## II.   **MOSES'S MOTION TO SET ASIDE DEFAULT**

Federal Rule of Civil Procedure 55(c) provides that a court may set aside an entry of default for "good cause."  Fed. R. Civ. P. 55(c). Although there is "no mechanical formula for determining whether good cause exists," courts will typically ask "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented." Indigo Am., Inc. v. Big Impressions, LLC, 597 F.3d 1, 3 (1st Cir. 2010) (citing KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003)).

Good cause exists. Moses did not appear in this case because he did not have notice of this case. See supra (concluding Moses was not served until after entry of default). His absence

can hardly be described as willful. Nor does setting aside the entry of default prejudice Koppel. "[S]imply requiring a party to litigate the action does not amount to prejudice," and there is no indication that memories of witnesses "have dimmed beyond refreshment." <u>Wilson v. Town of Fairhaven</u>, No. 18-CV-11099-PBS, 2019 WL 1757780, at *29 (D. Mass. Mar. 4, 2019) (quoting <u>Coon v. Grenier</u>, 867 F.2d 73, 77 (1st Cir. 1989)). Finally, as discussed below, Moses has presented a meritorious defense to Koppel's claims.

Koppel's sole argument against setting aside default is that service was proper and the Court lacks jurisdiction to disturb the state court's entry of default. Doc. No. 12. The Court has already considered and discarded these arguments. <u>See</u> <u>supra</u>. Moses's Motion to Set Aside Default (Doc. No. 5) is ALLOWED.

## III.   <u>MOSES'S MOTION TO DISMISS</u>

The Court now turns to Moses's Motion to Dismiss (Doc. No. 6). Koppel's Complaint raises the following claims: Defamation (Count I), Interference with Advantageous Relationships (Count II), Invasion of Privacy, Including False Disclosure of Private Facts (Count III), and Civil Conspiracy (Count IV). Doc. No. 3-1. Moses has moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. No. 6.

To survive a Rule 12(b)(6) motion, a complaint must contain enough factual assertions "to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). As required at this early stage of the litigation, the Court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. <u>Parker v. Hurley</u>, 514 F.3d 87, 90 (1st. Cir. 2008). The Court must dismiss each challenged claim unless it is supported

by alleged facts that together "raise a right to relief above the speculative level." Twombly, 550

U.S. at 555. The Court considers each claim in turn.

A.      Count I: Defamation

The tort of defamation is an amalgam of state common law and federal constitutional

law. On the state side, a plaintiff alleging written defamation (libel) in Massachusetts "must

ordinarily establish five elements: (1) that the defendant published a written statement; (2) of and

concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused

economic loss, or is actionable without proof of economic loss." Noonan v. Staples, Inc., 556

F.3d 20, 25 (1st Cir. 2009). A written statement is defamatory when, "in the circumstances, the

writing discredits the plaintiff in the minds of any considerable and respectable class of the

community." Albright v. Morton, 321 F. Supp. 2d 130, 135 (D. Mass. 2004) (quoting Smith v.

Suburban Rest., Inc., 373 N.E.2d 215, 217 (Mass. 1978)), aff'd sub nom. Amrak Prods., Inc. v.

Morton, 410 F.3d 69 (1st Cir. 2005). At this early stage, the Court is not called on to determine

whether a statement is defamatory, but need only "answer the 'threshold question' of 'whether

[the] communication is reasonably susceptible of a defamatory meaning.'" Stanton v. Metro

Corp., 438 F.3d 119, 124 (1st Cir. 2006) (alteration in original) (quoting Amrak Prods., 410 F.3d

at 72).

"On the constitutional side, the Supreme Court—reading the First Amendment (made

binding on the states through the Fourteenth)—'has hedged about defamation suits' with lots of

'safeguards designed to protect a vigorous market in ideas and opinions.'" McKee v. Cosby, 236

F. Supp. 3d 427, 438 (D. Mass. 2017) (quoting Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc.,

804 F.3d 59, 65 (1st Cir. 2015)), aff'd, 874 F.3d 54 (1st Cir. 2017). Of relevance here is the

principle that "a statement normally is not actionable unless it contains an objectively verifiable

assertion." Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir. 1997).

Consequently, "vague language that is subject to multiple interpretations is generally not

actionable" as defamation. Ayyadurai v. Floor64, Inc., 270 F. Supp. 3d 343, 355 (D. Mass. 2017)

(citing Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000)). "Whether a statement

is a verifiable fact . . . can be decided by the court as a matter of law." Piccone v. Bartels, 785

F.3d 766, 772 (1st Cir. 2015).

Although Koppel complains of a number of statements in Moses's March 2nd email, the

Court need not consider them all because at least one statement, reproduced below, is sufficient

to allow Koppel's defamation claim to proceed. That statement reads:

> Many [club members] shared stories about how [Koppel] had made them deeply
> uncomfortable, which continued in spite of requests to stop. Given the severity,
> consistency, and widespread nature of his interactions, we have requested that
> [Koppel] refrain from participating in [the club] any more (interacting in [club]
> spaces, participating in [club] projects & events, etc).

Doc. No. 8-1.[4]

Contrary to Moses's arguments, this statement "is reasonably susceptible of a defamatory

meaning." Stanton, 438 F.3d at 124. Read in context alongside the remainder of the email, the

statement that Koppel engaged in "sever[e], consisten[t], and widespread" conduct which made

others report that they were "deeply uncomfortable," Doc. No. 8-1, can reasonably be understood

to bear at least one defamatory implication: that Koppel engaged in some form of sexual

misconduct and that a number of club members complained as a result. Such an implication is of

---

[4] Although Koppel's Complaint does not include the full text of the March 2nd email, the Court
may nonetheless consider, on a Motion to Dismiss, the entirety of a publication that is the subject
of a defamation claim. See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988).

the sort which could well discredit Koppel "in the minds of any considerable and respectable

class of the community." Albright, 321 F. Supp. 2d at 135.[5]

Moses argues that this assertion is too vague to be considered a statement of fact and is

therefore protected by the First Amendment. But the implication that Koppel engaged in sexual

misconduct about which other members complained is "capable of being proved true or false,"

Pan Am. Sys. 804 F.3d at 65, in the sense that one can verify whether Koppel engaged in the

suggested misconduct and whether complaints resulted.[6] Moses's emphasis on the vagueness of

the phrase "deeply uncomfortable" is therefore misplaced because it is these falsifiable

assertions, rather than the subjective feelings of the other club members, which form the "gist" or

"sting" of Moses's statement. Of course, Moses is correct that the statement is somewhat unclear

as to the nature Koppel's conduct but, given the reasonable inferences a reader could draw, this

ambiguity is insufficient to bring the statement within the constitutional safe harbor for "loose,

figurative language that no reasonable person would believe presented facts." Levinsky's, 127

F.3d at 128. The Court therefore declines to dismiss this Count of Koppel's Complaint.

B.       Count II: Interference with Advantageous Relationships

A claim for tortious interference with advantageous business relationships, according to

Massachusetts state law, requires four elements: (1) the plaintiff was involved in a business

relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3)

---

[5] Moses also argues that Koppel's Complaint fails to allege the falsity of the March 2nd
statements. Doc. No. 8 at 16. The Court disagrees; Koppel's Complaint alleges falsity with
sufficient particularity. See, e.g., Doc. No. 1-3 ¶¶ 23, 26, 35, 37, 41, 67.
[6] This point distinguishes this case from Ayyadurai, which dealt with a specific factual assertion
(the putative creator of email was a "fake") which could never be proven true or false. See 270 F.
Supp. 3d at 358–59 (explaining "the question of who invented e-mail is not subject to one, and
only one, 'true answer'" due to contested meaning of "email"). Here, the factual assertions
implied by the March 2nd communication may be verified as true or untrue, unlike the ultimately
subjective claim at issue in Ayyadurai.

the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result. See Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 245 (Mass. 2004).

Koppel's claim falters at the very first hurdle because his Complaint fails to allege he was involved in, or soon to be involved in, any business relationship. See Doc. No. 1-3. Koppel protests, arguing that there "is no requirement that specific advantageous or future contractual relations be identified in the pleading." Doc. No. 17 at 15–16 (citing Ayyadurai, 270 F. Supp. 3d at 369). This need not delay us. It is well established that plaintiffs "may not speculate about future business relationships when alleging this tort; instead, only a probable future business relationship anticipating a reasonable expectancy of financial benefit suffices." Singh v. Blue Cross/Blue Shield of Massachusetts, Inc., 308 F.3d 25, 48 (1st Cir. 2002) (citation and internal quotation marks omitted). Ayyadurai, on which Koppel relies, is not to the contrary. Chief Judge Saylor's thoughtful opinion in that case concerns itself with the third prong of the interference inquiry—the "improper intent" element—and does not pause to discuss the level of specificity necessary to satisfy the first prong. See 270 F. Supp. 3d at 369 (granting dismissal because, "at a minimum, the complaint fails at the third prong").

Koppel next argues that his Complaint does, in fact, allege sufficiently specific relationships, pointing to allegations that he is "an extremely strong candidate for high[-]level positions and opportunities" in the future, Doc. No. 17 at 16 (quoting Doc. No. 1-3 ¶ 5), and that Moses "employ[ed] wrongful and improper means [to damage those] present and future advantageous relations," id. (quoting Doc. No. 1-3 ¶ 80). But the allegation that Koppel was a strong candidate for future employment is speculative and fails to identify any "probable" future relationship. Singh, 308 F.3d at 48. And the allegation that Moses damaged "present and future

advantageous relations" merely restates an element of the tort and must be discounted as

conclusory. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)

(noting a court must, in deciding a motion to dismiss for failure to state a claim, "ignore

statements in the complaint that simply offer legal labels and conclusions or merely rehash

cause-of-action elements"). In the absence of any allegations of a current or probable future

business relationship, Koppel's claim for tortious interference fails.

    C.    Count III: Invasion of Privacy

Massachusetts recognizes a statutory cause of action for "'unreasonable, substantial or

serious' interference with a person's privacy." Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d

667, 681 (Mass. 2005) (quoting M.G.L. ch. 214, § 1B).[7] "[F]or a plaintiff to succeed on an

invasion of privacy claim, he must prove not only that the defendant unreasonably, substantially

and seriously interfered with his privacy by disclosing facts of highly personal or intimate nature,

but also that it had no legitimate reason for doing so." Spencer v. Roche, 755 F. Supp. 2d 250,

271–72 (D. Mass. 2010).

---

[7] Koppel's Complaint includes a further allegation that Moses violated Koppel's "right to be free from public disclosure of personal facts in a false light." Doc. No. 1-3 ¶ 83. The Massachusetts Supreme Judicial Court has studiously refused to recognize the false light invasion of privacy tort. See Ayash, 822 N.E.2d at 682 n.16 ("We have not adopted an interpretation of [M.G.L. ch. 214,] § 1B, that would give rise to claim of false light invasion of privacy claim."); see also Elm Med. Lab., Inc. v. RKO Gen., Inc., 532 N.E.2d 675, 681 (Mass. 1989) ("This court has not recognized that tort and does not choose to do so now."), abrogated on other grounds by United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20 (Mass. 1990); Fox Tree v. Harte-Hanks Commc'ns, Inc., 501 N.E.2d 519, 520 (Mass. 1986) ("[W]e do not reach the plaintiff's contention that [M.G.L. ch. 214,] § 1B, establishes the tort of false light invasion of privacy."). A federal court sitting in diversity and applying state law must "take care not to extend state law beyond its well-marked boundaries." Doe v. Trs. of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019). The Court therefore "take[s] state law as it finds it," Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (quoting Plummer v. Abbott Labs., 568 F. Supp. 920, 927 (D.R.I. 1983)), and concludes that Koppel's allegation of false light does not, under current Massachusetts law, state a claim upon which relief can be granted.

Koppel's claim must be dismissed because his Complaint includes no allegations that Moses disclosed any private fact. See Doc. No. 1-3 ¶¶ 32–44 (describing Moses's email). To be sure, Koppel argues the contrary. He claims Moses's "email refer[red] to the fact that [Koppel], like millions of other persons, works hard to overcome a disability." Doc. No. 17 at 16. But Koppel is mistaken—the email makes no reference, either explicitly or implicitly, to Koppel's disability. See Doc. No. 1-3 ¶¶ 32–44. Koppel nonetheless insists that Moses's email "drew attention" to his disability because a reader could infer that the email was sent because of his disability. Doc. No. 17 at 17. But a reader who drew that inference could only have done so if they already had knowledge of Koppel's disability. Thus, even granting Koppel his premise, Moses's email did not disclose any information not already known to the reader. Koppel simply has not alleged the disclosure of any private facts and so his invasion of privacy claim must be dismissed.

D.       Count IV: Civil Conspiracy

"Under Massachusetts law, either of two possible causes of action may be called 'civil conspiracy.'" Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994). The first is "more akin to a theory of common law joint liability in tort" and is "invoked to support liability of one person for a tort committed by another." Id. (citations omitted). Koppel's Complaint names only Moses as a defendant and only describes acts Moses himself committed. The Court therefore does not understand Koppel to be stating a claim for vicarious or joint liability.[8]

---

[8] Nothing in this ruling prohibits Koppel from moving to amend his Complaint to include claims against current nonparties at a later date.

The second cause of action is for the stand-alone tort for civil conspiracy, which has also been called "true conspiracy." Ward v. Auerbach, No. 16-CV-12543-FDS, 2017 WL 2724938, at *12 (D. Mass. June 23, 2017). This is a "very limited cause of action." Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985). To state a claim of civil conspiracy, a "plaintiff must allege that defendants, [1] acting in unison, had [2] 'some peculiar power of coercion' over plaintiff that they would not have had if acting independently." Id. (quoting Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939)). To establish the second element of this claim, Koppel must show that the "combined acts of the defendants brought about a harm that no one of them could have brought about acting alone." Davison v. Town of Sandwich, No. 15-CV-11889-FDS, 2017 WL 1115154, at *19 (D. Mass. Mar. 24, 2017).

Koppel notes that Moses signed the March 2, 2020 email as "The Chair" and appears to have been speaking on behalf of the club's Executive Committee. Doc. No. 17 at 18. From this, Koppel infers that the allegedly damaging communications were a collective act and suggests that this "collective denunciation makes the damage [to his reputation resulting from the email] far worse." Id. But it is not enough for Koppel to show that the harm was magnified by collective action, if indeed it was. Koppel must show that the alleged harm—the alleged damage to his reputation—required "force of numbers" to achieve. Davison, 2017 WL 1115154, at *19 (citation omitted). This he cannot do. The same harm, even if on a somewhat lesser scale, could have been accomplished by Moses acting alone. Koppel has therefore failed to establish the second element of his claim for civil conspiracy and this Count must also be dismissed.

## IV.   CONCLUSION

For these reasons, the Court DENIES Koppel's Motion to Remand (Doc. No. 13), ALLOWS Moses's Motion to Set Aside Default (Doc. No. 5), and ALLOWS IN PART and

DENIES IN PART Moses's Motion to Dismiss (Doc. No. 6). Specifically, the Court DENIES

dismissal of Count I and ALLOWS dismissal of the remaining Counts. The Clerk shall schedule

a Rule 16 Conference.


SO ORDERED.


 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge