## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| James Koppel, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-11479-LTS |
| ) | |
| William Moses, ) | |
| ) | |
| Defendant. ) | |

### Opposition by Plaintiff to April 2, 2020 Motion
### by Defendant to Compel Disclosure of Documents

Plaintiff opposes the motion by the defendant served under seal on April 2 seeking to compel disclosure of documents consisting primarily of five years of private emails between the plaintiff and a former girlfriend ("the former girlfriend"), plus private emails by the plaintiff to trusted friends if they privately mention the former girlfriend (together, "the private emails"). The two were in a romantic relationship in 2015. They continued to communicate for the next five years by means of private emails.

### Background

The defendant in late February 2020 orchestrated a contrived secret discussion to elicit negative comments about the plaintiff, an unprecedented and improper

procedure. He commenced the "discussion" on February 26, 2020 and received almost nothing in response. Motion, Exhibit 2, a total of six folio pages. The response was not "immediate, voluminous or unanimously negative." Mem. p. 3. If it had been, this defendant would not be so desperately trying to use discovery to find private information entirely unrelated to his defamations. See Motion, Exhibit 3, an email written in October 2016 by the former girlfriend.

That email, Exhibit 3, precedes the defamations by four years. It was not one of the putative "many" reports of "severe, consistent and widespread" misconduct by this plaintiff which "continued in spite of requests to stop." Discovery shows that there were no such reports, none, ever. The worst disclosed first-hand report to Moses prior to his email on February 27, 2020 was a report that the reporter thought the plaintiff "subtly off putting."

Plaintiff Moses, with no support for his defamations, has turned g to discovery focused on a 2016 document created by the former girlfriend but never available to Moses at the time of the defamations. Exhibit 3 shows that it was created in 2016. It was subsequently forwarded three times (2018, 2020, 2021) so that a friend of defendant could finally deliver it to him very recently, in February 2021. The very tardy receipt of that email by the plaintiff does nothing to show the truth of his defamations.

A. The private emails between plaintiff and the former girlfriend or referring to her.

The primary target of the Motion is a body of hundreds of private emails that were exchanged between the defendant and the former girlfriend over a 5-year period, plus private emails to one or more friends discussing the former girlfriend. See Motion pages 13-18. All of those were private, sent to no one else.

The requests which seek the private emails are 41, 49, 50, 51, 53, 56, 57, and 59. ("the private email requests"). The Plaintiff's second document requests, Motion Exhibit 7 were propounded in February 2021. The Second Requests are requests 47-61. They focus heavily on the former girlfriend.[1]

The argument in the Motion and the Memorandum on all points is that discovery is broad and that the defendant is entitled to discovery as to "the central issues in this case" which are "the truth of the defamatory statements and plaintiff's reputation." Motion to Compel, p. 1, Mem. 8, 12. Reputation includes character. Mem. 8.

The problem with this argument is that it has no limits. The Motion impliedly argues there are no limits to what the defendant can seek in the name of "substantial truth" or "reputation" or both. That is too broad and makes no relevant distinctions,

---

[1] Initial request 16 sought all communications as to the former girlfriend but is not a subject of this Motion. Request 16 but is identical to 49. Motion Exhibit 6, request 16 pages 6-7 and objections there.

resulting in a the view that nothing in any way relating to the plaintiff or involving his communications is off- limits. The defendant is far more accurate at other points when the defendant argues that reputational evidence is based on "the propriety of conduct," that is, based on <u>acts</u> by the plaintiff. Mem. 14. Plaintiff agrees.

Plaintiff to that end has disclosed more than 1,000 documents referring to his actions and often to his public speech including, for example, documents as to minor issue in 2015 involving how the plaintiff picked up his groceries at his MIT housing.

Defendant asserts as to the former girlfriend that because of here 216 email  ( Exhibit 3 ) recently obtained by him. he is entitled to compel disclosure of all of the plaintiff's private communications with the former girlfriend from January 1, 2016 until the present and <u>also</u> to all emails or other communications which refer to the former girlfriend . Memorandum 13-18. .[2] These are the topics of requests 49, 50, 51, 53, and 54.[3] The request, if allowed will include, for example an email sent by

---

[2] Plaintiff here for simplicity refers to emails and communications interchangeably. The private emails by the plaintiff referring to the former girlfriend are not readily able to be searched or disclosed because the plaintiff did not usually refer to her by name, making those almost impossible to search. See Koppel Affidavit Exhibit A (estimating two weeks of Koppel time).

[3] Request 52 is excluded because it seeks airline tickets or other immaterial documents as to a conference in California in August 2016 which is the locus of the single interaction mentioned by the former girlfriend in Exhibit 3, the 2016 email. No one disputes that the plaintiff and the former girlfriend were present at the conference.

the plaintiff to his mother today in which he says that Moses now is trying to get information about the former girlfriend.

None of these requests (requests 49, 50, 51, 53, and 54) involve <u>conduct,</u> with one possible exception discussed immediately below. All of them seek entirely private communications. None of the private emails are rationally discoverable under the guise of discovery as to reputation. A private email to one's sister in California is not possibly relevant to reputation. Evidence of acts by the plaintiff is not, except by irrational guesswork, rationally related to the contents of private emails.[4]

(i)      One possible exception.

The possible exception involves these facts: Plaintiff has attempted to avoid disclosure of any communications involving the former girlfriend because their ongoing relationship is private. Consistent with that, he has not yet disclosed any communications referring to any alleged harassment or improper touching or other activity by this point if related to the former girlfriend , The Plaintiff has made clear

---

[4] Plaintiff in discovery has complied with many or if not all of the 61 discovery requests such as, for example, request 8, discussed on page 11 of the Memorandum. as to which the plaintiff is in complete compliance because the plaintiff, solely to avoid a discovery dispute, voluntarily disclosed all documents starting in 2015. See Mem. p. 11, bottom.

in discovery that he does have a copy of one communication in which the former girlfriend denies her 2016 mention of improper conduct by plaintiff in Exhibit 3, the October 2016 email relied on by the defendant on this Motion.

If it will prevent disclosure of all of the other private emails plaintiff is willing to disclose that one communication (provided there is no waiver) directly bearing on the allegation in Exhibit 3. In the not yet disclosed document the former girlfriend confirms that there was no bad conduct by the plaintiff in August 2016 at the conference identified in Exhibit 3. She describes the interaction which is the subject of Exhibit 3 as a "minor social faux pas at worst." She describes her 2016 reaction as a "misinterpretation" and says of this plaintiff "Unaware: perhaps; harasser, nope. On this you can quote me."

The other issue throughout the Motion is the appropriate scope in time. In an unsuccessful effort to avoid discovery disputes the plaintiff has in many instances provided documents all the way back to 2015 as to his conduct. See e.g. response to request 8. Mem. 11, bottom. That scope in time is overly generous. The plaintiff did not commence to attend meetings of SIPB until 2018. The defamations are expressly based on many "severe, consistent and widespread" reports by SIPB key holders received on February 26, 2020.

The argument that discovery in this case necessarily goes back to 2015 in all instances is a very aggressive position which is extremely weak in connection with truth. That point is discussed immediately below.

a.  <u>The private emails are not discoverable for truth.</u>

The defendant starting by February 26, orchestrated a contrived, secret, and highly irregular "discussion" of the plaintiff. Exhibit 2. The audience was about 120 keyholders, the audience of "sipb-private." The purpose of the "discussion" was to elicit negative comments about the plaintiff. Exhibit 2. Defendant commenced the discussion by listing for negative points about the plaintiff, none of which are true. Exhibit 2, page WM 00370, 4:21 PM.

The defendant Moses on February 26, 2020 received almost nothing of any consequence in response except for comments which reflected the four inaccurate initial talking points. See Exhibit 2. The response was not "voluminous and unanimously negative," Mem. p. 3. If it were, this defendant would not now be desperately trying to use discovery to find private information entirely unrelated to his defamations involving one (non- accurately) alleged bad act in 2016, six years

7

ago. See Exhibit 3, an email written in 2016 which was forwarded three times until first made available to the defendant in February of this year.[5]

The defamations at issue (see Mem. 4, the text of the worldwide March 2 defamation) do not involve any statement that plaintiff from time to time "may have" [sic] made one or more people uncomfortable in the four years since his arrival at MIT in 2015. Mem. 13, top. The defamations, in even one small part, say that many keyholders (false) within "the past week" shared stories (false) about being deeply uncomfortable because of sexual harassment (false; sexual harassment is expressly mentioned only in the February 27 defamation) and that the "many" stories involved interactions which made many individual reporter SIPB keyholders deeply uncomfortable. The reports were "severe consistent and widespread as to [sc. inappropriate conduct] which continued in spite of requests to stop." (emphases added). The conduct and the circumstance were quite exceptional and reflects the need for SIPB "to do better to be a safe place." The email makes clear that the abhorrent behavior was only recently detected and reported.

---

[5] The Memorandum distorts the facts. For example, no one reported they were "viscerally afraid" based on any first-hand interaction. Mem. 3. That phrase was taken out of context by this defendant in the course of the secretive discussion on February 26-27, and circulated to approximately 120 persons. One person without any first-hand knowledge adopted the words. Exhibit 2, WM 00375, 9:18 a.m., not realizing that no one had actually reported any such feeling about this plaintiff based on any first-hand experience.

This is an <u>incomplete</u> list of the defamations. <u>See</u> Mem. page 4, "Hello All," the defamation sent worldwide to approximately 500 persons on Monday March 2, 2020. Motion, Exhibit 1.

With one or two exceptions from other sources, all of the documents which possibly support the putative "truth" of the defamations are reproduced in this record at Exhibit 2. That document is <u>six</u> pages. There were <u>no</u> first hand reports of sexual harassment. Most of the reporters in Exhibit 2 rely on the four false talking points Moses used to start the discussion. They say, in substance, that if someone is a serial abuser who will not stop despite "requests to stop" he probably should not be elevated to keyholder status. See Exhibit 2, WM 00072. 6:11 pm.[6]

The vast distance between the text of the defamations and the truth is obvious or glaring simply from a review of Exhibit 2 to the Motion. That is almost the entirety of the non-existent "flood". Even worse for Moses, all of the contents of the secret, concealed poll, Exhibit 2, (which effectively lasted for about 5 hours on February 26, 2020) were premised on four points of contrived of <u>false</u> information deliberately planted by Moses as the starting points for the February 26 "discussion." See Exhibit

---

[6] One reporter goes beyond the four false talking points to say that <u>his</u> first hand observation is that Koppel <u>does</u> learn from feedback but the feedback "needs to be more direct than for most people" ( thereby questioning the false talking point that Koppel did not or would not change his conduct when told to stop.) See Exhibit 2, page WM 0372, 5:46 pm.

2, WM 00370.[7] The former girlfriend indisputably did not deliver any report or story. She did not contribute to the non-existent and fictitious "flood" of negative reports of recent bad behavior by the plaintiff. Mem. 3.

This is not a case that involves a "quibble" about whether the defamations are true even if not "precisely true." Mem. pages 6, 7. This defendant could make a start towards a showing of substantial truth only if he could disclose "many" shared stories of "severe consistent and widespread" bad behavior which "continued in spite of requests to stop." This defendant in discovery has not disclosed one single report of that nature.

b. The private emails have nothing to do with reputation.

The private emails have nothing to do with the reputation of the plaintiff because they were not shared with anyone in the community. Koppel Affidavit Exhibit A. Any contrary argument is built on the premise that despite exhaustive inquiries into facts related to the life of this plaintiff, the private communications

---

[7] One crucial talking point (Ex. 1, WM 370, 4:21pm) for example is that Koppel "Repeatedly initiates physical contact with someone who had specifically told him to stop doing so." This is insidious and deceptive. The "someone" is Moses, a crucial concealed fact. The reference to physical contact is to hugs which Moses and Koppel would openly give each other during the years they were friends. They were friends until very shortly before these defamations. The two at one point considered becoming roommates. Moses has disclosed about 500 documents. None of them record any request by Moses that Koppel stop the hugs.

with the former girlfriend and private communications about her are a reasonable subject of discovery because they might incidentally reveal bad conduct not independently discovered. That is a form of surmise which would justify any fishing expedition. The substantial interest of the plaintiff in privacy of private communications outweighs speculation in this instance because this plaintiff has disclosed more than 1,000 documents as to every aspect of his past behavior. See note 4, above; see this memorandum, below.

Defendant relies on Condit v. Dunne, 224 F.R.D. 100 (S.D.N.Y 2004). Memorandum at 8, 9. Condit is not applicable or persuasive. The court there ruled, very predictably, that where the defamation plaintiff was accused of murder of a girlfriend the defendant could make deposition inquiries about his relationships with other girlfriends. This Motion seeks five years of private emails based solely on Exhibit 3; one 2016 email sent to three persons.

The Motion seeks disclosure of the private emails by arguments about reputation, but case law does not support the defendant. Character and reputation in a defamation case are proved by bad acts or bad conduct, not by the contents of private communications. See McCarron v. JP Morgan, D Mass. c. a., 07 10786 RGS, WL 2066940 at * 4 (May 14, 2008).

Schafer v. Time, Inc., 142 F.3d 1361, 1371 (11th Cir. 1998) provides a clear illustration. There, in the context of defamation damages and evidence of character,

11

the defendant was not allowed to explore "a number of specific acts and events," but was allowed to question the plaintiff at trial about a felony conviction, a possible violation of parole, convictions for driving under the influence, an arrest for writing a bad check, failure to file tax returns, failure to pay alimony and child support, and evidence concerning the efforts of the plaintiff to change his name and social security number. Id at 1371. All of those involve facts in the biography of the plaintiff. Private communications, by contrast, are  not calculated to develop evidence of reputation because by definition private communications are never made known to the community or shared in the community in which reputation exists.

Defendant argues (Mem., at 15) that a disclosed confidential Koppel email to the chairs of a student group in October 2016, Exhibit 4, is relevant to Koppel's reputation. That makes no sense. From that alone the defendant argues, without any explanation, that all private communications between the plaintiff and the former girlfriend from January 1, 2016 to the present are therefore discoverable (Mem. 15). Defendant asserts that all communications about the former girlfriend, even to family or trusted friends with no connection to MIT, are relevant to Koppel's reputation at MIT or generally. Mem. 14.

The private emails are all to or from the former girlfriend or refer to her. That identifying feature has nothing to do with bad conduct or bad acts by this plaintiff. The former girlfriend at worst made a disputed and very likely false allegation in

12

October 2016. Private communications are not relevant to reputation and will not discover facts. To compel disclosure of private communications is improper here because the conduct of the plaintiff has been exhaustively examined by his compliance with 61 document requests, except for 14 are disputed on this motion, of which 6 relate to the former girlfriend.

The facts of record as to the former girlfriend are known in part only because of extensive disclosures provided by the plaintiff. See Exhibit 4 (reproduced for the Motion with the Koppel disclosure numbers concealed ). The former girlfriend at worst wrote one email in 2016 describing an interaction with the plaintiff in September 2016. Exhibit 3.[8]

The only known missing piece of this (irrelevant) narrative is one writing by the former girlfriend within the last two years. As discussed above (pages 5- 6: the one exception) ) plaintiff is willing to disclose a document which has not been requested in discovery Written by the former girlfriend . (The defendant in discovery has not sought documents which exculpate the plaintiff ). Plaintiff requests that if that document not yet disclosed is required to be disclosed, that it be treated as confidential pursuant to the Standing Order of this Court. That narrative is one of

---

[8] The 2016 email, Exhibit 3, for some reason was forwarded in 2018. It was then forwarded again in December 2020 and yet again on February 6, 2021. Exhibit 3.

hundreds of the private emails. See Affidavit of James Koppel, attached as Exhibit A. Assuming the narrative refutes the October 2016 description, Exhibit 3, there is no need for or basis for compelled disclosure of five years of other private communications.

Plaintiff requests that this Court rule that the private emails are not discoverable.[9] Plaintiff describes all requested relief in the last section of this memorandum, Conclusion and Requested Relief.

## B. Other requests in the Motion.

Document Request 7 (Mem. 11) is moot because the plaintiff has already disclosed, under request 8, documents going back to 2015 in response to request 8 which is almost identical. Request 7 seeks evidence of "misconduct." The response to request 8 (Mem. 11) shows that the Plaintiff has disclosed all documents back to 2015 identifying unwelcome physical touching or contact. There are none. "Misconduct" is only slightly less vague than "inappropriate." Plaintiff has already made a good-faith effort to identify and disclose all such documents, including e.g.

---

[9] As noted the private emails which merely refer to the former girlfriend cannot be effectively searched because many do not use the name of the former girlfriend by name. Koppel estimates 80 hours or two weeks would be needed. Koppel Aff. Exhibit A, attached.

a non-event in 2015 when he was picking up his groceries at his MIT housing. Plaintiff does not object to an order requiring discovery under request 7 because plaintiff has nothing more to disclose.

Request 45 (Mem. p. 12) is too broad. It seeks information regarding instances where "any person asked Koppel to stop contacting any other person." Mem. 12. Defendant has supplied all such documents for the time period 2018 to present as to MIT students. It is otherwise far too broad. Plenty of personal disagreements end with "Please don't talk to me until tomorrow." Request 45 is very similar to a request for all documents as to "any disagreement with anyone." The temporal scope of request 45 is unreasonable because, contrary to defendants' memorandum, the defamations at issue involve "reports" by "many keyholders" within "the past week" and do not involve random types of conduct of " the sort" [sic] that "may have caused" [sic] unknown students at MIT to be "uncomfortable" as to plaintiff starting in 2015. Mem. 13. [10] The group of persons capable of giving reports supporting these defamations is the key holders

---

[10] Page 12 at the bottom includes disparaging references to Koppel that are not supported by any record citation or any disclosed fact. No unnamed MIT student was a reporter as of February 26 as described in "for example." Defendant has not disclosed any document supporting this "example."

Similarly, the 2016 document, Exhibit 3, from the former girlfriend says nothing about "retaliation" because of her rejection of plaintiff's advances. See Mem. 12, bottom.

The objections to request 49 ( Mem. 13-14) are based on facts. Plaintiff has a right to privacy and in this instance shares that right with the unnamed girlfriend who is not a party and is not in a position to object. In addition disclosures by defendant show that Moses has reached out to numerous people, including the unnamed girlfriend, to try to obtain unfavorable information as to the plaintiff . He has notably not succeeded as to the unnamed girlfriend . She has apparently asserted her rights to privacy and refuses to cooperate . The defendant has unclean hands and is estopped because he has evidently been refused all discovery from the former girlfriend . His effort to compel the discovery by order of this Court seeks to violate the privacy of the former girlfriend (and of the plaintiff.)

Document request 54 (Mem. 16) seeks all documents concerning communications by Koppel regarding disparaging statements about him by Lillian T. Chin. Mem. at 16. Defendant's Memorandum asks they be compelled "for the reasons set forth above." Id. The "reasons set forth above" in the previous two pages refer only to the former girlfriend. This is the only mention of Chin in the Memorandum. Defendant provides no information as to why any such documents, if any, are discoverable. Chin made no report or complaint as to Koppel and has never attended a SIPB meeting. Mem. 26, bottom. The requested search would be unduly burdensome because if Chin did say something bad about Koppel, he could

have discussed it with anyone. The entire request (excluding the former girlfriend) is unrelated to any claim or defense.

Request 41 (Mem. 18, 19) seeks information concerning the public discussion of MIT and Epstein in September 2019. Plaintiff has no documents other than those already disclosed by defendant. He has declined to disclose duplicate copies. Plaintiff does not object to entry of an order on this because he has nothing more to give.

The Motion is inaccurate as to interrogatories 1 and 4 (Mem. 19-20), Part C. Answer number 1 expressly does go back to 2015. Mem. 20, top. Answer 4 says that plaintiff can think of no other accusation by anyone at MIT other than the one very weak accusation prompted by the defendant in the February 26, 2020 "discussion" as to conduct which the reporter described as "subtly off putting." Plaintiff does not object to an order requiring an answer to interrogatory 4 to go back to 2015 because the answer already given does that. Mem. 20., bottom.

## Conclusion and Requested Relief

The principal issue on this Motion is the argument that the private emails provide factual support for these sweeping defamations. They do not and cannot. The intent or effect of the effort to compel disclosure of the private communications is or will be to unreasonably invade the privacy of the plaintiff.

Plaintiff requests that the Motion be denied as to all requests within the Memorandum at Parts A and C except as to those identified above as not disputed. The plaintiff is in substantial compliance with all other requests in Part A.

Plaintiff requests the Motion be denied as to all of the private emails, the subject of Part B (requests 41, 49, 50, 51, 53, 56, 57, and 59) because those are not discoverable. Plaintiff requests that if any Order is entered which requires disclosure of any part of the private emails, that the Order be limited to communications to or from the girlfriend which refer to any assault or unwanted touching, including denials of any. Plaintiff represents to the Court that there is one such document from the former girlfriend in which she refers to the alleged assault in 2016, the topic of Exhibit 3, as "a minor social faux pas at worst" as to which her reaction was based on her "misinterpretation" of events. Plaintiff requests that disclosure of any private emails be initially limited to that document, subject to confirmation by counsel for the defendant that it says what is described here. Plaintiff requests that the document which is exculpatory as to him related to the 2016 non-event be disclosed subject to

18

the standing Confidentiality Order of this Court. The document, if disclosure is compelled, will put an end to disputes as to one insignificant interaction in August 2016. Plaintiff acknowledges that this 2016 interaction may yet be the subject of deposition questioning. In the event this Court is inclined to grant discovery of all of the private communications, plaintiff requests that they be disclosed subject to the standing Confidentiality Order of this Court.

Plaintiff requests other consistent relief.

Respectfully submitted,
JAMES KOPPEL,
By his attorney,

Paul G. Boylan, BBO 052320
Freeman Mathis & Gary, LLP
60 State Street, 6th Floor, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
(617) 963-5972

Dated: April 16, 2021

## Certificate of Service

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

Dated: *April 16, 2021*

_____
Paul G. Boylan