UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
JAMES KOPPEL,                                             )
                                                          )
           Plaintiff,                                     )
                                                          )
v.                                                        )          No. 20-cv-11479-LTS
                                                          )
WILLIAM MOSES,                                            )
                                                          )
           Defendant.                                     )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL**
*(LEAVE TO FILE UNDER SEAL GRANTED ON APRIL 16, 2021)*

INTRODUCTION

Plaintiff James Koppel, a graduate student at MIT, has sued his classmate, William

Moses, for defamation based on an email. The email, sent by Moses on behalf of a student group

he led, stated that Koppel had been asked to refrain from participating in the group because he

had made other people "deeply uncomfortable." (**Exhibit 1**). This Court has held that a jury

could reasonably interpret the email to convey at least one defamatory meaning:  that Koppel

engaged in "some form of sexual misconduct" at MIT. (Order, Doc. 24, at 12).

Moses has served discovery requests on Koppel, asking him to produce documents and

information about incidents in which he may have committed misconduct, including unwanted

touching or harassment; made offensive comments; or otherwise engaged in unwelcome or

inappropriate conduct while a student at MIT that caused other students to report that he had

made them uncomfortable. Koppel has refused fully to comply with these requests, asserting

they are overly broad, too vague, or invasive of "privacy."

1

Koppel's position is untenable. Like any defamation plaintiff, Koppel must disclose information tending to show that the allegedly defamatory statements are substantially true, and that his reputation was already bad before the alleged libel. "A defamation plaintiff may not place a matter in issue and then successfully thwart discovery because it is unduly intrusive, sensitive or privileged from disclosure." *Egiazaryan v. Zalmayev*, No. 11 CIV. 2670 PKC GWG, 2012 WL 137574, at *2 (S.D.N.Y. Jan. 12, 2012). "To deny [a defamation] defendant access to any information that may support a defense of substantial truth would deny defendant his right to due process." *Condit v. Dunne*, 225 F.R.D. 100, 109 (S.D.N.Y. 2004).

Accordingly, pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1, defendant William Moses moves for an order compelling Koppel to produce all non-privileged documents and information in his possession, custody or control responsive to Moses's Document Requests 7, 8, 41, 45, 49, 50-57, and 59, and Interrogatories 1 and 4.

<u>FACTUAL BACKGROUND</u>

Defendant William Moses is a Ph.D candidate at the Massachusetts Institute of Technology, and in 2020 served as the Chair of the Executive Committee of the Student Information Processing Board ("SIPB"), an MIT student group focused on computer science. (Complaint, ¶ 6). Plaintiff James Koppel, as of early 2020, was also a student at MIT and a member of SIPB. (*Id.*, ¶ 3).

In February 2020, leaders of SIPB held a meeting at which they considered whether Koppel should be promoted to the elevated status of "keyholder" within the group. (**<u>Exhibit 2</u>**). Participants at the meeting expressed negative opinions about Koppel because of prior behavior by him that made them uncomfortable, including unwanted touching. *Id.* Accordingly, on behalf of the Executive Committee, Moses, its newly-elected Chair, circulated an email among other

SIPB keyholders asking for further feedback about Koppel and about whether he should be made keyholder. (*Id.*). Moses offered to act as an anonymizer of this information. (*Id.*).

The response was immediate, voluminous, and unanimously negative. (Ex. 2). One female student wrote that "Jimmy definitely makes me extremely uncomfortable. He often tries to single me out and makes it very hard to leave. He also tries to touch me in 'socially acceptable' ways as much as possible in a very disturbing way." (*Id.*) The same student said that a close friend had told her that Koppel's involvement in SIPB, along with that of another "creepy" person, was the reason the friend did not participate in the group. (*Id.*) Another student wrote that he had "definitely" observed Koppel making people uncomfortable. (*Id.*) Of greatest concern, yet another student reported that she had received a report from someone affiliated with the group "describing an incident with Jimmy that is nothing short of sexual assault." (*Id.*) The reporter stated that they are "viscerally afraid" of Koppel and pleaded that he not be given "any more power" than he already had. (*Id.*).

As a result of the flood of negative comments, the SIPB Executive Committee resolved that not only would it decline to nominate Koppel for "keyholdership," but would ask him to cease participation in the group's activities. On February 27, 2020, Moses met with Koppel, informed him the Executive Committee had received reports that Koppel had made SIPB members uncomfortable, and requested that he disengage from the group. In the meeting, Moses did not reveal the names or details of persons who submitted reports or opinions about Koppel, out of concern for their privacy and to prevent the prospect of a retaliatory response. Koppel agreed to cease participation with the group. (Answer, ¶¶ 19, 33).

The Executive Committee also decided that Moses, as Chair, would send an email to persons associated with SIPB concerning Koppel's disengagement from the group. On March 2, 2020, Moses sent an email to a distribution list of SIPB-affiliated persons. (Cplt., ¶¶ 26, 50):

> Hello all,
>
> I am writing to let you know about a hard conversation that SIPB keyholders had this past week about SIPB member Jimmy Koppel (jkoppel).
>
> Many keyholders shared stories about how he had made them deeply uncomfortable, which continued in spite of requests to stop. Given the severity, consistency, and widespread nature of his interactions, we have requested that jkoppel refrain from participating in SIPB any more (interacting in SIPB spaces, participating in SIPB projects & events, etc) I have already spoken with jkoppel informing him of this, which he has agreed to.
>
> This decision was not taken lightly, but is a necessity that and reflects both the need for SIPB to be a place where everyone is comfortable and the will of the current keyholders.
>
> This circumstance and required response was quite exceptional and also reflects a need for SIPB to do better to be a safe environment for everyone. Specifically, we need to establish mechanisms that make it easy for members to voice their concerns when they are made uncomfortable as this had apparently gone on for some time. At minimum, we need to introduce some sort of anonymous reporting as keyholders only felt comfortable sharing anonymously or just to the chair. We will discuss this at the next EC meeting on 3/6 and I would encourage all members to contribute their ideas.
>
> SIPB is not just a club of those who care about computing, but it is first and foremost a community where everyone should feel safe and supported. If someone ever makes you uncomfortable, you can always bring this up to me or any member of the EC. We will respect any requests for confidentiality, including not sharing with other EC members.
>
> Sincerely,
> The Chair

A copy of the March 2 email is attached hereto Exhibit 1.

Koppel's complaint against Moses asserted claims for defamation, false light, tortious interference with contract, and civil conspiracy. Moses filed a motion to dismiss, which the

Court allowed as to all counts except the defamation claim. The Court held, "Read in context alongside the remainder of the email, the statement that Koppel engaged in 'sever[e], consisten[t], and widespread' conduct which made others report that they were 'deeply uncomfortable,' Doc. No. 8-1, can reasonably be understood to bear at least one defamatory implication: that Koppel engaged in some form of sexual misconduct and that a number of club members complained as a result." (Doc. No. 24 at 12).

In the course of his investigation, Moses has obtained documents and information tending to show the truth of the statements in the March 2, 2020 email. For example, he has obtained a copy of an email sent by ██████████████████████████ to the leaders of a residential house at MIT called ████████████ dated October 27, 2016. ████████████

> I was dating Jimmy (jkoppel) for around half a year in 2015. At a conference we both attended last summer (2016), Jimmy touched me without asking in ways I wasn't comfortable with and generally didn't ask before invading my personal space. I didn't tell him this made me uncomfortable, instead opting to avoid him for the rest of the conference.
>
> Although he seemed eager to talk to me at the conference, he seemed angry at me after I avoided him at the conference: one of his friends reached out to me two days after the conference to point out that he had blocked me on Facebook and to warn me that he was upset and that he was talking about the idea of 'punishing' me socially.
>
> I hadn't spoken to him at all since the conference, since that's the polite thing to do when someone blocks you on Facebook. There was one time when Jimmy visited ████████████████████████████; I stuck to different rooms than the one he was in, and we didn't speak to each other. I hadn't spoken up to anyone about Jimmy making me uncomfortable because I was fine with the status quo of just not interacting with each other.
>
> Lately, though, Jimmy has sent me texts asking that I stop participating in all communities he's involved with, including ████████████████ Before these texts neither of us had talked at all with the other since the conference; I had not interacted with him at all and he had not interacted with me. If there was anything I was doing wrong (despite not even talking to him), Jimmy didn't ask me to change it.

I've asked Jimmy to stop texting me, and I think I'm going to ███████. If Jimmy is ever there, I will simply not interact with him and hope for the best.

(**Exhibit 3**).

On the same date, Koppel sent an email to the leaders of ESP, another student group, stating that he had been having a conflict with another person associated with the group, that "things have escalated with a recent text conversation," that "it sounds like they may be spinning a story that could get me ostracized and/or jailed," and stating that he "will soon be contacting a lawyer and/or the police." (**Exhibit 4**). Koppel, who went on to label this person—███████ ███████a "sociopath," mentioned that he had offered ██ the opportunity to work out their problems before the MIT "ombuds" office, but ██ had refused. (*Id.*)

In discovery, Moses has also received from Koppel a document showing that six months before being asked to disengage from SIPB, the leaders of the ███████ house asked Koppel to stay away from the house "during rush" season because "there are still some at the house uncomfortable with your presence." (**Exhibit 5**).

ARGUMENT

I.  THE SUBSTANTIAL TRUTH OF THE ALLEGEDLY DEFAMATORY
    STATEMENT, AND KOPPEL'S UNDERLYING BAD REPUTATION, ARE
    CENTRAL ISSUES IN THIS DEFAMATION CASE.

The documents and information at issue in this motion are relevant to the substantial truth of the allegedly defamatory statements, and to the state of Koppel's reputation at MIT before the alleged libel. These are both important issues in this case.

Defamation is a tort that "'seek[s] to impose liability on a defendant for harm sustained by a plaintiff as a result of the publication of a false statement about the plaintiff to others.'" *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 225 (D. Mass. 2017), quoting *HipSaver, Inc. v. Kiel*, 464 Mass. 517 (2013). "Under Massachusetts law, a plaintiff must ordinarily establish five elements:

6

(1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss." *Id.* (internal quotation omitted);[1] *Stone v. Essex Cty. Newspapers, Inc*., 367 Mass. 849, 855 (1975) (defining action as requiring "defamatory falsehood").

An allegedly defamatory statement "need not state the precise truth" to be deemed substantially true, and thus immune from liability. *Reilly v. Associated Press*, 59 Mass. App. Ct. 764, 770 (2003), citing *Dulgarian v. Stone*, 420 Mass. at 847, 652 N.E.2d 603; *Tartaglia v. Townsend*, 19 Mass.App.Ct. 693, 698 (1985). The law "overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Mag., Inc*., 501 U.S. 496, 516 (1991). "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Id.*, quoting *Heuer v. Kee*, 15 Cal.App.2d 710, 714 (1936).

If the plaintiff proves the defendant published a defamatory falsehood about him with at least negligence, then the plaintiff may be entitled to recover damages for harm to reputation. *Sindi v. El-Moslimany*, 896 F.3d 1, 20–21 (1st Cir. 2018) (upholding award of reputational damage based in part on testimony of director of MIT Media Lab); *Stone v. Essex Cty.*

---

[1] Under common law, truth was a "defense" to libel, and thus the defendant always bore the burden of proof on that issue. *Taylor v. Swartwout*, 445 F.Supp.2d 98, 102 (D.Mass.2006) ("The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation."). In *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-777 (1986), the Supreme Court held that allocation of the burden of proving truth on the defendant violates the First Amendment when the plaintiff seeks damages based on speech of public concern against a media defendant; thus, in such cases, the plaintiff bears the burden of proving the statement is false. *Id.* Cases since *Hepps* have expanded this rule beyond media defendants to all persons who speak on matters of public concern. *Doe v. Amherst Coll.,* 238 F. Supp. 3d at 226 (requiring plaintiff to prove falsity in claim against college); *Gilbert v. Bernard*, 4 Mass. L. Rptr. 143, 1995 Mass. Super. LEXIS 566, 1995 WL 809550 (Super. Ct. 1995) (requiring that a private person prove a "defamatory falsehood," not merely a "defamatory statement," in case against school electrical instructor). However, the issue of where the burden of proof on truth or falsity will lie at trial has no bearing on the discoverability of information pertaining to the subject. *Masson v. New Yorker Mag., Inc*., 501 U.S. 496, 517 (1991) ("The essence of [the substantial truth] inquiry . . . remains the same whether the burden rests upon plaintiff or defendant.")

*Newspapers, Inc.*, 367 Mass. 849, 860 (1975) ("In a case of defamation the plaintiff's recovery is limited to actual damages, which are compensatory for the wrong done by the defendant.")

"The plaintiff's general bad character or reputation is a mitigating circumstance in an action for libel or slander, since one with an unblemished reputation is entitled to more damages when subjected to defamation than one whose reputation is little hurt by the statements." 53 C.J.S. Libel and Slander; Injurious Falsehood § 300. Thus, "the defendant may mitigate damages by showing that, prior to or at the time of the defamation complained of, the plaintiff's general reputation already was bad, not only in respect to such attributes as honesty, integrity, and fair dealing but also in regard to the subject matter of the libel or slander under consideration." 50 Am. Jur. 2d Libel and Slander § 387; *Meiners v. Moriarity*, 563 F.2d 343, 351 (7th Cir. 1977) (evidence of bad reputation of defamation claimant admissible at trial).

II.   MOSES IS ENTITLED TO BROAD DISCOVERY OF FACTS CONCERNING THE TRUTH OF THE ALLEGEDLY DEFAMATORY STATEMENTS, AND KOPPEL'S UNDERLYING REPUTATION.

Consistent with the above, courts have recognized that defamation defendants must be given broad leeway to obtain discovery going to the truth of allegedly defamatory statements and to the state of plaintiff's reputation. Indeed, "[t]o deny defendant access to any information that may support a defense of substantial truth would deny defendant his right to due process." *Condit v. Dunne*, 225 F.R.D. 100, 111 (S.D.N.Y. 2004).

In *Condit,* the plaintiff, a congressman, sued writer Dominick Dunne for defamation based on statements by Dunne suggesting that Condit was responsible for the murder of Chandra Levy, an employee of the Bureau of Prisons. Dunne sought to take discovery from Condit about his sexual relationships with Levy and with two other women, Joleen Argentini McKay and Anne Marie Smith. Condit objected that the requested discovery would invade his privacy. He

also argued the discovery was irrelevant to the truth of the sued-upon statements, which accused Condit of involvement in a murder, not sexual impropriety. *Id.* at 110.

The Court rejected Condit's arguments. "[R]elevance, for purposes of discovery, is an extremely broad concept." *Id.* at 105. The Court reasoned:

> The allegedly slanderous statements at issue indicate not only that Condit was involved somehow in Ms. Levy's disappearance, but that he was involved due to his sexual relationship with her and his need to end that relationship. In order for defendant to promote a defense of substantial truth, he must be allowed to show the character of the relationship in so far as it may have been a strain on Condit, causing him to complain about it to people who would take matters into their own hands.

*Condit,* 225 F.R.D. at 111. As for the "privacy" objection, "[u]nfortunately for plaintiff, he opened that door himself by filing this lawsuit," and "the Court cannot allow plaintiff to walk through freely while holding defendant in check at the gate." *Id.* at 111.

The court further held that Condit's sexual relationships were relevant to the extent of his reputational damages, which "may be mitigated by plaintiff's own actions causing damage to his reputation." *Id.* at 110 n. 4, citing *Munafo v. Metro. Transp. Auth.*, Nos. 98 Civ. 4572, 00 Civ. 134, 2003 WL 21799913, at *24 (E.D.N.Y. Jan. 22, 2003) ("[W]here plaintiff claims reputational injury, defendants must be permitted to introduce specific evidence that the plaintiff's reputation has already been compromised.") (citing, inter alia, *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072 (3d Cir.1985)); *Weber v. Multimedia Entm't,* No. 97 Civ. 0682, 1997 WL 729039 (S.D.N.Y. Nov. 24, 1997) (allowing discovery of sexual history of plaintiff as to damages in defamation case, because "[g]enerally, when damages are sought for loss of reputation, the plaintiff's personal history is relevant and discoverable.")

Other cases are to the same effect. *McCarron v. J.P. Morgan Sec., Inc.*, No. CIV A 07-10786-RGS, 2008 WL 2066940, at *2 (D. Mass. May 14, 2008)(denying motion for protective order against subpoena on defamation plaintiff's current employer, because plaintiff "has put a

claim of injury to his reputation in play," and thus defendant "is entitled to seek discovery of information that is likely to shed light on that reputation, even though some aspects of that information may prove inadmissible at trial."); *Rivera v. NYP Holdings Inc.*, 63 A.D.3d 469 (2009) (reversing denial of motion to compel, holding that defendants must be permitted access to grand jury testimony by plaintiff, information sought from or provided to Commission on Judicial Conduct, and plaintiff's arrest record, which relevant to defendants' "efforts both to establish their defense of truth to plaintiff's defamation claims . . . and to defend against plaintiff's assertion of damage to his reputation.")

III.  THE COURT SHOULD ORDER KOPPEL TO PROVIDE ALL DOCUMENTS AND INFORMATION IN HIS POSSESSION CONCERNING PRIOR ALLEGATIONS OF MISCONDUCT, INAPPROPRIATE BEHAVIOR THAT CAUSED DISCOMFORT TO OTHERS, AND OFFENSIVE STATEMENTS.

Moses has served document requests and interrogatories on Koppel asking him to provide information concerning all incidents during his tenure at MIT in which he was alleged to have engaged in unwanted touching, harassment, or other forms of misconduct or unwelcome or inappropriate conduct; instances in which other persons asserted that Koppel had made them uncomfortable; about offensive comments Koppel has made; and about a particular interaction in which he allegedly committed sexual misconduct. As detailed below, Koppel has improperly refused to provide all responsive documents and information in connection with these requests.

A.  **Moses's First Request for Production of Documents to Koppel.**

Moses's first request for production of documents to Koppel, attached hereto as **Exhibit 6,** was time-limited (unless otherwise specified) to the period August 1, 2015 to the present. August 2015 was the approximate date Moses believed Koppel had matriculated at MIT. In fact, Koppel came to MIT in January 2015, and the parties have agreed to construe the requests as running from January 1 of that year forward.

Moses's document requests, Koppel's responses, and the specific legal arguments concerning them, are set forth below in accordance with Local Rule 37.1.

7. All documents concerning any report, allegation, assertion, or complaint that Koppel engaged in misconduct of any kind.

Response 7: The request is overly broad and vague. This plaintiff has no documents supporting any of the allegations in the March 2 email. If documents alleging that the plaintiff engaged in inappropriate physical touching or sexual harassment are identified copies will be disclosed.  (Ex. 6).

As set forth above, the Court has held that a jury could reasonably construe the allegedly defamatory statement that Koppel made others at MIT as implying that Koppel committed misconduct. (Doc. No. 24 at 12). Within the broad discovery rights conferred by Fed. R. Civ. P. 26(b), Moses is entitled to any information about alleged misconduct by Koppel during his time at MIT, because it is relevant to establishing the substantial truth of the allegedly defamatory statement and Koppel's underlying bad reputation. *Condit,* 225 F.R.D. at 110 n. 4 and 111. The request is not "overly broad," nor is it "vague." Certainly, Koppel cannot be permitted to decide for himself which prior allegations of misconduct against him "support[]" the allegedly defamatory March 2 email, or to confine his response only to "inappropriate physical touching or sexual harassment," however he may define those terms. (Ex. 6). The Court should order Koppel to produce documents responsive to the request as written.

8. All documents concerning any report, allegation, assertion or complaint that Koppel engaged in any inappropriate, unwelcome, or offensive conduct.

Response 8: The request is overly broad and vague as to what counts as unwelcome or offensive. This plaintiff has no documents fitting this description as to any of his conduct in SIPB or during the time he was a member or participant in SIPB. If documents identifying unwelcome physical touching or unwelcome physical contact are identified copies will be disclosed. Solely to avoid a discovery dispute plaintiff will disclose such documents if any going back to January 2015. (Ex. 6)

The allegedly defamatory statement, attached as Exhibit 1, states that Koppel made other members of the MIT community "extremely uncomfortable." It does not state when he did so. The fact that Koppel may have engaged in conduct that caused his classmates to be extremely uncomfortable with him *before* he joined the group makes no difference; far less does it foreclose discovery on such interactions with members of the MIT community—whether or not affiliated with SIPB—prior to September 2018. *See Condit, supra.* Even if the email could be said to imply that Koppel engaged in misconduct only after he became a member of SIPB, the timing would amount to a minor inaccuracy that does not change the truth of "'the gist, the sting, of the libelous charge.'" *Masson*, 501 U.S. at 516. Nor does the Court need to decide now whether conduct occurred too long ago to affect Koppel's reputation at the time of the alleged defamation. "[R]elevance, for purposes of discovery, is an extremely broad concept," *Condit,* 225 F.R.D. at 105, and evidence need not be admissible to be discoverable. Fed. R. 26(b)(1).

> 45. Any and all documents concerning any instance in which any person asked Koppel to stop contacting any other person; to cease any behavior; or to delete any online post.

> Response 45: Plaintiff objects to this request in that it is vague and overly broad and includes for example, any time any person requested to unsubscribe from a newsletter which this plaintiff distributes. As to any such communications ███████████ plaintiff repeats the objections at response 15.[2] In addition Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB which is in no way referring to SIPB or to Moses as not discoverable and objects to disclosure of personal emails to or from private persons which post-date the March 2 defamation. (Ex. 6).

With this response, Koppel seeks to prevent Moses from learning of potential instances where, for example, a student at MIT was bothered by Koppel's sexual overtures and asked him to stop contacting her, or from learning of instances where Koppel may have taken retaliatory action against someone who rebuffed his advances, as ████████ says Koppel did in 2016.

---

[2] These are the same objections as set forth in response to request 49, below.

(Ex. 3). These kinds of actions are the sort of thing that may have caused students at MIT to be "extremely uncomfortable" with Koppel and harmed his reputation. (Ex. 1). The greater the number of them, the more demonstrably true is Moses's allegedly defamatory statement that Koppel engaged in "'consisten[t], and widespread' conduct which made others report that they were 'deeply uncomfortable." (Ex. 1). Koppel cannot limit his answer to "the time of his involvement with SIPB" or to documents "referring to SIPB or to Moses." The scope of the request, from the beginning of Koppel's career at MIT to the present, is reasonable.

**B.      Second Request for Production of Documents**

Koppel's response to Moses's second set of requests for production of documents is attached as **<u>Exhibit 7.</u>** A number of the requests ask for records concerning ███████████. The timeframe of such requests is limited to January 1, 2016 forward, because ████████████ have stated that they broke up in 2015. The requests and responses are as follows.

49.      Any and all documents concerning, referencing, or regarding ████████████, from January 1, 2016 to the present.

Response 49: Plaintiff objects to disclosures of documents referring to or consisting of communications with this person mentioning this person as invasive of privacy and involving non-relevant private communications. ██████ did not report any improper conduct to SIPB or make any report about this plaintiff at any time to SIPB. As the defendant knows, █████ is a former ███████ of the plaintiff. That relationship ended in 2015. ████████████ remained close for a time after that. The request invades the privacy of the defendant ████████ because it seeks to force disclosure of private, irrelevant, and non-discoverable conversations.

This request is also barred by estoppel and unclean hands. The defendant after the commencement of this lawsuit reached out to ██████ by phone in July 2020. Defendant has disclosed some of the notes of his conversation with ██████ in July 2020. ██████ evidently was willing to talk to defendant but apparently refuses to disclose any written documents to him. Defendant has not disclosed any emails from ██████ or other writings to him in response to his post-defamation communications and solicitations to him. In that ██████ did not make any report to anyone in February 2020 (no report consisting one the allegedly many "consistent stories" or reports of bad behavior by this plaintiff), invasion of ████ privacy and the privacy of the plaintiff is inappropriate.

This request is unduly burdensome because if the plaintiff did mention this former friend in confidential communications to friends or to his parents for example those communications are collateral to anything in dispute here and very likely would not mention ████ by name as opposed to referring to ████████." That makes keyword search impossible.

Despite this and solely to try to avoid a discovery controversy defendant will disclose any communications involving this person referring to Moses or to SIPB or accusing Plaintiff of persistent unwanted physical touching or sexual harassment. On information there are none.  (Ex. 7).

These objections are meritless. It is irrelevant to the question of substantial truth whether ████████ reported anything to SIPB, or whether another SIPB-affiliated person reported that ██ had received a report that Koppel committed "sexual assault" on a keyholder who was later revealed to ████. (Ex. 2). As explained above, Koppel cannot resist discovery based on "privacy," because he has put the propriety of his conduct and his reputation directly at issue by filing this lawsuit. *Condit,* 225 F.R.D. at 111; *Weber v. Multimedia Entm't,* No. 97 Civ. 0682, 1997 WL 729039 (S.D.N.Y. Nov. 24, 1997) (allowing discovery of sexual history of plaintiff as to damages in defamation case). Koppel has no standing to assert any interest in privacy by ████, and in any event ██ and Koppel both disclosed the event in question to other MIT students. Any theoretical privacy interest cannot overcome Moses's right—as a matter of Rule 26 and fundamental fairness—to discovery on the truth of the allegedly defamatory statement.

Koppel's "unclean hands" objection is difficult to understand. Moses has spoken to ████ and has disclosed notes of that conversation to Koppel. He has not received documents from ██, but even if he had, Koppel has an independent obligation to furnish his copies of any relevant and discoverable documents.

Koppel's final statement is particularly problematic: he says he will disclose any communications "accusing Plaintiff of persistent unwanted physical touching or sexual harassment" of ████, and then declares that no such documents exist. (Ex. 7, emphasis supplied).

The question here is whether Koppel made ▮▮ "uncomfortable" through unwanted touching, or otherwise committed sexual misconduct. That information is highly relevant to the truth of the allegedly defamatory statement that Koppel made others "extremely uncomfortable" through "sever[e]" conduct. (Ex. 1). Koppel cannot withhold information about such misconduct on the ground that he did not "persistently" touch ▮▮ without ▮ consent.

50.     Any and all documents concerning, containing, or constituting written communications between you and ▮▮▮▮▮▮, from January 1, 2016 to the present, including but not limited to the "recent text conversation" referenced by you in the email produced at WM_000493.

Response 50: Plaintiff repeats his objection in Response 49 as if incorporated herein. (Ex. 7).

This request includes the communication referenced by Koppel in the email in which he states that ▮▮ was "spinning a story that could get [Koppel] ostracized and/or jailed," and stating that he "will soon be contacting a lawyer and/or the police." (Ex. 4). Moses is entitled to all of Koppel's communications with ▮▮from January 1, 2016—after their breakup—to the present, because they are directly relevant to the substantial truth of the allegedly defamatory statement, and to Koppel's reputation.

51.     Any and all documents concerning, containing, or constituting communications between ▮▮▮▮▮ and any other person from January 1, 2016 to the present.

Response 51: Plaintiff repeats his objection in Response 49 as if incorporated herein. (Ex. 7).

This request seeks discoverable information, for the reasons set forth above.

52.     Any and all documents concerning, referencing, or regarding any conference or event you attended during the summer of 2016 at which you had interactions with ▮▮▮▮▮, including but not limited to the event described in the email produced at WM_000492.

Response 52: Plaintiff objects that this request bears no relevance to this present action. This request literally includes receipts for tickets to the event as well as "Nice to meet

you" messages sent thereafter to persons who have no connection to SIPB or MIT. (Ex. 7).

This request seeks information concerning Koppel's attendance at the conference at which the alleged sexual assault on ▇▇▇ took place. Such information may tend to corroborate ▇▇▇ allegations. It is therefore discoverable because it is relevant to the defense of substantial truth. Given the broad scope of discovery, the fact the documents may be communications to non-MIT or non-SIPB individuals is irrelevant.

53.     Any and all documents concerning, referencing, or regarding any allegation, statement, claim, or assertion that you touched ▇▇▇▇▇ without ▇▇ consent or invaded ▇▇ personal space without ▇▇ consent, from January 1, 2016 to the present.

Response 53: Plaintiff repeats his objection in Response 49 as if incorporated herein. (Ex. 7).

This information is relevant to the issues of substantial truth and reputational damages, for the reasons set forth above.



54.     Any and all documents concerning or constituting communications regarding any harmful, disparaging, derogatory, or defamatory statement made by any person concerning you, including but not limited to any such statements made by ▇▇▇▇▇▇, ▇▇▇▇▇▇, or ▇▇▇▇▇, from January 1, 2016 to the present.

Response 54: With regards to ▇▇▇, plaintiff repeats his objection in Response 49 as if incorporated herein. With regard to ▇▇▇▇▇, Plaintiff has no such documents. With regard to ▇▇▇ Plaintiff objects that any such documents not already disclosed are not discoverable and are entirely remote and collateral to any issue here. ▇▇▇ made no complaint regarding Koppel in February 2020. She has never attended a SIPB meeting. Any comments by Koppel as to ▇▇▇ not already disclosed, if any, would be able to be found only by a time consuming and burdensome search of private communications to persons never affiliated with SIPB. (Ex. 7).

Moses moves to compel a complete response to this request and production of all responsive documents to the extent it pertains to communications by ▇▇▇ or ▇▇▇, for the reasons set forth above.

55.     Any and all documents concerning or constituting communications regarding any allegation or assertion by any person that you touched him or her, or invaded his or her personal space, inappropriately and/or without consent.

Response 55: With the exception of one admittedly false allegation in 2016 all such documents have been disclosed. The plaintiff had no association with SIPB until 2018. (Ex. 7).

Moses moves for an order requiring Koppel to provide all documents responsive to this request from January 1, 2015 to the present, for the reasons set forth above. Engaging in unwelcome or unconsented touching or invasion of personal space is the kind of conduct that can make other people "extremely uncomfortable," so the request is directly relevant to the substantial truth of the allegedly defamatory statement. (Ex. 1).

56.     Any and all documents or communications with any person in which you address, discuss, respond to, admit, or deny any allegation, complaint, or assertion that you had engaged in unwanted touching, unwelcome invasion of personal space, or unwelcome sexual advances.

Response 56: If the plaintiff at some point discussed the admittedly false 2016 allegation, that topic is not discoverable. Plaintiff has no other such documents.  (Ex. 7).

This is discoverable for the same reasons as no. 55, above.

57.     All and all documents concerning, reflecting, or containing communications regarding any allegation, statement, or assertion that you engaged in unwanted touching of another person, including but not limited to unwanted hugs or touching a person's head.

Response 57: Any discussion of a false allegation is not discoverable. Plaintiff has no other such documents but will provide photographs showing that touching of heads is a common gesture within MIT used by many students to express comraderie [sic] or friendship. One photograph among several which will be disclosed shows ten or more students doing this as a group.  (Ex. 7).

Here, Koppel self-servingly declares that at least one allegation that he engaged in improper touching is "false" and therefore is not *discoverable*. The question of truth or falsity is for the jury, not for Koppel. Moses is entitled to discovery of any allegations of improper conduct committed by Koppel so that he may defend himself from Koppel's allegation that he

falsely stated that Koppel had committed misconduct. Further, even false allegations could have

harmed Koppel's reputation before the allegedly defamatory statement, thus mitigating any harm

caused by the statement at issue here. Koppel's objection is meritless.

41. Any and all documents concerning statements published by Koppel in any
forum concerning or relating to the Jeffrey Epstein/MIT Media Lab/Marvin Minsky
controversy of 2019, including but not limited to all responses to any such statements by
on-line commenters or other persons.

Response 41: Plaintiff objects to this request because it seeks non-discoverable
information as to a matter of public interest unrelated to SIPB. This plaintiff has
no such documents related to SIPB or to any alleged conduct at the plaintiff at SIPB or
related to it. A series of documents unrelated to SIPB is already disclosed by this
defendant and involves public discussion of topics of public interest in 2019. Plaintiff
will not disclose duplicate copies.

59.      Any and all documents concerning, reflecting, or containing communications
regarding your Facebook posts set forth in WM_000208-211, including but not limited to
any direct messages, emails, texts, or other communications concerning the posts.

Response 59: Plaintiff objects that these documents are not discoverable. The request
seeks comments by strangers as to a post which predates any of the defamation here. The
Facebook post at issue relates to covid. It was disclosed solely to avoid a discovery
dispute because the defendant requested copies of posts by plaintiff. Now the defendant
seeks disclosure of comments by strangers as to the post comment on it. The defamations
here allege that plaintiff engaged in persistent undetected and widespread sexual
harassment over an extensive period of time. The Facebook posting predates the
defamations. There is no allegation or evidence that any SPIB member saw the post or
saw any comment. It was in no way a basis for his expulsion or the defamation or it
would have already been disclosed by this defendant. The post is irrelevant and the
request improper. The post strictly speaking was not discoverable and any comments by
strangers are not discoverable. The plaintiff is a victim of defamations. He does not
thereby put in issue every communication he has had as to any topic of public interest.
(Ex. 7).

Some SIPB members who discussed Koppel stated they were uncomfortable with him

because of online comments he posted that others found offensive. (Ex. 2). For example, in one

such comment, Koppel denied that the MIT Media Lab controversy, which had to do with

acceptance of donations from disgraced child sex trafficker Jeffrey Epstein, had anything to do

with gender. (*Id.*) In the Facebook post referenced at request 59, Koppel appeared to make light

of COVID-19, just as it was ravaging other parts of the country, and members of the MIT

community castigated him for doing so and thereby making others "uncomfortable" with his

insensitivity. Koppel apparently has other communications regarding these subjects. He should

be required to produce them, because they go to the substantial truth of the statement that Koppel

made others "uncomfortable."

**C.      Koppel's Response to Moses's Interrogatories.**

Koppel's response to Moses's first set of interrogatories is attached hereto as **Exhibit 8**.

The time frame set forth in the interrogatories is August 1, 2015 to the present, which the parties

have agreed to treat as January 1, 2015 to the present.

Interrogatory No. 1

Please describe in full and complete detail each and every instance in which any person
made any complaint, allegation, report, or assertion that you had engaged in
inappropriate, offensive, unwelcome, or harassing conduct.

Answer No. 1

Plaintiff objects that the question is invasive of privacy because of the duration going
back to 2015 and because it is not limited to members of SIPB or activities of SIPB. The
question is vague because what is unwelcome or inappropriate cannot be known or
identified in any reliable way. The terms report or complaint are vague and could include
rumor or one person saying to another they thought some comment or activity was
inappropriate. The breadth of this question is unworkable. As worded it includes
criticisms of the attire or fashion sense of the plaintiff by his sister.

Since I joined SIPB in September 2018, I know of one complaint. In 2020 Voatz, Inc
complained that, with other members of an MIT team, I violated professional standards
while investigating cyber-security issues related to the integrity of elections. MIT did a
complete investigation and found no wrongdoing.

I am aware because of disclosures by the defendant in this case that one person
complained about a comment I made in a conversation in 2017 related to street
harassment and that Cel Skeggs interpreted something I said in 2019 tangential to a
discussion of the proposed resignation of President Reif as not adequately recognizing
that topic as a gendered cultural issue. I had no knowledge of either of these criticisms
prior to the disclosures by this defendant in this civil action.

Beyond these, I cannot think of any other incident since 2015, unless one includes criticisms such as my sister saying my socks are inappropriate.

Interrogatory No. 4

Please describe in full and complete detail each and every instance in which any person made any complaint, allegation, report, or assertion that you had engaged in unwanted touching of any kind.

Answer No. 4

Since I joined SIPB in September 2018, I am aware of no such report. I have learned only by reason of disclosure in this case that ████████████ said I touched her arm at one point in the course of a conversation. Assuming that occurred it was in the course of a larger conversation, it was casual and very likely acceptable and not objectionable in the normal course of a friendly conversation.  She said nothing at the time or later.  I have no memory of having touched her on the arm. In other disclosures by this plaintiff the same person, ████████████ told the defendant that she could not point to "anything in particular" that made her uncomfortable and that she thought any behavior that needed to be corrected should be the subject of a warning or discussion in advance of any action or public criticism.

This complaint was raised long after any event and was mentioned by ██████████ in a private email to this defendant only after the defendant explicitly requested comments and criticism of me on February 26 based on false descriptions circulated to approximately 140 people for comment and additional criticisms based on four instances of inaccurately described conduct circulated to that group.  With this exception, which was never reported to me by ██████████and was never the subject of any comment by her to me, I can think of no instance of anyone at MIT reporting or alleging I engaged in inappropriate touching.  (Ex. 8).

Both of these interrogatory responses improperly limit their time frame to September 2018 forward. Koppel is not permitted to decide for himself what time frame is relevant. If he was accused of engaging in inappropriate conduct or unwanted touching during his tenure at MIT, then Moses is entitled to discover that information, for the reasons explained above.

## CONCLUSION

For the foregoing reasons, defendant William Moses respectfully requests that his motion to compel be allowed.

Respectfully Submitted,

WILLIAM MOSES,

By his attorneys,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO # 647438)
jpyle@princelobel.com
Michael J. Lambert (BBO # 704134)
mlambert@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

Dated: April 2, 2021

## Certificate of Service

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

/s/ *Jeffrey J. Pyle*
Jeffrey J. Pyle

# EXHIBIT 1



---

# Removal of jkoppel and making SIPB a welcoming place

**William Moses** <wmoses@mit.edu>                                                    Mon, Mar 2, 2020 at 7:23 PM
To: sipb-office <sipb-office@mit.edu>

Hello all,

I am writing to let you know about a hard conversation that SIPB keyholders had this past week about SIPB member Jimmy Koppel (jkoppel).

Many keyholders shared stories about how he had made them deeply uncomfortable, which continued in spite of requests to stop. Given the severity, consistency, and widespread nature of his interactions, we have requested that jkoppel refrain from participating in SIPB any more (interacting in SIPB spaces, participating in SIPB projects & events, etc). I have already spoken with jkoppel informing him of this, which he has agreed to.

This decision was not taken lightly, but is a necessity that and reflects both the need for SIPB to be a place where everyone is comfortable and the will of the current keyholders.

This circumstance and required response was quite exceptional and also reflects a need for SIPB to do better to be a safe environment for everyone. Specifically, we need to establish mechanisms that make it easy for members to voice their concerns when they are made uncomfortable as this had apparently gone on for some time. At minimum, we need to introduce some sort of anonymous reporting as keyholders only felt comfortable sharing anonymously or just to the chair. We will discuss this at the next EC meeting on 3/6 and I would encourage all members to contribute their ideas.

SIPB is not just a club of those who care about computing, but it is first and foremost a community where everyone should feel safe and supported. If someone ever makes you uncomfortable, you can always bring this up to me or any member of the EC. We will respect any requests for confidentiality, including not sharing with other EC members.

Sincerely,
The Chair

# EXHIBIT 2

 **Gmail**                                                        Billy Moses <taekwonbilly@gmail.com>

## Questions about jkoppel keyholdership
28 messages

**William Moses** <wmoses@mit.edu>                                        Wed, Feb 26, 2020 at 4:21 PM
To: sipb-private <sipb-private@mit.edu>

Hello all,

There was a closed-door discussion a few weeks ago about the status of jkoppel. He has been an active member of SIPB
for a fair amount of time and has seemingly met the contribution threshold for nomination.

However, in that meeting several keyholders reported aspects of his behavior that make them uncomfortable engaging
with him. Social integration is a key aspect of keyholdership and it is also all of our duty to ensure everyone feels
comfortable in SIPB spaces (both physical and virtual). Like all discussions on sipb-private, topics discussed in this thread
should remain between keyholders.

In the interest of allowing for discussion of this while also respecting the confidentiality of peoples' reports, I am happy to
serve as an "anonymizer" for anything you wish to include in the discussion but don't wish to share with the entire board.

For the sake of understanding, here are some of the incidents that happened in roughly the past year that people have
discussed with us so far:
* Arguing that a female keyholder was overreacting in complaining about street harassment
* Repeatedly initiating physical contact with someone who had specifically told him to stop doing so
* Arguing in a public Zephyr conversation that it was sexist against men to treat the Epstein scandal as a sign of a
gendered cultural problem
* Repeatedly using degrading language about other SIPB members to make them feel inferior

We're looking to assess what keyholders' thoughts regarding nominating jkoppel are. In the interest of being fair to him, if
we do not reach consensus to nominate him, the Chair will privately inform him that he should not expect to be nominated.

Sincerely,
The Chair

**lkdc@mit.edu** <lkdc@mit.edu>                                           Wed, Feb 26, 2020 at 4:29 PM
To: William Moses <wmoses@mit.edu>

My opinion is that based on those incidents he should not be nominated for keyholdership.

Lily
[Quoted text hidden]

**Anna Glasgall** <glasgall@mit.edu>                                      Wed, Feb 26, 2020 at 4:37 PM
To: William Moses <wmoses@mit.edu>

[Quoted text hidden]
Hi,

I am obviously cruft and my voice matters less here than the actual
students who are much more active in the organization. But the
totality of these incidents add up to the picture of someone who
should _not_ be a SIPB keyholder to me. We as an organization still
have a lot of work to do to overcome old stereotypes and nominating
someone who behaves in this fashion would be a very large step
backwards.



thanks,

WM 000370

11/1/2020                                                        Gmail - Questions about jkoppel keyholdership

Anna Glasgall
[Quoted text hidden]

---

**Andrea Carney** <acarney@mit.edu>                                              Wed, Feb 26, 2020 at 4:52 PM
To: William Moses <wmoses@mit.edu>
Cc: sipb-private <sipb-private@mit.edu>

All of these are very problematic, but the thing that brings me most concern is initiating physical contact *after being asked
to stop.* At a minimum that displays a fundamental unwillingness to engage socially in a respectful manner. It
demonstrates to me that when he makes further missteps (as all of us will) he is unlikely to take responsibility for them,
respond well to feedback, or use the experience to do better in the future. On that alone, I don't think you can count
someone as being socially integrated.
[Quoted text hidden]

---

████████████████████                                                             Wed, Feb 26, 2020 at 4:53 PM
To: William Moses <wmoses@mit.edu>

Hey William,

Just wanted to send a quick private thank-you. Thank you so much for sending out this email and for doing this delicate,
but highly important, work.

Best,

████████████

[Quoted text hidden]

---

████████████████████                                                             Wed, Feb 26, 2020 at 5:27 PM
To: William Moses <wmoses@mit.edu>

Jimmy definitely makes me extremely uncomfortable. He often tries to single me out to talk to and makes it very hard to
leave. He also tries to touch me in "socially acceptable" ways as much as possible in a very disturbing way. For example,
once I made a sarcastic comment and he said something like "you're so funny" and slapped my arm.

One of my best friends has said that Jimmy is one of the reasons (among another creepy dude) she doesn't come to
SIPB.

Please anonymize this.

On Wed, Feb 26, 2020 at 4:22 PM William Moses <wmoses@mit.edu> wrote:
[Quoted text hidden]

--
████████████████████
Massachusetts Institute of Technology
Department of Electrical Engineering and Computer Science

---

**William Moses** <wmoses@mit.edu>                                               Wed, Feb 26, 2020 at 5:32 PM
To: ████████████████████
Cc: William Moses <wmoses@mit.edu>

Hi,

I'm so sorry to hear that =/, and can do.

May I email the entire excerpt or would you like me to summarize it?
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                               Wed, Feb 26, 2020 at 5:38 PM
To: William Moses <wmoses@mit.edu>
Cc: ████████████████████, William Moses <wmoses@mit.edu>

https://mail.google.com/mail/u/0?ik=cab26b9a5b&view=pt&search=all&permthid=thread-a%3Ar-2236938147219775416&simpl=msg-a%3Ar-22352856640030912…   2/7

**WM 000371**

Also would you prefer I say this came from an anonymous key holder, an anonymous female key holder, or an alternate choice.
[Quoted text hidden]

---

**Brian Chen** <bpchen@mit.edu>                                              Wed, Feb 26, 2020 at 5:46 PM
To: William Moses <wmoses@mit.edu>

(not replying-all) Although I don't think I have personally had negative experiences interacting with jkoppel, several people I trust have told me that they have had uncomfortable interactions with him similar to the incidents described. At least one may have stayed away from SIPB due in part to jkoppel's presence (I haven't asked them about sharing this so I guess this report is doubly anonymized...). I think jkoppel should not be nominated for keyholdership. However, if this is the consensus we reach, I think it is very important and fair that the Chair inform him of this. Based on some limited perspective, I don't think jkoppel is unwilling to take responsibility or learn from feedback, but I think the feedback needs to be more direct and specific than it is for most people.

I know this is usually a hard conversation to have with any member, so I wanted to thank you in advance for handling it. Good luck.

Yours truly,
Brian Chen

On Wed, Feb 26, 2020 at 4:22 PM William Moses <wmoses@mit.edu> wrote:
[Quoted text hidden]

---

To: William Moses <wmoses@mit.edu>                                           Wed, Feb 26, 2020 at 5:52 PM

Anonymous female keyholder? I typed this as a stream of consciousness so maybe paraphrase it haha. I don't really care as long my name's not attached.
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                           Wed, Feb 26, 2020 at 5:57 PM
To:
Cc: William Moses <wmoses@mit.edu>

If it's okay with you do you mind if I sent the excerpt (it's just a tad more powerful saying from an anonymous rather than me paraphrasing an anonymous). If not, how would you like me to paraphrase?

[tentative draft]

From an anonymous female keyholder:

"Jimmy definitely makes me extremely uncomfortable. He often tries to single me out to talk to and makes it very hard to leave. He also tries to touch me in 'socially acceptable' ways as much as possible in a very disturbing way. For example, once I made a sarcastic comment and he said something like 'you're so funny' and slapped my arm.

One of my best friends has said that Jimmy is one of the reasons (among another creepy dude) she doesn't come to SIPB."
[Quoted text hidden]

---

To: William Moses <wmoses@mit.edu>                                           Wed, Feb 26, 2020 at 6:04 PM

Sure
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                           Wed, Feb 26, 2020 at 6:06 PM
To: Andrea Carney <acarney@mit.edu>
Cc: William Moses <wmoses@mit.edu>, sipb-private <sipb-private@mit.edu>

https://mail.google.com/mail/u/0?ik=eab26b9a5b&view=pt&search=all&permthid=thread-a%3Ar-2236938147219775416&simpl=msg-a%3Ar-22352856640030912...   3/7

WM 000372

From an anonymous female keyholder:

"Jimmy definitely makes me extremely uncomfortable. He often tries to single me out to talk to and makes it very hard to leave. He also tries to touch me in 'socially acceptable' ways as much as possible in a very disturbing way. For example. once I made a sarcastic comment and he said something like 'you're so funny' and slapped my arm.

One of my best friends has said that Jimmy is one of the reasons (among another creepy dude) she doesn't come to SIPB."

[Quoted text hidden]

---

**Karen Sittig** <kasittig@gmail.com>                                     Wed, Feb 26, 2020 at 6:22 PM
To: William Moses <wmoses@mit.edu>

Hey - I graduated in 2012 / 2013 but wanted to offer a bit of advice. I'm a card-carrying cis female who works in tech and has dealt with a lot of this kind of thing.

IMO you should make it clear to Jimmy that the reason that you're not offering him membership is due to his behavior towards the women in the office. First off, this will make it clear that there's an actual reason and not just that "people don't like him". You have specific examples of behaviors that you can point to if he argues with you.

Secondly, it communicates that you as a leader have the backs of the women in your organization and they won't have to tiptoe around things. Maybe he'll learn and change! Maybe he'll get angry about how women are snowflakes or whatever and you'll know that you made the right decision. Regardless though, definitely don't let this guy into your organization.

Happy to give you a pep talk / practice delivering feedback if you'd like - I do a lot of mediation through Burning Man stuff and also have professional experience with people management. My schedule is a little spotty but I definitely have time for a video chat or phone call and could also come to the SIPB office sometime in two weeks if you'd prefer to meet in person.

-kasittig
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                     Wed, Feb 26, 2020 at 6:44 PM
To: William Moses <wmoses@mit.edu>
Cc: Andrea Carney <acarney@mit.edu>, William Moses <wmoses@mit.edu>, sipb-private <sipb-private@mit.edu>

From an anonymous keyholder:

"I've definitely noticed jkoppel making people uncomfortable, not just in SIPB. My concern, though is specifically about grow. For all (or at least most) of us right now, if we do something that upsets someone else, we're receptive to understanding that, reflecting, and fixing our mistakes. That's growth. I get the sense that jkoppel doesn't think that what they're doing is a mistake that needs to be fixed. It's really hard to get them to empathetically realize that they've hurt someone and need to do better. Instead, I notice that they tend to go the route of, "well, I'm not wrong, I'm just trying to do good, you're being too sensitive" (this is a summary of a few different interactions).

I don't think that jkoppel has a merit problem, but if they're to be a social contribution to SIPB, that attitude really needs to change. And I don't think it's incumbent on us to fix it for them. But perhaps they can learn and grow on this matter, and if they do and others are not already viscerally afraid of them, it's possible that a future version of this discussion would be more in their favor."

[Quoted text hidden]

---

**Alex Dehnert** <adehnert@mit.edu>                                     Wed, Feb 26, 2020 at 6:50 PM
To: William Moses <wmoses@mit.edu>

I think an acquaintance mentioned in a conversation several months back that Jimmy had made her uncomfortable. I don't recall much in the way of details (and it's possible that Jimmy isn't actually the right person, although something else matches that reassures me I'm remembering correctly). It seems plausible my acquantance is the same as the "best friend" below -- I think she left some group because of him.

I could probably check in with her for more information if that'd be useful, but it's probably helpful if I can forward this thread to provide context...

WM 000373

[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                    Wed, Feb 26, 2020 at 6:59 PM
To: Alex Dehnert <adehnert@mit.edu>

If your friend feels comfortable, perhaps the best course of action would be for your friend to speak with me and I can appropriately anonymize it if she'd like to share?

Also, since this thread is on sipb-private I don't think you should forward it outside of SIPB keyholders.
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                    Wed, Feb 26, 2020 at 7:01 PM
To: Karen Sittig <kasittig@gmail.com>
Cc: William Moses <wmoses@mit.edu>

Hi Karen,

Thanks so much for reaching out.

I would greatly appreciate practicing the conversation with you in a week or two if that works for you?

Cheers,
Billy
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                    Wed, Feb 26, 2020 at 7:05 PM
To: 
Cc: William Moses <wmoses@mit.edu>

I'm assuming this is an individual comment to me, but let me know if you'd like me to anonymously share to sipb-private.
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu>                                    Wed, Feb 26, 2020 at 7:10 PM
To: Anna Glasgall <glasgall@mit.edu>

Thanks for sharing!

I'm assuming this is an individual comment to me, but let me know if you'd like me to anonymously share to sipb-private.
[Quoted text hidden]

---

**Andrea Carney** <acarney@mit.edu>                                   Wed, Feb 26, 2020 at 7:19 PM
To: William Moses <wmoses@mit.edu>
Cc: Andrea Carney <acarney@mit.edu>, sipb-private <sipb-private@mit.edu>

> On Wed, Feb 26, 2020 at 6:44 PM William Moses <wmoses@mit.edu> wrote:
> From an anonymous keyholder:

> if they're to be a social contribution to SIPB, that attitude really needs to change. And I don't think it's incumbent on us
> to fix it for them.

I wholeheartedly agree.

> But perhaps they can learn and grow on this matter, and if they do and others are not already viscerally afraid of them,
> it's possible that a future version of this discussion would be more in their favor."

I don't think that we should factor jkoppel's potential for growth in this decision, because he's already been told to change and has refused. We also know, thanks to the previous anon, that there's at least one person who stays away from SIPB because of jkoppel. Ime, in situations like this it's rarely just one person who feels uncomfortable. I think it's better to make

WM 000374

SIPB definitely more safe for multiple people than to make SIPB a refuge for one person who might someday stop making it unsafe.

-acarney
[Quoted text hidden]

---

**lkdc@mit.edu** <lkdc@mit.edu> Wed, Feb 26, 2020 at 7:13 PM
To: William Moses <wmoses@mit.edu>

That's mostly just for if you're counting responses in aggregate; no need to share it anonymously.
[Quoted text hidden]

---

**Anna Glasgall** <glasgall@mit.edu> Wed, Feb 26, 2020 at 7:21 PM
To: William Moses <wmoses@mit.edu>

On Wed, Feb 26, 2020 at 07:10:12PM -0500, William Moses wrote:
> Thanks for sharing!
>
> I'm assuming this is an individual comment to me, but let me know if you'd
> like me to anonymously share to sipb-private.
>

I don't feel I really have the right to weigh in on this in the debate (as I said, I'm extremely crufty cruft). Do what you want with my words here, though. I pretty strongly feel that someone who behaves like this should not have that behavior rewarded with keyholdership, but it's not my decision to make.

thanks,

Anna
[Quoted text hidden]

---

**Karen Sittig** <kasittig@gmail.com> Wed, Feb 26, 2020 at 8:29 PM
To: William Moses <wmoses@mit.edu>

Yep for sure!
[Quoted text hidden]

---

[redacted] Thu, Feb 27, 2020 at 9:18 AM
To: William Moses <wmoses@mit.edu>

When I was student leadership, I received a report from someone (who happens to be a SIPB keyholder, but that's irrelevant), describing an incident with Jimmy that is nothing short of sexual assault so that he could be handled appropriately at my living group. I received this report about three years ago, and the incident was quite old even at the time, but it strongly indicates that Jimmy should not be given any more power than he has.

The "viscerally afraid" comment still applies, knowing what he's capable of. Please don't nominate him. Also probably don't send this out, even anonymized? I'm not actually sure the victim there would appreciate me telling you what I have. She explicitly said in her email that she "didn't want Jimmy to be excluded from his social groups" with fear of retribution iirc. She's no longer around and retribution is unlikely given the sheer number of complainants, but she was very very afraid of Jimmy and I am too. He may have the capacity to learn and grow, but I don't trust that.
[Quoted text hidden]

---

**William Moses** <wmoses@mit.edu> Thu, Feb 27, 2020 at 6:11 PM
To: Andrea Carney <acarney@mit.edu>
Cc: William Moses <wmoses@mit.edu>, Andrea Carney <acarney@mit.edu>, sipb-private <sipb-private@mit.edu>

Hi all,

It is clear from this conversation (most of which was through individual replies to me), that jkoppel should not be nominated for keyholdership. Moreover, given the severity, consistency, and widespread nature of his interactions, the EC has concluded that we should request jkoppel to refrain from participating in SIPB any more. I have just spoken with jkoppel informing him of this conclusion.

This decision was not taken lightly, but is a necessity that reflects the vast majority of people who took part in this discussion (again mostly through individual replies). He has also been given several opportunities to change his behavior, and failed to do so. I am sad that this is something that our members had to endure, and SIPB will take a strong stance against sexual harassment.

This discussion has also made it clear that SIPB needs to do better to be a safe environment for everyone to take part in. Specifically, we need to establish mechanisms that make it easy for members to come forward when they are made uncomfortable. This is a topic that we will discuss at length at the next EC meeting and I would encourage all members to contribute their ideas.

SIPB is not just a club of those who care about computing, but it is first and foremost a community where everyone should feel safe and supported. If something ever makes you uncomfortable, or you simply have ideas for ways we as an organization could improve, you can always share them with me or any member of the EC.

Yours,
The Chair
[Quoted text hidden]

---

**Jakob Weisblat** <jakobw@mit.edu>                                    Thu, Feb 27, 2020 at 7:02 PM
To: William Moses <wmoses@mit.edu>

Holy crap SIPB actually banned a toxic person

My hat goes off to you

--Jakob

[Quoted text hidden]

---

**Eleftherios Ioannidis** <elefthei@mit.edu>                                    Thu, Feb 27, 2020 at 9:55 PM
To: William S Moses <wmoses@mit.edu>

Must have been hard to deal with this Billy, but I think you did the right thing.

On Feb 27, 2020, at 6:11 PM, William Moses <wmoses@mit.edu> wrote:

[Quoted text hidden]

WM 000376

# EXHIBIT 3

From: ████████████ ███████████████
Date: Sat, Feb 6, 2021 at 7:01 PM
Subject: Fwd: FW: A note about a situation
To: William Moses <wmoses@mit.edu>


---------- Forwarded message ---------
From: **Mollie Wilkinson** <m2w@mit.edu>
Date: Wed, Dec 23, 2020 at 4:17 PM
Subject: Fwd: FW: A note about a situation
████████████████████


-------- Forwarded Message --------
**Subject:**FW: A note about a situation
  **Date:**Sat, 27 Jan 2018 00:07:52 -0600
 **From**████████████████
    **To:**et-commander


I disclosed this to Mollie today as "interpersonal commander," and she said to bump it to et-commander. I'll note that it's been about a year and a couple of months since ████████ sent this email, and ███ has since moved across the ocean. I do not think any action is needed, but I do think some people in the house should be aware of this situation at any given time.

**From:** ██████████████████
**Sent:** Thursday, October 27, 2016 4:03 PM

1

**To:** et-commander
**Subject:** A note about a situation

Hi Erin and ▮▮▮▮ and Daniel and Jordan,

I'm emailing you because I want to come to Not Coffee today, but I'm afraid of a potential confrontation with Jimmy (jkoppel), who occasionally comes to ET. No action necessary on your part – I'll just feel safer going knowing there are people at ET who know what the situation is.

I was dating Jimmy (jkoppel) for around half a year in 2015. At a conference we both attended last summer (2016), Jimmy touched me without asking in ways I wasn't comfortable with and generally didn't ask before invading my personal space. I didn't tell him this made me uncomfortable, instead opting to avoid him for the rest of the conference.

Although he seemed eager to talk to me at the conference, he seemed angry at me after I avoided him at the conference: one of his friends reached out to me two days after the conference to point out that he had blocked me on Facebook and to warn me that he was upset and that he was talking about the idea of "punishing" me socially.

I hadn't spoken to him at all since the conference, since that's the polite thing to do when someone blocks you on Facebook. There was one time when Jimmy visited Citadel (a house where some of my friends live); I stuck to different rooms than the one he was in, and we didn't speak to each other. I hadn't spoken up to anyone about Jimmy making me uncomfortable because I was fine with the status quo of just not interacting with each other.

Lately, though, Jimmy has sent me texts asking that I stop participating in all communities he's involved with, including ESP, ET, and Citadel. Before these texts neither of us had talked at all with the other since the conference; I had not interacted with him at all and he had not interacted with me. If there was anything I was doing wrong (despite not even talking to him), Jimmy didn't ask me to change it.

I've asked Jimmy to stop texting me, and I think I'm going to keep visiting ET. If Jimmy is ever there, I will simply not interact with him and hope for the best.

Thanks,
▮▮▮▮

# EXHIBIT 4

 Gmail

**Mikayla Murphy <mikaylaatmit@gmail.com>**

## Suspected character assassination

James Koppel <jkoppel@mit.edu>
To: Mikayla Murphy <mikayla@mit.edu>
Cc: ESP Chairs <esp-chair@mit.edu>

Thu, Oct 27, 2016 at 11:43 PM

Thank you for your concern! I have in fact already spoken with an Ombudsperson (twice!), and am currently heavily seeking out various resources around MIT. I am making plans to avoid a few potential sources of conflict around Splash, and hope this is the last you ever hear about this.

Sincerely,
Jimmy K

On Thu, Oct 27, 2016 at 6:25 PM, Mikayla Murphy <mikayla@mit.edu> wrote:
Hi Jimmy,

We're sorry to hear that you're dealing with all this, but thanks for giving us a heads up! If there's anything we can do in the future to help, please let us know.

You already mentioned the Ombuds office, but personally, I'd highly recommend consulting with them, even if it's just you alone without the other party. As you probably know, they're completely confidential and they specialize in helping resolve tricky cases like this, so it would probably be useful to get their advice on the matter.

Best of luck, and again, please let us know if there's anything we can help with!

Mikayla + Jerry

On Thu, Oct 27, 2016 at 1:22 AM, James Koppel <jkoppel@mit.edu> wrote:
Hello Jerry and Mikayla,

So, I've been having some trouble with another person, a former ESP member and future Splash teacher, over the past year. I had been planning to ask to speak to you privately shortly before Splash to let you know that something was up and there was a potential conflict brewing. Unfortunately, things have escalated with a recent text conversation, and I am currently fearing greatly for my safety. I am now terrified to let you know any details or the identity of the other person, as it sounds like they may be spinning a story that could get me ostracized and/or jailed, and thus it can't be known that I'm warning anyone about them. I am sending this E-mail mostly to let you know that something is up and to begin a trail of documentation, and will soon be contacting a lawyer and/or the police.

I want to be clear: I really hope I'm just blowing smoke, and reading too much into things. I still think it's more likely than not the other person is innocent. However, I am fully aware that the worst-case scenarios I am fearing very much do happen in real life, and a close friend who knows both of us agrees with my worst-case assessment. I thus want to share early that something is going on, even though nothing overt has happened yet.

A couple other notes:

* You almost certainly know this person, though you almost more certainly would not expect anything like this to be happening. They are well liked, and very charismatic -- the type you'd never suspect to be capable of anything like this. Unfortunately, that is the exact profile of various kinds of sociopaths, which I strongly suspect this person is.

* I have offered this person the chance to come talk in the Ombuds office, or otherwise resolve our differences productively. They have actively refused, and refused to propose any alternatives.

I've been very afraid for a while of having to send an E-mail about this situation, but never expected it would be like this. I don't think there's anything you can do right now, but please take my concerns seriously

Sincerely,
Jimmy K

# EXHIBIT 5

| From: | Mollie M Wilkinson <m2w@mit.edu> |
|---|---|
| Sent: | Saturday, August 31, 2019 12:52 AM |
| To: | James Brandon Koppel |
| Subject: | ET Rush |

Hi Jimmy,

After having some discussions with people as commander, I've concluded that it would be best to request that you avoid ET events during rush. While I'm really glad that you like our events, there are still some at the house uncomfortable with your presence. I hope you can understand that we want to avoid any issues, even if small, during rush so we can focus on recruiting new members. I'm sorry to deliver this news and I hope you can continue to maintain friendships with those individual members of the house whom you consider friends.

Best,
Mollie

1

# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
JAMES KOPPEL,                               )
                                            )
        Plaintiff,                          )
                                            )        Civil Action No. 1:20-cv-11479-LTS
        v.                                  )
                                            )
WILLIAM MOSES,                              )
                                            )
        Defendant.                          )
_____ )

Supplemental  Responses and Objections by Plaintiff
to First Document Requests by Defendant Moses

Plaintiff hereby supplements its prior responses and objections to the first document requests by the defendant served on or about December 4, 2020.

Plaintiff objects to any definitions, instructions or directions that exceed the requirements of Rule 34 of the Federal rules of Civil Procedure or any local rule. In providing documents and materials Plaintiff does not consent to any republication of the March 2 email by any person. Plaintiff views any republication as actionable and reserves all rights.

Plaintiff objects to any request for documents prior to September 1, 2018 when he first attended a meeting of SIPB. Reserving all rights and solely to avoid a discovery dispute plaintiff will provide documents dating back to August 1, 2015.

As used here the words "will be disclosed" mean that after reasonably diligent search all responsive documents have been disclosed or are being contemporaneously disclosed and that any such documents thereafter identified will be disclosed.

Requests

1.      All documents concerning or relating to any and all information Koppel provided in response to Defendant William Moses's Interrogatories to James Koppel.

1

Response 1: The request is vague and assumes without any basis that the answers are derived from identifiable documents. Plaintiff is not aware of any such documents. If any are identified they will be disclosed.

2.      All documents concerning the March 2, 2020 Email, including but not limited to all documents concerning communications between James Koppel and any other person concerning the March 2, 2020 Email.

Response 2: The request seeks or includes attorney client communications and work product. Plaintiff will disclose any such documents not protected by the attorney client privilege.

3.      All documents concerning the March 12, 2020 Emails, including but not limited to all documents concerning communications between James Koppel and any other person concerning the March 12, 2020 Emails.

Response 3: The request seeks or includes attorney client communications and work product. Neither will be disclosed. If any other documents are identified copies, will be disclosed.

4.      All documents concerning income earned by Koppel from March 2, 2017 to the present, including but not limited to filings with any taxing authority.

Response 4: State tax returns on reliable information are not discoverable. Copies of federal tax returns will be disclosed.

5.      All documents, including but not limited to invoices, bank statements, and cancelled checks, showing or reflecting income to Koppel or to James Koppel Coaching LLC from March 2, 2020 to the present.

Response 5: Copies will be disclosed.

6.      All documents concerning or evidencing receipt of the March 2, 2020 Email or the March 12, 2020 Emails by any other person.

Response 6: Plaintiff has already disclosed distribution lists for SIPB emails. Defendant, not the plaintiff, has better information and control of any other documents recording the actual distribution list or lists which the defendant has failed to disclose. If the plaintiff identifies additional documents, they will be disclosed.

7.      All documents concerning any report, allegation, assertion, or complaint that Koppel engaged in misconduct of any kind.

Response 7: The request is overly broad and vague. This plaintiff has no documents supporting any of the allegations in the March 2 email. If documents alleging that the plaintiff engaged in inappropriate physical touching or sexual harassment are identified copies will be disclosed.

8.      All documents concerning any report, allegation, assertion or complaint that Koppel engaged in any inappropriate, unwelcome, or offensive conduct.

Response 8: The request is overly broad and vague as to what counts as unwelcome or offensive. This plaintiff has no documents fitting this description as to any of his conduct in SIPB or during the time he was a member or participant in SIPB. If documents identifying unwelcome physical touching or unwelcome physical contact are identified copies will be disclosed. Solely to avoid a discovery dispute plaintiff will disclose such documents if any going back to January 2015 .

9.      All documents concerning any report, allegation, assertion, or complaint that Koppel made any person uncomfortable.

Response 9: The request is overly broad and vague as to what counts as making someone uncomfortable. The request literally could include a handwritten note from someone requesting that the plaintiff turn down the volume of music he is playing. This plaintiff has no documents fitting this description as to any of his conduct in SIPB or during the time he was a member or participant in SIPB. If other documents identifying a complaint

3

or allegation that Plaintiff engaged in identified conduct which caused a specific person to report that he or she was uncomfortable because of that conduct, copies will be disclosed. Solely to avoid a discovery dispute plaintiff will disclose such documents going back to January 2015

10.     All documents concerning any report, allegation, assertion, or complaint that Koppel disparaged any other person.

Response 10: The request is overly broad and vague and includes non-discoverable documents or information. This plaintiff has no documents fitting this description as to any of his conduct in SIPB or during the time he was a member or participant in SIPB. If documents referring to or describing some incident in which the plaintiff inappropriately disparaged someone are identified copies will be disclosed. Solely to avoid a discovery dispute plaintiff will disclose such documents going back to January 2015

11.     All documents concerning any report, allegation, assertion, or complaint that Koppel engaged in sexual misconduct or unwanted touching of any kind, at any time.

Response 11: The request is overly broad and vague. This plaintiff has no documents fitting this description as to any of his conduct in SIPB or during the time he was a member or participant in SIPB. If documents identifying some complaint or allegation of sexual misconduct or unwanted touching are identified copies will be disclosed. Solely to avoid a discovery dispute plaintiff will disclose such documents going back to January 2015.

12.     All documents concerning any report, allegation, assertion, or complaint that Koppel made any statement that was perceived to be, or could have been perceived to be, sexist, racist, classist, or otherwise discriminatory; inappropriate, offensive, or insensitive, to any person, in any location or forum.

Response 12: The request is overly broad and vague and includes non-discoverable documents or information. What some other person perceived or could have

4

perceived is unknowable. This plaintiff has no documents fitting this description as to any of his conduct in SIPB or during the time he was a member of SIPB. Defendant has disclosed documents by ███████ which include these accusations and plaintiff will not disclose duplicate copies. If other documents are identified describing statements by this plaintiff as sexist, racist or classist are located they will be disclosed. Solely to avoid a discovery dispute plaintiff will disclose such documents going back to January 2015

13.     Any and all documents concerning communications between Koppel and any other person regarding the Student Information Processing Board from August 1, 2018 to the present.

Response 13: The request is overly broad and vague and includes non-discoverable documents or information. The request is unduly burdensome for plaintiff or anyone try to identify every incidental reference to the group. All such documents which are not privileged will be disclosed. All such documents after March 2, 2020 are attorney client communications and will not be will be disclosed.

14.      All documents concerning communications between Koppel and any other person regarding William Moses from August 1, 2018 to the present.

Response 14: The request is overly broad and vague and includes non-discoverable documents or information. The request is unduly burdensome because it is unlikely that this plaintiff or anyone could track down every incidental reference in that Koppel and Moses have known each other for several years and were friends who on occasion would text each other multiple times in order to arrange to meet for coffee or some other trivial reason. Plaintiff will disclose any documents prepared at any time not protected by attorney client privilege referring to Moses in the context of SIPB or criticizing Moses. Plaintiff has no non-privileged documents fitting this description with the exception of one email to Jakob Weisblat. A copy of that will be disclosed.

5

15.    All documents concerning communications between Koppel and any other person regarding ████████████ from August 1, 2018 to the present.

Response 15: Some of these documents are within the attorney client privilege and those will not be disclosed. Other than those documents copies have been disclosed or if later located will be disclosed.

16.     All documents concerning communications between Koppel and any other person regarding ██████████ from August 1, 2018 to the present.

Response 16: Plaintiff objects to disclosures of documents referring to or consisting of communications with this person mentioning this person as invasive of privacy and involving non-relevant private communications. ████ did not report any improper conduct to SIPB or make any report about this plaintiff at any time to SIPB. As the defendant knows, ████ is a former girlfriend of the plaintiff. That relationship ended in 2015. The request invades the privacy of ██████████████ because it seeks to force disclosure of private, irrelevant, and non-discoverable conversations.

This request is also barred by estoppel and unclean hands. The defendant after the commencement of this lawsuit reached out to ████ by phone in July 2020. Defendant has disclosed some of the notes of his conversation with ████ in July 2020. ████ evidently was willing to talk to defendant but refuses to disclose anything to him consisting of a writing. Defendant has not disclosed any emails from ████ or other writings to him in response to his post-defamation solicitations. In that ████ did not make any report to anyone in February 2020 (no report consisting one the allegedly many "consistent stories" or reports of bad behavior by this plaintiff), invasion of ████ privacy in the privacy of the plaintiff is inappropriate. Despite this and solely to try to avoid a discovery controversy defendant will disclose any communications involving this person referring to Moses or to SIPB or referring

to persistent unwanted physical touching or sexual harassment. On information there are none.

17. All documents concerning communications between Koppel and any other person regarding ███████ from August 1, 2018 to the present.

Response 17: This plaintiff has no documents to or from the named person related to SIPB sent or received during the time he was a member or participant in SIPB. A series of documents unrelated to SIPB is already disclosed by this defendant and involves public discussion of topics of public interest in 2019.

18. All documents concerning communications between Koppel and any other person regarding Mikala Murphy from August 1, 2018 to the present.

Response 18: This plaintiff has no such documents that are not within the attorney client privilege. If any are located, copies will be disclosed.

19. All documents concerning communications between Koppel and any other person regarding ████████████ from August 1, 2018 to the present.

Response 19: This plaintiff has no such documents that are not within the attorney client privilege. If any are located, copies will be disclosed.

20. All documents concerning communications between Koppel and any other person regarding ████████ from August 1, 2018 to the present.

Response 20: Plaintiff objects to this request for discovery because this topic is not discoverable or relevant to any claim or defense. The request seeks to invade privacy of two persons. ████████ is not a member of SIPB. She has not attended any meetings since 2016, two years prior to the date when plaintiff began to attend meetings. She worked with the plaintiff in co-teaching. Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB as not discoverable, but solely to avoid a discovery dispute will disclose all such documents, if any, that refer in any way to any alleged improper conduct of

the plaintiff including unwanted physical touching or to any alleged sexual harassment of any sort by plaintiff.

21.     All documents concerning communications between Koppel and any other person regarding Cel Skeggs from August 1, 2018 to the present.

Response 21: Plaintiff will disclose all such documents including emails from plaintiff to this person. If any are located, copies will be disclosed.

22.     All documents concerning communications between Koppel and any other person regarding Skye Thompson from August 1, 2018 to the present.

Response 22: Plaintiff will disclose all such documents including emails from plaintiff to this person.

23.     All documents concerning communications between Koppel and any other person regarding Angel Alvarez from August 1, 2018 to the present.

Response 23: Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB as not discoverable but solely to avoid a discovery dispute will disclose all such documents.

24.     All documents concerning communications between Koppel and any other person regarding Jakob Weisblat from August 1, 2018 to the present.

Response 24: Plaintiff will disclose all such documents except any protected by the attorney client privilege.

25.     All documents concerning communications between Koppel and any other person regarding Quentin Smith from August 1, 2018 to the present.

Response 25: Plaintiff will disclose all such documents referring to any behavior of this plaintiff or to any criticism of his behavior by Smith or anyone else Plaintiff objects to disclosures beyond that as unduly burdensome and not discoverable because these two persons were friends and worked on a number of projects at SIPB. Location and

8

disclosure of all of those project texts and emails is unduly burdensome and those materials are not discoverable.

26.    All documents concerning communications between Koppel and any other person regarding Mitch Berger from August 1, 2018 to the present.

Response 26: Plaintiff will disclose all such documents including emails from plaintiff to this person.

27.    All documents concerning communications between Koppel and any other person regarding Emma Batson from August 1, 2018 to the present.

Response 27:  Plaintiff will disclose all such documents including emails from plaintiff to this person.

28.    All documents concerning communications between Koppel and any of the individuals specified in document requests 14 through 27, above, from August 1, 2018 to the present.

Response 28: Plaintiff refers to and repeats his responses 14 through 27. Other than the documents already disclosed in response to those requests plaintiff cannot locate any additional documents other than those, if any, protected by attorney client privilege. If additional documents are located copies will be disclosed.

29.    All documents concerning any order, directive, or request that Koppel stay away from any location, at any time.

Response 29: Plaintiff objects to this request as including not discoverable information and because it is unduly burdensome and overly broad. The absence of any limitation as the time causes this request to be unreasonable and unduly burdensome. The request is overly broad and vague because it includes for example numerous notices from MIT or other persons as to non-use of buildings avoidance of construction sites and similar topics. Plaintiff objects to any request for documents prior to September 1, 2018. Reserving

9

all rights and solely to avoid a discovery dispute plaintiff will provide documents dating back to January 2015 if any requesting that the plaintiff stay away from any location by reason of any alleged conduct of the plaintiff.

30.     All documents concerning any instance in which Koppel was removed from, excluded from, or asked to refrain from participating in or interacting with, any student or university-related group or activity, including but not limited to the MIT Puzzle Club, Mystery Hunt, the "Galactic Trendsetters," ESP, the Student Information Processing Board, Effective Altruism @ MIT, and/or any living group or subdivision of a living group, including but not limited to Epsilon Theta, East Campus, Pika, Next House, Simmons, or Masseh.

Response 30: Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB as not discoverable but solely to avoid a discovery dispute will disclose all such documents. One such document or exclusion was caused by the March 2 email. All such documents are being disclosed or will be disclosed.

31.     All documents concerning any instance in which Koppel was reprimanded, admonished, or warned by any student- or university-related group or independent living group, including but not limited to the MIT Puzzle Club, Mystery Hunt, the "Galactic Trendsetters," ESP, the Student Information Processing Board, Effective Altruism @ MIT, and/or any independent living group or subdivision of a living group, including but not limited to Epsilon Theta, East Campus, Pika, Next House, Simmons, or Masseh.

Response 31: Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB as not discoverable but solely to avoid a discovery dispute will disclose all such documents.

32.    All documents concerning any criminal charge, restraining order proceeding, or civil claim against Koppel, or any proceeding in which Koppel was the complainant, petitioner, or plaintiff, at any time.

Response 32: Plaintiff after reasonably diligent search has no knowledge of any such documents with the exception of this civil action.

33.    All documents concerning any university disciplinary complaint or proceeding against or concerning Koppel at any time.

Response 33: Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB as not discoverable but solely to avoid a discovery dispute will disclose all such documents.

34.    All documents concerning any report, allegation, assertion, or complaint that Koppel had engaged in misconduct as an employee or independent contractor for any other person or entity.

Response 34: There were several such allegations by a private corporation subsequent to the email in dispute and the allegations were found to be without merit by MIT as to this plaintiff and others on its team. Copies will be disclosed.

35.    All documents concerning any incident in which any person complained to Koppel or to any other person or entity about any act, statement, or behavior of Koppel.

Response 35: This request is overly broad and vague. In addition Koppel does not have knowledge of all such complaints if any. He only knows about those which were brought to his attention. Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB as not discoverable but solely to avoid a discovery dispute will disclose all such documents

36.    All documents concerning, evidencing, or supporting Koppel's claim that he suffered reputational damage from the March 2, 2020 Email or March 12, 2020 Emails.

11

Response 36: Any such documents will be disclosed to the extent available.

37.     All documents concerning, evidencing, or supporting Koppel's claim, if any, that he suffered emotional distress from the March 2, 2020 Email or March 12, 2020 Emails, including but not limited any and all documents concerning any treatment he received for said alleged emotional distress.

Response 37: Plaintiff is not waiving any privilege related to mental health records or treatment. Such documents will not be used or relied on by this plaintiff if disclosure is not compelled.

38.     Documents concerning any communication from a job recruiter or headhunter to Koppel from March 2, 2020 to the present, including requests to communicate about job offers or opportunities.

Response 38: Plaintiff will disclose all such documents to the extent they are able to be identified. Some solicitations are in the nature of spam or routine invitations sent to large groups of people. Not every such document has been collected. Many spam solicitations have been discarded or deleted.

39.     All documents concerning any communication between Koppel and any other person concerning his prospective employment or engagement as a contractor from March 2, 2020 to the present.

Response 39: Plaintiff objects that the names of individual clients of Koppel coaching or any similar service provided by the plaintiff are confidential and are not discoverable. Plaintiff will disclose exemplar copies of all such documents as to Koppel Coaching and other documents as to his direct engagements and solely to avoid a discovery dispute will disclose signed contracts provided they are limited to attorneys eyes only and the names are not disclosed and the clients are not contacted.

40.     Any and all communications between Koppel and any other person concerning his Thiel Fellowship, from March 2, 2020 to the present.

Response 40: Plaintiff will disclose copies of all such documents involving any issue of substance but excluding scheduling for dinners or other routine matters in that they are not discoverable.

41.     Any and all documents concerning statements published by Koppel in any forum concerning or relating to the Jeffrey Epstein/MIT Media Lab/Marvin Minsky controversy of 2019, including but not limited to all responses to any such statements by on-line commenters or other persons.

Response 41: Plaintiff objects to this request because it seeks non-discoverable information as to a matter of public interest unrelated to SIPB. This plaintiff has no such documents related to SIPB or to any alleged conduct at the plaintiff at SIPB or related to it. A series of documents unrelated to SIPB is already disclosed by this defendant and involves public discussion of topics of public interest in 2019. Plaintiff will not disclose duplicate copies.

42.     Any and all documents concerning statements published by Koppel in any forum concerning male-female relations, sexual politics, or the phenomenon of persons taking offense at speech.

Response 42: Plaintiff objects to this request because it is vague, overbroad and not relevant or discoverable in this civil action and not limited to conduct of the plaintiff while he was a member of SIPB or to any topic relevant to SIPB. A series of documents unrelated to SIPB and alleged to be about this topic are already disclosed by this defendant and involves public discussion of topics of public interest in 2019. Plaintiff will not disclose duplicates of those. Solely to avoid a discovery dispute plaintiff will disclose such documents going back to January 2015

13

43.     Any and all documents concerning communications in which Koppel threatened legal action against any other person.

Response 43: The request seeks non-discoverable irrelevant information. Plaintiff after reasonably diligent search has not located any such documents, including documents related to this case none of which involved any threat.

44.     Any and all documents concerning instances in which Koppel argued with, or had a personal disagreement with, a SIPB member from August 1, 2018 to the present.

Response 44: Plaintiff objects to this request in that it is vague and overly broad in that it includes any disagreement or argument unrelated to SIPB such as whether the Celtics are a good basketball team. The terms disagreement and argument are so vague as to be meaningless. Plaintiff after reasonably diligent search has no such documents.

45.     Any and all documents concerning any instance in which any person asked Koppel to stop contacting any other person; to cease any behavior; or to delete any online post.

Response 45: Plaintiff objects to this request in that it is vague and overly broad and includes for example, any time any person requested to unsubscribe from a newsletter which this plaintiff distributes. As to any such communications involving ██ plaintiff repeats the objections at response 15. In addition Plaintiff objects to discovery that goes beyond the time of his involvement with SIPB which is in no way referring to SIPB or to Moses as not discoverable and objects to disclosure of personal emails to or from private persons which post-date the March 2 defamation.

46.      All documents concerning the February 27, 2020 Meeting.

Response 46: The plaintiff will disclose any nonprivileged documents within this request.

14

Respectfully submitted,
Plaintiff James Koppel,
By his attorneys,

*/s/ Paul G. Boylan*

_____
Paul G. Boylan, BBO 052320
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
T: 617-963-5973

<u>Certificate of Service</u>

I hereby certify that the within document Was served this day by email and mail on counsel of record.

Jeffrey J. Pyle
jpyle@princelobel.com
Michael Lambert
mlambert@princelobel.com
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110
T: (617) 456-8000

*/s/ Paul G. Boylan*

_____
Dated: March 22, 2021                    Paul G. Boylan

15

# EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                 )
JAMES KOPPEL,                    )
                                 )
         Plaintiff,              )
                                 )          Civil Action No. 1:20-cv-11479-LTS
         v.                      )
                                 )
WILLIAM MOSES,                   )
                                 )
         Defendant.              )
_____)

Responses and Objections by Plaintiff
to Second Document Requests by Defendant Moses

Pursuant to Federal Rule of Civil Procedure 33, plaintiff James Koppel responds to the second set of document requests by the defendant as follows. Plaintiff objects to any definitions, instructions or directions that exceed the requirements of Rule 34 of the Federal rules of Civil Procedure or any local rule. In providing documents and materials Plaintiff does not consent to any republication of the March 2 email by any person. Plaintiff views any republication as actionable and reserves all rights.

Plaintiff objects to any request for documents prior to September 1, 2018 when he first attended a meeting of SIPB. Reserving all rights and solely to avoid a discovery dispute plaintiff will provide documents dating back to August 1, 2015.

As used here the words "will be disclosed" mean that after reasonably diligent search all responsive documents have been disclosed or are being contemporaneously disclosed and that any such documents thereafter identified will be disclosed.

Requests

47.    Any and all documents concerning, referencing, or regarding ██████████.

Response 47: All such documents will be disclosed.

48.    Any and all documents concerning, containing, or constituting written communications between you and ██████████.

Response 48: All such documents will be disclosed.

49.    Any and all documents concerning, referencing, or regarding ██████████, from January 1, 2016 to the present.

Response 49: Plaintiff objects to disclosures of documents referring to or consisting of communications with this person mentioning this person as invasive of privacy and involving non-relevant private communications. ████ did not report any improper conduct to SIPB or make any report about this plaintiff at any time to SIPB. As the defendant knows, ███ is a former ██████ of the plaintiff. That relationship ended in 2015. Koppel and ████ remained close for a time after that. The request invades the privacy of the defendant and ████ because it seeks to force disclosure of private, irrelevant, and non-discoverable conversations.

This request is also barred by estoppel and unclean hands. The defendant after the commencement of this lawsuit reached out to ████ by phone in July 2020. Defendant has disclosed some of the notes of his conversation with ███ in July 2020. ██████evidently was willing to talk to defendant but apparently refuses to disclose any written documents to him. Defendant has not disclosed any emails from ████or other writings to him in response to his post-defamation communications and solicitations to him. In that ████ did not make any report to anyone in February 2020 (no report consisting one the allegedly many "consistent stories" or reports of bad behavior by this plaintiff), invasion of ██ privacy and the privacy of the plaintiff is inappropriate.

This request is unduly burdensome because if the plaintiff did mention this former friend in confidential communications to friends or to his parents for example those communications are collateral to anything in dispute here and very likely would not mention

2

████ by name as opposed to referring to ████████ That makes keyword search impossible.

Despite this and solely to try to avoid a discovery controversy defendant will disclose any communications involving this person referring to Moses or to SIPB or accusing Plaintiff of persistent unwanted physical touching or sexual harassment. On information there are none.

50.     Any and all documents concerning, containing, or constituting written communications between you and ████████, from January 1, 2016 to the present, including but not limited to the "recent text conversation" referenced by you in the email produced at WM_000493.

Response 50: Plaintiff repeats his objection in Response 49 as if incorporated herein.

51.     Any and all documents concerning, containing, or constituting communications between ████████ and any other person from January 1, 2016 to the present.

Response 51: Plaintiff repeats his objection in Response 49 as if incorporated herein.

52.     Any and all documents concerning, referencing, or regarding any conference or event you attended during the summer of 2016 at which you had interactions with ████ ████ including but not limited to the event described in the email produced at WM_000492.

Response 52: Plaintiff objects that this request bears no relevance to this present action. This request literally includes receipts for tickets to the event as well as "Nice to meet you" messages sent thereafter to persons who have no connection to SIPB or MIT.

53.     Any and all documents concerning, referencing, or regarding any allegation, statement, claim, or assertion that you touched ████████ without ██ consent or invaded ██ personal space without ██ consent, from January 1, 2016 to the present.

Response 53: Plaintiff repeats his objection in Response 49 as if incorporated herein.

54.     Any and all documents concerning or constituting communications regarding any harmful, disparaging, derogatory, or defamatory statement made by any person concerning you, including but not limited to any such statements made by ██████████, ██████████, or ██████████, from January 1, 2016 to the present.

Response 54: With regards to ████, plaintiff repeats his objection in Response 49 as if incorporated herein. With regard to ██████████ Plaintiff has no such documents. With regard to ████, Plaintiff objects that any such documents not already disclosed are not discoverable and are entirely remote and collateral to any issue here. ████ made no complaint regarding Koppel in February 2020. She has never attended a SIPB meeting. Any comments by Koppel as to ████not already disclosed, if any, would be able to be found only by a time consuming and burdensome search of private communications to persons never affiliated with SIPB.

55.     Any and all documents concerning or constituting communications regarding any allegation or assertion by any person that you touched him or her, or invaded his or her personal space, inappropriately and/or without consent.

Response 55: With the exception of one admittedly false allegation in 2016 all such documents have been disclosed. The plaintiff had no association with SIPB until 2018.

56.     Any and all documents or communications with any person in which you address, discuss, respond to, admit, or deny any allegation, complaint, or assertion that you had engaged in unwanted touching, unwelcome invasion of personal space, or unwelcome sexual advances.

Response 56: If the plaintiff at some point discussed the admittedly false 2016 allegation, that topic is not discoverable. Plaintiff has no other such documents.

57.     All and all documents concerning, reflecting, or containing communications regarding any allegation, statement, or assertion that you engaged in unwanted touching of another person, including but not limited to unwanted hugs or touching a person's head.

Response 57: Any discussion of a false allegation is not discoverable. Plaintiff has no other such documents but will provide photographs showing that touching of heads is a common gesture within MIT used by many students to express comraderie or friendship. One photograph among several which will be disclosed shows ten or more students doing this as a group.

58.     Any and all documents concerning, reflecting, or containing communications regarding any difficulty by you in managing or controlling your anger.

Response 58: Plaintiff after diligent search has no such documents.

59.     Any and all documents concerning, reflecting, or containing communications regarding your Facebook posts set forth in WM_000208-211, including but not limited to any direct messages, emails, texts, or other communications concerning the posts.

Response 59: Plaintiff objects that these documents are not discoverable. The request seeks comments by strangers as to a post which predates any of the defamation here. The Facebook post at issue relates to covid. It was disclosed solely to avoid a discovery dispute because the defendant requested copies of posts by plaintiff. Now the defendant seeks disclosure of comments by strangers as to the post comment on it. The defamations here allege that plaintiff engaged in persistent undetected and widespread sexual harassment over an extensive period of time. The Facebook posting predates the defamations. There is no allegation or evidence that any SPIB member saw the post or saw any comment. it was in no way a basis for his expulsion or the defamation or it would have already been disclosed by this defendant. The post is irrelevant and the request improper. The post strictly speaking was not discoverable and any comments by strangers are not discoverable. The plaintiff is a

victim of defamations. He does not thereby put in issue every communication he has had as to any topic of public interest.

    60.    Any and all documents concerning, referencing, or regarding ███████.

Response 60: Plaintiff did not meet ████ until August or September of 2019 and has already disclosed all such documents.

    61.    All and all documents concerning, containing, or constituting written communications between you and ███████.

Response 61: Plaintiff did not meet ████ until August or September of 2019 and has already disclosed all such documents.

Respectfully submitted,
Plaintiff James Koppel,
By his attorney,


/s/ Paul Boylan
Paul G. Boylan, BBO 052320
Freeman, Mathis & Gary, LLP
60 State Street, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
Tel: (617) 963-5972

Dated: March 26, 2021

6

<u>Certificate of Service</u>

I hereby certify that I caused a true copy of the above document to be served upon the named persons as counsel of record this 26th day of March 2021.


Jeffrey J. Pyle
jpyle@princelobel.com
Michael Lambert
mlambert@princelobel.com
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110


*/s/ Paul Boylan*
Paul G. Boylan

EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                  )
JAMES KOPPEL,                                     )
                                                  )
      Plaintiff,                           )
                                                  )     Civil Action No: 1:20-cv-11479-LTS
      v.                                   )
                                                  )
WILLIAM MOSES,                                    )
                                                  )
      Defendant.                           )
_____ )


<u>Supplemental Answers of Plaintiff to the First Set of Interrogatories by Defendant</u>

      Pursuant to Federal Rule of Civil Procedure 33, plaintiff James Koppel supplements his response to the first set of interrogatories by the defendant as follows. This supplement is voluntary in this intended to avoid or reduce the chance of motion practice as to discovery issues. Disclosure of information here is not permission for any person to directly or indirectly communicate the substance of the March 2, 2020 email to any person identified here or in disclosed documents. Plaintiff consider all such re-publication to be actionable and reserves all rights.

    <u>General Objections</u>

      1.     Plaintiff objects to the definitions, instructions, and interrogatories to the extent that they misstate or seek to impose obligations or requirements greater than those imposed by Federal Rule of Civil Procedure 33 or local rule.

      2.     Plaintiff objects to any Interrogatories which seek information protected by the attorney-client privilege, work product doctrine, or other applicable privileges or exemptions from

discovery. If any such information is inadvertently disclosed, the Plaintiff does not waive any applicable privilege, immunity or protection.

3.     Plaintiff's answers do not constitute adoption of or acquiescence to the purported Definitions and Instructions in the Interrogatories or of any assumptions, factual or legal, in any of the questions.

4.     Plaintiff reserves all rights and objections as to admissibility of any responses.

5.     By responding to these Interrogatories, Plaintiff does not waive any objection, whether or not asserted. All objections to any interrogatory are carried forward To all subsequent questions without incorporation by reference.

<u>Answers</u>

Interrogatory No. 1

Please describe in full and complete detail each and every instance in which any person made any complaint, allegation, report, or assertion that you had engaged in inappropriate, offensive, unwelcome, or harassing conduct.

Answer No. 1

Plaintiff objects that the question is invasive of privacy because of the duration going back to 2015 and because it is not limited to members of SIPB or activities of SIPB. The question is vague because what is unwelcome or inappropriate cannot be known or identified in any reliable way. The terms report or complaint are vague and could include rumor or one person saying to another they thought some comment or activity was inappropriate. The breadth of this question is unworkable. As worded it includes criticisms of the attire or fashion sense of the plaintiff by his sister.

Since I joined SIPB in September 2018, I know of one complaint. In 2020 Voatz, Inc complained that, with other members of an MIT team, I violated professional standards while investigating cyber-security issues related to the integrity of elections. MIT did a complete investigation and found no wrongdoing.

I am aware because of disclosures by the defendant in this case that one person complained about a comment I made in a conversation in 2017 related to street harassment and that Cel Skeggs interpreted something I said in 2019 tangential to a discussion of the proposed resignation of President Reif as not adequately recognizing that topic as a gendered cultural issue. I had no knowledge of either of these criticisms prior to the disclosures by this defendant in this civil action.

2

Beyond these, I cannot think of any other incident since 2015, unless one includes criticisms such as my sister saying my socks are inappropriate.


Interrogatory No. 2

Please describe in full and complete detail each and every instance in which any person made any complaint, allegation, report, or assertion that you had engaged in inappropriate, offensive, insensitive or harassing speech or comments.

Answer No. 2

Same objections as to number 1.

Since I joined SIPB in September 2018, there has been one. It is identified in the preceding answer. Any others I learned about in the disclosure documents by the plaintiff most of which consist of online conversations.

Since 2015 and prior to joining SIPB, I can name none.

Interrogatory No. 3

Please describe in full and complete detail each and every instance in which any person made any complaint, allegation, report, or assertion that you had made any person uncomfortable.

Answer No. 3

Objection. Same objections as to number 1. The question is so vague and overly broad as to be meaningless. This plaintiff has no way of knowing about complaints unless they were brought to his attention.

Throughout my entire time at MIT, I have no memory of being told any of my actions made someone "uncomfortable" [sic] and that person reporting it to a third party at any point in time. Jakob Weisblat in June 2020 informed me that I would be removed from the 2021 MIT Mystery Hunt Writing Team. He gave no reason. I understand it was because of the March 2 email sent by this defendant and others.


Interrogatory No. 4

Please describe in full and complete detail each and every instance in which any person made any complaint, allegation, report, or assertion that you had engaged in unwanted touching of any kind.

3

Answer No. 4

Since I joined SIPB in September 2018, I am aware of no such report. I have learned only by reason of disclosure in this case that ████████████ said I touched her arm at one point in the course of a conversation. Assuming that occurred it was in the course of a larger conversation, it was casual and very likely acceptable and not objectionable in the normal course of a friendly conversation.  She said nothing at the time or later.  I have no memory of having touched her on the arm. In other disclosures by this plaintiff the same person, ████████████ told the defendant that she could not point to "anything in particular" that made her uncomfortable and that she thought any behavior that needed to be corrected should be the subject of a warning or discussion in advance of any action or public criticism.

This complaint was raised long after any event and was mentioned by ███████in a private email to this defendant only after the defendant explicitly requested comments and criticism of me on February 26 based on false descriptions circulated to approximately 140 people for comment and additional criticisms based on four instances of inaccurately described conduct circulated to that group.  With this exception, which was never reported to me by ███████ and was never the subject of any comment by her to me, I can think of no instance of anyone at MIT reporting or alleging I engaged in inappropriate touching.


Interrogatory No. 5

Please identify each and every instance in which any person made any complaint, allegation, report, or assertion that you had engaged in sexual misconduct of any kind, including but not limited to unwanted touching, sexual harassment, sexual assault, inappropriate or unwanted sexual or romantic advances, or offensive comments of a sexual nature, at any time.

Answer No. 5

Plaintiff objects that the question is invasive of privacy because it is not limited to anything relevant to SIPB. Further it is not limited to anything factually accurate.

Since 2015 I am aware of no instances where someone reported that I had engaged in any of the above-described conduct towards them.

Interrogatory No. 6

Please identify each and every person with knowledge concerning any event, complaint, allegation, report or assertion included in your responses to interrogatories no. 1-5.

Answer No. 6

Nimit Sawhney
CEO, Voatz, Inc

4

Boston, MA
Address, E-mail address, and phone number unknown

Andrew Sellars
Director, BU/MIT Technology Law Clinic
Boston University School of Law
765 Commonwealth Ave.
Boston, MA 02215
sellars@bu.edu

Michael Specter
Ph. D. candidate, MIT
Somerville, MA
412-535-1510
specter@mit.edu


The inclusion of a person's name on this list is not an admission that they have seen the March 2
E-mail or any of the purported underlying allegations. Any republication is actionable. Nimit
Sawhney has a history of harassing the plaintiff and persons who work with the plaintiff..


Interrogatory No. 7

Please describe in full and complete detail each and every instance in which any person made a
complaint concerning you to the administration of the Massachusetts Institute of Technology
("MIT") or Carnegie Mellon University at any time.

Answer No. 7

Since I joined SIPB in September 2018, there has been one.

On May 15, 2020, Koppel received word that a third party, unidentified but believed to be Voatz,
Inc. and specifically Nimit Sawhney, complained to MIT as to research regarding our published
security research on Voatz's product. MIT investigated and found no wrongdoing.
I have learned in disclosure in this action that the defendant alone with others may have made a
complaint about me as part of a defensive strategy related to the March 2 defamation but I am
not aware of any details of that.

Construing the question very broadly and going back to 2015, I was required to submit an essay
in connection with picking up groceries in my residence hall. Those documents have been
disclosed solely to avoid a discovery dispute.

Interrogatory No. 8

Please identify any incident in which any person made a complaint, report, assertion or allegation to any student- or university-related group at any institution, including but not limited to the MIT Puzzle Club, Mystery Hunt, "Galactic Trendsetters," the Student Information Processing Board, Effective Altruism @ MIT, and/or any living group, that you had made any person uncomfortable or that you had engaged in perceived inappropriate, offensive, improper, or otherwise objectionable conduct or speech, at any time.

Answer No. 8

Objection: Same objections as to questions 1 and 3. In addition, what is perceived by another person is unknowable.  I have no such information.

Interrogatory No. 9

Please identify any instance in which you were removed from, excluded from, or asked to refrain from participating in or interacting with, any student-or university-related group, physical space, or activity, at any time.

Answer No. 9

Since I joined SIPB in September 2018, there were the events from this case, including with Galactic Trendsetters.

While it is debatable whether it falls under this question, I was disinvited from events held by Epsilon Theta house on two occasions in 2019. No specific reasons were given. Plaintiff solely to avoid discovery disputes has disclosed these E-mails.

Interrogatory No. 10

Please state the basis of your claim that the March 2, 2020 Email or the March 12, 2020 Emails caused you economic damage.

Answer No. 10

I am near the beginning of my career. I expect this defamation l to have negative impacts for at least a number of years and possibly my entire professional life. I have experienced in numerous ways the negative impacts of the email already.

The Internet is forever. The defamatory emails will be available to the public forever. The unfavorable impression of me and my character cannot be erased. The incorrect and damaging descriptions of me will reach an ever- widening circle of persons, and is likely to be posted publicly (e.g.: on Twitter). It very likely will come to the attention of any person who attempts to research my background in advance of hiring me or offering a speaking invitation or anything else. I expect I will never exactly know all of the negative consequences because people do not send an email or a note to tell you that they will not buy from your company or hire you or that you are not being invited as a speaker because of what is written in the defamatory emails.  I

expect republications of the defamation to continue and  increase as I increase my marketing efforts post-graduation to reach a larger audience and whenever I attempt or succeed in any professional or private endeavor.

This defamatory description is especially damaging to my current business. Our current product offerings come with personal training and consulting services.  I expect my personal active participation will remain a large part of the business going forward. In that business or any other, no matter how many people are employed or no matter what I do on my own, the taint on my name will continue and will be associated with any business or any professional role that I undertake.  The taint is forever and cannot be erased.

Of the 697 recipients of the March 2 E-mail, all or virtually all of them work in or adjacent my target market (software engineers and their employers). Some occupy positions of considerable influence and authority.  Some of those people in positions of considerable influence are people I knew prior to joining SIPB; those connections are now dead. Some of those people in positions of considerable influence have helped me in the past; those connections are now poisoned. Generalizing: where I previously could have sent a warm E-mail to any SIPB alum (a useful element in sales), the March 2 email is a public denunciation which has poisoned all of those contacts.

I have not ruled out the prospect of someday teaching computer science in a university setting and publishing technical and scholarly papers whether or not I am teaching at a university or elsewhere. Now that possibility is negatively impacted because the recipient list for the March 2 email includes faculty at three of the top Computer Science departments worldwide and many other persons who are accomplished in my chosen profession. .

In giving this answer and throughout I object to any further publication of any aspect of the February 27 and March 2 E-mails or any underlying allegations to anyone even if they have already seen it or heard of these defamations.  A repeat publication is a new harm.


Interrogatory No. 11

Please identify each and every person who has communicated with you concerning the contents of the March 2, 2020 Email or the March 12, 2020 Emails, identify all nonprivileged documents concerning such communications, and set forth the substance of each such communication.

Answer No. 11

Jing Yu
Student, Boston University
c/o James Koppel, 70 Pacific St. #224B, Cambridge, MA 02139
Many conversations beginning March 2.


Zoe Anderson
Student, MIT

7

zanderso@mit.edu
On March 6th, she stated in conversation that she had seen "the SIPB E-mail."

Kliment Serafimov
Redmond, WA
Microsoft Research, title unknown
617-650-5125
In-person conversation, March 6th, stating the March 2nd E-mail existed.  I said it was the cause me feeling upset.
Very brief exchange over instant message, May 6th, referencing remark by Alex Coventry on the defamation.

Josh Alman
Postdoc, Harvard University
Science and Engineering Complex, 150 Western Ave, Boston, MA 02134
(617) 384-7828
In person conversation, sometime between March 6th and March 20. I said I would be staying quiet on Galactic Trendsetters for that reason. I was later expelled.

One or two other persons forwarded that email to me soon after it was published worldwide. I have disclosed those documents.  I do not publicize the March 2 Email.

Interrogatory No. 12

Please state the basis of your claim, if any, that the March 2, 2020 Email or the March 12, 2020 Emails harmed your reputation, identifying in your answer any facts of which you are aware that showing that any person who read the Emails had a lesser opinion of you as a result.

Answer No. 12

This in part is described in answer 10 which I incorporate here as if set forth in full.

In addition the damage is obvious to any reader of the E-mail. It paints me as a monster and denounces me by name as a public menace. One plausible inference is that I am a reprobate incapable of stopping highly offensive conduct. A reader could infer that the unnamed bad behavior involves unnamed and unwelcome sexual misconduct which is possibly criminal. It supposedly threatens the safety and security of the SIPB community and it should have been detected and stopped sooner. The email depicts a modern day Frankenstein detected by heroic leaders who are protecting the community from a serious menace.

Other evidence includes, but is not limited to: reactions of disgust from SIPB members, at least one declaration that my silent presence in a chatroom is cause for expulsion, remarks by people I've never met based on the defamation treating it as reliable, repeated blockings and unfriending by SIPB members on social media (including being unfriended in reaction to a "Happy birthday" wish).

Interrogatory No. 13

Please state the basis of your claim that the March 2, 2020 Email or the March 12, 2020 Emails caused you emotional distress, including in your answer any treatment you have sought or received for said emotional distress.

Answer No. 13

My answer includes answers 10 and 12. The effects of ostracism and contempt are difficult to list fully. They include but are not limited to inability to focus, compulsive ruminations about the defamation and possible scenarios; spikes of anger; relative incapacitation anytime consequences of the defamation occur; sudden feelings of a "need to hide" when in public; loss of social contacts due to the defamation poisoning my social circle; anxiety and anger triggered by events or phrases which remind me of the defamation; frequent anxiety and unpleasant dreams related to SIPB and hatred or ostracism of me.

I do not waive any privileges as to medical treatment. I will provide no testimony about treatment.

Solely to avoid a discovery dispute and without admitting that the position taken by the defendant is valid I have conferred with mental health professionals at various dates since 2015 until the present. This answer is provided solely to avoid a threatened discovery dispute.

Interrogatory No. 14

Please identify any and all criminal charges, restraining order proceedings, civil lawsuits, or other legal proceedings brought against you, or by you, or on your behalf, or in which you were in any way involved, at any time.

Answer No. 14

Outside of this civil action, there have been none, not counting class-action lawsuits.

Interrogatory No. 15

Please identify any disciplinary charges brought against you by any educational institution or employer at any time.

Answer No. 15

Since I joined SIPB in September 2018, none. Construing the question very broadly and going back to 2015, I was required to submit an essay in connection with picking up groceries in my residence hall. Those documents have been disclosed solely to avoid a discovery dispute.

This question also literally includes things from grade school. I exclude all matters from before I was 18.

Interrogatory No. 16

Please identify each person you expect to call as a witness in this action and the substance of such persons' expected testimony.

Answer No. 16

I have not yet identified any such witnesses because I am not yet aware of any facts or any putative facts relied on by the defendant and other persons or used by them to create the March 2 email.  Defendant has delayed in making any informative disclosures.

Interrogatory No. 17

Please identify all persons with knowledge concerning the subject matter of the Complaint in this action.

Answer No. 17

We did so in the initial disclosure on December 2, 2020. What I have learned from the disclosures by this defendant in the in approximately 550 documents is not able to be summarized and is set forth in those documents.

<div align="center">***</div>

<u>Verification</u>

The undersigned person hereby declares that I have read the foregoing document and the contents thereof are true based on personal knowledge, except those matters those matters stated on information and those I believe to be true based on the information and documents presently available to me.


Dated: February 9, 2021                                   /s/ James  Koppel

                                          _____

                                             James Koppel




                                             As to objections:


                                             */s/ Paul Boylan*            
                                             Paul G. Boylan, BBO 052320
                                             Freeman, Mathis & Gary, LLP
                                             60 State Street, Suite 600
                                             Boston, Massachusetts 02109
                                             pboylan@fmglaw.com
                                             Tel: (617) 963-5978

Dated: February 9,  2021

<u>Certificate of Service</u>

I hereby certify that I caused a true copy of the above document to be served upon the named persons as l counsel of record this 4th day of January 2021.

Jeffrey J. Pyle
jpyle@princelobel.com
Michael Lambert
mlambert@princelobel.com
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110
T: (617) 456-8000

*/s/ Paul Boylan*
Paul G. Boylan

12