UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JAMES KOPPEL,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　Plaintiff,　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
v.　　　　　　　　　　　　　　　　 )　　　　　No. 20-cv-11479-LTS
　　　　　　　　　　　　　　　　　 )
WILLIAM MOSES,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　Defendant.　　　　　　　 )
_____)

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNT V OF AMENDED COMPLAINT

INTRODUCTION

Plaintiff James Koppel alleges that defendant William Moses participated in expelling him from a university student group because some of its members, including Moses, did not like Koppel's political views. Based on this, Koppel asks the Court to hold Moses liable under the Massachusetts Civil Rights Act, ("MCRA"), which protects against interference with protected constitutional rights through "threats, intimidation, or coercion." M.G.L. 12, §§ 11(H) and (I).

Koppel's MCRA count fails to state a claim upon which relief may be granted because the Amended Complaint does not allege any facts showing Moses engaged in "threats, intimidation, or coercion" of any kind. Koppel also fails to allege any harm that is "sufficiently serious" to support an MCRA claim, or any interference with a protected constitutional right. To the contrary, to allow Koppel's claim to proceed would violate Moses's protected constitutional rights of free speech and association. Accordingly, Koppel's MCRA claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

BACKGROUND

The following factual recitation is taken from the allegations contained in the Amended Complaint, filed on July 16, 2021, (Doc. No. 54), which are assumed to be true solely for the purposes of this motion.

Defendant William Moses is a graduate student at the Massachusetts Institute of Technology (MIT). (Am. Compl., ¶ 6). In February 2020, Moses was elected Chair of the Student Information Processing Board ("SIPB"), a student-run computer science club. (*Id.* ¶ 18). According to the Amended Complaint, SIPB's purpose is "to encourage the high-level informal exchange of concepts and ideas related to computer science among persons within and outside the university, and to provide and support computing services at the university." (*Id.*, ¶ 8).

Plaintiff James Koppel, like Moses, is a graduate student at MIT. (Am. Compl., ¶ 2). As of February 2020, he was working on a project for SIPB. (*Id.*, ¶ 16).

A member of SIPB may be elected to the elevated status of "keyholder." (Am. Compl. ¶ 14). According to the Amended Complaint, on February 10, 2020, SIPB keyholder Cel Skeggs stated during a SIPB meeting "that Koppel should not be made keyholder because Koppel had made a political comment in a chatroom the preceding September, stating something that Skeggs disliked." (Am. Compl., ¶ 17). The Amended Complaint alleges that Moses "began asking acquaintances of Koppel to share stories that would be damaging to Koppel." (*Id.,* ¶ 18).

On February 27, 2020, Moses asked to speak with Koppel, and the two met for approximately one hour. (Am. Compl., ¶¶ 23-24). During the meeting, Koppel alleges, Moses said that Koppel "was being expelled" from SIPB because he had caused unnamed "members of SIPB to be 'uncomfortable' or to 'feel uncomfortable' because of public political statements by

2

Koppel about matters of public interest. Koppel made some of those statements in a public chatroom the preceding September." (*Id.*, ¶ 25).

On the same date, Moses sent an email to a group of SIPB keyholders on a mailing list called "sipb-private," announcing "Koppel's expulsion." (Am. Compl., ¶ 31). The February 27 email states that Koppel "has been given several opportunities to change his behavior and failed to do so," and further stated: "I am sad that this is something that our members had to endure" but "SIPB will take a strong stance against sexual harassment." (Am. Compl., ¶ 32).

On March 2, 2020, Moses sent an email to "sipb-office@mit.edu," a larger distribution list of SIPB-affiliated persons. (Am. Compl., ¶ 34). The email states as follows.

> Hello all,
>
> I am writing to let you know about a hard conversation that SIPB keyholders had this past week about SIPB member Jimmy Koppel (jkoppel).
>
> Many keyholders shared stories about how he had made them deeply uncomfortable, which continued in spite of requests to stop. Given the severity, consistency, and widespread nature of his interactions, we have requested that jkoppel refrain from participating in SIPB any more (interacting in SIPB spaces, participating in SIPB projects & events, etc). I have already spoken with jkoppel informing him of this, which he has agreed to.
>
> This decision was not taken lightly, but is a necessity that and reflects both the need for SIPB to be a place where everyone is comfortable and the will of the current keyholders.
>
> This circumstance and required response was quite exceptional and also reflects a need for SIPB to do better to be a safe environment for everyone. Specifically, we need to establish mechanisms that make it easy for members to voice their concerns when they are made uncomfortable as this had apparently gone on for some time. At minimum, we need to introduce some sort of anonymous reporting as keyholders only felt comfortable sharing anonymously or just to the chair. We will discuss this at the next EC meeting on 3/6 and I would encourage all members to contribute their ideas.
>
> SIPB is not just a club of those who care about computing, but it is first and foremost a community where everyone should feel safe and supported. If someone ever makes you uncomfortable, you can always bring this up to me or

any member of the EC. We will respect any requests for confidentiality, including not sharing with other EC members.

> Sincerely,
> The Chair

A copy of the March 2 email is attached hereto as **Exhibit A**.[1]

On March 12, 2020, the Executive Committee of SIPB sent a clarifying email to the same distribution list. (Complaint, ¶¶ 28-29). The email stated:

> Hello all,
>
> We are writing in connection with an email sent on March 2 by William Moses <wmoses@mit.edu> on behalf of the SIPB executive board (the email).
>
> We believe that transparency is an important principle, but that email included certain details relating to Mr. James Koppel (jkoppel) that, on further reflection, we have concluded could have remained within the SIPB leadership. I apologize on behalf of the SIPB executive board.
>
> In addition, the email conveyed several points which we wish to clarify. James was not informed or "warned" of any prior alleged conduct by SIPB leadership, nor did he fail or refuse to cure or alter any conduct after any warning or warnings from SIPB leadership.
>
> Although not our intent, the email may have given the impression that any issue related to this subject was clear or not disputable. On the contrary those communications involved discussion of points on which reasonable persons can and do disagree.
>
> We apologize for any resulting confusion or misperceptions.
>
> Sincerely,
> The Executive Committee of the Student Information Processing Board

A copy of the clarifying email is attached hereto as **Exhibit B.**

---

[1] The Court may consider the full text of the referenced emails without converting this motion into one for summary judgment, notwithstanding the fact that Koppel's complaint does not quote the emails in full or attach them as an exhibit. *Fudge v. Penthouse International, Ltd*., 840 F.2d 1012, 1015 (1st Cir.), *cert. denied*, 488 U.S. 821 (1988) (district court properly considered article, which was "central" to defamation claim, on motion to dismiss); see also *Albright v. Morton*, 321 F. Supp. 2d 130, 134 and n.2 (D. Mass. 2004), *aff'd sub nom. Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005) (considering publications at issue in defamation suit "because they are essential to plaintiffs' complaint").

On April 13, 2020, Koppel filed a complaint against Moses in the Middlesex Superior Court. Moses removed the action to this Court, and on October 27, 2020, the Court dismissed all counts except Koppel's defamation claim. (Doc. No. 24).

The Court issued a Scheduling Order requiring that any amendments to pleadings be filed by April 16, 2021. (Doc. No. 30). On the last day of this period, Koppel filed a motion for leave to amend his complaint. His proposed amended complaint removed the dismissed counts (II through IV), added an allegedly defamatory communication not included in the original complaint (the February 27 email), and included a new "Count V," for violation of the Massachusetts Civil Rights Act. The Court allowed the motion to amend. On July 16, 2021, Koppel filed his Amended Complaint (Doc. 54).

The Amended Complaint asserts that Moses and others expelled Koppel from SIPB and published the alleged defamation out of a desire to "punish Koppel for his speech about matters of public interest." (Am. Compl., ¶ 72). Koppel alleges that he "holds strong views as to certain matters of public interest and debate," including advocating for "gender equality and free speech." (Am. Compl., ¶ 67). He claims that he has sent emails arguing "against efforts to intimidate participants at a 'Free Speech Rally' to be held in Boston." (*Id.*, ¶ 71). He also alleges that since 2018 he has spoken up in a "department-wide meeting" about law and morality, and made comments "on public websites in support of gender equality." He also published online public communications about the Jeffrey Epstein/MIT scandal. (*Id.* at ¶ 73). Moses, Koppel alleges, sought to make an "example" of him for his "political speech which made people 'uncomfortable.'" (*Id.,* ¶ 74). Koppel alleges that he has restrained his own speech in the wake of being removed from SIPB:

> The effect of the expulsion and the defamations has been near-total self-censorship by Koppel after the February 27 and March 2 defamation, including

3864318.v1

> hesitancy to 'like' a slightly political statement by a friend on social media. Koppel declined an invitation to appear on the Fox News show 'The Ingraham Angle' to speak about a matter of public interest on March 19 in part due to this same fear."

(Am. Compl., ¶ 76).

ARGUMENT

The Massachusetts Civil Rights Act creates a remedy for "any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with by any person, whether or not acting under color of law, by threats, intimidation or coercion." *Currier v. Nat'l Bd. of Med. Examiners*, 462 Mass. 1, 11–12 (2012) (emphasis added)(internal quotations and brackets omitted), citing G.L. c. 12, §§ 11I, 11H. "To prevail, a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion." *Id.* at 12. "Although the act reaches private actors, it was not intended to create, nor may it be construed to establish, a 'vast constitutional tort.'" *Buster v. George W. Moore, Inc*., 438 Mass. 635, 645 (2003), quoting *Bell v. Mazza*, 394 Mass. 176, 182 (1985) (internal citation omitted).

Koppel's MCRA claim fails for three reasons. First, Koppel has not alleged facts showing that Moses engaged in any "threats, intimidation or coercion." Second, Koppel has failed to allege facts showing that Moses's supposed interference was sufficiently serious to form the basis of an MCRA claim, as courts have required. Third, Koppel has failed to allege interference with any recognized constitutional right. To the contrary, for the Court to hold Moses liable under the MCRA would violate Moses's own free speech and association rights, and those of the other members of SIPB.

3864318.v1

I.      KOPPEL'S AMENDED COMPLAINT FAILS TO ALLEGE FACTS SHOWING
        THREATS, INTIMIDATION, OR COERCION.

For purposes of the MCRA, "[a] 'threat' means 'the intentional exertion of pressure to

make another fearful or apprehensive of injury or harm.'" *Thomas v. Harrington*, 909 F.3d 483,

492 (1st Cir. 2018) (citing *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467,

474 (1994). "Intimidation" means "'putting in fear for the purpose of compelling or deterring

conduct.'" *Id.* "Coercion" means "'the application to another of such force, either physical or

moral, as to constrain him to do against his will something he would not otherwise have done.'"

*Id.* The standard for determining whether conduct constitutes threats, intimidation, or coercion

under the MCRA is an objective, reasonable person standard. *Kappa Alpha Theta Fraternity,

Inc. v. Harvard Univ.*, 397 F. Supp. 3d 97, 109 (D. Mass. 2019).

The "threats, intimidation, or coercion" element of MCRA claims is demanding; indeed,

successful MCRA claims usually involve a threat of physical harm. *Thomas*, 909 F.3d at 492 ("It

is rare for a MCRA claim to involve no physical threat of harm."). There is a "narrow" exception

to the general requirement of physical threats under which "purely economic pressures may

constitute actionable coercion under the MCRA," but "Massachusetts courts have required 'a

pattern of harassment and intimidation' to support a finding of non-physical coercion under the

MCRA." *Id.* at 493, quoting *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 594 (2001).

Here, there was no threat, intimidation, or coercion of any kind—physical, moral,

economic, or otherwise. Koppel's amended complaint does not allege that Moses exerted

"pressure" on Koppel to make him "fearful or apprehensive of injury or harm;" that Moses

sought to "compel or deter conduct" by Koppel; nor that Moses sought to "constrain [Koppel] to

do against his will something he would not otherwise have done." *Thomas*, 909 F.3d at 492.

There also is no allegation of any "pattern of harassment and intimidation" that constituted

"coercion." *Id.* at 493. Rather, Koppel complains only that Moses expelled him from SIPB because of his political beliefs, and sent an email to the group stating that Koppel had made SIPB members uncomfortable.

This allegations are insufficient to meet the MCRA's requirement of "threats, intimidation, or coercion." G.L. c. 12, § 11(I). In an analogous vein, the Supreme Judicial Court has held that an at-will employee has no MCRA claim where a private employer fires the employee based on his or her speech, the because "the termination, or threatened termination, of at-will employees is not coercive in the relevant sense . . . ." *Nolan v. CN8*, 656 F.3d 71, 77 (1st Cir. 2011) (upholding summary judgment on news anchor's claim that his termination for speech protesting an award to Fox personality Bill O'Reilly violated MCRA), citing *Webster v. Motorola, Inc*., 418 Mass. 425 (1994); *Korb v. Raytheon Corp*., 410 Mass. 581 (1991) (finding "no improper interference with secured rights" where at-will employee's speech made him ineffective advocate for company). Likewise, a student club's decision to "expel" a member, allegedly because of his political views, is not threatening, intimidating, or "coercive" within the meaning of the MCRA.

Koppel also cannot hitch his MCRA claim to his defamation claim by arguing that Moses was motivated to defame Koppel because of his politics. (Am. Compl., ¶ 86). The MCRA does not punish mere political motivations; it protects against "threats, intimidation or coercion" causing deprivations of rights "secured by" the federal or state constitutions or laws. G.L. c. 12, § 11(I). There is no statutory or constitutional right not to be defamed. *Pendleton v. City of Haverhill*, 156 F.3d 57, 62–63 (1st Cir. 1998) (an interest in reputation is not a "liberty" or "property" interest protected by the constitution).

8

II.     KOPPEL'S ALLEGED HARM—EXCLUSION FROM A STUDENT GROUP—IS
        NOT "SUFFICIENTLY SERIOUS" TO SUPPORT A CLAIM UNDER THE MCRA.

Any alleged threat, intimidation, or coercion must be "sufficiently serious" if it is to

support an MCRA claim. *Kappa Alpha Theta Fraternity, Inc. v. Harvard Univ*., 397 F. Supp. 3d

97, 109 (D. Mass. 2019). As a matter of law, exclusion from a student group does not suffice. In

*Bally v. Northeastern Univ*., 403 Mass. 713, 720 (1989), a student argued that a university policy

requiring drug testing as a condition of participation in intercollegiate sports violated the MCRA.

The Supreme Judicial Court held that the student's claim failed because he "allege[d] neither an

individualized threat nor a threat of serious harm. Northeastern merely excluded [plaintiff] from

intercollegiate sports. He is, therefore, not entitled to relief under the Civil Rights Act." *Id.*

(emphasis supplied).

If the exclusion of a student from intercollegiate sports is not a "serious harm," then

neither is Koppel's expulsion from a computer science club. Count V should be dismissed for

this reason, as well.

III.    KOPPEL FAILS TO ALLEGE ANY INTERFERENCE WITH A PROTECTED
        CONSTITUTIONAL RIGHT.

The MCRA requires a plaintiff to allege facts showing the defendant interfered with a

right "secured by" statute or by the Constitution of the United States or Massachusetts. *Roman v.*

*Trustees of Tufts Coll.,* 461 Mass. 707 (2012). Koppel alleges Moses interfered with his

constitutional right to "free speech" by expelling him from SIPB. (Am. Compl., ¶ 86). But

Moses is not an official of the Commonwealth or of the federal government, whose actions are

constrained by the First Amendment; he is a private person. Koppel's theory, apparently, is that

the MCRA protects him from private disapproval of his speech, or prohibits private persons from

disassociating themselves from him for that reason.

Koppel's argument fails because he has no constitutionally- or statutorily-secured right to be free from private, negative reactions to his speech. In fact, the only relevant constitutional right here belongs to Moses, who (like other members of SIPB) has expressive rights of his own that cannot be infringed by court processes. One such right is the First Amendment right to freedom of association, which "plainly presupposes a freedom <u>not</u> to associate." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 680 (2010) (emphasis supplied). "Insisting that an organization embrace unwelcome members," the Supreme Court has held, "'directly and immediately affects associational rights.'" *Id.*, quoting *Boy Scouts of America v. Dale*, 530 U.S. 640, 659 (2000). For the court to hold Moses liable in damages because of his alleged participation in a decision that SIPB would no longer associate with Koppel would violate the First Amendment associational rights of Moses and other SIPB members. *Cf. Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974) (striking down Florida statute that required newspaper to public replies of persons criticized in the newspaper because "[c]ompelling editors or publishers to publish that which reason tells them should not be published" is the same as a prohibition on speech).

The First Circuit has held that claims like Koppel's under the MCRA must be rejected, because imposition of liability would violate a defendant's constitutional rights. *Redgrave v. Bos. Symphony Orchestra*, Inc., 855 F.2d 888, 904 (1st Cir. 1988). Where a plaintiff asserts that a private party infringed on free speech in violation of the MCRA, "the plaintiff's statutory 'free speech' right against the defendant is to be measured against the defendant's constitutional right against the state." Expressing "grave concerns about the implications of such a conflict," the court noted that "[t]he freedom of mediating institutions, newspapers, universities, political associations, and artistic organizations and individuals themselves to pick and choose among

ideas, to winnow, to criticize, to investigate, to elaborate, to protest, to support, to boycott, <u>and even to reject</u> is essential if 'free speech' is to prove meaningful." *Id.* (emphasis supplied). Governments, including courts, cannot "referee disputes between speakers lest such mediation, even when it flies the banner of 'protecting speech,' interfere with the very type of interest it seeks to protect." *Id.*

Here, Koppel seeks to hold Moses liable for exactly what *Redgrave* holds is protected: investigating, criticizing, and rejecting another person's speech. (Am. Compl., ¶¶ 70-76 (complaining that Moses investigated examples of offensive speech by Koppel, sought to make an "example" of Koppel for his "political speech which made people 'uncomfortable," and had a motivation to "punish" Koppel for speech)). (*Id.,* ¶ 74). Taken to its logical endpoint, Koppel's theory would mean that no person or group can publicly criticize, or disassociate from, another person based on that person's politics without violating the MCRA. A state Republican Party could not exclude a member because she espouses the tenets of socialism; a private poker club could not expel a member for shouting Nazi slogans during a game; a local civil rights group must welcome and tolerate an avowed bigot. That is not what the MCRA requires; if it did, it would be flatly unconstitutional.

11

<u>CONCLUSION</u>

The MCRA does not create a "vast constitutional tort" that extends even to the minor

issue of a student group's decision to remove a member. *Buster,* 438 Mass. at 645. Rather, its

cause of action is limited to "sufficiently serious" harms caused by deprivations of established

rights through "threats, intimidation, or coercion." For the foregoing reasons, Koppel has failed

to state a claim under the MCRA, and Count V of the Amended Complaint should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

WILLIAM MOSES

By his attorney,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO # 647438)
jpyle@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the CM/ECF system will be sent
electronically to the registered participants as identified on the NEF (NEF) and paper copies will
be sent to those indicated as non registered participants on August 6, 2021.

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle