UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
James Koppel,                       )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )   Civil Action No. 1:20-cv-11479-LTS
William Moses,                      )
                                    )
            Defendant.              )
_____)

Memorandum in Opposition to Defendant's Motion for Dismissal of Count V

Plaintiff James Koppel ("Koppel") by counsel submits this memorandum on opposition to the motion by the defendant to dismiss Count V of the Amended Complaint. The Amended Complaint was allowed by this Court on July 15, 2021. Docket 54. It was served on or about July 16, 2012. Docket 55. Moses answered the Amended Complaint on August 6, Docket 61, and that day moved to dismiss Count V. Docket 59. In opposition, plaintiff Koppel refers to and relies on the allegations in the Amended Complaint, the pleadings to date, and the points raised in this memorandum.

1. The Standards Applicable to the Motion.

On a motion to dismiss this Court must assume the truth of all well-pleaded facts and give plaintiff the benefit of all reasonable inferences therefrom. Ruiz v.

Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). Well-pleaded allegations assert facts in a manner which is not conclusory or speculative. Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018). All inferences must be drawn in favor of the party opposing the motion. Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Authority, No. 20-1096, 2021 U.S. App. LEXIS 19694, at *16 (1st Cir. July 1, 2021).

To survive a motion to dismiss the complaint must state a claim that is "plausible" on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level,... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell, supra at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant has acted unlawfully. Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009).

2. The Massachusetts Civil Rights Act.

The Massachusetts Civil Rights Act provides a remedy for <u>interference or attempts to interfere</u> with the exercise or <u>enjoyment</u> of rights secured by the Constitution or laws of the United States <u>or rights secured by the Constitution or laws of the Commonwealth</u> by threats, intimidation, or coercion. G.L.c. 12, § 11(H). Redgrave v Boston Symphony Orchestra, 399 Mass. 93, 98 (1987) (emphases

added). Section 11(I) authorizes a private cause of action. The remedy provided in §§ 11(H) and 11(I) is coextensive with the remedy provided under Federal law by means of 42 U.S.C. § 1983 (1982), except that the State statute, MCRA, does not condition the availability of the remedy on State action. G.L.c. 12, § 11(H). Redgrave supra, 399 Mass. at 98 (1987).

This SJC description of the purpose and scope of MCRA is authoritative. The description makes clear that all rights and remedies under MCRA are independent of common law torts. The two are apples and oranges. MCRA is more broad than any common law tort because it includes attempts to interfere with the enumerated protected rights. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 593 (2001).

MCRA, like other civil rights statutes, is remedial in nature and "is entitled to liberal construction of its terms." Reproductive Rights v. President of Univ. of Mass., 45 Mass. App. Ct. 495, 506 (1998) and cases there.

Argument: Count V of the Amended Complaint States a Claim

3. Moses violated MCRA in multiple ways.

The Amended Complaint includes detailed allegations as to the origin of the defamations and the fact that the defamations repeatedly identified Koppel by name as a person who made people "uncomfortable," plus other false and widely published insults.

Koppel suffers from mild autism. Amended Complaint, ¶ 3. Defendant Moses was, for a time and up to a date immediately prior to these events, a close friend of Koppel or at least a friend. Moses surely knew that Koppel has mild autism, and that Koppel has worked hard to limit his disability. Amended Complaint, ¶¶ 3, 7.

Apart from Koppel's autism, the multiple obvious defamations of Koppel by Moses on February 27 (see Mem. 3) were indisputably based in part on political speech by Koppel, namely his postings on the internet and specifically several posts in September 2019, five months prior to the campaign against him which led to public denunciations. Amended Complaint, ¶¶ 25, 69-73, 75.

Moses told to Koppel in person on February 27 that Koppel's online political advocacy <u>unrelated</u> to the student group was the cause of his expulsion. Amended Complaint, ¶ 25. Koppel's online political advocacy is the <u>only</u> fact Moses admitted on February 27 as the basis for the expulsion. Id. Moses in part confirms the Koppel description of the February 27 meeting. Moses admits he learned of complaints about Koppel's public political speech from an SIPB keyholder, Skeggs, on February 10, seventeen days prior to the February 27 expulsion and defamation. Doc. 61, Moses Answer, ¶ 70.[1]

---

[1] At the time of the February 27 in-person meeting, Moses had not distributed to 140 members the February 27 denunciation of Koppel as guilty of inveterate, furtive sexual harassment "despite warnings." See Mem. 3, Amended Complaint, ¶¶ 30, 31.

As a direct result of the defamations and other wrongdoing of the defendant, the plaintiff has been forced to severely limit all of his communications on subjects of public interest to limit or prevent retaliatory republication of the defamations. Amended Complaint, ¶ 86. Koppel as a result has refrained from email communications on matters of public interest. Id. On March 19, 2020 Koppel declined at least one opportunity to appear on a worldwide cable channel to discuss a matter of public interest. Id. The Amended Complaint sufficiently alleges wrongdoing by Moses which highlighted the plaintiff's specific disability by needless use of his name (Id. ¶¶ 3, 7, 27-44) and identification of him by name as someone who repeatedly makes others "uncomfortable" or "deeply uncomfortable.". Mem. Exhibit A. Moses initiated and authored the widespread false communications on February 27 saying that plaintiff by name was a relentless, incorrigible perpetrator of severe sexual harassment (Mem. page 3, top). Moses did so by relying in part on Moses' furtive solicitation of criticisms of Koppel based on Koppel's public speech (emails and posts) on matters of public interest. Id. ¶¶ 69-75.

Koppel as a result now cannot participate in public discussions without fear of provoking new publications of the defamations. Amended Complaint, ¶ 76. He is silenced and ostracized because he is labelled as a person who, despite warnings, engaged in "severe, persistent, and widespread" "sexual harassment" of MIT students for an "extended period of time" an "exceptional circumstance" which

"required" public denunciation. Amended Complaint, ¶¶ 46, 47, 50, 79; Mem. 3; Mem. Exhibit A. According to Moses, no community is "safe" if this plaintiff is free to interreact with anyone. Mem. Ex. A.

Koppel, baselessly and needlessly defamed by name to the worldwide community of computer scientists, is now effectively limited or prohibited from speech and association on a lifelong basis. Amended Complaint, ¶¶ 58, 59, 66. He is barred or constrained in all communications with university colleagues and other accomplished persons worldwide. Id. The expulsion, plus the defamations, deprives Koppel of a wealth of tangible and intangible worldwide resources supported by the university and its alumni network involving countless persons in Koppel's chosen field. Id. The expulsion plus the defamations prevents Koppel from free and open pursuit of his professional interests, and from pursuit of countless opportunities of particular value to him. Id. The forced deprivations as to ideas, associations, speech, and business opportunities are an immeasurable loss. Id. They damage Koppel separately from the defamations as to his legitimate pursuit of professional interests and collaborations.

The only report Moses received prior to expulsion regarding Koppel's behavior within SIPB is that one member found him "subtly off-putting" (Amended Complaint, ¶ 33), undoubtedly due to Koppel's limited autism (Amended

6

Complaint, ¶ 3). Use of this report to justify Koppel's expulsion is discrimination based on a handicap.[2]

The facts identified here and the detailed allegations in the Amended Complaint implicate and allege violation of, at a minimum, the following provisions of the Massachusetts Declaration of Rights, our Constitution, identified in the Amended Complaint at ¶ 85.

> Article CXIV.
>
> No otherwise qualified handicapped individual shall, solely by reason of his handicap, be <u>excluded from the participation in</u>, denied the benefits of, <u>or be subject to discrimination</u> under <u>any program or activity</u> within the commonwealth.
> Article LXXVII.
>
> The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth. <u>The right of free speech shall not be abridged.</u>
>
> The same facts also implicate other provisions of the Massachusetts Declaration of Right including these:
>
> Part the First, Article XI.

---

[2] Koppel does not advertise his autism. Once Koppel was denounced by name, however, he became the subject of secondary comment. People not already aware of his autism very likely drew a connection between his autism and the accusations that he persistently made people "uncomfortable." Koppel's limited autism contributed to inaccurate negative comments about Koppel solicited by Moses starting on February 26, 2020. One February 26 comment favorable to Koppel refers to autism in general. Moses concealed that comment from the February 26 audience of 140 people.

> Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, <u>or character</u>. <u>He ought to obtain right and justice freely</u>, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws; and
>
> Part the First, Article XXIX.
>
> It is essential to the <u>preservation of the rights of every individual, his life, liberty, property, and character</u>, that there be an impartial interpretation of the laws, and administration of justice.

The Massachusetts State Constitutions may protect individual liberties with rights that are "more expansive than those conferred by the Federal Constitution." <u>Roman v. Trustees of Tufts College</u>, 461 Mass. 707, 712-713 (2012).

4. <u>Threats, coercion or intimidation are indisputably and adequately alleged.</u>

Moses argues that the Amended Complaint fails to adequately allege threats intimidation or coercion within MCRA. Mem. 6-8. Those arguments are makeweight and unsupported by the cited cases.

A "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. Coercion involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." <u>Reproductive Rights v. President of Univ. of Mass.</u>, 45 Mass. App. Ct. 495, 506 (1998) and cases there.

8

Actionable "threats, intimidation or coercion" under MCRA take on many forms. Reproductive Rights, supra, 45 Mass. App. Ct. at 506 (1998) (sealing off a building by a university to prevent a meeting was a threat, intimidation or coercion under MCRA). See Batchelder v Allied Stores, 393 Mass 819, 822 (1985) (implied threat of arrest or removal by security guard); Bell v. Mazza, 394 Mass. 176, 179 (1985) (defendant homeowners threatened to do "anything," "at any cost" to keep plaintiffs from constructing a tennis court and informed plaintiffs that the defendants had formed an association to prevent the plaintiffs from exercising their rights); Redgrave v. Boston Symphony Orchestra, Inc., 399 Mass. 93, 100 (1987) (cancellation of contract); Planned Parenthood League v. Blake, 417 Mass. at 474 (protestors physically blocked clients and staff from exercising their rights); Karetnikova v. Trustees of Emerson College, 725 F. Supp. 73, 78 ( D. Mass. 1989) (cancellation of contract based on protected speech is a MCRA violation ); Maroney v. Fiorentini, 405 F. Supp. 3d 282, 293 (D Mass. 2019) (demand to dismiss lawsuit alleged MCRA violation).

Each of the three alternative requisites of MCRA liability involves a subjective or non-observable element. "Pressure" is present but not visible when, for example, neighbors join together to prevent one person from exercising his or her civil rights as in Bell, supra. Public expulsion from all university spaces used by this student group, including public lectures that Koppel organized prior to expulsion

(Amended Complaint, ¶ 16), carries with it the implied threat of arrest and a justified feeling of intimidation, exactly as in Batchelder, supra. Koppel's baseless and complete expulsion from all online and physical facilities of the worldwide group is similar to the exclusion from a university building in Planned Parenthood, supra, except the harm to Koppel is to him alone, is far worse in duration, and lacks even a pretextual justification.

Here coercion is indisputably shown. Coercion is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done" (emphasis added). Currier v. National Bd. of Med. Examiners, 462 Mass. 1, 12 (2012). Koppel immediately protested his expulsion by Moses which was done in violation of official policy. Amended Complaint, ¶¶ 28, 29, 43. Coercion is thereby indisputably shown.[3] These same facts also show threats and intimidation. Koppel was expelled, humiliated, and defamed by name as persecution for political statements unrelated to SIPB. A reasonable factfinder could find these events would tend to cause a reasonable person to feel intimidated as to public speech, as was Koppel. Amended Complaint, ¶ 36 (demand for retraction); 69-71 (misuse of political speech); 76 (self-censorship); 69-71 (deprivation of associations and speech).

---

[3] Moses falsely told the world on March 2, 2020 that Koppel assented to his expulsion. Exhibit A.

10

Threats, intimidation and coercion under MCRA do not always require physical violence. Mem. 7. Defamation can cause greater lasting injury than physical violence. If a physical element were required, and it is not, the worldwide publication of defamations is a physical event. The expulsion from SIPB physical space is a physical event because it is enforced by threat of arrest. Expulsion from the physical space is no different from slamming the door in the face of the plaintiff or physically expelling him if he were ever to violate the expulsion order.

MCRA does not require proof or allegation of a pattern of wrongful behavior, nor is it the case that Massachusetts courts have required allegation or proof of a "pattern" of coercion, intimidation, or threats to show liability under MCRA. But see Mem. 7, citing Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 594 (2001). Howcroft reverses a denial of summary judgment. The words quoted by the defendant (Mem. 7: "a pattern of harassment or intimidation") are not found in Howcroft. They are a reference, by a different court, to the strong evidence in Howland. Neither case requires a "pattern" of threats, intimidation, or coercion. Mem. 7. There is no "pattern" requirement in the MCRA and no identified case supports a "pattern" requirement. The contrary argument in the Motion (Mem. 7-8 arguing that "a pattern of… intimidation") is needed, is unsupported by any case law and is illogical. A coherent judicial opinion does not define one term in a statute (intimidation) by use of an alternative term in the same statute (coercion). To do that

11

would be circular and would distort the statute. The defendant's arguments (page 7, middle, to 8, top) as to non-physical coercion [4] and "patterns" are inaccurate.

If a pattern were needed under MCRA (Mem. 7), and it is not, transmission of multiple defamatory E-mails (Amended complaint, ¶¶ 18-21, 31-39) and ongoing publications (Amended Complaint, ¶ 57) constitute a pattern.

5. <u>The harms alleged by Koppel are indisputably serious [sic] within MCRA case law.</u>

Defendant argues that the harms alleged by Koppel are not sufficiently serious within case law which addresses the application of MCRA. Mem. 9, top. This argument is wishful thinking. <u>Bally v. Northeastern Univ.</u>, 403 Mass. 713, 718-719 (1989) Mem. 9, involves allegations by a plaintiff which did not satisfy the requirements of MCRA because the sole plaintiff there alleged that a rule of general impartial application by a university was, as to him, a violation of a constitutional right. MCRA does not provide a remedy for neutral generalized regulations of broad application. Id at 719. MCRA does not provide a remedy for one individual impacted by a regulation which is applied to numerous other persons on a nondiscriminatory basis. Id. The exclusion from intercollegiate sports was not coerced and is not

---

[4] No identified case employs the words or the concept of "non-physical coercion." Mem. 7.

cognizable because any "harm" is the result of the voluntary choice of the plaintiff not to participate in universal urine testing. Id at 720.

Defendants' only other case on this point, Kappa Alpha Theta Fraternity, Inc. v. Harvard Univ., 397 F. Supp. 3d 97, 109 (D. Mass. 2019) (Mem. 9) is similar to Bally and is expressly decided on the same basis as Bally: "Just as the drug-testing policy at issue in Bally was found to apply indiscriminately to all student athletes (and thus insufficiently particularized)" the defendant's policy in Kappa applied to all students and could not support a MCRA claim because a policy of general application is not coercive. It could be avoided by attending a different school. Kappa, supra, at 109.

These cases are irrelevant. Koppel alleges civil rights violations as to him alone. He is the sole victim. He does not complain that he is harmed by any rule of general application. He asserts the opposite. The cases Moses cites (Mem. 9) turn on what counts as harm and what counts as coercion. The distinctions drawn are principled and qualitative. The cited cases use the phrase "serious harm" as shorthand for individual harm not able to be avoided. They do not suggest that any violation of MCRA is ever dismissed because the harm is perceived to be trivial or unimportant in a quantitative sense.

6. <u>The amended complaint sufficiently alleges violations of MCRA.</u>

Moses argues that Koppel does not allege any violation of a right secured by the state or federal constitution. Mem. 9-11. He points out that he is a private person, not a state actor. Id. That is irrelevant under MCRA. MCRA applies to private persons without need of state action. Point 2, above; <u>Redgrave, supra.</u>

The motion text offers an inaccurate, harmless version of the events. The facts in the Amended Complaint do not involve merely Moses' "private disapproval" or "private negative reaction" to Koppel's political speech or to any other words or conduct by Koppel. Mem. 9, 10. The Amended Complaint does not allege that Moses alone quietly chose not to associate with Koppel as of February 27 or that he lawfully encouraged others to do the same Mem. 10, 11.

Moses admits he alone expelled Koppel from SIPB (Mem. 9, bottom; Mem. 10 top) but also asserts that he is protected as mere member of a group which collectively decided by some appropriate and lawful action not to associate with Koppel and did so without causing any unlawful injuries to Koppel. Mem. 10, top.

Collective action or authorization is not raised as defense (Document 61, Answer, pp. 15, 16). It lacks any evidence. If this is a possible defense for Moses, it is not an argument for dismissal of Count V. Moses also asserts that he had a limited privilege to confer with the Executive Committee (Document 61, defense 3). A a

privilege to share confidential information does not include worldwide false denunciations, or any of the other wrongs alleged.

Moses also argues that the "only relevant [First Amendment] right here belongs to Moses." Mem. 10. That is surely wrong. Koppel openly alleges violation of his right to speak on matters of public interest, punitive retaliations for protected speech unrelated to SIPB, and violations of other rights including Koppel's right to associate and speak and enjoy his liberty free of the severe taint caused by the defamations. Further, the Massachusetts Bill of Rights protects Koppel and in at least two instances specifically identifies "character" as constitutionally protected. See pages 8, 9 above.

Moses (Mem. 8) asserts there is no federal constitutional right not to be defamed, there being only a civil tort remedy. That is irrelevant to MCRA. MCRA is more broad than federal constitutional rights and does not require state action. Point 2 above. Defamation and other violations of law are not constitutionally protected expression:

> The First and Fourteenth Amendments have not stripped private citizens of all means of redress for injuries inflicted upon them by careless liars. The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored.

Rosenblatt v. Baer, 383 U.S. 75, 93-94 (1966) (Stewart J., concurring).

The issue on this motion is not defamation alone, but whether Koppel has sufficiently alleged injuries to his state or federal constitutional rights divorced from any requirement of state action. Point 2, above. The Amended Complaint alleges defamation as part of a larger fact pattern involving retaliation for protected political speech, public humiliation by name, plus public expulsion from the physical premises, plus deprivation of lifetime benefits of a university-supported student group and its decades-old alumni network which offers lifelong opportunities for speech and associations. Those combined facts state a claim under MCRA and do not merely allege defamation. Mem. 8, bottom.

The Moses arguments that Koppel shows no injuries to Koppel's constitutional rights (Mem. 9-11) miss any mark because they describe possible defenses for Moses, not any inadequacy of the Amended Complaint. Moses argues that Moses enjoys a right to free speech and rights of free association. Mem. 10-11. That is undeniable but not necessarily a sufficient defense. Moses asserts or suggests (Mem. 10-11) that he was authorized by SIPB to initiate false rumors, to selectively solicit accusations against Koppel by his peers, and to falsely denounce Koppel by name to worldwide audiences as a relentless sexual predator. No facts show that, and any such possible Moses defenses are irrelevant on this motion.[5]

---

[5] The cases cited by Moses as to associational rights (Mem. 9-10) are not applicable to any facts here. See continuation of this note on next page.

The only question on this motion is whether the Amended Complaint adequately alleges violations of Koppel's constitutional rights including Koppel's right to free speech; his right to preserve and enjoy his reputation and character free of false taint; his right to protection of his character from false taint; his right to speak and communicate free of false taint; his right to enjoy existing associations and make new ones free of false taint; and his freedom of association, to name a few. All of these were gravely damaged by Moses.

Redgrave v. Boston Symphony Orchestra Inc., 855 F.2d 888, 904 (1988) (Mem. 10-11) is inapplicable or irrelevant on this motion. Redgrave on appeal

---

Note 5 (continued) Roman v. Trustees of Tufts Coll., 461 Mass. 707 (2012), Mem. 9, finds no violation of MCRA because a governmental actor would be allowed to restrict speech in a public forum in the same manner as was done by the accused private defendant in Roman. The restrictions were reasonable and content-neutral. Id. at 307. Exclusion after public denunciation based in part on Koppel's public speech, plus worldwide false condemnation of Koppel by name is not at all similar.

Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. Of the L. v. Martinez, 561 U.S. 661, 680 (2010) (Mem. 10) upheld a policy which permitted university financial support if "all comers" were allowed to participate. The mandate to require membership could be avoided by giving up the financial support. Nothing in CLS suggests constitutional protection for Moses' conduct in expelling Koppel by use of worldwide defamations.

Boy Scouts of America v. Dale, 530 U.S. 640, 659 (2000) (Mem. 10) upheld the right of an organization to exclude members who actively advocated views inconsistent with the positions of the organization. It does not imply constitutional protection for a person who purports to expel one member of a voluntary association based on his political speech by use of widespread falsehoods.

addressed the legitimate (non-defamatory) competing interests of each party in free speech and expression. The facts there were consistent with the premise that both parties were in principle victims of MCRA if the BSO was "coerced" or compelled to go forward with the disputed performance. Id at 906. The opinion in <u>Redgrave</u> assumes, without discussion, that interference with one speech "expression" or artistic decision of the BSO violates MCRA. Id at 906. None of the judges disputed that a single violation is sufficiently "serious." Id; see Point 5 above.

The facts as to the First Amendment rights of both parties in <u>Redgrave</u> have no parallel to any facts here. Moses is free to hope he can make a showing that his acts and speech were protected. A possible defense, however, does not support dismissal.

Moses here is alleged to be a sole actor motivated by vindictive personal bias.[6] No facts alleged suggest Moses was part of a "mediating institution," as was the BSO, or that Moses is indisputably worthy of substantial protections for an authorized good faith assessment of facts.[7] The wrongs alleged have nothing to do with the rights of an association to limit participation. Mem. 11.

---

[6]     If there were any actual problem as to Koppel's conduct, and there were not, anyone with minimal good judgment or common sense could and would have addressed it privately, after notice to him, as required by the rules of SIPB. Amended Complaint, ¶¶ 38, 43, 44, 53, 54.

[7]     Moses, by repeated public use of Koppel's name, falsely denounced his colleague by name to a worldwide audience and branded him falsely and forever as

Moses was free to not associate with Koppel. Mem. 10-11. He was free to appropriately advocate that others do the same. Id. He (and SIPB if that is alleged and proved) were <u>not</u> free to falsely denounce Koppel by name worldwide so that the public expulsion and denunciation by name would destroy Koppel's public character and reputation and limit Koppel's speech, associations, and other basic freedoms and liberties for years to come. Those harms were inevitable as a result of Moses' actions and speech and are indisputable.

## Conclusion

The defamations at issue painted this plaintiff entirely in black. He is portrayed as a pariah to everyone in the MIT community and, as of March 2, to countless others worldwide. His protected speech was one basis for the expulsion. The resulting loss or curtailment of his civil liberties and privileges is a harm wholly independent of the damages caused by the defamations. Those distinct violations of rights and related harms are sufficiently and clearly alleged as the subject of Count V.

---

a dangerous sexual predator. Amended Complaint, ¶¶ 40, 41, 44-53. Exhibit A. Severe or serious adverse impacts on Koppel's constitutional rights to speech and freedom of association are indisputable. Id. 58-65.

Case 1:20-cv-11479-LTS   Document 63   Filed 08/19/21   Page 20 of 20

Respectfully submitted,

James Koppel,
By his Attorneys,

*/s/ Paul G. Boylan*

_____
Paul G. Boylan, BBO 052320
Ben Dunlap, BBO 661648
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
bdunlap@fmglaw.com

Dated: August 19, 2021            Tel: (617) 963-5972

Certificate of Service

    I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

*/s/ Paul G. Boylan*

Dated: August 19, 2021            _____

Paul G. Boylan