UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES KOPPEL, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 20-11479-LTS |
| WILLIAM MOSES, | ) | |
| Defendant. | ) | |

ORDER ON REPORT AND RECOMMENDATION (DOC. NO. 98)

March 7, 2022

SOROKIN, J.

On April 13, 2020, James Koppel filed suit in state court against William Moses alleging various state law claims including Defamation (Count I), Interference with Advantageous Relations (Count II), Invasion of Privacy (Count III), and Civil Conspiracy (Count IV). Doc. No. 1-3. Moses removed the case to federal court on August 5, 2020, Doc. No. 1, and filed a Motion to Dismiss (Doc. No. 6) which the Court allowed in part dismissing all counts except Defamation. Doc. No. 24. Later, Koppel filed an Amended Complaint alleging Defamation (Count I) and adding a Violation of the Massachusetts Civil Rights Act ("MCRA") (Count V). Doc. No. 54.

Now, Moses moves to dismiss the added MCRA claim. Doc. No. 59. Koppel opposed that motion. Doc. No. 62. Pursuant to a referral, Magistrate Judge Cabell recommends that the Court allow Moses' Motion to Dismiss (Doc. No. 59). Doc. No. 98. Koppel filed a timely Objection to the Report and Recommendation. Doc. No. 99. The Court now turns to resolve the pending motion de novo and considers the Report and Recommendation, which is also subject to

de novo review, in light of the Objection filed.  The Court adjudicates the Motion to Dismiss (Doc. No. 59) applying the familiar legal standard governing motions to dismiss and ADOPTS Judge Cabell's Report and Recommendation (Doc. No. 98), OVERRULES Koppel's Objection (Doc. No. 99), and ALLOWS Moses' Motion to Dismiss (Doc. No. 59) the MCRA claim.

I. FACTUAL BACKGROUND[1]

Koppel and Moses, at all times relevant to this case, were graduate students at the Massachusetts Institute of Technology ("MIT") and were friends at one point.  Doc. No. 54 ¶¶ 2, 6.  They were also a part of the Student Information Processing Board ("SIPB") which is a student organization for those interested in computer science, and Moses was Chair of the SIPB at relevant times.  Id. ¶¶ 8, 18.  In February of 2020 a SIPB keyholder[2] stated during a meeting that "Koppel should not be made keyholder because Koppel had made a political comment in a chatroom the preceding September, stating something that [this keyholder] disliked."  Id. ¶ 17.  Later, on February 27, 2020, Moses met with Koppel and told him that he was being expelled from SIPB because Koppel "caused not named members of SIPB to be 'uncomfortable' or to 'feel uncomfortable' because of [his] public political statements[.]"  Id. ¶¶ 24-25.  That same day, Moses emailed a mailing list containing 140 people, including many SIPB keyholders and alumni from the preceding twenty years, stating that SIPB was expelling Koppel because of sexual harassment allegations.  Id. ¶¶ 31, 33.  On March 2, 2020, Moses emailed another mailing list containing between 500 to 700 members describing that Koppel would no longer be a part of

---

[1] The facts relevant to the Motion to Dismiss (Doc. No. 59) are drawn from the Amended Complaint (Doc. No. 54), and the well-pleaded allegations are taken as true for the purposes of this Order.
[2] Keyholders are members "recognized for significant participation and contributions to SIPB" and "[c]ertain members of SIPB are . . . elected to keyholder status."  Doc. No. 54 ¶ 14. Obtaining keyholder status is required to become eligible for election to the SIPB Executive Committee.  Id. ¶ 15.

2

SIPB because he had made some keyholders feel "deeply uncomfortable."  Id. ¶¶ 34-35; Doc. No. 60-1.  Then, on March 12, 2020, Moses sent another email apologizing for being overly transparent and disclosing certain details about Koppel.  Doc. No. 54 ¶ 36.  Through these emails SIPB members across the world, both past and present, received word of Koppel's removal.  Id. ¶¶ 61-62.  The Court discusses further facts as necessary in discussing the individual issues.

## II.    DISCUSSION

To plausibly allege a claim under the MCRA, Koppel "must prove that (1) [his] exercise of enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) [has] been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  Buster v. George W. Moore, Inc., 438 Mass. 635, 644 (2003) (internal quotation marks omitted).  Put another way, Koppel must show "1) defendant [] threatened, intimidated or coerced him 2) to prevent him from exercising a constitutional right."  Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 76 (D. Mass. 2012); Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).  This means that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]" especially if there was no "further purpose" other than the violation itself.  Longval v. Comm'r of Correction, 404 Mass. 325, 333 (1989); Turkowitz, 914 F. Supp. 2d at 76.  The SJC reaffirmed the direct violation rule from Longval, clarifying only that if the "direct action also includes threats against, or intimidation or coercion . . . liability under the MCRA can be established."  Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994) (holding that the defendants' actions in preventing individuals from entering abortion clinics qualified as intimidation or coercion distinct from the violation of the right itself which was access to abortion services).

3

As defined by the Massachusetts Supreme Judicial Court ("SJC"), a "threat" involves "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm," "intimidation" involves "putting in fear for the purpose of compelling or deterring conduct," and "coercion" involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id. (internal quotation marks omitted). Proof that there was "an actual or potential physical confrontation accompanied by a threat of harm" is an element of the MCRA claim. Id. at 473; Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir. 2018) (explaining that "[i]t is rare for a MCRA claim to involve no physical threat of harm" and "the exception for claims based on non-physical coercion remains a narrow one."). In fact, "Massachusetts courts have required 'a pattern of harassment and intimidation' to support a finding of non-physical coercion under the MCRA." Thomas, 909 F.3d at 493 (quoting Howcroft v. City of Peabody, 51 Mass. App. Ct. 573 (2001)). Importantly, "'the state of mind of the person threatened is not controlling,' [but] it is whether a reasonable person in [Koppel's] circumstance would feel threatened, intimidated or coerced by [Moses'] conduct." Meuser v. Fed. Express Corp., 564 F.3d 507, 520 (1st Cir. 2009) (quoting Commonwealth v. DeVincent, 358 Mass. 592, 266 (1971)).

Here, Koppel alleges in the Amended Complaint that Moses (1) removed him from the SIPB student group because he "caused not named members of SIPB to be 'uncomfortable' or to 'feel uncomfortable' because of [his] public political statements," and (2) Moses thereafter smeared him by emailing SIPB mailing lists stating that SIPB was removing Koppel because of sexual harassment allegations. Doc. No. 54 ¶¶ 24-25, 31, 33. Upon de novo review of the facts read in Koppel's favor, the Court ADOPTS Judge Cabell's Report and Recommendation (Doc.

4

No. 98), OVERRULES Koppel's Objection (Doc. No. 99), and ALLOWS Moses' Motion to Dismiss (Doc. No. 59) for the reasons stated in the Report and Recommendation.

Two further points bear mention. First, Koppel objects by stating that he has adequately plead intimidation[3] and coercion in this case,[4] pointing to Batchelder v. Allied Stores Corp., where the SJC concluded that a private security guard's actions in prohibiting a candidate for office from distributing political handbills was "sufficient intimidation or coercion" under the MCRA. 393 Mass. 819, 823 (1985). Batchelder is distinguishable from this case. There, the actor was a uniformed security officer who carried a semblance of authority and an implicit physical threat of harm. Here, the actor was another MIT graduate student. There, the security guard's actions deterred the ongoing exercise of the candidate's constitutional rights. Here, Moses' actions addressed Koppel's prior public political statement. See Turkowitz, 914 F. Supp. 2d at 76 (describing that a plaintiff must show that "1) defendant [] threatened, intimidated or

---

[3] As to intimidation, Koppel contends that that Judge Cabell erred in stating that "the complaint . . . fails to allege facts suggesting that Moses sought to place Koppel in fear to deter Koppel from engaging in any conduct," Doc. No. 98 at 7, because the MCRA "may be violated 'regardless of whether the defendant specifically intended to interfere with a right to which the plaintiff is entitled.'" Doc. No. 99 at 7. "[S]pecific intent is unnecessary to raise a valid claim under the [MCRA]," but the Act operates "almost entirely within the realm of intentional behavior" which means "that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Deas v. Dempsey, 403 Mass. 468, 470-71 (1988) (internal quotation marks omitted). The Court reads Judge Cabell's statement in the Report and Recommendation as focused on the fact that the Complaint could not be read to say that Moses' actions targeted the ongoing or future exercise of his constitutional rights—that statement is not incorrect.

[4] As to threats, Koppel's Opposition (Doc. No. 63) does not sufficiently address the Report and Recommendation's conclusion that the Amended Complaint "fails to allege a threat because it contains no allegation that Moses exerted pressure on Koppel to make Koppel 'fearful or apprehensive of injury or harm,' or that Koppel ever felt fearful of injury or harm." Doc. No. 98 at 7. Although Koppel alleges that he was for a time "threatened . . . to the point that he declined to make any online public statements or posts" and refused a television speaking opportunity, Doc. No. 63 at 15, that does not allege that he was "fearful or apprehensive of injury or harm." A reasonable person in Koppel's circumstance would not feel such a way nor does the Amended Complaint (Doc. No. 54) plausibly allege that.

5

coerced him 2) to prevent him from exercising a constitutional right.") (emphasis added). Importantly, even if Koppel subjectively felt threatened, intimidated, or coerced, his subjective state of mind is not controlling; rather it is whether a reasonable person in Koppel's circumstance would have felt such a way. See Meuser, 564 F.3d at 520. In this case, there was no "physical threat of harm," nor was there a non-physical threat of harm that sufficiently meets the threshold under the MCRA. See Thomas, 909 F.3d at 492.

Second, Koppel objects to the statement that threats, intimidation, or coercion need to be targeted towards future conduct, contending instead that "retaliation for past speech satisfies" the MCRA, Doc. No. 99 at 17 (emphasis in original), under Redgrave v. Bos. Symphony Orchestra, Inc., 399 Mass. 93 (1987). There, an employer cancelled a contract with an individual after the public expressed disappointment that the individual had previously made certain political statements. Id. at 95. There are several issues with Koppel's reliance on the Redgrave line of cases in the free speech context. To begin, the case law is unsettled. Compare Redgrave v. Bos. Symphony Orchestra, Inc., 855 F.2d 888, 912 (1st Cir. 1988) (en banc) (concluding that there is no MCRA liability in Redgrave) with Bally v. Ne. Univ., 403 Mass. 713, 719 (1989) (describing that the SJC had concluded that there was MCRA liability in Redgrave). The First Circuit's decision that there was no MCRA liability relied upon the complex balancing of both private plaintiffs' and defendants' rights in the unique context of free speech. In particular, the Circuit emphasized that they had "no reason to think that the Massachusetts Legislature enacted the MCRA in an attempt to have its courts, at the insistence of private plaintiffs, oversee the editorial judgments of newspapers, the speech-related activities of private universities, or the aesthetic judgments of artists." Redgrave v. Bos. Symphony Orchestra, Inc., 855 F.2d 888, 906 (1st Cir. 1988) (emphasis added). It added that "[t]he freedom of . . . universities . . . to pick and choose

6

among ideas, to winnow, to criticize, to investigate, to elaborate . . . and even to reject is essential if free speech is to prove meaningful." Id. at 904 (emphasis added). Accordingly, Koppel's reliance on the SJC's interpretation of Redgrave and its subsequent line of cases is not dispositive here.

Moreover, some subsequent cases suggest that the SJC's Redgrave decision may be limited to situations involving a breach of contract as one of a few narrow exceptions to the "physical confrontation requirement." See Buster, 438 Mass. at 647; Carvalho v. Town of Westport, 140 F. Supp. 2d 95, 101 (D. Mass. 2001). There are also other cases suggesting the SJC later "recharateriz[ed] . . . Redgrave as involving not a contract dispute, but rather a physical confrontation accompanied by threats of harm." Carvalho, 140 F. Supp. 2d at 101 (collecting cases) (describing that Redgrave involved a potential physical threat of harm to the audience and performers). In other words, the precedential value of Redgrave is unclear at best.

But even if the Court proceeded with Koppel's assertion that Redgrave or the law more generally stands for the proposition that punishment for past political speech can state a MCRA claim, Redgrave is materially different from the facts here. That case involved an unlawful action on behalf of the employer who breached a contract which "depriv[ed] [the employee] of future economic gain to which [she] was rightfully entitled." Nolan v. CN8, 656 F.3d 71, 78 (1st Cir. 2011). As we know from Buster, the SJC has said that "[g]enerally, by itself, a threat to use lawful means to reach an intended result is not actionable under [the MCRA]." 438 Mass. at 648 (quoting Sena v. Com., 417 Mass. 250, 263 (1994)). Here, Koppel does not sufficiently allege a breach of contract or that his removal from the student group was unlawful.[5] And although

---

[5] Koppel further argues that even if the emails and removal from SIPB are not unlawful in response to his prior political statement, they are unlawful based on his disability as an autistic person. Doc. No. 99 at 17-18. This argument is not plausible for two reasons. First, insofar as

7

Koppel contends that the "expulsion was illegitimate" under the SIPB Constitution for a lack of notice and opportunity to respond, he has not alleged that it was unlawful under state or federal law. Nor does Koppel show that this case involved "potential threats to the physical safety of" other people, like Redgrave did. See Planned Parenthood, 417 Mass. at 473 n.8. Thus, the Court concludes that Koppel has not plausibly alleged a MCRA violation in this case.

### III. CONCLUSION

For the foregoing reasons, the Court ADOPTS Judge Cabell's Report and Recommendation (Doc. No. 98), OVERRULES Koppel's Objection (Doc. No. 99), and ALLOWS Moses' Motion to Dismiss (Doc. No. 59) as to the MCRA claim (Count V). Koppel's conclusory request to amend the Complaint (Doc. No. 99 at 19) is DENIED.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

the Amended Complaint does not sufficiently raise his disability as the basis for the removal and emails, this argument is waived. Second, even if the Court liberally construed the Amended Complaint, Koppel has not sufficiently pled that the removal from SIPB or subsequent emails had any connection to his disability even interpreting the facts in his favor. Besides asserting in a conclusory fashion in his Objection (Doc. No. 99) that allegations that he made people "uncomfortable" were because of his limited autism, id., the Amended Complaint does not suggest that this is a plausible understanding of the facts. As to the removal, Moses informed Koppel that SIPB was removing him because of a prior political statement. Doc. No. 54 ¶¶ 24-25. As to the emails, Koppel himself states that the February 27 email showed that his removal was because of sexual harassment allegations. Id. ¶¶ 31, 33. The Amended Complaint, fairly read, does not plausibly allege that Moses' actions had any connection to Koppel's disability.