UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| | ) |
| James Koppel, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Civil Action No. 1:20-cv-11479-LTS |
| William Moses, | ) |
| | ) |
| Defendant. | ) |
|_____) | |

Memorandum in Support of Opposition to Motion for Sanctions

Plaintiff James Koppel by counsel hereby opposes the motion for sanctions ("Motion") served by the defendant William Moses on September 7, 2021. The details of the Motion are set forth in this memorandum of law concurrently filed ("Memorandum").

The Motion is part of an effort by the defendant to save himself from liability for worldwide defamations of the plaintiff starting on February 26, 2020. Defendant evidently hopes to prove the substantial truth of the defamations by use of facts related to a former girlfriend of the plaintiff. At the time of the defamations at issue defendant Moses had never met the former girlfriend. He did not know who she was, and did not know that she was a former girlfriend ("FG"). Deposition of Moses, 159-161. She did not make any "report" identified in the defamations.

After being sued Moses learned of the existence of the former girlfriend. He contacted her by phone starting July 12, 2020. WM 132 (discussing the phone call).

The defamations in dispute cannot be justified by any fact as to the FG because the defamations are specific and false in multiple ways.

The defamations include the assertion that the plaintiff was the subject of numerous "reports" by keyholders of a student organization, SIPB. Keyholders include a worldwide network of graduates in computer science. They are lifetime members.

The defamations say that keyholders of SIPB within the last week supposedly described in a conversation among keyholders multiple instances of undetected sexual harassment by plaintiff. The defamatory communications say the keyholder "reports" identified sexual harassment which was "severe, consistent and widespread" over a prolonged period of time "despite requests to stop." The plaintiff by name was described as a menace to the safety of the student community. His immediate public expulsion by name is described by Moses as a "necessary" measure for the "safety" of the community (it is not clear if this means the university or the world).[1]

The defamations in dispute go far beyond an allegation that the plaintiff made one or more people "uncomfortable." Mem. 1, 3. That is irrelevant, not the "central issue" and not the "heart" of a defense of substantial truth. Mem. 1. All facts argued in the Motion as to the former girlfriend are irrelevant to show the substantial truth of the defamations in 2020. Point (g) below

Ten months after the exchange of Initial Disclosures on December 2, 2020 defendant has made no attempt to take the deposition of the former girlfriend. He has made no effort to depose the plaintiff. The defendant presently opposes a motion by the plaintiff for a discovery cut off, Document 64.

---

[1]     Discovery to date shows that at the time of the defamations Moses had successfully solicited one mild report of questioned conduct by the plaintiff. It came from a person who described the conduct of the plaintiff, a person who is mildly autistic, as "subtly off-putting." WM 447. She did not report any sexual harassment. Id. All references in this brief to WM refer to documents disclosed by this defendant. The contents are not expected to be disputed and as a result no copies are supplied.

Overview

The motion was not preceded by any pre-motion conference under Local Rule 7.1. Point (a) below.

The Motion fails to show any conduct appropriate for sanctions. Points (b)-(f) below. As a matter of law the sanctions requested are not available on this record. Points (b), (e), (f), (g) below. The Motion seeks sanctions on two grounds. First, because one or more initial answers to interrogatories provided on February 9, 2021, Exhibit 3, are now asserted to be inaccurate in light of documents disclosed by the plaintiff after July 16, 2021. Mem. 7-12. This is addressed at Point (c) below. The second argument is that plaintiff after July 16 violated the July 16, 2021 Order of this Court. Mem. 1, 2, 13-14. This is addressed at Point (d) below. The Motion, as to facts and law, fails to show any conduct appropriate for sanctions. Points (b)-(g) inclusive, below.

Despite the fact that no conduct appropriate for sanctions is shown, defendant requests the most extreme sanctions possible, namely a ruling either (i) that the substantial truth of the defamations is established or (ii) dismissal of the defamation count, Count I. Mem. 2. As a matter of law there is no support for that relief. Points (b), (e), (f), (g) below. The case law cited in the Memorandum is not applicable to this record. Point (f) below. As a matter of law the requested relief is not available on this record. Points (b), (e), (f), (g) below. As mentioned, all facts argued in the Motion as to the former girlfriend are irrelevant to show the substantial truth of the defamations in 2020. Point (g) below. Lastly, the lengthy narrative in the motion, Mem. 7-12, is factually inaccurate in numerous ways. Point (h).

(a)   The Motion is proper to be denied because it is not the subject of any motion conference under Local Rule 7.1.

The Memorandum and Motion do not provide a certificate under Local Rule 7.1. No adequate pre-motion conference was held. A detailed conference very likely would have narrowed and eliminated all of the very minor issues argued in the Memorandum at pp. 12-14. The Memorandum presents arguments as to multiple grievances, some very minor such as the start or end point of disclosed parts of a text message. See Point (d) below.

Counsel for defendant is expected to assert that the attorneys for the parties did confer on August 27, a Friday, as to the intent of counsel for the defendant to file a motion for sanctions. That telephone conversation did not include any discussion of the details asserted by the motion in support of the motion. Counsel for the defendant in at least one prior instance has set forth detailed complaints as to his views on discovery. See Motion Exhibit 2. Exhibit 2 did not resolve all disputes but it did lead to supplemental disclosures by plaintiff and a narrowing of disputed discovery issues. As a result as of April 2 virtually the entire subject of the motion by the defendant were issues as to the former girlfriend which were argued because the plaintiff had continued to object to numerous requests for disclosure as to her. This Court issued a ruling on that subject on July 16, 2021. That Order stopped short of requiring disclosure of all of the private communications between the plaintiff and the FG.

Prior to the filing of the Motion on September 7 seeking the sanction of dismissal, the defendant did not identify of any of the issues, a total of approximately 18 issues, argued in the Motion. The conference on August 27 was a discussion of confidentiality issues related to the proposed filing. No other specific discovery issue was identified.

The failure to conduct a detailed pre-motion conference is not excusable in this circumstance. The failure to identify discovery issues in advance of the Motion prevented

resolution in advance of the motion. The motion relies on the absence of resolution as the basis for a motion for dismissal. The omission of any detailed discussion of the alleged discovery failures is a failure to conform with the requirements of Local Rule 7.1. This Court should deny the September 7, 2021 Motion on that basis.

(b)   <u>The Motion does not satisfy the applicable legal standard as to the relief sought.</u>

A district court's decision to invoke discovery sanctions is reviewed for abuse of discretion. <u>Regional Refuse Sys., Inc. v. Inland Reclamation Co.</u>, 842 F.2d 150, 154 (6th Cir.1988). In assessing a district court decision to dismiss a complaint as a sanction, four factors apply: (i) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (ii) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery (iii) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (iv) whether less drastic sanctions were imposed or considered before dismissal was ordered. Id at 153-55.

None of these factors is shown. Plaintiff has fully cooperated in discovery by disclosing more than 1200 documents in response to 56 document requests involving numerous persons and topics, factor one, and also asserted timely objections, Points (c), (d). Those objections were addressed by the July 16 Order of this Court. Defendant cannot show any prejudice from non-compliance, factor two. Plaintiff has fully complied with the July 16 Order. Point (d).

Plaintiff was not "warned," factor three. There is no prior violation of any order. No adequate Local Rule 7.1 conference was held. There is no sanctionable discovery misconduct, factor four.

(c)   <u>No sanctionable conduct is shown as to prior discovery.</u>

No sanctionable conduct is shown as to answers to interrogatories served on February 9, 2021. Mem. 7-12.

The points raised in the Memorandum as appropriate for sanctions (Mem. 12-14) are argued here in the same order as argued in the Memorandum.

The answer to interrogatory number 1, recorded at Exhibit 3 on February 9, 2021 is not sanctionable (an issue raised without conference) because the answer is conditioned on the objections set forth there. Those objections were never the subject of any motion to strike. Objections, once asserted, are not nugatory.[2]

An adverse party in the face of a discovery objection does not enjoy the authority to determine the propriety of requests or the sufficiency of responses. That is for the Court. <u>Nat'l Indep. Truckers Ins. Co. v. Gadway</u>, 2011 U.S. Dist. LEXIS 132401, at *3 (D. Neb. 2011). This Court ruled on relevant objections and other issues on July 16, 2021. That triggered the need for supplementation. <u>See</u> <u>Wadensten v. S. Cty. Hosp.</u>, 2005 U.S. Dist. LEXIS 52784, at *15 (D.R.I. 2005).

The defendant alleges that plaintiff at the time of his initial answers on February 9, 2021 improperly failed to disclose the 2016 accusation by the FG (Mem. 12, top; raised without conference). The allegation of impropriety is incorrect. Plaintiff was entitled to rely on his stated objections. See Exhibit 3, objection 5, and p. 2, answer 1. Plaintiff objected to the temporal scope

---

[2]      The objections to Interrogatory One and all other initial interrogatories (Exhibit 3, page 2, objection 5) are that the question is "invasive of privacy, excessive in duration and unlimited as to the persons involved. The question is vague and inappropriate because the topic cannot be identified. The terms report or complaint are vague and could include rumor or casual comment. The breath of the question is unworkable and includes any criticism by anyone including criticisms of fashion or attire." Exhibit 3, p. 2, answer one, first paragraph. Exhibit 3, page 2, objection 5.

of interrogatory and, beyond that, there were no unwanted 2016 sexual advances. Exhibit 6, document 1169, bottom half of the page, describing plaintiff, as to his 2016 conduct with the FG as "**unaware perhaps; harasser, nope.** On this you can quote me."[3]

Immediately prior to that conclusion the FG wrote to the plaintiff: "I have in fact been Sexually harassed by people who push on clearly stated boundaries again and again **and you were no such person**." Id.

The defendant next argues (without conference; Mem. 12) that the answer to interrogatory No. 4 is incomplete as to complaints of improper touching by persons at MIT "since 2015" [sic]. The points already argued as to the objections to interrogatory 1 apply here. The answer to interrogatory 4 is conditioned on all prior objections (Exhibit 3, p. 2, objection 5). The motion argument is inaccurate as to the actual answer. Answer 4 accurately describes any such reports "after September 2018." The motion (Mem. 12) inaccurately describes answer 4 as if it went back to 2015 ("since 2015"). It does not.[4]

The defendant next argues (without conference); Mem. 12 (without conference) that answer 3 is false. That is not shown. The former girlfriend threatened to make false reports but nothing shows that Koppel knew of any report. Nothing shows (Mem. 8-12) that the former girlfriend did make such a report and that it was known to the plaintiff. Id.

---

[3]     The defendant ignores the timely objections and asserts that the that the answers to interrogatories presented in the light of stated objections are "intentionally" or "dishonestly" [sic] false. Mem. 1, 15, 16. The plaintiff was entitled to rely on stated objections. Until the July 16 Order he was not required to provide information which was the subject of the objections.

[4]     In addition, the former girlfriend was not ███████████. See Memorandum pp. 1, 7 ("alumna"; "recent graduate"). Attending one or two public extracurricular events is not attendance at a university.

The Memorandum p. 12 (without conference) asserts that initial answer 5 is false as to "unwanted touching." All prior arguments as to timely objections to the initial interrogatories apply here. Further, the FG wrote in 2019 that her prior view of Koppel's 2016 actions was "a misinterpretation" on her part. Koppel 1169, Exhibit 6. Nothing shows that Koppel knew of a "report" or complaint by her to a third party about her prior misinterpretation. Her "reports" about it to the plaintiff are the disclosed confidential documents.

On each of these issues (Mem. 12) the most shown is a potential point for impeachment. That is not a basis for sanctions. Point (e) below.

The supplemental answers provided July 26, 2021, Exhibit 8, are no way defective or sanctionable. Mem. 12. They identify the FG by name and address and provide adequate and accurate information, Exhibit 8, Answer 1, first paragraph, especially in light of the supplemental confidential documents disclosed, Exhibits 5, 6, on the Motion. The July 16 Order did not mandate that the supplemental interrogatory answers describe "what happened and when." Mem. 2. Under Rule 33 (c) the interrogatory answers, Exhibit 8, are supplemented by the concurrently disclosed documents, Exhibits 5, 6.

Issues as to cutoff points are inevitable when disclosed documents are in text or email trails.[5]

---

[5]     Plaintiff has had similar complaints. WM 001-008 disclosed January 4, 2021, starts in the middle of a conversation with ███████████. Plaintiff demanded more documents. The second round of disclosure (WM 444-451) showed that defendant had been withholding pages of text which reference plaintiff by name, plus documents showing that the sole reporter described the conduct of the plaintiff his conduct as "subtly off-putting," not as harassment. WM 443.

(d)    There is no merit to arguments (Mem. 12-14) that the plaintiff failed to comply with the July 16, 2021 Order.

The defendant complains (Mem. 14, without conference; first not numbered bullet point) that plaintiff did not disclose a duplicate of an email already disclosed by Moses. Exhibit 7; Mem. 14. The document in question is not within the July 16 Order. This grievance is contrived: defendant did not previously complain that plaintiff did not disclose duplicates of other documents disclosed by the defendant, e.g. WM 207, an e-mail from plaintiff to █████████.

Defendant objects that some but not all of the confidential documents were disclosed within 14 days of July 16. Mem. 12-13. That is correct; the balance were disclosed on August 20. The facts as to this delay are already set forth in Document 72, the motion by plaintiff for a protective order as to confidential documents, and the exhibits there.

The Memorandum (p. 13, without conference) complains that supplemental answer 6 fails to set forth a description of the information possessed by various persons. Interrogatory No. 6 does not ask for that information. It reads: Please identify each and every person with knowledge concerning any event…" Memorandum at 4. The answer provides what is asked. Exhibit 8, answer 6.

The defendant next complains (without conference; Mem. 13-14), by seven not numbered bullet points, that the document disclosures by the plaintiff were incomplete and therefore in violation of the July 16 Order. These arguments relate to unimportant grievances.

On page 14 defendant argues as to several documents (without conference) that there possibly is text before or after a disclosed document. Page 14, not-numbered bullet points 2, 3, 4, 6. Defendant argues that the not disclosed parts of a document are relevant and within the Order.

9

This is a new issue, not the subject of a conference. There is no basis for any accusation of a violation of the Order.[6]

On page 14 the Memorandum asserts (without conference; bullet point 5) for the first time that the plaintiff did not provide a privilege log as to July 16 disclosures. The plaintiff has now supplied a privilege log. This quarrel is moot.

The Memorandum at page 14 (without conference; bullet point 7) argues defendant has not disclosed one version of a memo to the MIT ombudsman. This grievance is first raised in the Motion. Koppel has been unable to locate any such version. See Koppel Affidavit attached to this opposition as <u>Exhibit One</u>. He disclosed three drafts of this document (Koppel 1201-1208, Mem. Exhibit 5) H.

On page 14 the defendant argues (without conference) that Koppel's supplemented interrogatory answer No. 1 is "incomplete" (Ex. 8). The Memorandum also argues that the answer is false, a point which is not shown. The supplemented answer to interrogatory One is accurate. Exhibit 8, page 2, The answer is a full paragraph including, as one sentence, "No such inappropriate touching occurred." That part of the interrogatory answer which reads "No such inappropriate touching occurred" is an accurate account of something that never happened.

---

[6]      Prior issues of as to cutoff points have been resolved in this case without motion practice. The defendant imprecisely edited. WM 001-008, disclosed January 4, 2021, which starts in the middle of a conversation with ███████ . Plaintiff asked for the related documents. The later disclosures (WM 444-451) are pages of the same conversation which reference plaintiff by name. The complete text shows that ███ , the only active SIPB keyholder to allegedly provide information against Koppel described his conduct not as harassment but, instead, as "subtly off-putting." WM 447.
         The motion argues on the basis of never-disclosed complaints about cut off points Mem.14) that the documents disclosed by the plaintiff in compliance with the July 16, 2021 Order are "incomplete" ("manifestly incomplete"). Mem. 2, 9, 12, 13. This is conjecture as to whether anything material has been omitted. Plaintiff seeks an end point as to discovery. See Document 65, Motion for a discovery cut off.

Defendant argues, lastly (without conference) that the July 16 Order as to supplementation of interrogatory answers required description of "what happened and identification of all persons with knowledge." The Order does not say that. In any event Koppel disclosed that the former girlfriend has knowledge of her accusations. Supplemental Answer 1. The disclosed confidential documents provide all of the details of the communications between the two that are within the July 16 Order. Rule 33 (c) permits disclosure of documents in supplementation of interrogatory answers. The documents disclosed, Exhibits 5, 6 on the Motion, provide all needed information.[7]

All of the points argued in the Memorandum at pages 12-14 very likely could have been resolved or narrowed if a conference had been conducted. No violation of the July 16, 2021 Order is shown. No sanctionable conduct is shown.

   (e)   An alleged inconsistency in answers to interrogatories or some other inconsistency is not a <u>basis for sanctions.</u>

Inconsistent interrogatory answers are not sanctionable conduct. <u>Shepherd v. ABC</u>, 62 F.3d 1469, 1483 (U.S. App. D.C. 1995).

The language of Fed. R. Civ. P. 37 makes it clear the rule was not designed to sanction inconsistent discovery responses. Rule 37(c)(1) applies only to instances where a party fails to provide material information or identify a witness. Fed. R. Civ. P. 37(c)(1). <u>El-Massri v. New Haven Corr. Ctr.</u>, 2021 U.S. Dist. LEXIS 8952, at *8–9 (D. Conn. Jan. 18, 2021

The relief sought is overreaching. It is also premature or inappropriate. In most instances allegedly inconsistent discovery responses are appropriate for judicial review at the time of trial or summary judgment. <u>Shepherd</u>, <u>supra</u>, at 1483 ("[T]he only appropriate use of... inconsistent

---

[7]   Answer 1 is not "incomplete" because it fails to say that the FG objected to Koppel's presence. Mem. 14. She did not: "I'm not opposed to you being at a place I'm at." Koppel 1178, Exhibit 6. The motion repeatedly cites the record inaccurately.

testimony [is] as record evidence from which the court [can] make credibility determinations and adverse inferences."); Boucher v. Sears, 89-CV-1353, 1995 U.S. Dist. LEXIS 6505, at *39-40 (N.D.N.Y. May 8, 1995) (refusing to rule on the veracity of inconsistent discovery responses until the time of trial).

(f)   The case law cited in the Memorandum does not support the relief requested.

Defendant cites to a number of cases in support of his request for the sanction of dismissal against Koppel. All of those cases are easily distinguishable.

A number of the cases cited by defendant are inapplicable here. Some deny a request for sanctions or grant a lesser sanction than was sought. Traverse v. Gutierrez Co., No. CV 18-10175-DJC, 2020 WL 9601828, at *5 (D. Mass. Apr. 13, 2020) (Mem. 15) (plaintiffs failed to disclose documents despite two court orders compelling the disclosures). The relief requested in the motion is not supported on this record. The motion, viewed in a manner favorable to the defendant, raises issues that possibly permit impeachment.[8]

---

[8]      See McGuire v. Acufex Microsurgical, Inc., 175 F.R.D. 149, 153 (D. Mass. 1997) (Mem. 15) (denying sanctions); Aastra Techs. v. Jones 2005 WL 300059, at *1 (D.N.H. Feb. 9, 2005) (Mem. 15–16) (precluding defendant from contesting one element of a claim after a finding of material, false representations on that subject) Samaan v. St. Joseph Hosp., 670 F.3d 21, 36 (1st Cir. 2012) (Mem. 16) (upholding the preclusion of expert witness opinion testimony; late disclosure); Companion Health Servs., Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012) (Mem. 16) (vacating the dismissal of entire case and remanding to the district court for decision as to default of the claim relevant to discovery violations; plaintiffs failed to provide adequate discovery responses despite Court order, and failed to appear at depositions); Momenta Pharm. Inc. v. Amphastar Pharm. Inc., 2014 WL 257394, at *9 (D. Mass 2014) (Mem. 17) (defendants failed to disclose documents in violation of two Court orders); Ins. Recovery Grp., Inc. v. Connolly, 977 F. Supp. 2d 16, 26–27 (D. Mass. 2013) (Mem. 17) (attorney counseled clients to destroy evidence in violation of discovery orders); and Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc., 999 F.3d 37, 47 (1st Cir. 2021) (Mem. 17) (reversing district court's preclusion of exhibits plaintiff attached to summary judgment papers because they were disclosed after the discovery cut-off date; the delay caused no harm to defendant).

The cases cited by defendant which allow dismissal as sanction for discovery violations concern conduct which is so egregious it is inapposite to anything shown on this Motion. Englebrick v. Worthington Indus., Inc., 944 F. Supp.2d 899, 908 (C.D. Cal. 2013) (Mem. 15) (dismissing case; plaintiff lied under oath after providing false discovery responses as to an element of the defense); Arnold v. Cnty. of El Dorado, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012) (Mem. 15–16) (dismissing the case based on perjury during a deposition; the topics concerned a material fact in the litigation); Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) (affirming the dismissal of the case for plaintiff's failure to abide by a Court order to appear for a deposition within the designated time period).

(g)   The remedies sought, establishment of a dispositive defense or dismissal, are not appropriate on this record.

The sanction of dismissal is not appropriate here. Dismissal is "the most severe penalty that can be imposed" for discovery violations. Arnold, supra, at *9, citing U.S. v. Kahaluu Constr. Co., 857 F.2d 600, 603 (9th Cir. 1988) (internal citations omitted). The sanction of dismissal is rarely authorized and only in "extreme circumstances" for violations "due to willfulness, bad faith, or fault of that party." Arnold, supra, at *9, citing Kahaluu Constr., 857 F.2d at 603; see also Commodity Futures Trading Com'n v. Noble Metals Intern., Inc., 67 F.3d 766, 770 (9th Cir. 1995) (affirming standard and upholding sanctions in egregious circumstances). The defendant has not presented any facts in his Motion that would give raise to assertions of "extreme circumstances" or "bad faith."

"The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case." Englebrick v. Worthington Indus., Inc., 944 F. Supp.2d 899, 911 (C.D. Cal.

13

2013). The issues argued in this motion have nothing to do with any dispositive defense despite the contrary assertions by this defendant.

The Motion is directed to discovery pursued as to an allegation first raised in October 2016 by a former girlfriend. In 2019 the former girlfriend expressly withdrew and renounced, any 2016 allegation of harassment. The March 2, 2020 defamation (and related defamations by Moses before and after that date) have nothing to do with her 2016 allegation.

If a discovery violation were shown, and none is shown, it caused no prejudice to defendant. O'Neal v. Capital One Auto Fin., Inc., Civil Action No. 3:10-cv-40, 2011 U.S. Dist. LEXIS 69302, at *7 (N.D.W. Va. June 29, 2011) (slight prejudice; no sanctions). The defendant has known about the former girlfriend at least since July 20, 2020 when he contacted her. Disclosed document WM 132. She is named as a witness in his Initial Disclosures on December 2, 2020. Id, p. 4.

The absence of any relevant connection between any 2016 allegation and evidence relevant to "substantial truth" of sexual harassment in this civil action can be shown by an analogy.[9]

_____

[9]     The March 2, 2020 defamations can be described as a report in the Boston Globe in 2020 which says that John Jones is performing very poorly this year in center field for the Red Sox, both in the field and at bat.

The topic of the Motion, continuing the analogy, is that a newspaper in Pawtucket published an article in 2016 saying that John Jones was having a very bad season there. The same reporter withdrew or retracted that article in July 2019.

The 2016 description of John Jones in Pawtucket, whether or not withdrawn by the reporter in 2019, has nothing to do with the truth or the substantial truth of the 2020 report in the Boston Globe. Both reports involve baseball and Jones. They are otherwise unconnected.

This analogy addresses sexual harassment only. It does not address the many other false facts in the defamations.

In determining the appropriate relief, the Court "should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).[10]


(h)   The narrative in the motion is inaccurate.

The Memorandum at pp. 7-12 sets forth a non-accurate narrative. A few examples may suffice. The disclosed documents show the former girlfriend in July 2019 renounced any accusation of any improper act in 2016 ("Given what you described... it sounds like… an accident and that my beliefs about it were a misinterpretation." Exhibit 6, Koppel 1169. The FG in 2016 did not give the plaintiff "clear-cut feedback which you could have used to avoid" the misperception. Id. The FG in 2019 described the plaintiff as "**unaware perhaps; harasser, nope. On this you can quote me.**" Id.[11]

---

[10]   The appropriate relief for complaints about deficient interrogatory answers is a motion to compel more complete responses. Boucher v. Sears, 1995 U.S. Dist. LEXIS 6505, at *41 (N.D.N.Y. May 8, 1995).

[11]   This sample of in accuracies is not exhaustive. Additional examples include these:

The communication by the girlfriend on October 26, 2016 did not set off a "frantic" three-year course of communication. Mem 7. The Memorandum describes contacts in 2016 and May and July 2017. Mem. 9. After "another break" the narrative resumes in July 2019. Mem. 9. This is intermittent, not frantic.

Koppel was not surprised that the FG did not want to speak to him. Mem. 7. He was surprised at her assertion she was uncomfortable. ("Wow... I didn't realize"). Exhibit 6, Koppel 1177.

Koppel at no point in time admitted to any wrongdoing, Mem. 8. Writing to the FG he said on the contrary, "I don't see your words and actions lining up, nor does this fit my memory of what happened." Koppel 1178, Exhibit 6.

Conclusion

The Motion does not show any sanctionable conduct or any violation of any Order. It seeks, without any adequate basis, dismissal based on a never identified discovery issues. The Motion has no merit as to those and is a form of inappropriate overreaching.

Plaintiff requests that the motion for dismissal and sanctions served September 7, 2021 be denied.

Plaintiff reluctantly requests the award of attorney's fees required to be incurred to oppose the September 7 Motion. The absence of any adequate Local Rule 7.1 conference increased the number of disputed issues. The Motion argues 18 separate discovery grievances, all new. The allegation of numerous minor discovery deficiencies or disputes and presentation of numerous contested facts required substantial and needless effort to document the opposition by record references. The request for inappropriate relief required detailed response as to issues of law and multiple issues of fact.

---

Koppel was never terrified or frantic. Mem 7, 8. Koppel was properly concerned that a false allegation would damage his reputation, not that it would be shown to be true. Mem. 8. See Ex. 5 at Koppel 1183, (describing his fear of false rumor).

The Memorandum at p. 9 continues to inaccurately portray the plaintiff as if he admitted he had done anything wrong. He did not. Ex. 5, Koppel_1201, 1202. An effort to avoid damage to one's reputation by discouraging false rumors, Mem. p. 9, is not an admission that a person has committed sexual harassment.

The Memorandum at p. 14 asserts that the FG objected to his physical presence. She did not. Plaintiff objected to the FG's presence. Koppel 1178, Exhibit 6.

Respectfully submitted,

James Koppel,
by his attorneys,

*/s/ Paul G. Boylan*

_____

Paul G. Boylan, BBO 052320
Adrianna K. Michalska, BBO 703715
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
amichalska@fmglaw.com
Dated: October 15, 2021                Tel: (617) 963-5972

Certificate of Service

    I hereby certify that the within document is being sent today electronically to opposing counsel but not filed.

                                        */s/ Paul G. Boylan*
Dated: October 15, 2021                _____
                                        Paul G. Boylan