UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES KOPPEL,
          Plaintiff,

v.

WILLIAM MOSES,
          Defendant.

No. 20-cv-11479-LTS

## MEMORANDUM AND ORDER ON THE DEFENDANT'S MOTION TO COMPEL THE PLAINITFF'S TREATMENT RECORDS

CABELL, U.S.M.J.

The defendant William Moses ("the defendant") moves to compel the plaintiff James Koppel ("the plaintiff") to produce treatment records from two licensed psychotherapists he saw while living in Boston.[1] (D. 114) (D. 116-1, ¶¶ 2, 4). Among other arguments, the plaintiff submits that the psychotherapist-patient privilege codified in Massachusetts General Laws chapter 233, section 20B ("section 20B"), bars production. (D. 116). The defendant

---

[1] Admittedly, the motion is broader because it asks for "any and all treatment records that are relevant to [the plaintiff's] asserted emotional distress damages, as requested in [the plaintiff's] document requests." (D. 114). The record, however, evidences that the plaintiff received mental health treatment from only two psychologists. (D. 116-1). The relevant document request asks for documents concerning the plaintiff's claim "that he suffered emotional distress from the March 2" or 12, 2020 email, including documents concerning his treatment for emotional distress. (D. 115-2, No. 37). The supporting memorandum adds the February 2020 email. (D. 115, p. 1) (D. 54, ¶ 31). The motion therefore seeks records from these two psychotherapists relevant to their treatment of the plaintiff's emotional distress concerning the February 27, March 2, and March 12, 2020 emails.

maintains the plaintiff waived the privilege by placing his mental condition at issue, a theory that corresponds to a statutory exception in section 20B, namely, section 20B(c). For reasons stated below, the motion (D. 114) is denied without prejudice.

I. **BACKGROUND**

By virtue of prior rulings (D. 98, 101), the operative amended complaint asserts just a single claim for defamation. (D. 54). Familiarity with the record is presumed inasmuch as a Report and Recommendation sets out the factual allegations in the amended complaint. (D. 98, pp. 2-3). Briefly stated, the defendant's transmission of purportedly false and defamatory emails about the plaintiff on February 27 and March 2, 2020, provides the basis for the defamation claim. (D. 54, ¶¶ 31-35, 38, 82). A March 12, 2020, purported retraction repeats the March 2 defamatory communication. (D. 54, ¶¶ 36, 82).

The amended complaint alleges the March 2 email "caused at least $500,000" in damages consisting of injuries to the plaintiff's professional reputation and a loss of employment opportunities. (D. 54, ¶ 80). The pleading also seeks "non-economic harms," specifically "damages appropriate to compensate [the] plaintiff for anguish, humiliation, [and] opprobrium." (D. 54, ¶¶ 80, 83). The plaintiff seeks "a six-figure payment" of damages for emotional distress. (D. 115-3, p. 4).

2

The plaintiff's affidavit, interrogatory answers, and deposition testimony assert the following. In September 2015, the plaintiff began attending psychotherapy sessions. (D. 115-3, p. 5) (D. 116-1). A "breakup" in a relationship precipitated the therapy. (D. 115-3, p. 5). Between the time he began therapy to "[s]ometime in 2021," the plaintiff saw one or either of these psychotherapists "every week." (D. 115-3, pp. 5-7). As time passed, the frequency of visits became sporadic. (D. 115-3, p. 6). By the time of the March 2, 2020 email, the plaintiff was attending therapy sessions "about once every three months." (D. 115-3, p. 5).

After the March 2 email, the visits increased "for a time" to once a week. (D. 115-3, p. 6) (D. 116-1). Shortly after the email, the plaintiff began experiencing "sudden feelings of a 'need to hide'" in public, ruminations, anger, loss of focus or concentration, and anxiety.[2] (D. 115-3, pp. 7, 10) (D. 115-1, p. 8). His emotional distress manifested with symptoms of insomnia, "unpleasant dreams," "trembling at some points during" ruminations, and a "loss of libido." (D. 115-3, pp. 8-11, 13) (D. 115-1, p. 8). "At some point," however, the plaintiff's insomnia

---

[2] See Robart v. Alamo Rent-A-Car, LLC, No. 034603J, 2005 WL 1009746, at *3 (Mass. Super. Mar. 16, 2005) (depicting anxiety, "difficulty focusing" and "impaired memory" as "psychiatric sequelae" rather than physical injuries).

resolved insofar as he began "sleeping better."[3]  (D. 115-3, p. 9).  His loss of libido lasted to approximately June 2020.  (D. 115-3, pp. 10-11).  More broadly, as this "case progressed, [the plaintiff's] emotions improved."  (D. 115-3, p. 7).  There is no indication of a permanent inability to work.  (D. 116, p. 8).  He did not receive any new medication after the March 2020 emails and is unaware of any new diagnosis.  (D. 116-1).

By affidavit, the plaintiff states he "will not call any therapist as a witness" or "attempt to rely on mental health treatment records" at trial.  (D. 116-1).  A response to a document request confirms he will not use any mental health treatment records.  (D. 115-2, p. 11, No. 37).  He also states he will not testify about mental health treatment.  (D. 115-1, p. 8).  As represented in his opposition memorandum, the plaintiff will not rely on expert testimony.  (D. 116, p. 8).

## II. DISCUSSION

In seeking production of the treatment records, the defendant argues the records are relevant and proportional to the needs of this case under Fed. R. Civ. P. 26(b)(5) ("Rule 26(b)(5)").  (D. 115, pp. 3-4).  Focusing more on waiver than the initial application of the privilege, the defendant maintains the

---

[3] In light of the plaintiff's deposition testimony that he "started sleeping better," reduced his therapy attendance to an estimated once every three months, and experienced improved emotions, this court reasonably infers the insomnia and unpleasant dreams resolved.  (D. 115-3, pp. 6-9).

4

plaintiff "waived the psychologist-patient privilege" by "placing his mental condition at issue." (D. 115, pp. 5-7). Moreover, allowing the plaintiff to seek emotional distress damages while denying the defendant an opportunity to obtain mental health treatment records is "'contrary to'" a "'basic sense of fairness and justice,'" according to the defendant. (D. 115, p. 7) (quoting *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997)).

The plaintiff maintains that Massachusetts law applies, i.e., section 20B, and protects the records. In any event, federal common law also deems the records privileged, according to the plaintiff. He further contends he did not waive the privilege under either Massachusetts or federal law. (D. 116). Relatedly, he asserts he is seeking only garden-variety emotional distress damages as opposed to compensation for an "extraordinary psychic injury." (D. 116, pp. 8-10).

Where, as here, the action involves only state law claims grounded in diversity jurisdiction, Massachusetts law applies and undergirds the analysis of the psychotherapist-patient privilege. *See Hache v. AIG Claims, Inc.*, Civil Action No. 20-CV-10652-PBS, 2022 WL 2161174, at *6 (D. Mass. June 15, 2022); *Fertik v. Stevenson*, Civil Action No. 12-10795-PBS, 2015 WL 13676687, at *2 (D. Mass. Mar. 3, 2015) (applying state law to medical peer review privilege because diversity jurisdiction applies and "only state

5

claims are alleged"); *Town of Grafton v. Pulte Homes of New England, LLC*, Civil Action No. 12-10524-TSH, 2014 WL 2155035, at *6 (D. Mass. May 21, 2014) ("state law governs the question of privilege" in action "removed to federal court" based on diversity jurisdiction "involv[ing] no federal claims").[4]  Cases relied on by the defendant setting out waiver of the psychotherapist-patient privilege under federal law[5] are therefore distinguishable because they do not apply the two-pronged statutory analysis under section 20B(c). *Compare Conklin v. Feitelberg*, 146 F. Supp. 3d 430, 436-38 (D. Mass. 2015) (applying section 20B(c) and describing the interests of justice prong as a "balance of interests"), *with Jaffee v. Redmond*, 518 U.S. 1, 17 (1996) ("reject[ing] the balancing component of the [psychotherapist] privilege implemented by" lower court) (applying federal law).

---

[4]  The defendant removed this case from Massachusetts Superior Court (Middlesex County) to the United States District Court for the District Court of Massachusetts.

[5]  *Sarko*, 170 F.R.D. at 130-31 (discussing federal and Pennsylvania state law regarding physician-patient privilege); *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 220-21, 225 (D.N.J. 2000) (applying federal law and adhering to *Sarko* and its "broad view" of waiver, which "placates *Jaffee's* concern" that "privilege must be predictable if its purpose is to be served") (citing *Jaffee v. Redmond*, 518 U.S. 1, 17 (1996) (applying federal law)); *Caldwell v. Wallis*, Civil Action No. 16-674-RGA, 2018 WL 3306895, at *5 (D. Del. July 5, 2018) (applying Delaware state law, which does not adhere to interests of justice analysis applicable under section 20B).  As an aside, the majority view in this circuit applying federal law adheres to a narrower view of waiver, and the seminal case for this view, *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D. Mass. 1997), notes that "*Sarko's* 'mental-state-at-issue' test does not provide" the certainty or comport with the rejection of a balancing approach espoused in *Jaffee*, 518 U.S. at 17-18.  *Vanderbilt*, 174 F.R.D. at 228-29.

In Massachusetts, "[a]ll communications between a licensed psychologist and the individuals with whom the psychologist engages in the practice of psychology are confidential." *Commonwealth v. Chesko*, 486 Mass. 314, 323 (2020) (quoting M.G.L. c. 112, § 129A, and citing M.G.L. c. 233, § 20B). With respect to "any court proceeding," section 20B dictates that "a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition." M.G.L. c. 233, § 20B.

"The general policy of" section 20B is designed "to protect 'the justifiable expectations of confidentiality that most individuals seeking psychotherapeutic treatment harbor.'" *Dep't of Soc. Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 287 (1987) (citation omitted). That said, the text of section 20B does not "require the communication to be confidential." *Commonwealth v. Waweru*, 480 Mass. 173, 183 (2018) ("Unlike many other States that require the communication to be confidential . . ., the Commonwealth has no such requirement in the text of [section 20B]"). As a testimonial privilege, section 20B is "strictly construed." *Walden Behav. Care v. K.I.*, 471 Mass. 150, 154 (2015) (citations omitted); *Matter of M.S.*, 99 Mass. App. Ct. 247, 254 (2021) (citation omitted). The statute is also limited

7

to "protect[ing] communications." *Matter of M.S.*, 99 Mass. App. Ct. at 254; *see In re Adoption of Saul*, 60 Mass. App. Ct. 546, 551 (2004).

Under the privilege, a patient, such as the plaintiff, has "the right to refuse to disclose, and to prevent another witness from disclosing, any *communication* between the patient and *psychotherapist* relative to diagnosis or treatment of a patient's mental condition." *Dep't of Soc. Servs. to Dispense with Consent to Adoption*, 399 Mass. at 287 (emphasis added); *accord Walden Behav. Care v. K.I.*, 471 Mass. 150, 153 (2015) (privilege in section 20B "exclude[s] from court proceedings . . . statements made by a patient to a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition"); M.G.L. c. 233, § 20B. The treatment records from the plaintiff's two psychotherapists therefore qualify for the privilege "if they contain the *communications* or notes of communications between the patient and a *psychotherapist*." *Dep't of Soc. Servs.*, 399 Mass. at 287 (emphasis added); *see also Conklin*, 146 F. Supp. 3d at 434 n.2; *Donovan v. Prussman*, No. CIV. A. 99-175D, 2000 WL 1257463, at *2 (Mass. Super. Aug. 28, 2000) (determining that plaintiff's therapist was "psychotherapist" and records were "communications . . . 'relative to diagnosis or treatment of'" plaintiff's "'mental or emotional condition'" within meaning of section 20B, thus

8

entitling plaintiff to "qualified privilege to refuse" disclosure under section 20B).

The statute defines a "psychotherapist" both as a graduate of "a doctoral degree program in psychology" and, separately, as a "person licensed to practice medicine." M.G.L. c. 233, § 20B. One of the plaintiff's licensed psychotherapists has a Doctor of Philosophy degree, presumably in the field of psychology.[6] The other has a Doctor of Medicine degree. (D. 116-1, ¶ 2). As such, they fall within the statute's definition of a psychotherapist. (D. 116-1, ¶ 2). In addition, the plaintiff's mental health treatment records more than likely include communications "relative to the diagnosis or treatment of" the plaintiff's "mental or emotional condition" within the meaning of section 20B. (D. 116-1); M.G.L. c. 233, § 20(B). Accordingly, section 20B encompasses the records sought by the defendant.

As noted, the defendant maintains the plaintiff waived the privilege by placing his emotional condition at issue. (D. 115). "[I]nterpreting the . . . the issue of waiver" under section 20B entails "first" examining "the text of the statute itself." *Waweru*, 480 Mass. at 183. Relative to the defendant's argument,

---

[6] Inasmuch as the psychotherapist is licensed and provided "psychological counseling" to the plaintiff, this court draws the reasonable inference that the therapist's graduate degree is in psychology. (D. 115-3, pp. 4-5). In any event, the defendant does not challenge the therapist's qualifications under section 20B. It is also undisputed, and the record supports, that the plaintiff was a "patient" within the meaning of section 20B's definition of the term.

9

the statute sets out six exceptions to its reach. M.G.L. c. 233, § 20B; *see also Bd. of Registration in Med. v. Doe*, 457 Mass. 738, 745 (2010) (noting that "[c]reation of an exception to a statutory privilege is *for the Legislature*") (emphasis added). The exception corresponding to the defendant's argument states the privilege does not apply in a proceeding "in which the patient introduces his mental or emotional condition *as an element* of his claim or defense, and the judge or presiding officer finds that it is more important to *the interests of justice* that the communication be disclosed than that the relationship between patient and psychotherapist be protected." M.G.L. c. 233, § 20B(c) (emphasis added). Hence, the analysis reduces to: (1) whether the plaintiff has introduced his "mental or emotional condition as an element of" his defamation claim; and (2) whether "it is more important to the interests of justice" to disclose the records than to protect the psychotherapist-patient relationship. M.G.L. c. 233, § 20B; *Conklin*, 146 F. Supp. 3d at 434 (setting out similar two-part analysis).

### A. Introducing Condition as Element of Claim

The language of the exception denotes the "mental or emotional condition as an element of [the plaintiff's] claim." Mass. Gen. Law ch. 233, § 20B. Massachusetts courts describe emotional distress damages as "an element" of a claim when they are material or central to the claim. *See Pereira v. Sudhof*, NO. 1984CV02293-

10

H, 2022 WL 1404560, at *1 (D. Mass. Apr. 29, 2022) ("[B]y bringing claims for emotional distress . . . damages," plaintiffs "have not *materially* inserted their own mental health conditions into issue in this case.") (emphasis in original); *Donovan*, 2000 WL 1257463, at *4 (noting that plaintiff made mental condition "*central* element of her [negligence] claim") (emphasis added); *Linscott v. Burns*, No. C.A. 2003-00648, 2005 WL 351039, at *3 (Mass. Super. Jan. 27, 2005) (plaintiff "alleged a mental impairment and assigned it as a *central* element of" negligence claim within meaning of section 20B(c)) (emphasis added); *see generally Element*, Random House College Dictionary (1st ed. 1988) (element "denotes a fundamental or ultimate part").

In ascertaining whether the plaintiff introduced his emotional condition as an element of his claim, Massachusetts courts examine various circumstances including a combination of physical and emotional injuries, the permanent nature of the impairment, and the garden-variety nature of the claim(s) for emotional distress damages. Examining these circumstances in greater depth and applying them to the case at bar elucidates whether the exception warrants production of the plaintiff's treatment records.

Turning to the task, Massachusetts courts often find "that plaintiffs who allege a *combination* of physical, psychological and emotional harms have necessarily introduced their mental condition

11

as an element of their claims." *Lora-Pimentel v. Girard*, No. 1884CV01073, 2020 WL 4347249, at *2 (Mass. Super. June 23, 2020) (collecting cases) (emphasis added). This is particularly true when the resulting injuries are permanent as opposed to temporary. *See Conklin*, 146 F. Supp. 3d at 436 (claim seeking recovery for "permanent impairment" with "physical and mental injuries" resulting in "'inability to function well enough to return to work'" supported finding that plaintiff "introduced her 'mental or emotional condition as an element of her claim" under section 20B(c) exception); *Linscott*, 2005 WL 351039, at *3. Although the plaintiff here sets out physical injuries (such as insomnia, unpleasant dreams, and "loss of libido"), these symptoms resolved and were not permanent.[7] (D. 115-3, pp. 8-11). Moreover, his "emotions improved" as this "case progressed," and he stopped seeing "[his] psychotherapist every week" in 2021. (D. 115-3, pp. 6-7). It is therefore likely the plaintiff's trembling has dissipated completely by now similar to his insomnia, unpleasant dreams, and loss of libido.[8] Accordingly, as a result of his physical injuries and emotional harm, the plaintiff did not experience a permanent condition. *Cf. Linscott*, 2005 WL 351039, at *3 ("claim that due to [plaintiff's] injury [plaintiff] was

---

[7] See footnote 3.

[8] To the extent these symptoms remain, they are decreasing such that they are far more likely than not temporary rather than permanent.

fully disabled and remains *to this day* partially disabled as result of the physical injury and the emotional harm" supported conclusion she introduced "'emotional condition as an element' of her claim" under section 20B(c)) (emphasis added); *accord Conklin*, 146 F. Supp. 3d at 436.

Importantly, Massachusetts courts differentiate between garden-variety claims for emotional distress damages on the one hand and claims involving "'psychic damage,'" "'mental damage,'" "psychic injury," or "'severe psychological injury'" on the other. *Conklin*, 146 F. Supp. 3d at 434 (internal quotation marks omitted); *Donovan*, 2000 WL 1257463, at *4 (recognizing "nature of [plaintiff's] injury and" resulting damages controls over label "party assigns to [the] claim" and citing cases distinguishing "'garden variety' tort claims" or "common claims of emotional distress . . . from claims of severe psychological injury" or "involving psychic injury") (citations omitted); *see Pereira*, 2022 WL 1404560, at *2 (Plaintiffs do not waive privileges protecting mental health "records from compulsory disclosure unless they seek more than garden-variety emotional distress damages."); *Lora-Pimentel*, 2020 WL 4347249, at *2 (quoting *Conklin*, 146 F. Supp. 3d at 434); *Sorenson v. H & R Block, Inc.*, 197 F.R.D. 199, 204 (D. Mass. 2000) ("'garden variety claim of emotional distress' does

13

not waive the privilege but" claim of "'psychic damage'" does).[9] As indicated, claims involving psychic damage or injury render the "emotional condition . . . an element of [the plaintiff's] claim," Mass. Gen. Laws ch. 233, § 20B(c), thus satisfying the first prong of the exception. *See Conklin*, 146 F. Supp. 3d at 434; *Sorenson*, 197 F.R.D. at 204.

Garden-variety claims seeking emotional distress damages typically allege or seek compensation for "'mental anguish, . . . humiliation, personal indignity, emotional pain, . . . anxiety, . . . shame, humiliation,'" and even "'severe emotional distress.'" *Sorenson*, 197 F.R.D. at 204. Such damages "do not denote the type of psychic or psychological injury which would trigger a waiver" of the psychotherapist-patient privilege. *Id.* Here, the amended complaint alleges similar, non-psychic injuries (D. 54, ¶ 80) ("anguish, humiliation, opprobrium"), as do plaintiff's answer to a damages interrogatory (D. 115-1, p. 8) ("frequent anxiety," anger, feeling "a 'need to hide'" in public, presumably shame from inferences in March 2020 email(s) of "sexual misconduct which is possibly criminal," and "compulsive ruminations"), and his deposition testimony (D. 115-3, pp. 7, 9-10) (experiencing sudden

---

[9]   Whereas *Sorenson* interpreted the exception applicable to communications between a social worker and a patient under Massachusetts General Laws chapter 112, section 135B, as well as the exception under section 20B(c), the former statute provides the same privilege and exception to social workers as section 20B does for psychotherapists. *Sorenson*, 197 F.R.D. at 203 (citation omitted).

"overwhelming sense" of "need to run and hide," inability to focus, and "cring[ing] at seeing [his] name").

In short, the plaintiff experienced a combination of physical and emotional injuries. That said, the injuries were temporary and non-psychic, and his defamation claim seeks only garden-variety emotional distress damages. *See Pereira*, 2022 WL 1404560, at *2. Hence, the plaintiff did not introduce his emotional condition as an element of the defamation claim. Accordingly, the motion to compel (D. 114) fails for this reason. To complete the analysis, though, the court examines the second prong as an alternative basis to deny the motion.

B. **Interests of Justice Analysis**

Under Massachusetts law, even in cases where the plaintiff introduces his emotional condition as an element of the claim, disclosure of psychotherapist-patient communications:

> should not be ordered unless (1) the patient calls the psychotherapist as a witness or introduces evidence of the communication through [his] own testimony or otherwise, *or* (2) the party seeking access to the communication makes a specific showing that the truth-seeking function of the trial will be seriously impaired unless a disclosure of the communication is ordered.

*Linscott*, 2005 WL 351039, at *3; *accord Robart*, 2005 WL 1009746, at *4 (stating same); *Donovan*, 2000 WL 1257463, at *7 (stating same); *Conklin*, 146 F. Supp. 3d at 437 (quoting *Linscott*, 2005 WL 351039, at *3); *see Sorenson*, 197 F.R.D. at 204. Turning to the first means to avoid satisfying the interests of justice, it

applies, for example, when: the plaintiff does "not offer the testimony of any mental health professional or expert at trial on the issue"; does "not seek to introduce the records of treatment at trial"; and does "not introduce any evidence as to the substance of any communications between" him and his psychotherapists. *Sorenson*, 197 F.R.D. at 204. In such circumstances, the communications "are privileged." *Id.*

Here, the plaintiff attests he "will not call any therapist" to testify as a witness at trial. (D. 116-1, ¶ 5). He represents "[h]e will not rely on expert psychiatric testimony." (D. 116, p. 8). Similarly, he will not rely on his "mental health treatment records in any way at trial." (D. 116-1, ¶ 5). Decidedly, the first means does not warrant disclosing the records.

As to the second "truth seeking" means, the defendant is correct that the "treatment records are relevant to the issue of causation" in determining whether the defendant "is responsible for" all of the plaintiff's emotional distress. (D. 115, p. 4). The defendant also correctly points out that the plaintiff's mental health treatment, which began in 2015, predated the alleged defamatory emails. (D. 115, p. 4). Nevertheless, the interests of justice do not warrant disclosure. Relative to the truth-seeking function, the defendant will be able to probe the plaintiff's credibility at trial. In addition and subject to any limitation or preclusion by the trial judge, the defendant

potentially may be able to inquire about the plaintiff's past before the March 2020 emails to discount or discredit that he caused, in whole or in part, the plaintiff's emotional distress. *See Conklin*, 146 F. Supp. 3d at 437 (noting that defendant can rely on other evidence "to 'probe the [plaintiff's] credibility' and inquire into [plaintiff's] past 'for the purpose of showing that [plaintiff's] emotional distress was caused at least in part by events and circumstances that were not related to the alleged acts of the defendant'") (citation omitted). Similarly, and again subject to any limitation or preclusion by the trial judge, the defendant potentially may be able to question the plaintiff about the diminished number of therapy visits in 2021 to reduce any damages award for emotional distress.

In sum, the defendant fails to make "a *specific* showing that the truth-seeking function of the trial will be *seriously* impaired." *Id.* (emphasis added). Although he seeks emotional distress damages in the range of six figures, his emotions undeniably improved as this case progressed, and he no longer sees a psychotherapist every week. More broadly, the defendant bears the burden to "establish that the conditions for disclosure are satisfied." *Linscott*, 2005 WL 351039, at *3 n.3. He fails to overcome that burden. Indeed, as in *Pereira*, the plaintiff "seek[s] to recover no more than routine emotional distress damages." *Id.* He is "not intending to call a mental health expert

17

or provider to testify at trial; will not offer mental health records of any kind into evidence; [and is] not intending to reveal otherwise confidential communications with therapists." *Id.* Although unlike the circumstances in *Pereira*, he is more than likely "intending to offer proof of physical injuries," *id.*, as previously stated, such injuries are more temporary than permanent in nature.

The records are therefore privileged for the time being. The motion is denied without prejudice and may be renewed if, for example, the plaintiff asserts more than garden-variety emotional distress damages in the future and the "interests of justice" analysis supports disclosure under section 20B(c). *See, e.g., Conklin*, 146 F. Supp. 3d at 437 ("If Conklin should seek to rely on [mental health treatment] evidence in the future, the defendant may renew her motion to compel.").

Lastly, the defendant's argument that the treatment records are relevant and proportional to the needs of this case under Rule 26(b)(1) is not convincing. By its terms, Rule 26(b)(1) states, "Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). At this juncture, the records are privileged.

**III. CONCLUSION**

In accordance with the foregoing discussion, the motion to compel (D. 114) is **DENIED** without prejudice.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:   November 8, 2022