UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES KOPPEL, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM MOSES, )<br>)<br>    Defendant. )<br>) | No. 20-cv-11479-LTS<br><br>**FILED UNDER SEAL PURSUANT TO ORDER DATED MARCH 3, 2022 (DOC. NO. 100)** |

# DEFENDANT WILLIAM MOSES'S REPLY
# IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Jeffrey J. Pyle (BBO #647438)
jpyle@princelobel.com
Nicole J. Cocozza (BBO #693523)
ncocozza@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

4431827.v2

Plaintiff James Koppel's Opposition to the Motion for Summary Judgment fails to demonstrate a genuine issue of fact for trial. In particular, it does not (1) show that the allegedly defamatory emails are unprotected by the common interest privilege, (2) adduce clear and convincing evidence that Defendant William Moses recklessly abused the privilege, or (3) even attempt to demonstrate a triable issue as to the alleged falsity of the emails. Accordingly, Moses's motion for summary judgment should be allowed.

I. **MOSES HAS ESTABLISHED THAT THE ALLEGEDLY DEFAMATORY STATEMENTS WERE MADE UNDER THE COMMON INTEREST PRIVILEGE.**

Koppel's opposition offers no coherent reason why the allegedly defamatory emails are not subject to the common interest privilege, for communications "reasonably calculated" to serve an interest to which "the publisher and recipient share some legitimate mutual interest." *Catrone v. Thoroughbred Racing Ass'ns. of N. Am., Inc.*, 929 F.2d 881, 887 (1st Cir. 1991), quoting *Sheehan v. Tobin*, 326 Mass. 185, 190-91 (1950); Restatement (Second) of Torts § 596 (1977). Contrary to Koppel's assertions, the privilege is not limited to statements "involv[ing] purported crimes the allegedly defamed person committed that directly impacted" the speaker. (Koppel Opposition at 4-5) (emphasis supplied). To the contrary, Massachusetts courts routinely apply the privilege to statements about non-criminal conduct. *Downey v. Chutehall Const. Co.*, 86 Mass. App. Ct. 660, 661 (2014) (privilege applied to statement that roofing contractor performed substandard work); *Sklar v. Beth Israel Deaconess Med. Ctr.*, 59 Mass. App. Ct. 550, 558 (2003) (statements about plaintiff's performance as a therapist); *Garrity v. John Hancock Mut. Life Ins. Co.*, No. CI.A. 00–12143–RWZ, 2002 WL 974676, at *4 (D. Mass. May 7, 2002) (statement that insurance company employees violated email usage policy). No Massachusetts court has limited the privilege as Koppel suggests.

1

Koppel asserts that the emails did not promote any common interest of Moses and other SIPB members. Ironically, he supports this contention with an email by SIPB alumni keyholder Matthew Belmonte in response to Moses's allegedly defamatory March 2, 2020 Email, expressing reservations about the SIPB Executive Committee's decision to ask Koppel to leave the group. (Pyle Aff., Ex. 12, WM000361-000362). Belmonte states that in his view, "[a]llegations" against a person's membership "must be specific and articulable, and there must be opportunity for the accused to rebut them." (*Id.*). Belmonte opines that "[m]aking someone uncomfortable is not in itself an offence." (*Id.* at WM000362, emphasis supplied). While "[t]here may indeed have been an offence, which was the source of the discomfort . . . in this case the offence ought to be articulated . . . ." (*Id.*). Another SIPB member, Lily Chung, disagreed: "I think making other members uncomfortable is a perfectly good reason to ask someone to leave SIPB." (*Id.* at WM000362-000363).

Of course, it was only because Moses sent the March 2 Email that SIPB members were able to have this debate about the legitimate causes for separation from the group and the procedures that should be followed in such cases. Had Moses kept the Executive Committee's action and its reasons secret, as Koppel says he should have, (Koppel Opposition at 6-7), this issue could not have been discussed and debated within the group. Belmonte's perspective thus confirms that, like labor unionists in *Sheehan,* the SIPB members who received Moses's emails had an interest "in the doings of their officers and committees and have a right to such information," such that the privilege squarely applies.[1] 326 Mass. at 191.

---

[1] Otherwise, Koppel asserts that Moses's brief relies "almost entirely" on non-Massachusetts cases about the common interest privilege. (Koppel Opposition at 4). That isn't so, as even a cursory read of pages 12-19 of the brief will show. Regardless, many jurisdictions, including Massachusetts, apply the privilege described in Restatement (Second) of Torts, § 596, and Koppel offers no reason why the non-Massachusetts cases Moses cites should not be deemed persuasive.

II. **KOPPEL HAS NOT SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT MOSES RECKLESSLY ABUSED THE COMMON INTEREST PRIVILEGE.**

"Where, as here, a defendant in a defamation action establishes the existence of a privilege, the burden rests upon the plaintiff to raise a trial-worthy issue of an abuse of that privilege." *Downey*, 86 Mass. App. Ct. at 665. This is a significant burden. "[L]oss of a defendant's conditional privilege in a defamation action through 'unnecessary, unreasonable or excessive publication' requires proof that the defendant acted recklessly." *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 515–16 (1984); *Downey*, 86 Mass. App. Ct. at 668 (affirming summary judgment based on insufficient evidence of reckless abuse of common interest privilege). Recklessness "is a difficult standard to meet." *Downey,* 86 Mass. App. Ct. at 667. "Simple negligence, want of sound judgment, or hasty action will not cause loss of the privilege." *Dexter's Hearthside Rest., Inc. v. Whitehall Co.*, 24 Mass. App. Ct. 217, 223 (1987). The quantum of proof, moreover, must be sufficient to permit the jury to find such abuse by "'clear and convincing' evidence." *Catrone,* 929 F.2d at 889.

Koppel's opposition utterly fails to meet this daunting evidentiary challenge. Accordingly, such summary judgment should be granted. *Sklar*, 59 Mass. App. Ct. at 558 (affirming summary judgment where "[t]he undisputed facts show that [defendant's] publication is covered by the conditional privilege and the record simply does not produce a genuine issue of material fact on the issue of recklessness.")

A. **There Was No Excessive Publication.**

Koppel first asserts that it was "excessive" for Moses to publish the February 27 and March 2 Emails to anyone outside the Executive Committee, because that committee alone "had the power to expel a member from the group." (Opposition at 6-7). Putting aside the fact that

Koppel has admitted elsewhere that he was not "expelled" from SIPB, but rather was asked (and agreed) to leave it, (Pyle Aff., Ex. 3, Koppel Dep. at 481-482), the caselaw is to the contrary. It is not "excessive" to inform the membership of a group about a decision of group leaders to take action against a member, and the reasons therefor. *Sheehan*, 326 Mass. at 191 (statement about charges against union members and actions of officers and committees were "of general common interest to the members of [the] labor union"); *Garrity*, No. CIV.A. 00-12143-RWZ, 2002 WL 974676, at *4 (employer privileged to inform all other employees of the reasons for plaintiffs' termination).

The allegedly defamatory emails were sent to email lists consisting only of SIPB members. (Moses Aff., ¶ 18; Batson Aff., ¶ 11). Koppel's opposition papers fail to establish that Moses "publishe[d] the [emails] to a person to whom its publication is not otherwise privileged," let alone that he did so recklessly.[2] Restatement (Second) of Torts § 604.

---

[2] Koppel baldly asserts in his affidavit, without any explanation of his personal knowledge or competence, (Fed. R. Civ. P. 56(e)), that "[m]any individuals with no SIPB affiliation received the March 2 E-mail." (Koppel Aff., ¶ 9). This is in direct conflict with what Koppel alleged in his Amended Complaint, which is that "virtually all" the recipients "are affiliated or were affiliated with SIPB. . . ." (Am. Compl. Doc. No. 54, ¶ 58). In his affidavit, Koppel purports to identify four allegedly non-SIPB persons, (Koppel Aff., ¶¶ 9-10), but even his statements about them fail to establish an issue of fact because, among other things, they are not based on personal knowledge. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Koppel states that one recipient, Andrew R. Twyman, "attended a single SIPB meeting in summer 1995 and another SIPB meeting in summer 1996, and otherwise has no SIPB affiliation." (Koppel Aff., ¶ 9.a.). Koppel's affidavit establishes no personal knowledge supporting this statement, and none is apparent, given that Twyman's tenure at MIT pre-dated Koppel's by some twenty years. (Moses Statement of Undisputed Facts, ¶ 14, and response). The same is true of Koppel's assertion that "Michael P. Phillips . . . attended a single SIPB meeting on October 2, 1995, and never again." (Koppel Aff., ¶ 9.b.) Koppel is also demonstrably wrong that Phillips is not SIPB-affiliated. SIPB routinely puts on courses during the MIT's January "IAP" period between semesters. (Moses Aff., ¶ 3; https://sipb.mit.edu/iap/). One such SIPB course, "Structure and Interpretation of Computer Programs," (https://web.mit.edu/6.001/) was co-taught by Mike Phillips in 2019. Koppel's assertions that recipient Lillian T. Chin "has never attended a single SIPB meeting," and that she "confirmed receipt" of the email in a document that Koppel does not provide to the Court, are likewise stated without personal knowledge. (*Id.*). Finally, Koppel states that "[m]y former student Zoe Anderson (username "zanderso") <u>told me</u> on March 6, 2020 that she received the March 2 E-mail." (*Id.*, ¶ 10) (emphasis supplied). This hearsay

4

Instead, Koppel relies on blatant misrepresentations of documents in the record to support his claim of overpublication. For example, he contends that Moses "was advised to limit his communications about Mr. Koppel to 'the Executive Committee or to the Chair,'" meaning Moses himself, but that Moses "ignored this directive." (Koppel Opp. at 7). In support of this assertion, Koppel cites his Additional Statement of Fact Paragraph 141, which in turn cites a portion of a document Moses produced in discovery. (Koppel Ex. I (containing Exhibit 21a to Moses Deposition of August 9, 2022), consisting of a portion of WM000383). The document, which is attached to the Supplemental Affidavit of William Moses as Exhibit B, says nothing of the sort. It is an electronic communication in which Moses requests the "thoughts" of former SIPB chair Miguel Young about a draft of what would become the February 26, 2020 email soliciting views on Koppel via SIPB-Private. (Compare Supp. Moses Aff., Ex. B, and Pyle Aff., Ex. 7). *Nowhere* in the exchange does Young advise Moses that "everything [about Koppel] should be sent only to the Executive Committee or to the Chair," as Koppel purports to quote Young (with emphasis, no less).[3] (Koppel Additional Fact ¶ 141). Those words do not appear in the document. (Supp. Moses Aff., Ex. B).

Similarly, Koppel falsely asserts in his Opposition that Moses "was advised that the SIPB Office email recipient list was 'extremely out of date.'" (Koppel Opposition at 7, citing Koppel's Additional Fact ¶ 142). For this assertion, Koppel cites WM000396, a page of a document produced by Moses and included in Exhibit 6 to the Affidavit of Jeffrey J. Pyle. (Koppel

---

statement is followed by the assertion (again without personal knowledge) that Anderson was on a different mailing list (not SIPB-Office) "because of an activities fair not run by SIPB." (*Id.*).

[3] Young suggested that opinions about Koppel should be sent to the Moses at a different email address (sipb-chair@mit.edu) than what Moses had proposed (wmoses@mit.edu), offered that people should be invited to send their opinions to the whole Executive Committee if they felt comfortable doing so, and made a few other procedural suggestions. (Supp. Pyle Aff., Ex. A).

5

4431827.v2

Additional Fact ¶ 142). That page contains a discussion among Executive Committee members about "various lists of keyholders," <u>not email lists</u> of SIPB members. (*Id.*; Supplemental Moses Aff. at ¶ 4). The newly-elected Secretary of SIPB, Miriam Rittenberg, states: "There's an extremely out of date '<u>active-members' in /mit/sipb/admin/secretary</u>. . . ." (Pyle Aff. Ex. 6, p. WM000396 (emphasis supplied)). The referenced document, a text file and not an email list, is the only thing Rittenberg calls "extremely out of date." (*Id.*; Supplemental Affidavit of William Moses at ¶ 4). Rittenberg makes no mention of SIPB-Office@mit.edu at all. (*Id.*).

    **B.**    **There Is No Clear and Convincing Evidence of "Actual Malice."**

Koppel next makes a cursory argument that Moses abused the common interest privilege through "actual malice," meaning that Moses supposedly knew his statements were false or acted with reckless disregard for their truth or falsity. *Edwards v. Com.*, 477 Mass. 254, 263 (2017); (Koppel Opp. at 8-9). But Koppel adduces no evidence whatsoever that Moses told a knowing falsehood or subjectively "entertained serious doubts as to the truth of his publication[s]." *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 530 (2013), quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Downey*, 86 Mass. App. Ct. at 667.

It bears repeating that a showing of negligence is not enough to satisfy Koppel's burden here. "That information was available which would cause a reasonably prudent man to entertain serious doubts" about the truth of an allegedly defamatory statement "is not sufficient. In order to negate the privilege, the jury must find such doubts were <u>in fact entertained</u> by the defendant." *Stone v. Essex Cnty. Newspapers, Inc.*, 367 Mass. 849, 867-868 (1975).

Koppel first asserts in conclusory fashion that Moses's "[a]ctual malice is shown here in that Moses used false premises to elicit negative opinions." (Koppel Opposition at 8, citing Koppel's Additional Statements of Fact at paragraphs ¶¶ 101-120). Koppel doesn't otherwise

explain what he means, but the cited paragraphs assert that some of what was said in the February 10, 2020 meeting, as reflected in the February 26 Email to SIPB-Private, and information *others* told Moses in response to that email, was either false or second-hand, or that Moses didn't do enough to check the details or veracity of what he was told. (Koppel's Additional Statement of Facts at ¶¶ 101-120). Such assertions would not permit a jury to infer anything about Moses's subjective state of mind concerning the truth or falsity of any allegedly defamatory statement about which Koppel has sued. *Edwards*, 477 Mass. at 264 ("The actual malice test is subjective."); *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) (failure of persons responsible for publication to check accuracy of statements shows at most negligence, not reckless or knowing falsity).[4]

Otherwise, Koppel again misrepresents the record by asserting that ▮▮▮▮ "retracted her initial report" that Koppel had stroked her arm in a disturbing way in the SIPB Office before Moses distributed her statement to SIPB-Private. (Opposition at 8-9). ▮▮▮ didn't "retract" anything: her later statement that "it's hard to point at any particular incident and use that as reason against him [b]ecause everything he does is subtly off putting," (Koppel Ex. H), is

---

[4] Koppel repeatedly asserts that it was knowingly false for Moses to state "that Kopple [sic] had been warned and given opportunities to cure his behavior." (Koppel Opposition at 8, citing Additional Statements of Fact at Paragraphs ¶¶ 155-156). As we have already explained, Moses testified that he had asked Koppel to stop hugging him and rubbing his head, but Koppel failed to do so. (Pyle Aff., Ex. 2, Moses Dep. at 9-10). Koppel has also admitted that he continued to hug Moses even after he determined that Moses was not "into" the hugs, and that he touched people like ▮▮▮▮▮ and ▮▮▮▮▮ even after ▮▮▮▮▮ accused him of improper touching in 2016. (Moses Statement of Undisputed Material Facts at ¶¶ 16, 39-45). There is therefore no clear and convincing evidence in the record showing that Moses know it was false that Koppel had opportunities to stop touching people without their consent but continued to do so anyway. Additionally, the mere fact that "SIPB leadership" did not ask Koppel to change his behavior does not show that Moses told a knowing falsehood, because neither his February 27 nor March 2 Email says that. Even if one or both of the emails could be read that way (a reading that the March 12, 2020 email quickly dispelled), Koppel provides no evidence that Moses thought that he was communicating that it was SIPB leadership that made the "requests to stop." (Pyle Aff., Ex. 12); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (no clear and convincing evidence of knowing or reckless falsity where words chosen were inaccurate but the speaker meant to convey something accurate).

7

fully consistent with her earlier description of the incident: that Koppel tried "to touch [her] in 'socially acceptable' ways as much as possible in a very disturbing way." (Ex. 7 at WM000371). ▇ testified at her deposition Koppel would "find[] excuses to touch you such that it's not so bad that you can go to the Title IX and report it like a molestation. However, it's uncomfortable enough and repeated enough that it overall makes me extremely uncomfortable."[5] (Pyle Aff., Ex. 15, ▇ Dep. at 125-126). Regardless, it is undisputed that Koppel touched ▇ in substantially the way she described. (Koppel's Response to Statement of Material Facts ¶ 40; Pyle Aff., Ex. 3, Koppel Dep. at 419-420, 514-515).

### III. KOPPEL DOES NOT CONTEST THE SUBSTANTIAL TRUTH OF THE ALLEGEDLY DEFAMATORY EMAILS.

Remarkably, Koppel does not even respond in his opposition to Moses's explanation why the February 27 and March 2, 2020 Emails are substantially true. Those emails, again, reported that Koppel had made SIPB members "deeply uncomfortable" and that his interactions had caused the Executive Committee to ask Koppel to leave the group. Those statements are true. Indeed, Koppel has now either admitted or failed properly to dispute the subsidiary facts showing their truth. (*See* Koppel's Responses to Moses's Statements of Fact ¶¶ 16, 39-45). These include the now-undisputed facts that Koppel (1) hugged SIPB member ▇ in a way that made her "freaked out" and "deeply uncomfortable" such that she did not return to the SIPB Office, (*id.* ¶ 39); (2) stroked SIPB keyholder ▇'s arm in the SIPB Office in a way that made her "very uncomfortable" and made her "feel unsafe in the SIPB office," (*id.* ¶ 40); (3)

---

[5] Koppel also asserts that "actual malice" is shown from the fact that communications about Koppel didn't need to happen because "Mr. Koppel had not even asked to be considered for keyholder status." (Opposition at 8). Koppel, in fact, testified that he joined SIPB because he "was interested in the privileges of keyholdership," but regardless, the fact has no bearing on whether Moses had the state of mind of "actual malice" as to the truth or falsity of any allegedly defamatory statement. (Pyle Aff., Ex. 3, Koppel Dep. at 390).

8

4431827.v2

made SIPB keyholder ▒▒▒▒▒▒ uncomfortable with a lewd reference to the name of a computer program (*id.* ¶ 41); (4) called the MIT Police on SIPB keyholder ▒▒▒▒▒▒ merely for showing up at an extracurricular event, after she had accused him of sexual misconduct, hoping that doing so would have made her uncomfortable, (*Id.* ¶ 43); and (5) hugged SIPB keyholder William Moses even after determining he was "not into the hugs." (*Id.* ¶ 16). In short, it is undisputedly true that Koppel engaged in conduct that made "many keyholders" "uncomfortable," and that he continued with that conduct after having had opportunities to stop. (Pyle Aff., Exs. 7, 12). The "gist" or "sting" of the allegedly defamatory emails is justified. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991) ("[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"), quoting *Heuer v. Kee*, 15 Cal.App.2d 710, 714 (1936).

    For the foregoing reasons and those set forth in Moses's Memorandum of Law, there is no genuine issue for trial, and the Motion for Summary Judgment should be allowed.

Respectfully submitted,

WILLIAM MOSES,

By his attorneys,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO #647438)
jpyle@princelobel.com
Nicole J. Cocozza (BBO #693523)
ncocozza@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

Dated: March 7, 2023

## **CERTIFICATE OF SERVICE**

      I hereby certify that I served the foregoing document by email on counsel for plaintiff on March 7, 2023,

                                                /s/ *Jeffrey J. Pyle*
                                                Jeffrey J. Pyle

4431827.v2