UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES KOPPEL,<br><br>        Plaintiff,<br><br>v.<br><br>WILLIAM MOSES,<br><br>        Defendant. | No. 20-cv-11479-LTS<br><br>**FILED UNDER SEAL PURSUANT TO<br>ORDER DATED MARCH 3, 2022<br>(DOC. NO. 100)** |

## RESPONSE OF DEFENDANT WILLIAM MOSES TO "ADDITIONAL FACTS BY PLAINTIFF KOPPEL"

Defendant William Moses submits the following responses to Plaintiff James Koppel's "Additional Facts" set forth at pages 19-40 of his filing titled "Defendant William Moses's Statement of Undisputed Facts with Responses and Additional Facts by Plaintiff."

Moses notes that the Court may disregard many of Koppel's "additional facts" on the ground that they violate Fed. R. Civ. P. 56.1 and Local Rule 56.1. As noted herein, the statements constitute impermissible arguments or characterizations rather than facts, and many of them are not supported by citation to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56.1(c)(1)(A).

Moses specifically denies all assertions of fact contained in the introductory headings within Koppel's "Additional Facts," designated with letters a.-i. These headings in most cases constitute conclusory assertions or arguments, not statements of fact. To the extent they assert facts, the headings fail to cite to materials that would be admissible in evidence in violation of Rule 56.1.

Below, Moses responds to the separately numbered factual statements in the "Additional Facts" document (and their associated footnotes).

101.    Some SIPB members are elected to keyholder status after they are nominated for keyholder by existing keyholders. Moses dep.1. 23-24. Members are nominated only <u>after a consensus</u> is built among active student keyholders eligible to vote. Koppel Ex. F, Wm 0495 (conversation among several EC members on February 20, 2020). The "actual vote" is almost always a "formality" after a person is nominated. Id. Koppel was never nominated for keyholder. Moses dep. 1, 35.

**<u>Response:</u>**

The first sentence of ¶ 101 is admitted. The second and third sentences are denied. Those sentences are not supported by the cited document, which is a discussion between two SIPB keyholders about what the nomination and election process should consist of. (Koppel Aff., Ex. F, WM000495). Further answering, Moses states that the cited document, Koppel Aff., Ex. F., at WM000495, shows Moses quoting a different keyholder, MIT graduate Lizhou Sha ("slz") who stated that SIPB has made the keyholder election process "a consensus-building process," but Sha does not state that it is a process of building consensus only among "active student keyholders eligible to vote," as Koppel asserts in paragraph 101. Rather, the evidence shows that such "consensus" is built by discussion on the email list SIPB-Private, the primary use of which is to determine whether a member should be nominated and voted a keyholder. (Batson Aff., ¶ 11; Moses Aff., ¶ 9; Pyle Aff., Ex. 6 at WM000387 (communication among members of Executive Committee in which Moses notes, "Traditionally, nomination discussions would occur on sipb-private, eventually reaching a consensus for nomination at that time."); Supplemental

Affidavit of William Moses, Exhibit A (collection of produced emails showing use of SIPB-Private to discuss whether a person should be nominated for keyholder)). Further answering, the SIPB constitution provides that a SIPB member can be elected a "keyholder" by a quorum. (Moses's Statement of Facts ("SOF") at ¶¶ 5-9; Pyle Affidavit ("Pyle Aff."), Ex. 1 at Koppel_0001 and Article IV, Koppel_0007-0008; Pyle Aff. Ex. 3, Koppel Dep. at 395-400, 403-404, 442-43).

102.    Nothing in the record shows or identifies precedent for widespread discussion of a member <u>not yet nominated</u> for keyholder. The February 10 discussion of Koppel was by keyholders only took place in a closed-door session. Batson Aff. ¶ 10.

**Response:**

The first sentence of paragraph 102 is denied to the extent the term "widespread discussion of a member" is meant to include discussions on the SIPB-Private email list. The evidence shows the opposite: that SIPB keyholders regularly used the SIPB-Private list for this purpose. (Batson Aff., ¶ 11; Moses Aff., ¶ 9; Pyle Aff., Ex. 6, at WM000387 (communication among members of Executive Committee in which Moses noted, "Traditionally, nomination discussions would occur on sipb-private, eventually reaching a consensus for nomination at that time."); Supp. Moses Aff., Ex. A (collection of produced emails showing use of SIPB-Private to discuss whether a person should be nominated for keyholder)). The second sentence is unintelligible as written. Further answering, Moses admits that the February 10, 2020 discussion was held only among keyholders. (Batson Aff., ¶ 10).

103.     As of February 20, Moses said a "<u>decision seemingly already been made" against Koppel being nominated.</u> Koppel Ex. F, Wm 0495 (conversation among several EC members on February 20, 2020). He wondered if "replies" [sic] should go to only to the Chair because the "public discussion" "might devolve in unexpected directions" Id. 0496. Moses wanted to prevent a conversation outside the EC from "going awry." Id. Moses addressed this problem by starting to draft what became the February 26 solicitation by use of four false bullet points. Id. see Koppel Ex. A.

**<u>Response:</u>**

The statements contained in the first two sentences of paragraph 103 are denied in that they mischaracterize and misquote Exhibit F to the Affidavit of James Koppel, and therefore do not support the statements asserted. As the document shows, it is a communication between Moses and one other person, SIPB Vice Chair Georgia Shay, not "several EC [Executive Committee] members." (Koppel Aff., Ex. F). The discussion between Moses and Shay was about whether the Executive Committee should decide for itself that Koppel would not be nominated for keyholder, or instead open the discussion to other keyholders for their views. In context, Moses's statement "at this point a decision is seemingly rendered" refers only to the Executive Committee's seeming consensus against Koppel's nomination. (*Id.*). Moses ultimately suggested that instead of the Executive Committee making the decision unilaterally, it solicit views of keyholders via SIPB-Private. (*Id.*, at WM000496). The third sentence is admitted as to the communication on SIPB-Private only, which is what Exhibit F to the Koppel Affidavit is about. The fourth sentence of paragraph 103 is admitted only to the extent that it states that page WM000496 of Exhibit F to the Koppel Affidavit contains a draft of the February 26, 2020 email attached to the Koppel

Affidavit as Exhibit A. Moses denies that the email contains "four false bullet points," and notes that the allegation of the falsity of the "bullet points" is unsupported by any citation to the record and therefore violates Fed. R. Civ. P. 56.1. (Pyle Aff., Ex. 4, Moses Dep. at 117-118; Batson Aff., ¶ 9)

> 104.   Prior to sending the four-bullet point email on February 26 ("the solicitation email") Moses discussed it in a limited way on Mattermost, a platform used by the Executive Committee (EC). Exhibit 6.

**Response:**

The statement contained in Paragraph 104 references a document that speaks for itself and no further answer is required. Further answering, Moses states that the allegation does not comply with Fed. R. Civ. P. 56.1 and Local Rule 56.1 because it improperly characterizes a document rather than stating facts. Moses further denies that the referenced discussion was held "in a limited way," and refers the Court to the five pages of Executive Committee deliberation set forth at Pyle Affidavit, Ex. 6 WM000387-000391.

> 105.   One not named person proposed that any discussion of Koppel be done entirely within the Executive Committee. Moses Ex. 6, Wm 03871, 1:14 a.m. That was ignored. One member suggested the conversation be in the EC and also on SIPB private without "revealing all of the details." Id. Wm 387.

**Response:**

Denied. Paragraph 105 mischaracterizes the referenced document, Exhibit 6 to the Pyle Affidavit at WM000387. An identified person (SIPB Executive Committee member Cel Skeggs) makes the referenced statement, and it states the opposite of what Koppel

asserts: "I am <u>not</u> sure that we should intend to have the discussion entirely within the EC." (Pyle Aff., Ex. 6 at WM000387). Skeggs states the discussion about Koppel should be on SIPB-Private. (*Id.*).

      106.    Moses suggested that the four-point solicitation invite or allow for of anonymous reporting. Moses Ex. 6, Wm 390. The EC participants were unclear as to the purpose of the solicitation (whether to decide not to nominate or to establish they could not agree about nominating. Id. Wm 391. One member thought that the recency of the allegations was crucial. Id. Moses said the first point it ("arguing… street harassment") was a year old or "a bit more." Ex. 6, WM 391. In fact, that was an electronic conversation in 2017 unrelated to SIPB. Koppel Aff. ¶ 1. Unknown to Koppel in 2017, a non-voting keyholder had taken took offense to something Koppel wrote in 2017, not telling him she was offended or why. Koppel Aff. ¶ 1.

**<u>Response</u>:**

The statements contained in the first four sentences of Paragraph 106 purport to describe a document that speaks for itself, and they are denied to the extent they mischaracterize the document, which is Exhibit 6 to the Pyle Affidavit. Further answering, the first four sentences of Paragraph 106 violate Fed. R. Civ. P. 56.1 and Local Rule 56.1 because they are arguments, opinions, characterizations, and not supported by proper record citations to the evidence. To the extent further a response is required, Moses denies that the document was a "solicitation invite," that the EC members were "unclear" as to the February 26 email in Paragraph 106, and that a participant said recency was "crucial," because such assertions are not supported by the cited document and/or amount to

improper characterization. As to the fifth and sixth sentences, Moses admits that a keyholder took offense at what Koppel said about street harassment, and otherwise denies these sentences which are unsupported by the record. The fifth and sixth sentences rely on Koppel's Affidavit, Paragraph 1.a., which merely provides a description of a document that is not included in the summary judgment record, and characterizing his comments in the document as "unrelated to SIPB." As such, the allegations are non-factual and unsupported in violation of Rule 56.1. Moses further denies the allegation in Koppel Affidavit ¶ 1.a. that "Moses knew at the time this was false," because the cited document Pyle Aff., Ex. 6 at WM000391, does not remotely establish the asserted fact. (Moses Aff., ¶ 12).

107.    One EC member assumed on February 26 from the prior discussion in Moses Exhibit 6 because any member should get "one cycle of feedback and a chance to improve" that person then wrote, referring to the bullet points circulated on February 20 (Id. at 00389) that sounds "like Koppel had one cycle of feedback and then a chance to improve "saying" It sounds like that cycle has happened informally already possibly several times" Ex. 6. Wm 392, Foss 7:35 p.m. Moses did not correct that false impression. Moses knew it was false. Koppel Aff. ¶ 1; Moses Ex. 12, last page, Wm 0363, 11:11 a.m. (putative February 12 retraction). Moses at 9:19 p.m. told the group that "I've had many people many people say without prompting [sic]…. That Koppel makes women uncomfortable." Ex. 6, 392. No person is named. Id. The record has no support for this.

**Response:**

Moses states that the first sentence of paragraph 107 characterizes a document that speaks

for itself, and denies that it accurately quotes the referenced statement in Exhibit 6 to the

Pyle Affidavit, WM000392. As to the second sentence, Moses denies the stated

"impression" was false. It is, to the contrary, undisputed that Koppel (1) hugged SIPB

member ████████ in a way that made her "deeply uncomfortable" and "freaked out"

enough that she did not return to the SIPB Office, (Moses SOF ¶ 39); (2) stroked SIPB

keyholder ████████'s arm in the SIPB Office in a way that made her "very

uncomfortable" and made her "feel unsafe in the SIBP office," (*id.,* ¶ 40); (3) made SIPB

keyholder ████████ uncomfortable with a lewd reference to the name of a computer

program (*id.* ¶ 41); (4) called the MIT Police on SIPB keyholder ████████ merely for

showing up at an extracurricular event, after she had accused him of sexual misconduct,

hoping that doing so would have made her uncomfortable, (*Id.* ¶ 43); and (5) hugged

SIPB keyholder William Moses and rubbed his head in a way that made him

uncomfortable even after Koppel determined Moses was "not into the hugs." (*Id.* ¶ 16).

The third sentence is denied, in that Paragraph 1 of Koppel's affidavit does not convey

any fact on Koppel's personal knowledge about Moses's state of mind, and the March 12,

2020 email at Pyle Affidavit, Exhibit 12 (last page), states only that SIPB leadership had

not warned Koppel about his actions, not that others had not done so. The final three

sentences are denied in that they misquote a statement in Pyle Affidavit, Ex. 6 at

WM000392, through the inaccurate and misleading use of ellipses. The actual statement

was: "I've in fact had many people say without prompting <u>that I should even be explicit</u>

<u>in saying the reason for this is because of how he</u> makes women uncomfortable . . . ."

(Pyle Aff., Ex. 6 at WM000392 (emphasis supplied)).

      108.    Five hours after the solicitation email was sent, Moses told the EC the evidence is "quite overwhelming [sic] that Koppel should not be a keyholder" and that expulsion (separation) from the group was appropriate. Moses Ex.6, 392, 9:19 p.m. Moses again said Koppel" makes women uncomfortable." Id. Moses at that time had displayed to the group one anonymous first- person accusation. Ex. 7, Wm 0071, 5:27 p.m. That lone accusation (by ███) was expressly withdrawn, however at 2:00 p.m. the next day as "not something you can use against Koppel." Koppel Ex. D, texts from ███ to Moses at 2:00 p.m. February 27; see additional facts as to ███, below at 170.

**<u>Response</u>:**

The first sentence of paragraph 108 purports to quote a document in the record that the Court can read for itself (Pyle Aff., Ex. 6 at WM000392). Moses further states that the document misquotes the referenced statement, in that he did not state that "expulsion" was "appropriate," but admits the actual statement was sent to the Executive Committee at the time stated. The second sentence is denied because it misquotes the cited document. The remainder of the paragraph contains improper characterization and argument about documents in the record in violation of Fed. R. Civ. P. 56.1. To the extent the remainder of paragraph 108 states facts, they are denied. In particular, Moses denies that any "accusation" by ███████ was "expressly withdrawn." Her statement that "it's hard to point at any particular incident and use that as reason against him [b]ecause everything he does is subtly off putting," (Koppel Ex. H) is consistent with her earlier description of the incident: that Koppel tried "to touch [her] in 'socially acceptable' ways

as much as possible in a very disturbing way." (Pyle Aff., Ex. 7 at WM000371). █████ testified Koppel would "find[] excuses to touch you such that it's not so bad that you can go to the Title IX and report it like a molestation. However, it's uncomfortable enough and repeated enough that it overall makes me extremely uncomfortable." (Pyle Aff., Ex. 15, ████ Dep. at 125-126).

109.   The four-bullet point memorandum, Koppel Ex. A, was sent February 26, 2020 at 4:21 p.m. Each of the four bullet points was false and is not supported by any known fact. Koppel Aff. ¶ 1.

**Response:**

As to the first sentence, Moses admits that he sent the email attached to the Koppel Affidavit as Exhibit A, and denies that it was a "four-bullet point memorandum." (Koppel Aff., Ex. A). The second sentence is denied because the cited document, Koppel Aff., ¶ 1, does not support the statement, and because the sentence constitutes improper argument and characterization in violation of Fed. R. Civ. P. 56.1 and Local Rule 56.1. Moses specifically denies that any statement in the February 26, 2020 email is false. Koppel's affidavit, Paragraph 1, which purports to demonstrate the falsity of the email, relies on documents that are not contained in the summary judgment record, and on improper characterizations of these unprovided documents, and does not support the assertion that anything in the email was false. (Batson Aff., ¶ 10; Pyle Aff., Ex. 4 (Moses Dep.) at 5-8).

110.   In addition to the points in the Koppel affidavit, Moses when deposed could not recall when the hugs started or when he asked that they stop. Moses Dep. 3.85, 3.83. Moses never viewed the hugs as sexual. Moses Dep. 1, 10, 16.

**Response:**

Moses denies paragraph 110 because the cited deposition testimony does not reflect that Moses could not put any date on the hugs and offensive rubbing of his head committed by Koppel or the times he asked Koppel to stop. (Koppel Aff., Ex. L, at 83-86). Moses admits the second sentence of paragraph 110.

111.    Before he sent the February 26 email Moses asked the person who was the source of the street harassment point when it had happened. Moses Dep. 3.40. Moses did not wait for an answer. The Koppel comment about street harassment was not "recent" or within the last year but took place in 2017 in a private conversation. Koppel Aff. ¶ 1. That 2017 conversation was with ███. Moses by 2019 knew ███ did not like Koppel. See Koppel Ex. D, 2019 showing that ███ helped Moses **s**ecretly change his March 2019 MIT room assignment with Koppel. ███ told Moses at the time "you would hate living with Koppel." Koppel Ex. D. Moses replied that he was "not a fan" of Koppel. Id. Koppel thought they were good friends at all times prior to learning from someone else about the March 2 email. Koppel Aff. ¶ 3.

**Response:**

Moses does not dispute the first sentence of paragraph 111 to the extent it states that he asked ███ about the street harassment conversation. The second sentence is not susceptible to a response because it is vague and does not state a specific provable fact. The third sentence refers to a portion of paragraph 1 of Koppel's affidavit that improperly purports to reference and describe a document that is not contained within the summary judgment record and also improperly characterizes facts, so that sentence is

denied. The fourth sentence fails to cite any evidence in the record. The fifth sentence,

the descriptive citation after it, and the sixth and seventh sentences all refer to a document

that speaks for itself and are denied to the extent they misquote the document and to the

extent the document does not support the statement. Answering further, Exhibit D shows

Moses stating that he is "not that big a fan" of Koppel, not that he is "not a fan." (Koppel

Aff., Ex. D). Moses lacks sufficient information to admit or deny the last sentence of

paragraph 111.

> 112.    The "sexist comment" by Koppel was to the effect that "some men
>
> walk on eggshells" and was not about Epstein. Koppel Aff. ¶ 1 c.

**<u>Response</u>:**

The statement contained in Paragraph 112 relies on Koppel's affidavit, paragraph 1.c,

which purports to characterize and quote a document that is not in the summary judgment

record and fails to set forth any context for the assertion that it was "not about Epstein."

The statement therefore fails to set forth competent evidence for purposes of this motion.

To the extent a further response is required, Moses denies that Koppel accurately quotes

or characterizes the document.

> 113.    The first several replies to the four-bullet point email were from
>
> persons who did not know Koppel. They said who said the [false] bullet points
>
> alone justified refusal to nominate Koppel. Ex. 7, Wm 370, 4:29 p.m.; 4:37 p.m.
>
> Carney wrote "the most serious issue was initiating physical contact after being
>
> asked to stop."4:52 p.m. Moses concealed from Carney, from the entire audience
>
> of Private, 144 people (Koppel Ex. G), and from the EC, that this bullet point in
>
> fact related to hugs by Koppel to Moses, not to sexual harassment of anyone.

Moses Dep. 1, 9, 16, 131-132. Moses did not tell the EC or the SIPB Private
audience that the "physical contact after being requested to stop" referred to
Koppel giving Moses friendly hugs. Id. Koppel until March 2 thought Moses was
a good friend based on several years of apparent friendship. Koppel Aff. ¶ 3.

**Response:**

Denied. The first sentence is unsupported by any citation to the record, and therefore
violates Rule 56.1 and Local Rule 56.1. The second sentence is unintelligible as written,
but it appears to characterize a document that speaks for itself; Moses further notes that its
assertion that the "bullet points" were "false" is unsupported by proper citation in violation
of the rules. Footnote 3 is denied in that none of the documents cited support the statements
asserted therein. The third sentence inaccurately quotes Exhibit 7, at WM000370; Carney
actually wrote "the thing that brings me most concern is initiating physical contact *after
being asked to stop.*" (Pyle Aff., Ex. 7, at WM000371). The fourth and fifth sentences are
not supported by any of the cited pages of Moses's deposition, some of which are not
contained in the record. Further, Moses told executive committee members that Koppel
made him uncomfortable by hugging him and rubbing his head after Moses asked him to
stop. (Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21). In none of the cited pages did Moses
refer to Koppel's grabbing of him and rubbing of his head as "friendly hugs." (Moses SOF
¶ 16 (Koppel touched Moses in a way that made him uncomfortable even after determining
he was "not into the hugs.")). Rather, at Koppel Exhibit J, page 9, Moses states, "James
made me uncomfortable by coming up to me and without my permission hugging me and
then also rubbing my head with his fist. And I did not want either of those things to occur
and thus, it made me uncomfortable to have them occur." Moses is unable to admit or deny

the last sentence.

114.     One person, ███, initially reported only to Moses that Koppel

makes her uncomfortable because of "inappropriate" conduct, namely that Koppel

had at some point touched her. Ex. 7, 00371, 5:27 p.m. ███ also said Jimmy is

"one of the reasons (among another creepy dude)" [sic]"that a [not-named friend]

doesn't come to meetings." 371 at 5:27 p.m. That was false. See additional facts

as to ███, point (h) below. Moses within the hour of the initial ███ report

without attribution (i.e. anonymously) to the whole group. Ex. 7, 00372, 5:57 p.m.

**Response:**

The first sentence is denied: the cited email at Pyle Aff, Ex. 7 at WM00371 does not use

the word "inappropriate," and the first sentence otherwise does not accurately summarize

her email on that page. The second sentence does not accurately quote the referenced

sentence; it actually reads: "One of my best friends has said that Jimmy is one of the

reasons (among another creepy dude) she doesn't come to SIPB." (Pyle Aff., Ex. 7 at

WM000371). The third sentence is denied; none of the referenced "facts" Koppel asserts

about ██████ demonstrate ████'s statement to be false. As to the final, largely

unintelligible sentence, Moses denies that the referenced page shows him forwarding

████'s comment "to the whole group." The cited email at 5:57 p.m. is between Moses

and ████ only. Pyle Aff, Ex. 7at WM000372. Moses sent an anonymized version of

████'s email at 6:06 to SIPB-Private, the email list of keyholders. (*Id.*, at WM000373).

The first sentence of footnote 4 is admitted. The second sentence is denied, in that

Koppel is also described as a "creepy dude," and is otherwise admitted. The remainder of

the footnote is denied to the extent it states that Moses and Young were friends, in that

the cited document does not support the statement.

115.     ▮▮▮ the next afternoon in a text directly to Moses recognized that the February 26 email was seeking negative comments. She described her initial report about touching on the arm as "not something you [Moses] can use against [Koppel]." Koppel Ex. H, See additional facts as to ▮▮▮ below at point (g).

**Response:**

The first sentence is a characterization of a document, not a statement of fact that complies with Fed. R. Civ. P. 56.1 or Local Rule 56.1, so no response is required. The second sentence is denied. The referenced message by ▮▮▮ does not reference her earlier email about Koppel touching her. The quote in the second sentence of paragraph 115 is inaccurate. ▮▮▮ does not say <u>her report</u> is "not something you [Moses] can use against [Koppel]." The statement actually reads, "It's also confusing because it's hard to point at any particular incident and use that as a reason against him. Because everything he does is subtly off putting." Paragraph 115 consists of improper and inaccurate characterizations of a document, not a properly stated fact.

116.     The February 27 defamation was sent to Private, an audience of 144 persons at 6:11 p.m., 26 hours after the February 26 solicitation. Koppel Ex. A, B; Ex. 7, WM 0375-0376. Moses tells the audience that it is "clear" from the "conversation most of which was through individual replies to me" that Koppel should not be nominated for keyholdership. Moreover, given the severity, consistency, and widespread nature [sic] of his interactions "[sic]"the EC has concluded "that we should request Koppel refrain from participating in the group anymore." The expulsion is described as a "necessity" which reflects the "vast

15

majority" of people who took part in the discussion ("again through individual replies"). Moses writes that Koppel" has been given several opportunities to change his behavior and failed to do so." Moses describes the severe, consistent, and widespread bad behavior by Koppel ("interactions") as something" our members had to endure." He asserts that the group takes "a strong stand against sexual harassment "and says the discussion has made it clear that the group needs to do better to be "safe environment" and a "community where everyone should feel safe and supported." (emphases added throughout). Every point here is false.

**Response:**

As to the first sentence, Moses admits only that his February 27, 2020 email was sent to SIPB-Private at 6:11 p.m., and otherwise states that the cited documents do not disclose the number of recipients of the email, and otherwise states that the first sentence constitutes improper characterization rather than fact in violation of Fed. R. Civ. P. 56.1 and Local Rule 56.1. The remaining sentences, except the last sentence, purport to quote a document (Pyle Aff., Ex. 7at WM000375-000376), with haphazard and inaccurate quotation marks; Moses will not correct each one here. The last sentence, that "[e]very point here is false," is denied. That assertion is made without proper citation to the record and therefore is not a proper statement of fact. Answering further, the February 27, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12;

Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ████ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ████ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

> 117.    Every aspect of the February 27 email referring to the prior "conversation" Ex. 7, is false and very likely deliberately false. The documents which have been disclosed, Exhibit 7, Wm 00370 – 376 are the entirety of disclosed communications to Moses in the "hard conversation." He published some reports to the group anonymously. The entire conversation, including all reports solely to Moses, does not show any fact or report consistent with "severe, consistent and widespread" sexual harassment. The entire conversation lasting close to 24 hours has 10 participants, of whom 3 are long -gone alumni ("cruft") and do not know Koppel in any way. Of the balance, 5 were active keyholders probably already aware of the negative rumors on February 10 behind closed doors.

**Response:**

The statements contained in Paragraph 117 do not comply with Fed. R. Civ. P. 56.1 and Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. To the extent paragraph 117 asserts facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Answering further, the February 27, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at

WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff.,

¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███ Dep. at 17-20, 23-27; Pyle

Aff., Ex. 16, ███ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20

at Koppel_01189; Ex. 21; Ex. 22).

      118.    As of 6:11 p.m. on February 27 (Koppel Ex. B) Moses had

received at most one firsthand report of unwanted touching by Koppel. That sole

report was by ███ who wrote her report as "a stream of consciousness", the next

day at 2 p.m. by text directly to Moses withdrew her complaint to say, instead,

that the one instance of Koppel touching her arm in the course of a public

conversation was "not something Moses could use against Koppel," but that she

thought instead that Koppel, who is slightly autistic, was, "subtly off putting" as

to "everything he does." Koppel Ex. H; response to para 23 above. As of 6:11

p.m. on February 27 there were no first-hand report identifying severe, consistent,

or widespread sexual harassment or unwelcome touching. No report mentions any

facts as to multiple instances of unwelcome touching. No report shows

harassment that had "apparently gone on for some time" without detection.

**Response:**

The first sentence is denied. Moses as of the time of the February 27, 2020 email had

received one "firsthand report of unwanted touching by Koppel" in addition to his own

"report" that Koppel had repeatedly touched Moses in an unwanted an unwelcome way

after being asked to stop. As reflected in Pyle Affidavit, Exhibit 7, Moses had also

received many second-hand reports of Koppel making others uncomfortable, including a

first-hand report of a person who was made uncomfortable by Koppel due to his reported

touching of another person – which made the reporting person "viscerally afraid" of Koppel. (Pyle Aff., Ex. 7 at WM00375). The remaining statements contained in Paragraph 118 and footnote 5 do not comply with Fed. R. Civ. P. 56.1 and Local Rule 56.1 because they are arguments, opinions, and characterizations, or they are factual assertions with no cited support in the record, and therefore no response is required. Answering further, the February 27, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ███Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

119.   Except for ███, the February 26 "conversation" initiated by the four false bullet points, Exhibit 7, Wm 070, produced as of 6:11 p.m. on February 27 (Koppel Ex. B) no evidence of "severe, consistent, or widespread" … "sexual harassment" by Koppel. No one on the EC used that term at prior dates as to Kopple. Moses had no evidence that Koppel had caused any member to "endure" …"sexual harassment" but wrote "I am sad this is something our members had to endure"[sic].) Koppel Ex. B.

**Response**:

The statements contained in Paragraph 119 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. To the extent paragraph 119 asserts facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Answering further, the February 27, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ███ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

120.    The deliberate falsity of the February 27 email is visible because Moses falsely asserts, twice, that "most" of the negative facts were sent privately only to Moses. In fact, the one negative report (███: touching on the arm) was "shared" to the full group. No recent first-hand report was sent only to Moses. His description of the very weak or non- existent reports conceals and deliberately mischaracterizes the vague hearsay reported to him. There was one relevant entirely private report ("replies to me") which was the ███ report of an ancient non-event. Koppel Aff. ¶ 4. Moses is falsely asserting, however, that all of his factual statements on February 27, Koppel Ex. B, are based on a volume of reliable non-

disclosed facts ("individual replies to me"). No such facts are shown. The conversation, Exhibit 7, does not support or corroborate what Moses wrote, Koppel Ex. B, in a different way because the entire "conversation" was a solicitation of additional negative information based on false talking points. The conversation was certainly not "clear" support ("clear from this conversation") for what Moses wrote on February 27.

**Response**:

The statements contained in Paragraph 120 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. To the extent paragraph 120 asserts facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Further answering, the statement in the fifth sentence mischaracterizes the report of SIPB keyholder ████████████████, in which she said she had heard a first-hand report that Koppel engaged in "sexual assault." (Pyle Aff., Ex. 7 at WM000375). Koppel's characterization of this event – his admitted grabbing of the rear end of his ex-girlfriend (Pyle Aff., Ex. 20 at Koppel_1189) – as an "ancient non-event" is not a proper statement of fact but an argumentative characterization. Footnote 6 is denied because the March 12 email states only that SIPB leadership did not ask Koppel to change his behavior. (Pyle Aff., Ex. 12). Answering further, the February 27, 2020 email is not false, nor is it "deliberate[ly]" false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393,

WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle

Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle

Aff., Ex. 15, ▮▮▮ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ▮▮▮ Dep. at 13, 22-23, 25; Ex.

17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

> 121.    The March 2 e-mail is false in virtually all the way already described
>
> as to the February 27 e-mail and includes several new falsehoods. Moses on March
>
> 2 describes the discussion commenced on February 26 by the four bullet points as
>
> a "hard conversation" [sic] that took place among SIPB keyholders" this past
>
> week."

**Response:**

The statements contained in the first sentence of Paragraph 121 do not comply with Fed.

R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and

characterizations, and therefore no response is required. To the extent paragraph 121

asserts facts, it fails to support them with citations to any document admissible in

evidence in violation of Rule 56.1 and Local Rule 56.1. The second sentence purports to

quote an uncited document (it is Exhibit 12 to the Pyle Affidavit) and does so

inaccurately. The statement actually reads, "I am writing to let you know about a hard

conversation that SIPB keyholders had this past week about SIPB member Jimmy Koppel

(jkoppel)." (Pyle Aff., Ex. 12). Further answering, the March 2, 2020 email is not false.

(*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80;

Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-

428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5,

p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399;

Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff.,
Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███Dep.
at 17-20, 23-27; Pyle Aff., Ex. 16, ███ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at
Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

122.    There is no evidence of any such conversation among the active
student keyholders, although that easily could have been done. Koppel Aff. ¶ 8.
The March 2 audience of SIPB-Office is hundreds of MIT keyholder, at least 508,
worldwide. See Koppel Aff. ¶ 8. The March 2 reference to "many" keyholder"
reports in the "conversation" suggests that the very limited conversation involved
participants who had reliable first-hand knowledge. That was false. ¶¶ 112, 113,
above. As of February 20, 2020, there were approximately 22 active student key
holders. Koppel Ex. E. The March 2 e-mail falsely suggests that this small, arguably
reliable group was the source of the information described in the March 2 e-mail.
That falsity is particularly harmful because the March 2 e-mail thereby conveys that
that a very limited group, 22 active key holders "shared" stories which involved
first-hand knowledge of severe, consistent, and widespread misbehavior by Koppel.
The implication that a very limited group had knowledge of multiple instances of
severe and widespread stories misbehavior suggests that Koppel is an egregious
and dangerous predator who has committed numerous widely-known violations of
decency. Moses confirms this false impression by invoking emergency conditions:
immediate expulsion was a "necessity" for the group to be a "safe environment for
everyone." "This circumstance [sic] and the required [sic] response are quite
exceptional and reflect a need for the group to do better to be a safe environment."

(emphasis added). Koppel is a recently identified extreme menace to everyone. His bad behavior is severe, consistent, and widespread. He has persisted in bad conduct ("interactions") "despite requests to stop. "His widespread bad behavior" had apparently gone on for some time" before recent detection. The decision that Koppel be immediately expelled from spaces used by the group, and participation in all projects and events and "reflects the will of the current keyholders." The active student keyholders including the EC, a total of 22 persons, Koppel Ex. E, They were never polled. A tailored email list easily could have been prepared for that group only. Koppel Aff. ¶ 8. Moses did not bother because the EC already knew by February 20 Koppel would not be nominated or elected. Exhibit 7, first two pages.

**Response:**

The statements contained in Paragraph 122 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. The paragraph largely consists of a highly exaggerated misreading of the March 2, 2020 email attached to the Pyle Affidavit as Exhibit 12. The Court can read the email for itself. Further answering, Moses states that Koppel's Exhibit E does not establish that it contains a full list of all "active student keyholders," nor is that term anywhere defined. The March 2, 2020 email does not state the "conversation" was held only among "active student keyholders;" it said the conversation was among "SIPB keyholders," which includes alumni keyholders. (Moses SOF ¶¶ 7-8 and Koppel responses). Moses denies that there is "no evidence" of any conversation among keyholders: such an exchange happened on SIPB-Private, which consists entirely of

keyholders, including student keyholders, and in person. (Pyle Aff., Ex. 7; Batson Aff., ¶ 10). Koppel has admitted that alumni keyholders frequently participate in SIPB's operations. (Moses SOF ¶ 8 and Koppel response). Moses denies that the Executive Committee "already knew by February 20 that Koppel would not be nominated or elected;" the purpose of the February 27 email was to obtain further input on that very question, which was not relegated solely to the Executive Committee. (Koppel Aff., Ex. F; Pyle Aff., Ex. 7). To the extent paragraph 122 asserts any other facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Answering further, the March 2, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ▮▮▮ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ▮▮▮ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

123.    Preemptive non-nomination or expulsion prior to nomination required notice from the EC and an opportunity to be heard. Constitution, Moses Exhibit 1, Article X, Koppel 008. Moses nevertheless wrote that this "exceptional" but "required" response, the immediate (unconstitutional) public banishment of a mere member, plus worldwide notice of the expulsion, is "necessary" for the group to be a "safe environment" for everyone. That is unsupported. The EC was

scheduled to meet on March 6. Koppel Ex. F, page 3. top. There was no emergency. But see Koppel Ex H, Moses telling ███ he had to send the February 27 email "immediately". The EC alone could confidentially expel Koppel without giving any reasons it did in 2018 to Hawk. See Moses Ex. 10. Hawk moreover was well known. Moses was not. His expulsion was of no interest to anyone except Koppel. Others had no valid interest in publicizing it.

**Response:**

The first sentence is denied. Article X of the SIPB Constitution does not state anything about "[p]reemptive non-nomination" (whatever that is) at all. (Pyle Aff., Ex. 1 at Koppel _0008). It discusses discipline by SIPB; it does not address the action of not nominating a person for keyholder, or asking a member to disengage from SIPB, which is what the March 2, 2020 email addressed. (Pyle Aff., Ex. 12). Further, a decision not to nominate a person for keyholder was routinely done without a formal disciplinary proceeding. (Supp. Moses Aff., Ex. A). Otherwise, the statements contained in Paragraph 123 violate Rule 56.1 in that they amount mischaracterizations and exaggerations of the March 2, 2020 email, or consist of statements that are not supported by any citation to a document admissible in evidence, and they therefore require no response. Answering further, the March 2, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-

9, ¶ 15; Pyle Aff., Ex. 15, ▆▆▆ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ▆▆▆ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22). Further answering, Koppel appears to have swapped his name and Moses's in the ninth and tenth sentences; assuming as much, Moses denies that SIPB members had no interest in the March 2, 2020 email. (Moses Aff., ¶ 14; Batson Aff., ¶ 15).

> 124.    The March 2 email falsely says that Koppel has covertly engaged in serial and widespread molestation or sexual abuse ("interactions") which was so severe and well- known that "many keyholders" were able on short notice to "share" "negative" stories" of his horrific conduct. The sole "story" from any keyholder, however, was that Koppel touched ▆▆▆ on the arm in public, a story which was "not something Moses could use against Koppel." ▆▆▆ instead said she found Koppel to be "subtly off-putting in everything he did." Koppel Ex. H.

**Response**:

The statements contained in Paragraph 124 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. The paragraph largely consists of a highly exaggerated misreading of the March 2, 2020 email attached to the Pyle Affidavit as Exhibit 12. The Court can read the email for itself. The last two sentences repeat Koppel's mischaracterization of ▆▆▆▆▆▆'s report addressed in paragraphs 114-115 and 118; we incorporate our responses to those paragraphs. To the extent paragraph 124 asserts any other facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Answering further, the March 2, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle

Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ███ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

125. Even the March 2 statement that Koppel agreed to immediate expulsion is defamatory because, by artful omission, Moses suggests that Koppel acknowledged the truth of the concealed accusations. That is false. Koppel agreed to be expelled on February 27 at about 5 p.m. because he trusted his friend Moses and even though Moses refused to tell Koppel any of the specifics of any allegation. Koppel Aff. ¶ 2.

**Response:**

The statements contained in Paragraph 125 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. The paragraph largely consists of an argument about the meaning of the March 2, 2020 email attached to the Pyle Affidavit as Exhibit 12. The Court can read the email for itself, but the referenced statement conveys only that Koppel "has agreed to" the Executive Committee's request "that jkoppel refrain from participating in SIPB any more (interacting in SIPB spaces, participating in SIPB projects & events, etc)." (Pyle Aff., Ex. 12). This was true, as Koppel has admitted elsewhere. (Koppel Affidavit, ¶ 2; Statement of Additional Facts ¶ 152 (describing departure as "resignation")). To the extent paragraph

125 asserts any other facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Answering further, the March 2, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ██ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ██ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

      126.    The February and March 2 defamations are internally inconsistent. The inconsistencies show falsehood. It is not possible that Koppel's bad acts (i) persisted and were concealed for an extended length of time ("had apparently gone on for some time") before recent detection… we are "are sorry this is something you have had to endure"… [SIPB has]"a need to do better...") and that (ii) the same bad acts were previously not identified but were the subject of" many" "consistent, severe reports "shared just "last week" by well-informed keyholders and that (iii) the very same concealed bad acts had already been the subject of generous but unsuccessful warnings to Koppel plus "opportunity to change" which he rejected or refused. If the first is true for example there is no time for Kopple to be offered and to reject t opportunities to correct his behavior.

**Response:**

The statements contained in Paragraph 126 do not comply with Fed. R. Civ. P. 56.1 or

Local Rule 56.1 because they are arguments, opinions, and characterizations, and

therefore no response is required. The paragraph largely consists of a tendentious

misreading of the February 27 and March 2, 2020 email attached to the Pyle Affidavit as

Exhibits 7 and 12, respectively. The Court can read the emails for itself. To the extent

paragraph 126 asserts any other facts, it fails to support them with citations to any

document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1.

Answering further, neither email is false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle

Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266,

270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4,

Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389,

WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372,

WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18;

Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16,

███ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at

Koppel_01189; Ex. 21; Ex. 22).

      127.    Until March 2 Koppel thought Moses was his friend. Koppel Aff. ¶

3. In March 2019 they applied to be "matched" to live together at MIT. Moses 3.83.

When they lived in the same dorm they hung out in the room of the other. Moses

3.85. On February 12, 2020 Moses sent Koppel a birthday greeting. Moses Dep.

3.83 ("Happy Birthday friendo"). Koppel Aff. ¶ 3.

**Response**:

Moses is unable to admit or deny the first sentence of paragraph 127. Moses admits so much of the second, third, and fourth sentences as state that he and Koppel explored living together as roommates, hung out together, and that Moses sent Koppel a birthday greeting, but note that the cited deposition pages do not address those subjects. (Moses's SOF at ¶ 15; Ex. 3, Koppel Dep. at 429-430; Ex. 2, Moses Dep. at 6; Ex. 3, Koppel Dep. at 430-431, 433).

128.    The February 27 and March 2 emails in different forms of words inexplicably and falsely say that Koppel had been warned and failed to correct his behavior, instead persisting in severe, consistent, sexual harassment. The deliberate falsehoods about warning were the only defamation retracted on March 12. Moses Ex. 7. The "retraction" is otherwise wholly insufficient.

**Response**:

The statements contained in Paragraph 128 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. The paragraph largely consists of an unreasonable misreading of the February 27 and March 2, 2020 emails attached to the Pyle Affidavit as Exhibits 7 and 12, respectively. The Court can read the emails for itself. Pyle Aff., Exs. 7, 12. To the extent paragraph 128 asserts any other facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Answering further, the March 2, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-

489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ██ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ██ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

129.    Starting February 10, any publication about Koppel beyond the Executive Committee was needless and excessive. Moses on February 20 asked the EC whether Koppel should merely be not nominated or should also be told he would not be nominated. Moses Depo. 2. 99. Broader discussion was not on the table. Similarly Moses asked the EC whether he or the EC should tell Koppel. Id. 2. 94. At that point in time the entire issue was to be handled by the EC alone and confidentially. That was how Hawk was expelled. Response to SOF para 49, above; see additional facts as to Hawk, point (i) below.

**Response:**

The statements contained in Paragraph 129 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. Further answering, the paragraph purports to reference a February 20 discussion between Moses and the other members of the Executive Committee, but the deposition pages cited, (Koppel Ex. K, Moses Dep., Day II, pages 94 and 99), refer to two one-on-one chat conversations between Moses and other individuals, not the "EC." (*Id.*, at 94 (Moses noting that the first exhibit referenced is "is a one-on-one chat" with the other party obscured); at 99 (noting second chat is with

Georgia Shay)). To the extent paragraph 129 asserts any other facts, it fails to support

them with citations to any document admissible in evidence in violation of Rule 56.1 and

Local Rule 56.1.

> 130.   As of February 21, and all later times, no publicity as to Koppel was
> needed or permitted outside the EC Public solicitation of negative comments and
> the announcements of the decision to expel (Koppel, Ex. A, B, C) were improper
> and excessive because the only permissible mechanism for expulsion is confidential
> EC hearings before the EC after notice and an opportunity to be heard. Moses Ex.
> 1. Article 11, Constitution. See Response to SOF, para. 48 above as to Hawk.

**<u>Response</u>:**

The statements contained in Paragraph 130 do not comply with Fed. R. Civ. P. 56.1 or

Local Rule 56.1 because they are arguments, opinions, and characterizations, and

therefore no response is required. Further answering, the SIPB Constitution does not

address informal requests by the Executive Committee that a member voluntarily leave

the group or such member's agreement to leave, which is what happened here. (Pyle Aff.,

Ex. 1; Ex. 3, Koppel Dep at 481-482; Koppel Aff., ¶ 2). To the extent paragraph 130

asserts any other facts, it fails to support them with citations to any document admissible

in evidence in violation of Rule 56.1 and Local Rule 56.1.

> 131.   The publications here were needless and excessive on this specific
> record. If expulsion had been proposed on February 21. Koppel very likely would
> have agreed. He agreed to expulsion on February 27 at 4 p.m. in a person-to-person
> meeting with Moses despite not being told any reasons. Koppel Aff. ¶ 3.

**Response**:

The statements contained in Paragraph 131 do not comply with Fed. R. Civ. P. 56.1 or

Local Rule 56.1 because they are arguments, opinions, and characterizations, and

therefore no response is required. Koppel's statement that he "very likely would have

agreed" to a hypothetical request is not a proper assertion of fact for purposes of

summary judgment. Further, Koppel agreed to withdraw from SIPB on February 27; he

did not "agree to expulsion," and he was not expelled. (Koppel Affidavit, ¶ 2; Statement

of Additional Facts ¶ 152 (describing departure as "resignation")). To the extent

paragraph 131 asserts any other facts, it fails to support them with citations to any

document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1.

> 132.   There is no evidence Koppel ever sought to be nominated to be a
> keyholder. His nomination or non-nomination was not an urgent topic for any
> discussion by the EC until Moses decided to open a discussion of it. See Moses Ex
> 6.

**Response**:

The first sentence is denied. (Ex. Koppel Dep. at 390-391 (stating that Koppel joined

SIPB because he was interested in the privileges of keyholdership)). The second

statement amounts to characterizations rather than facts in violation of Rule 56.1 and

Local Rule 56.1. Further, Moses notes that Koppel's potential nomination was brought up

at a conversation immediately following a SIPB Meeting on February 10, 2020, before

the communication in Exhibit 6 to the Pyle Affidavit. (Batson Aff., ¶ 10).

133.   There is no evidence of any custom or practice of distribution of emails to Private to discuss a person who was not yet nominated and not yet seeking nomination to keyholder.

**Response:**

Denied. (Moses's SOF at ¶ 12; Moses Aff., ¶ 9; Batson Aff., ¶11; Supp. Moses Aff., Ex. A).

134.   There is no evidence of any custom or practice of distribution of emails to Private or Office as to a member deemed by the EC as not able to satisfy the social integration requirement and therefore not likely to be a keyholder.

**Response:**

Denied. (Moses's SOF at ¶ 12; Moses Aff., ¶ 9; Batson Aff., ¶11; Supp. Moses Aff., Ex. A).

135.   There is no evidence of any custom or practice of distribution of emails to Private or Office to discuss non-nomination of a member.

**Response:**

Denied. (Moses's SOF at ¶¶ 9-12, ¶¶ 30, 48; Moses Aff., ¶ 8, 11; Ex. 1 at Koppel_0003, Koppel_0007-008; Ex. 2, Moses Dep. at 79-80; Ex. 3, Koppel Dep. at 400-401, 403-404, 443; Ex. 6 at WM000399; Aff. of Olu Brown at ¶ 12; Batson Aff., ¶¶ 3, 5-9, ¶ 13; Exs. 9-11; Moses Aff., ¶ 15; Supp. Moses Aff., Ex. A).

136.   There is no evidence of any custom or practice of distribution of emails to Private to solicit negative opinions as to a member by use of negative examples (the four-bullet points).

**Response**:

To the extent this paragraph asserts facts as opposed to characterizations, it is denied. The primary use of the SIPB-Private's email list is to discuss opinions about members, positive or negative, relevant to potential keyholdership. (Moses's SOF at ¶ 12; Moses Aff., ¶ 9; Batson Aff., ¶ 11; Supp. Moses Aff., Ex. A).

137.    In February 2020 the total number of active keyholders eligible to vote on a new keyholder was 22. Koppel Ex. F. That number includes the EC. Id

**Response**:

Denied, as the cited document, Exhibit F to the Koppel Affidavit, is a chat communication between Moses and Georgia Shay; it does not say anything about the number of "active keyholders eligible to vote."

138.    Moses did not know how many people were in the audience of Private as of February 2020. Moses Dep. 1, 78. In fact it was 144. Koppel Ex. G. As of. February 2020 only 22 recipients of Private were active student key holders. Koppel Ex. I. The other 122 persons (144 minus 22) were excessive. The excess people are many alumni keyholders ("cruft") who cannot vote on keyholder. They did not know Koppel or anything about him. See Moses Ex. 7. 4:37 p.m. and 6:22 p.m. (Hey, I graduated in 2013 but …"). (emphasis added)

**Response**:

The first sentence is admitted. The second sentence is denied, in that the cited document, Koppel Exhibit G, does not support the statement. That document is a list of the membership of the SIPB-Private list as of August 19, 2022, not as of February or March 2020; newly-elected keyholders were added to this list after the allegedly defamatory

emails were sent. (Koppel Ex. G; Aff. of Olu Brown, ¶ 10 and Ex. D). The third sentence

is denied, and Moses notes that it is Unsupported by Exhibit I to the Koppel Affidavit,

which is a chat between Moses and Miguel Young. The remaining statements in

paragraph 138 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they

consist of arguments, opinions, and characterizations, and therefore no further response is

required. To the extent paragraph 138 asserts any other facts, it fails to support them with

citations to any document admissible in evidence in violation of Rule 56.1 and Local

Rule 56.1. Further answering, the mere fact that a keyholder is an alumnus or cannot vote

does not mean that the keyholder does not have an informed opinion about Koppel's

potential keyholdership, or valuable advice to offer. (Pyle Aff., Ex. 7, p. WM000373).

The SIPB constitution recognizes alumni keyholders, defining them as "associate

keyholders," and Koppel has admitted that they regularly participate in the work of SIPB.

(Moses SOF, ¶ 8, and Koppel response; Pyle Aff., Ex. 3, Koppel Dep. at 396-400; Pyle

Aff., Ex. 1 (SIPB Constitution) at Koppel_002; Supp. Moses Aff., Ex. A).

> 139.    It is relatively simple for anyone skilled in computer science to make
> or update a distribution list for e-mail. It takes at most several minutes. Koppel Aff.
> ¶ 7.

**<u>Response</u>:**

The statements contained in Paragraph 139 do not comply with Fed. R. Civ. P. 56.1 and

Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore

no response is required. To the extent paragraph 139 asserts facts, they are either so vague

as to be unsusceptible to a response, or they are unsupported by the cited affidavit.

140.     Moses on March 2 did not know how many people were in the audience of "Office" or if it was up to date, or who exactly was in that audience. Moses Dep. 1, 159. Moses at the time said Office included every person who ever went to one meeting ("prospective") plus anyone who was ever a "member" by reason of going to several meetings. Moses Dep. 2, 153, 144. Moses knew this prior to sending the March 2 e-mail. See WM 379 ("are we sure we want all prospective ever to get?"). The distribution of Office at the time was at least 508 persons. SOF ¶ 36. Moses at the time did not know the extent of the Office distribution. Moses dep. 3, 151.

**<u>Response</u>:**

Moses admits that he did not know the number of recipients of SIPB-Office before sending the March 2, 2020 email. (Moses Aff., ¶ 16). The first sentence of paragraph 140 is otherwise denied; further, Moses notes that the cited page of his deposition has nothing to do with the number of recipients of the SIPB-Office email. Moses denies that at the time of the March 2, 2020 email he believed that "[SIPB-]Office included every person who ever went to one meeting . . . plus anyone who was ever a 'member' by reason of going to several meetings." In his deposition, Moses explained that he later learned this the impression that SIPB-Office "apparently contains all prospective ever" was inaccurate. (Koppel Aff., Ex. K at 154). Moses denies that SIPB-Office had "at least 508 persons;" it is undisputed that had <u>at most</u> 508 persons. (Koppel's response to Moses's SOF ¶ 36).

141.    On February 21 Moses was told by a former Chair that "everything [about Koppel] <u>should be sent only to the Executive Committee or to the Chair</u>. Koppel Ex. I, same as Moses dep. Ex. 21a, Wm 0383. Moses ignored that advice.

**<u>Response</u>:**

Denied. This is a blatant mischaracterization of the cited document. The document is attached to the Supplemental Affidavit of William Moses as Exhibit B. It is an electronic communication in which Moses requests the "thoughts" of former SIPB chair Miguel Young about a draft of what would become the February 26, 2020 email soliciting views on Koppel via SIPB-Private. (Compare Supp. Moses Aff., Ex. B, and Pyle Aff., Ex. 7). Nowhere in the exchange does Young advise Moses that "everything [about Koppel] <u>should be sent only to the Executive Committee or to the Chair</u>," as Koppel purports to quote Young (with emphasis, no less). Rather, Young suggested that opinions about Koppel in response to the email should be sent to the Moses at a different email address (sipb-chair@mit.edu) than what Moses had proposed (wmoses@mit.edu); offered that people should be invited to send their opinions to the whole Executive Committee if they felt comfortable doing so; and made a few other procedural suggestions. (Supp. Moses Aff., Ex. B). The words "should be sent only to the Executive Committee or to the Chair" do not appear in the document. (Supp. Moses Aff., Ex. B).

142.    On March 1, Moses was told by the SIPB secretary that she did not know which of the various lists of keyholders were up-to-date and that some lists were "extremely out of date." Moses Ex. 7, page Wm 0396.

**Response**:

Denied. Paragraph 142 purports to quote to a document that is part of Exhibit 6 to the Pyle Affidavit, not Exhibit 7. At page WM000396, the secretary, Miriam Rittenberg, was not referring to email distribution lists, but rather to something different: text files of keyholder names. She referred to only one such text list as being "extremely out of date," not "some lists." (Pyle Aff. Ex. 6 at WM000396 ("There's an extremely out of date 'active-members' in /mit/sipb/admin/secretary. . . .") (emphasis supplied).

143.   The Private audience, Koppel Exhibits A, B, included about 144 persons, of whom at least 122 (144 minus 22) are irrelevant to EC consideration or nomination or any the election by active shareholders. The 22 possibly relevant persons were never directly polled by Moses. That alone shows the excessive publication of the four-bullet point memorandum and the February 27 email.

**Response**:

Paragraph 143 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists only of arguments, opinions, and characterizations, and therefore no further response is required. To the extent paragraph 143 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Further answering, Moses denies that SIPB-Private contained 144 members as of February or March 2020, as explained in response to paragraph 138, above. Further answering, Moses states that the consistent SIPB practice before and after the events at issue in this case was for keyholders to discuss whether a person should be nominated for keyholder on SIPB-Private, which contains more than just the "active" keyholders (not "shareholders"). (Batson Aff., ¶ 11; Moses Aff., ¶ 9; Pyle Aff., Ex. 6 at WM000387

(communication among members of Executive Committee in which Moses noted, "Traditionally, nomination discussions would occur on sipb-private, eventually reaching a consensus for nomination at that time."); Supp. Moses Aff., Ex. A (collection of produced emails showing use of SIPB-Private to discuss whether a person should be nominated for keyholder)).

144.    Moses in the February 27 and March 2 emails unintentionally admitted that at most the 22-active student keyholders (which includes the EC) were the only possibly proper audience for the February 26 accusations, the February 27 e-mail, and the March 2 e-mail. The February 26 e-mail was supposedly sent to report on a closed-door keyholder session. That email and the March 2 e-mail report the expulsion as entirely based on" many" shared keyholder stories.

**Response:**

Paragraph 144 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, and characterizations, and therefore no further response is required. To the extent paragraph 144 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Further answering, Moses denies that only the opinions of "active student keyholders" are relevant to determining whether a person should be a keyholder, or that Moses "unintentionally admitted" that non-fact. To the contrary, SIPB has relied on the wisdom of associate keyholders, including alumni, for this purpose. (Batson Aff., ¶ 11; Moses Aff., ¶ 9; Pyle Aff., Ex. 6at WM000387 (communication among members of Executive Committee in which Moses noted, "Traditionally, nomination discussions

would occur on sipb-private, eventually reaching a consensus for nomination at that time."); Supp. Moses Aff., ¶ 2 and Ex. A (collection of produced emails showing use of SIPB-Private, including by alumni, to discuss whether a person should be nominated for keyholder)).

145.    As a mere member Koppel was free to cease his membership at any time. Only the EC had any interest in loss of members, and that was a general interest in retaining members. The EC alone could expel. See Moses Ex. 10 (expulsion of Hawk after six months of confidential deliberations by the EC with no reasons announced.)

**Response:**

Paragraph 145 fails to comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, and characterizations, and therefore no further response is required. To the extent paragraph 145 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Further answering, Koppel was not "expelled" from SIPB, and nothing in the cited document shows that the Executive Committee "alone could expel."

146.    Nothing in the record establishes any precedent or custom for the use of Private or Office after the EC has determined that a member will not be nominated and will not become a keyholder because of social integration problems. But see Exhibit A. Confidential EC treatment seems to be obviously preferable when a has member satisfied the work contribution requirement but has persistent social problems e.g. alcohol abuse or non-treated psychological problems. In those hypothetical instances a private conversation is the obvious

first step. Other steps could follow, including confidential expulsion by the processes mandated by the Constitution.

**Response:**

Paragraph 146 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, and characterizations, and therefore no further response is required. To the extent paragraph 146 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Further answering, the first sentence is denied to the extent it asserts any facts. (Batson Aff. ¶¶ 5-11 and Pyle Aff. Exs. 9-10; Supp. Moses Aff., Ex. A). The Executive Committee does not "determine[] that a member will not be nominated;" the evidence shows that the keyholders on SIPB-Private use that platform to reach a consensus on that subject. (Supp. Moses Aff., ¶ 2 and Ex. A; Batson Aff., ¶ 9; Pyle Aff., Ex. 6 at WM000387 (communication among members of Executive Committee in which Moses notes, "Traditionally, nomination discussions would occur on sipb-private, eventually reaching a consensus for nomination at that time.")).

> 147.   Nothing in the record establishes any precedent or custom for the use of Private or Office to request negative comments or to use false facts to have a controlled discussion of a member not yet nominated for keyholder. Koppel Ex. A, B, C.

**Response:**

Moses denies that there was no precedent for using SIPB-Private to solicit opinions, pro or con, about whether a member should be a keyholder. (Moses's SOF at ¶ 12; Moses Aff., ¶ 9; Batson Aff., ¶ 11; Supp. Moses Aff., Ex. A). The remainder of paragraph 147

does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, and characterizations, and therefore no further response is required.

148.    The only documents in the record having to do with use of Office, Moses Exhibits 9, 10, and 11 do **not** involve nominations for keyholder. Moses Exhibits 9 and 10 conclusively show that Office was **not** used to expel Hawk. Hawk was expelled by the EC alone in 2018 <u>after six months of confidential consideration by the EC. He was expelled but no public reasons were provided on Office or otherwise</u>. Exhibit 10 a discussion that erupted after the secret expulsion. The other "Office" offering by Moses Ex. 11, relates to a person unrelated to MIT who was the subject of reliable police warnings that the person should be reported to the police immediately if seen on campus.

**<u>Response</u>:**

Paragraph 148 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, and characterizations, and therefore no further response is required. To the extent paragraph 148 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Further answering, the March 2, 2020 email to SIPB-Office does not say anything about Koppel being nominated for keyholder. It addresses the Executive Committee's decision to ask Koppel to leave the group, and other topics. (Pyle Aff., Ex. 12).

149.    Consideration of expulsion could and should have been limited to the EC, a total of nine persons. Koppel Ex. F, Moses Ex 10, (Hawk).

**Response:**

Paragraph 149 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, and characterizations, and therefore no further response is required.

150.    The emails on February 20 <u>and</u> February 26 <u>and</u> March 2 were excessive because all of them relied on rumor. The February 26 email relied on false rumor to solicit more rumors. All disputed "facts" in the February 27 and March 2 e-mails were false and at best based on false rumor.

**Response:**

Paragraph 150 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, conclusions, and characterizations, and therefore no further response is required. To the extent paragraph 150 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Answering further, the February 27, 2020 and March 2 emails are not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15,

██ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ██ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

151.    Transmission of Koppel Ex. C on March 2 was excessive because the worldwide audience of at least 508 did not have any valid interest in the expulsion of a mere member. Before it was sent, one EC member referred to the March 2 email as "our <u>public</u> email about jkoppel" Moses Ex 6, Wm 0397(emphasis added).

**<u>Response</u>:**

The statements contained in the first sentence Paragraph 151 do not comply with Fed. R. Civ. P. 56.1 and Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. To the extent the first sentence of paragraph 151 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Further, the audience was not "at least 508," it was a maximum of 508, as Koppel has elsewhere admitted. (Koppel's Response to Moses SOF ¶ 36). And, there is no record evidence for the assertion that the March 2 email had a "worldwide audience." As to the second sentence, Moses admits the referenced statement was made before the March 2 email was sent, but Moses also notes that it was made before the Executive Committee settled on SIPB-Office as the proper distribution list for the email. (Pyle Aff. Ex. 6 at WM000397-000399).

152.    After the resignation of Koppel on February 27 (confirmed in the March 2 e-mail, Koppel Ex. C,) there was no valid "interest" of SIPB in using his name to "serve" any putative objectives such as to "encourage the return of people he possibly had driven away." There is no evidence he drove anyone away. If that

were true, all 22 active keyholders would soon know he was gone. They easily

could tell all active members or anyone else. They are not potted plants.

**<u>Response</u>:**

Moses admits that Koppel agreed to leave SIPB on February 27, and otherwise states that

the assertions contained in sentence Paragraph 152 do not comply with Fed. R. Civ. P. 56.1

and Local Rule 56.1 because they contain no citation to anything that would be admissible

in evidence. To the extent paragraph 152 properly alleges facts, it is denied. (Moses's SOF

at ¶¶ 17-33, ¶¶ 37-45; Ex. 2, Moses Dep. at 36-38, 79-80; Ex. 3, Koppel Dep. at 232, 258-

266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Ex. 4, Moses Dep.

at 6-7, 20-21; Ex. 5, p. 3; Ex. 6 at WM000387-000389, WM000392-000393, WM000397-

000399; Ex. 7 at WM000371-000372, WM000375-000376; Ex. 8; Ex. 12; Ex. 4, Moses

Dep. at 117-118; Moses Aff., ¶12, ¶¶ 14-16; Batson Aff., ¶¶ 6-9; Exs. 9-11; Batson Aff., ¶

15; Moses Aff. ¶ 17; Am. Compl. Doc. No. 54, ¶ 58; Answer, Doc. No. 61, ¶ 58; Moses

Aff., ¶ 18; Ex. 15, ███ Dep. at 17-20, 23-27; Ex. 16., ███ Dep. at 13, 22-23, 25; Ex. 17;

Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

     153.    The distribution of Exhibits A, B, and C was excessive because

Koppel and his name were not relevant to any group interest in "future

encouragement of anonymous reports," or establishment of an anonymous

reporting or in the false suggestion that SIPB was now safe because of his

expulsion. General expression of vigilance against harassment or avoidance of

discomfort  are not related to Kopple. Linkage of his name of his name to these

topics is defamatory.

**Response**:

The statements contained in the Paragraph 153 do not comply with Fed. R. Civ. P. 56.1 and Local Rule 56.1 because they consist solely of arguments, opinions, and characterizations, and therefore no response is required. To the extent paragraph 153 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. To the extent further required, Moses states that inclusion of Koppel's name was necessary to encourage persons, like █████ █████, who may have been avoiding SIPB because of Koppel to return to the group. (Moses SOF ¶¶ 33; 38-39).

154.    When Moses first learned he was being sued, he researched Massachusetts case law as to excessive publication of a defamation. Moses Dep. 2, 152-153.

**Response**:

Denied. The quoted deposition testimony states that when Moses learned he was being sued, he "was reading almost everything I could about relevance, precedents, law, et cetera." (Koppel Aff., Ex. K at 153).

155.    Even though █████ at 2 p.m. on February 27 reminded Moses that Koppel had <u>not</u> <u>been</u> warned, Moses falsely wrote to the group of 144 at 6:21 p.m. that Koppel "had been given several opportunities to change his behavior and failed to do so. I am sad this is something our members had to endure." Koppel Ex. B. On March 2 Moses repeated this falsehood in different words saying that Koppel "made many shareholders deeply uncomfortable and continued to do so despite requests to stop." Koppel Ex. C.

48

**Response**:

Paragraph 155 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it

consists of only of arguments, opinions, conclusions, and characterizations, and therefore

no further response is required. To the extent paragraph 155 contains any factual

statement, it violates said rules because it lacks citation to supporting material that would

be admissible in evidence. Answering further, ███ did not "remind[]" Moses that

Koppel had not been warned by anyone that his conduct was unwelcome, and the

February 27, 2020 and March 2 emails are not false. (Moses's SOF at ¶¶ 17-33, ¶¶ 37-45;

Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-

266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4,

Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389,

WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372,

WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18;

Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16,

███ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at

Koppel_01189; Ex. 21; Ex. 22).

> 156. On March 12 Moses retracted those falsehoods about prior notice
> saying that "James was not informed or warned of any prior alleged conduct by
> SIPB leadership nor did he fail or refuse to cure or alter any conduct after any
> warning or warnings by SIPB leadership." Moses Ex. 12, Wm 00363.

**Response**:

Moses admits that he sent an email on March 12 stating, in part, "James was not informed

or 'warned' of any prior alleged conduct by SIPB leadership, nor did he fail or refuse to

cure or alter any conduct after any warning or warnings from SIPB leadership." (Pyle Aff., Ex. 12). Moses denies that the statement "retracted" any "falsehoods," because the March 2 Email did not say the prior warnings came from "SIPB leadership," and the statement that Koppel failed to stop engaging in conduct that made others uncomfortable despite being on notice his conduct was unwelcome is substantially true. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ██ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ██ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

> 157.   Once Koppel agreed to be expelled at 5:00 p.m. in February 27, there was no need to send anything about him to anyone. There was no urgency. Moses could have confirmed to the EC alone that Koppel agreed to withdraw. The EC was scheduled to meet on March 3. Koppel Ex. F, last page.

**<u>Response</u>:**

Paragraph 157 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, conclusions, and characterizations, and therefore no further response is required. To the extent paragraph 157 contains any factual statement, it violates said rules because it lacks citation to supporting material that would be

admissible in evidence. To the extent paragraph 157 asserts facts, they are denied. (Moses Aff., ¶ 14; Batson Aff., ¶ 15).

158.    Moses on March 6 made an appointment and went to the Title IX Office at MIT (IHDR) with at least one other non-victim to report sexual harassment by Koppel. Moses "may have" showed MIT administrators the initial, already withdrawn, █████ report, Moses Depo. 2. 89 (that █████ had been touched), despite knowing it was withdrawn. █████ declined to go. Id. 2. 09.

**Response**:

Paragraph 158 violates Fed. R. Civ. P. 56.1 and Local Rule 56.1 because the deposition testimony it purports to cite is not contained in the summary judgment record. Further answering, Moses denies that he went "to the Title IX Office at MIT (IHDR) . . . to report sexual harassment by Koppel," and notes that no document cited by Koppel supports such statement. Moses further denies that █████ had "withdrawn" her report that Koppel touched her in the SIPB office at any time, and further states that it is undisputed that he did so. (Compare Koppel Ex. H and Pyle Aff., Ex. 7 at WM00371; Pyle Aff., Ex. 15, █████ Dep. at 125-126; Moses SOF ¶ 40 and Koppel response).

159.    The facts show that Koppel was targeted for special, bad faith, treatment. The false publicity of Koppel at issue here showed the MIT community and the world that Moses was taking a "strong stand" against sexual harassment. It was designed to show that at "least one [MIT] group was willing to make hard decisions [sic] on that subject. Moses Dep. 2. 163. Widespread public denunciation of Koppel as a sexual predator worked to rehabilitate the reputation of the group after the concealed conduct by Young in 2017. See point (h) below, facts as to █████. The

disputed emails showed MIT and the world a picture of SIPB management, especially Moses, as vigilant, caring, and "willing to take a strong stand against sexual harassment." Ex. B.

**Response:**

Paragraph 159 does not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because it consists of only of arguments, opinions, conclusions, and characterizations, and therefore no further response is required. To the extent paragraph 159 contains any factual statement, it violates said rules because it contains no citation to anything that would be admissible in evidence. Answering further, the February 27, 2020 and March 2 emails are not false or made in "bad faith." (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ██ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ██ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

160.    Miquel Young dela Sota ("Miquel" or "Young") in 2020 was a friend of Moses and actively conferred with Moses about Koppel several times between February 21 and March 6. Koppel Ex. I, Young, when told of the request for a retraction on March 6, asked Moses about the consequences for both of them.

Koppel Ex. I, Wm 0022 ("we"). Moses at later dates tells others that Young is "freaking out" about the Koppel communications by Moses. Id. last page.

**Response:**

Moses states the referenced exhibit, Koppel Exhibit I, does not support the statements that Moses and Young were friends, or that Young was "'freaking out' about the Koppel communications by Moses," and the paragraph violates Fed. R. Civ. P. 56.1 and Local Rule 56.1 to that extent. Further answering, Moses admits that, as he did with other past SIPB Chairs, he had an electronic communication with Young about his request to SIPB-Private for input on Koppel (Supp. Moses Aff., Ex. B), and that Young asked, in response to Moses's statement that Koppel was "suing," wrote, "Hahahahhahahahahahabahhahahaha" and "So, how fucked are we." (Koppel Aff., Ex. I).

161.    Moses on March 6, 2020, as to these defamations wrote to a mutual friend that Miguel [Young] was "relapsing to a freakout era" of [symbol for approximately] 2017". Koppel Ex. I. Moses Dep. 3, 8, 10, 13. Moses says he "was not sure" [sic] if Miquel was anxious about prior sexual harassment. Moses Dep. 3, 11. Miquel graduated in 2020. Id.

**Response:**

Denied. The referenced exhibit, Koppel Aff., Exhibit I, does not support the statement that Young was reacting to "these defamations" by "relapsing to a freakout era," as Koppel states. Exhibit I to the Koppel Affidavit does not state any cause for Young's so-called "relapsing," and the cited deposition testimony does not connect Young's stated condition to anything to do with Koppel. The final sentence is denied, as the cited deposition transcript states only that Young had graduated "[b]y March 2020," not "in

2020." (Koppel Aff., Ex. L at 11). Footnote 7 is denied: in the cited deposition testimony,

███████████ states that Young "did . . . touching that was uncomfortable around me,"

not that he harassed her. (Koppel Aff., Ex. M at 94).

162.   Moses, despite being pointedly reminded of this issue by ████ at

2:00 p.m. that day, falsely wrote to the Private group of 144 on February 27 that

Koppel "had been given several opportunities to change his behavior and failed to

do so. I am sad this is something our members had to endure." Koppel Ex. B.

**Response:**

Paragraph 162 is vague and unintelligible as written, in that Koppel does not state what

the words "this issue" mean, and therefore no response is required. Answering further,

████ did not "remind[]" Moses of anything at 2:00 on February 27, and states that his

February 27 Email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2,

Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-

344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at

6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-

000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-

000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-

9, ¶ 15; Pyle Aff., Ex. 15, ████ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ████ Dep. at 13,

22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21;

Ex. 22).

163.   On March 2 Moses repeated this falsehood in different words

saying that Koppel "made many shareholders deeply uncomfortable and

continued to do so despite requests to stop." Koppel Ex. C.

**Response**:

The statements contained in the Paragraph 163 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. To the extent paragraph 163 asserts facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Further answering, paragraph 163 misquotes the March 2, 2020 Email. It actually reads, "[m]any keyholders shared stories about how he had made them deeply uncomfortable, which continued in spite of requests to stop." (Pyle Aff., Ex. 12). Further answering, the March 2, 2020 email is not false. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ▮▮ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ▮▮ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

> 164.    On March 12 Moses retracted these inexplicable falsehoods saying that "James was not informed or warned of any prior alleged conduct by SIPB leadership, nor did he fail or refuse to cure or alter any conduct after any warning or warnings by SIPB leadership." Moses Ex. 12, Wm 00363. One question as to malice and recklessness is how and why Moses was ever allowed to assert these obvious falsehoods. And why did he invent this? How did the EC not prevent it?

The EC obviously was not paying attention. It certainly was not "authorizing" known falsehoods.

**<u>Response</u>:**

The statements contained in Paragraph 164 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, rhetorical questions, and characterizations, and therefore no response is required. To the extent paragraph 164 asserts facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Moses denies that the March 12 clarifying email "retracted" any "falsehoods," because the March 2 Email did not say the prior warnings came from "SIPB leadership," and the statement that Koppel failed to stop engaging in conduct that made others uncomfortable despite being on notice his conduct was unwelcome – and all other statements in the March 2 Email, are substantially true. (*See* Moses's SOF at ¶¶ 17-33, ¶¶ 37-45; Pyle Aff., Ex. 2, Moses Dep. at 36-38, 79-80; Pyle Aff., Ex. 3, Koppel Dep. at 232, 258-266, 270, 324-344, 349-356, 419-420, 425-428, 481-482, 484-489, 515; Pyle Aff., Ex. 4, Moses Dep. at 6-7, 20-21, 117-118; Ex. 5, p. 3; Pyle Aff., Ex. 6 at WM000387-000389, WM000392-000393, WM000397-000399; Pyle Aff., Ex. 7 at WM000371-000372, WM000375-000376; Pyle Aff., Ex. 8; Pyle Aff., Ex. 12; Moses Aff., ¶12, ¶¶ 14-18; Batson Aff., ¶¶ 6-9, ¶ 15; Pyle Aff., Ex. 15, ███ Dep. at 17-20, 23-27; Pyle Aff., Ex. 16, ███ Dep. at 13, 22-23, 25; Ex. 17; Ex. 18; Ex. 19 at Koppell_01169; Ex. 20 at Koppel_01189; Ex. 21; Ex. 22).

165.   ███ on February 26 made an initial anonymous report to Moses based on a "stream of consciousness" email which she . Moses sent the redacted version to the full group of 144 people on February 26. Ex. 7, Wm 00371 5:27

p.m.; Wm 00372, 5:57 p.m. The next day, at 2 p.m. (four hours before Moses sent

the February 27 email (at 6:21 p.m.) ███ by text renounced and effectively

withdrew all her initial report. Koppel Ex. H. ███ said her prior report including

the touch on the arm was "not something [Moses] can use against" [Koppel]. Id.

**Response:**

The first sentence of Paragraph 165 violates Fed. R. Civ. P. 56.1 and Local Rule 56.1

because it amounts to characterizations and argument rather than a statement of fact, is

not supported by proper citation, and is unintelligible as written. As for the second

sentence, Moses admits that he sent ███'s full account to SIPB-Private, removing her

name, and denies the group had 144 members. (See Pyle Aff., Ex. 7; Moses response to

paragraph 138, above). As to the third sentence, Moses admits that ███ made a report on

February 26, 2020 that Koppel touched her in a disturbing way in the SIPB office,

making her uncomfortable, as shown by the referenced document, and denies that ███

"renounced and effectively withdrew all her initial report." The cited document, Exhibit

H to the Koppel Affidavit, does not support the assertion that she did. Further answering,

Moses states that it is undisputed that Koppel touched ███ in the manner she described.

(Compare Koppel Ex. H and Pyle Aff., Ex. 7 at WM00371; Pyle Aff., Ex. 15, ███ Dep.

at 125-126; Moses SOF ¶ 40 and Koppel response).

166.   ███ in the 2:00 p.m. text made clear that she had thought more

about the solicitation email and her initial responses to it. She texted Moses that

the request for negative comments in the four-bullet point e-mail the prior

evening was "<u>confusing</u> because it's hard ton <u>point at any particular incident and

use that as a reason against him. Because everything he does is subtly off</u>

putting." Id. (emphasis added). Koppel Ex. H.

**Response:**

Denied. ██████'s statements in Exhibit H to the Koppel Affidavit do not convey that they are made in reference to Moses's February 26, 2020 email or her response to it of the same date, so the document does not support the assertion. Moses further notes that paragraph 166 misquotes Exhibit H, and violates Fed. R. Civ. P. 56.1 and Local Rule 56.1 because it amounts to characterizations and argument rather than a statement of fact.

167.    She went on to tell Moses at 2:00 p.m. on February 27 that if Koppel hasn't been given a warning before" about any particular incident "<u>it might be hard to just ban him, so I would give him a warning and if he does something even remotely minor comes up, ban him</u>"[sic]. Koppel Ex. H. (emphasis added).

**Response:**

Moses admits the statements in paragraph 167 were in substance made in Exhibit H to the Koppel Affidavit at 2:04 p.m. (Koppel Aff., Ex. H).

168.    Moses ignored ██████'s retraction of her comment about touching, which he had edited and forwarded to everyone the prior evening. There is no record Moses never mentioned ██████'s clear change of position. Koppel Exhibit H, to anyone. He then also inexplicably ignored ██████'s clear, valid point that prior notice was needed for fairness and as required by the Constitution. Koppel Ex H.

**Response:**

Paragraph 168 violates Fed. R. Civ. P. 56.1 and Local Rule 56.1 because it amounts to characterizations and argument rather than statements of fact. Further answering, Moses

denies that ██ "retract[ed] . . . her comment about touching," and notes that it is

undisputed that Koppel touched her in the way she described. (Compare Koppel Ex. H

and Pyle Aff., Ex. 7 at WM000371; Pyle Aff., Ex. 15, ██ Dep. at 125-126; Moses SOF

¶ 40 and Koppel response). Moses further denies that he "edited" ██'s statement, and

admits that the full statement, minus her name, was forwarded to SIPB-Private. (Pyle

Aff., Ex. 7). Moses states that the last sentence is not supported by the document cited,

Exhibit H to the Koppel Affidavit.

169.    Any possibly relevant facts as to ██ start with and end with the

"creepy dude." ████ in 2016-2017 was a freshman at MIT. She

intermittently went to SIPB meetings that year. ██ 48. Her interest in the club

continued into the summer of her freshman year, 2017. During the "entirety" of

that summer, three months, ██ was sexually harassed or molested by Miguel

Young ("Young") ██, 45-46. Young in 2017 was a recent former Chair of SIPB.

██'s memory of that prolonged harassment continues to be so traumatic that in

July 2021 during her deposition she commenced to cry uncontrollably when this

subject came up. She said she did not want to discuss details of those three

months. ██ 45-46.

**Response:**

The first sentence of Paragraph 169 does not comply with Fed. R. Civ. P. 56.1 or Local

Rule 56.1 because it consists of arguments, opinions, and characterizations, and therefore

no response is required. The second and third sentences are admitted. The fourth sentence

is denied because that ██ did not testify at her deposition that she was "sexually

harassed" or "molested" by Miguel Young, only that he did something that she did not

want to testify about. (Koppel Aff., Ex. N, ███ Dep. at 45-46). The fifth and sixth

sentences are denied in that they are unsupported by any citation to the record, including

███'s deposition; Moses specifically denies that ███ "commenced to cry

uncontrollably" at her deposition. Moses admits the last sentence, in reference to ███'s

deposition.

170.    Koppel is part of any narrative by ███ only because an innocent

2019 hug by Koppel in the SIPB office location triggered ███'s memory of the

trauma of molestation or harassment by Young in 2017 in that identical location.

Memory of that 2017 trauma, not the 2019 hug, was "the one main" thing that

caused ███ to resolve to never again go to the SIPB office in 2019. ███ 44. The

hug caused ███ to think" apparently nothing good happens in the SIPB office…

so I will just stop going" there. ███ 23, 25. Her prolonged 2017 trauma, not the

2019 hug, was "the one main" thing that caused ███ to stop going to the SIPB

office. ███ 46.

**Response**:

The statements contained in Paragraph 170 do not comply with Fed. R. Civ. P. 56.1 or

Local Rule 56.1 because they are arguments, opinions, and characterizations, and

therefore no response is required. To the extent paragraph 170 asserts facts, it fails to

support them with citations to any document admissible in evidence in violation of Rule

56.1 and Local Rule 56.1. Further answering, the second, third, and fourth sentences

misquote ███'s deposition, Exhibit N to the Affidavit of James Koppel. ███ testified

that Koppel's hug was "was more like a straw that broke the camel's back" as to why she

decided not to go back to the SIPB office (*id.* at 26) whereas there was "one main" other person who made her uncomfortable there was Young.

171.    The abuse by Young had made ███ "supremely" and "profoundly" uncomfortable over an extended period of time, three months, in the summer of 2017 and thereafter later. ███24, 46. Her "slight" discomfort with Koppel as to the hug was "the straw that broke the camel's back" causing her to permanently stay away from the SIPB office. 26, 44. The sole "main cause" was Young. ███, 26, 44. The 2019 hug in the SIPB office made ███ "slightly" uncomfortable because of ███'s' "other experiences" involving unwanted physical contacts with Young in the identical location, the SIPB office, 24. The single main cause she stayed away from SIPB was Young. ███, 26, 44.

**<u>Response</u>:**

The first sentence of paragraph 171 denied to the extent it alleges ███ suffered "abuse" (which is not a word used in her deposition), and to the extent it constitutes improper characterization, but admits that ███ described her reaction to Young's acts in the stated terms. The second sentence is denied: ███ testified that Koppel's hug made her "deeply uncomfortable" because of her prior bad experiences with Young – she did not say her discomfort with Koppel's act was "slight." (Koppel Aff., Ex. N at 24). Moses otherwise incorporates his response to paragraph 170, above.

172.    ███ reported this prolonged harassment by Young in 2017 to senior people in the group, including the Executive committee and more senior men and women. ███ 44. The latter would include Emma Batson, an affiant here,

active in SIPB since 2016. ██, 46. Nothing came of these complaints. 44, 50.

Young, to her knowledge was not expelled or disciplined. ██ 50.

**Response:**

The first two sentences of paragraph 172 are denied. ██ stated that she reported

whatever Young did (which is not described) to ████████, but her deposition at

the cited pages does not identify any other such individual, including Batson. Nor does

she state she reported it to the "Executive Committee." Moses admits that ██ testified

as stated in the last two sentences.

173.    The 2019 hug with Koppel caused ██ "slight discomfort" the

same as she would feel" as to "any other uninvited physical contact" by anyone.

██, 13. ██ by 2019 knew Koppel well, having interacted with him for over two

years in multiple contexts. ██ Dep. 10-20. ██ as of 2019 viewed Koppel as a

friend who was "affectionate" but never romantic or seductive. 31, 44.

**Response:**

Denied. The referenced statement about "slight discomfort" at page 13 of the ██

deposition, Exhibit N to the Koppel Affidavit, does not refer to Koppel's hugging of her

in the SIPB Office. It refers to pats on the head that Koppel gave her. (Koppel Aff., Ex.

N, p. 13). ██ testified the hug, in contrast, made her "deeply uncomfortable." (*Id.* at

24). The second sentence is denied as not supported by the cited testimony. The last

sentence is denied: ██ did not testify Koppel was "never" romantic, only that she did

not get that sense "very strongly." (Koppel Aff., Ex. N at 31).

174.    ██'s specific memory of the hug was to "give [Koppel] the hug

and move on." ██ 43. She saw Koppel as a friend and "did not want to make a

big deal by declining" to hug him. Id. 23, 41. ███ became deeply uncomfortable

at the time of the hug not because of Koppel but because of "other experiences"

unrelated to Koppel but involving unwanted physical contacts in the same

location, the SIPB office, 24. The single main cause she stayed away from SIPB

was Young. ███, 26, 44. ███ had no complaint as to Koppel, ever.

**Response:**

Denied. ███ testified that the hug made her "deeply uncomfortable," and that Koppel's

hugging of her was "like the straw that broke the camel's back" in causing her to stay

away from SIPB. (Koppel Aff., Ex. N at 24-26). Further denied that "███ had no

complaint as to Koppel, ever." She additionally stated in her deposition that his use of

false pretenses to obtain her home address to send her a personal letter made her "very

uncomfortable." (*Id.* p. 31).

175.   In 2018 in the aftermath of the secret and not explained the Hawk

expulsion by the EC, Batson said the Student Affairs Office was the "catalyst" for

the expulsion. Ex. 10, Wm 0421. She described the as the result of the EC

[confidentially] deliberating on this issue "for almost the entire fall semester."

(emphasis added). Id. Long-term keyholders criticized the 2018 Hawk

expulsion as based on inaccurate and false rumors, "pretext" and "dissembling" by

the EC. Moses Ex.10, Wm 419-420; 0422. Others protested that Hawk should

have been given a "fair and open hearing" and that the denial of that was

"disgraceful," and "Kafkaesque." Id. Ex. 10 Wm 0421, 9:19 p.m.

**Response:**

As to the first sentence, Moses denies that there was a "secret and not explained"

"expulsion" of "Hawk" in 2018, and states the cited document does not support the statement. Further answering, Moses states that paragraph 175 purports to describe a document that speaks for itself and no further answer is required.

> 176.     Hawk is entirely unlike Koppel. The reasons for his expulsion were concealed from all keyholders and underlined(deliberated at length, confidentially, within the EC). His expulsion was never announced or explained. Moses Ex. 10. Unlike Koppel by 2016 and in 2018 Hawk was a long- term public figure at MIT, or close to it, because of his long very public activities at MIT and in the wider community and at SIPB. He was, with considerable publicity, expelled from the MIT student newspaper in 2004. Ex. 10, Wm 0421-0422. As of 2016 Hawk was a widely known journalist and critic who wrote about MIT real estate lobbying and community issues in ways that were public and very controversial. Moses Ex. 10, Wm 420. Hawk remained widely known. His secret and non-explained expulsion by SIPB in 2018 was strongly criticized by SIPB alumni. Moses Ex. 10. The Batson suggestion that Hawk was expelled for making current students "uncomfortable" lacks any support.

**Response**

The statements contained in Paragraph 176 do not comply with Fed. R. Civ. P. 56.1 or Local Rule 56.1 because they are arguments, opinions, and characterizations, and therefore no response is required. To the extent paragraph 176 asserts facts, it fails to support them with citations to any document admissible in evidence in violation of Rule 56.1 and Local Rule 56.1. Further answering, Moses denies that John Hawkinson's removal from SIPB was done "confidentially," and refers the Court to Exhibits 9-11 to

the Pyle Affidavit, and the Affidavit of Emma Batson at paragraphs 6-8. The same

materials demonstrate that Hawkinson's removal from SIPB was, in fact, explained to the

SIPB members on the SIPB-Office email list, contrary to Koppel's assertion in paragraph

176.

<div style="margin-left: 40%">

Respectfully submitted,

WILLIAM MOSES,

By his attorneys,

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle (BBO #647438)
jpyle@princelobel.com
Nicole J. Cocozza (BBO #693523)
ncocozza@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
T: 617-456-8000
F: 617-456-8100

</div>

Dated: March 7, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document by email on counsel for plaintiff on March 7, 2023.

<div style="margin-left: 40%">

*/s/ Jeffrey J. Pyle*
Jeffrey J. Pyle

</div>

4439730