UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                   )
James Koppel,                      )
                                   )
       Plaintiff,                  )
                                   )
v.                                 )
                                   )   Civil Action No. 1:20-cv-11479-LTS
                                   )
William Moses,                     )
                                   )
       Defendant.                  )
_____)

Motion by Plaintiff Koppel to Impound the Text of One Document,
With Conditional Objection to One Part of Document 149

      Plaintiff James Koppel by this motion requests that this Court impound and redact from the public Recommendation, D. 146, 16-17, the verbatim quotation of one document which to date is impounded as confidential. See D. 107. That document is quoted in the Recommendation at pages 16-17. It describes, without any pretense of firsthand knowledge, hearsay that was out of date when first heard. Id. The author characterizes the hearsay as describing a crime. The text, excluding the hearsay allegation of a crime, makes clear that the author dislikes Koppel. As to that, the email is cumulative. A number of persons in addition to the author of the email concurrently provided negative comments to Moses in response to his February 26 e-mail by Moses. D. 146, 12-13, 15-16. Inclusion of the email text

verbatim is not essential and is extremely prejudicial to Koppel because it is defamatory. Inclusion of the email in the public record is not required by the common-law right of access. Point (a) below.

a. <u>The text of the email is not necessary under the common law right of public access.</u>

    The text of the email is a report of subjective vehement feelings plus, most importantly, a putative repetition of ancient, false, hearsay as to a rumor of a crime. The author has no knowledge of any such facts. The author is unrestrained in a highly negative characterization of the entirely unknown facts. D. 146, 12-13.

    This specific text is not essential to understanding of the Recommendation. It is extraneous and irrelevant to the holdings there. The holdings in the Recommendation are based on the falsity of the February 27 and March 2 emails by Moses as to (i) the severity, consistency, and widespread nature of any alleged misconduct by Koppel and (ii) false assertions that Koppel had been repeatedly warned and failed to correct any alleged misconduct. See D, 146, 27-31 and 47-53. Those grounds are explained and are transparent in the Recommendation. They do not rely on the text addressed here. That evidence favorable to Moses and was fully considered. It adds nothing to the conclusion that all evidence most favorable to Moses was insufficient to overcome falsity. The latter point requires evidence of

truth. The email at issue relates to 2016 and cannot support truth of the falsehoods which are false as to Koppel four years alter at the time of publication.

The text on its face is inadmissible as to the hearsay allegation of a crime. Apart from the inadmissible allegation of a crime, the text is cumulative. It is one of many reports solicited by Moses that someone in 2020 felt uncomfortable or had heard of someone who felt that way. D. 146, 15-16.

The text of the email targeted by this motion is appropriate to be impounded even in light of the doctrine of common law access. "The discretionary decision whether to release judicial records should be informed by a 'sensitive appreciation of the circumstances that led to'" the creation of the particular document. United States v. Corbitt, 879 F.2d 224, 228 (7th Cir. 1989) (presentence reports are not within the right of common access)(emphases added). The text in question does not involve, and is very different from, documents which are submitted to and accepted by a Court in order to make a final adjudication. United States v. Kravetz, 706 F.3d 47, 58 (1st Cir. 2013). The concern in Corbitt was that "the presentence report may contain minimally substantiated and unchallenged allegations" of the defendant's involvement in other, uncharged crimes. Id. at 879 F.2d 224, 231 (7th Cir. 1989) (emphasis added). That same concern applies here as to all responses to the February 26 solicitation of comments by this defendant. It applies with particular force to the email under discussion.

This is a case in which, as to the email at issue, "important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." Kravetz, supra, at 59, quoting Siedle v. Putnam Invs., 147 F.3d 7, 10 (1st Cir. 1998). Koppel has several such countervailing interests. Privacy, for example, is among those interests which "in appropriate cases, can limit the presumptive right of access to judicial records." Standard Fin. Mgmt. Corp., 830 F.2d at 411 (quotation marks omitted); accord In re Boston Herald, 321 F.3d at 190–91.

Equally if not even more compelling here is that Koppel has a very substantial interest and a substantive right to protect his reputation against defamation. The e-mail at issue is defamatory per se. It is, if published verbatim, a new and inexcusable injury to Koppel. This Court unless it is essential should not play a role in a new violation of Koppel's rights as to his reputation by publication of a new defamation where it is not essential for understanding of Recommendation. Avoidance of new injury to Koppel is a compelling interest in favor of impoundment.

The fact that this civil action involves defamation favors impoundment. Courts when asked to impound a document can and should "consider the degree to which the subject matter is traditionally considered private rather than public." Kravetz, supra, citing In re Boston Herald, 321 F.3d at 190 (quoting Amodeo II, 71

F.3d at 1051). Defamation is essentially and traditionally a private right and a private subject.

Thirdly, the Recommendation, D. 146, does not trigger the full measure of common-law public access. The common-law public access doctrine applies to judicial decisions. United States v. Kravetz, 706 F.3d 47, 58–59 (1st Cir. 2013). The Recommendation is not yet a judicial decision. Even if adopted as to the recommendation, the 55- page Recommendation is not itself a judicial decision. It recommends denial of a motion and is not a dispositive ruling.

Impoundment of the text of the email at issue is proper because the text is not relevant to the Recommendation or to understanding of it in the sense required by the doctrine of common- law access. The Honorable Magistrate found and ruled that the text in question, plus all else in the record, do not show anything sufficient to support the defamations. See Recommendation, Doc 146, 27-31 (falsity) 47-53 (falsity as to two topics). The verbatim text of the email is not required to fully understand those points in the Recommendation. It is irrelevant to the reasons for the recommendation that summary judgment be denied. Doc 146, 27-31, 47-53. If the email is impounded, the balance of the 53- page Recommendation allows the public to assess the correctness of it. United States v. Kravetz, 706 F.3d 47, 61 (1st Cir. 2013).

The text at issue is not relied on in the reasoning of the Recommendation and is not relevant to that reasoning. The relevant reasoning is based on falsity of what Moses wrote as to Koppel as of 2020. This text does not contradict, or weigh against, those facts as to what was true or false in 2020. See D. 146, 50 (explaining that any allegation as to conduct in 2016 did not support the identified defamations).

b. <u>The email is unreliable and defamatory</u>.

The email is unreliable and defamatory. Verbatim quotation of the email gives it undue importance. The text includes the extreme and false rumor that Koppel committed a crime in 2016. The author has no personal knowledge of any such facts. No verified information from the author is part of the record. The balance of the email expresses negative subjective feelings and opinions as to Koppel which border on bizarre ("…don't give Jimmy any more power than he already has "[sic]). Those negative views are subjective and cannot be proved or disproved. The only person with knowledge of the hearsay allegation in the email (other than Koppel) has described the underlying acts as to a momentary interaction in 2016 as, "at worst a minor social faux pas." D, 146, 17.[1]

---

[1] This description is by the former girlfriend, not by Koppel. <u>But see</u> D. 146, 17. It was repeated by Koppel at his deposition as her words, not his. The supporting document created by the former girlfriend was disclosed by Koppel. It was offered to this Court by Moses as part of an exhibit to his motion, D. 67. It has been impounded up to now. D. 107. Koppel objects to the Order which is D. 149 to the extent it would end this impoundment. Point (d) below.

Refusal of impoundment injures Koppel for no good or just reason. It allows publication for the first time of a defamation independent of those at issue and not supportive of the defamations at issue. Even the author might not want that.

c. <u>The email is the result of improper solicitation of negative views by Moses.</u>

The February 26 email by Moses is unprecedented. D. 133, para. 101, 102, 133-136. There is no evidence that SIPB at any time solicited opinions on SIPB-Private, including negative opinions, as to a person not nominated for keyholder. Id. Keyholders are elected only after they are nominated by a keyholder and after the nomination is seconded. D. 146, 7.

Moses solicited the email at issue, and others, on February 26, 2020 by an email which non- accurately presented illustrations of four "incidents" occurring "roughly within the last year." D 146, 12-13. Moses when he sent that e-mail very likely believed that these four alleged incidents were "relatively innocuous." D. 146, note 30. All four incidents were false and were presented in an unflattering way. The record supports the view that Moses sent the February 26 e-mail in order to elicit it negative comments about Koppel, facts to "use against him." Zeng, a friend of Moses, said exactly that when she wrote that her initial negative report

was not something Moses "could use against" Koppel to expel him. She thereby plainly described what Moses was seeking. D. 146, 14.[2]

The February 26 e-mail by Moses included four portrayals of Koppel in a negative light. It suggested (i) that Koppel abused or mistreated a female keyholder in 2017 in an online discussion of harassment; (ii) that Koppel initiated "physical contact" with a person after that person told him to stop;[3] (iii) that Koppel argued in a public internet chat that the controversy as to Jeffrey Epstein could be informative as to wider issues; and (iv) that Koppel had used "degrading" language in a non-identified context. D.146, 12-13. These "incidents" were proffered to 149 persons "for the stake of understanding[sic]." The EC according to Moses wanted to "assess keyholder's thoughts [sic]." Id.

That is a pretext and Moses knew it. Only the Executive Committee can expel a member and only after notice. D 146, 8, 14. Moses knew Koppel was not nominated for keyholder. He inexplicably sent the February 26 email to 149 persons of whom only 22 were active keyholders possibly eligible to vote,

---

[2] These serious flaws in the February 26 email are relevant to ill-will by Moses, the absence of candor and good faith, and to wrongful ulterior purpose. They are not offered to support a new claim of defamation. See D. 146, note 10.
[3] The person was Moses himself, a fact he concealed. The contact was non-sexual hugs and head rubs which, on this record, Moses did not ask to stop. D. 146, 51.

assuming that Koppel were ever nominated for keyholder, which he was not. D. 133, 122. Nine of those 22 were already on the Executive Committee. D. 146, 47.

The author of the email at issue had experience in "student leadership" and likely knew or should have known that the February 26 email was "not serious" (D. 146, n. 30) but was instead, highly irregular, and very likely pretextual. The email in question, D 146, 16-17 is irresponsible and false as to the core accusation of a crime, facts consistent with ill-will of the author.

Koppel is justifiably aggrieved by possible publication of this fresh defamation. It is sometimes said that a defamation cause of action carries with it the risk of repetition of the defamation. That truism is irrelevant to the email at issue. Nothing in the truism supports the view that a defamation action carries with it the risk of publication, without any practical reason to do so, of new defamations solicited by the defendant which were concealed from Koppel at the time. Fresh publication of a new defamation is a needless new injury to Koppel. The new harm to him is unfair and inappropriate because Moses solicited the damaging text by a means which he knew to be questionable. D. 146, note 30 (Moses did not believe any of the four "incidents" were "serious") and which was without precedent as to a member not yet nominated for keyholder. D.133, 133-136.

d.  <u>Koppel on a provisional basis objects to Document 149.</u>

Impoundment of the text of the email and redaction of the Recommendation is supported by the same principles that support the Order for impoundment of the names of the authors of the communications, D, 149. Impoundment of the e-mail at issue is indeed supported by more compelling facts and interests than impoundment of the names.

The email in question was irresponsible and defamatory. False or baseless damaging innuendo is not commendable. It is not deserving of special protections. It is not a trigger to a heightened right of privacy for the author. The author of the email at issue on the contrary was a willing and very likely knowing participant in the larger story of wrongful conduct which gives rise to this civil action. The author is not wholly innocent. He or she deserves no special protection.

If the Order at document 149 is affirmed by this Court, impoundment of the email at issue should also be granted. If the email is not impounded, Koppel respectfully objects to the Order at Document 149 and requests it be vacated as to this author.

As to the author and all other persons, the Order at Document 149 does not include particularized findings in support of the impoundment of the names, especially not the name of this author. <u>United States</u> v. <u>Kravetz</u>, 706 F.3d 47, 60

(1st Cir. 2013). That sort of finding is required. Id. The putative desire of one or more persons (here, some of whom are very likely friends of the defendant Moses) is not sufficient basis for impoundment. Kravetz, supra, 706 F.3d at 61 and case there (neither "the juror's individual desire for privacy" nor "the judge's general belief that...it would be better to keep the names and addresses private" constituted permissible grounds for impoundment of juror identification information). If this Motion is not granted Koppel requests that Document 149 be vacated as to the author of the email at issue. He or she deserves no heightened protection.

Relief requested

This request for impoundment is discrete and justifiable See D. 149 and cases cited there. The email in question is "information provided" by persons who responded to a February 26 e-mail by Koppel. See Document 149, page 2, drawing the distinction between the identities of third parties and the information they provided.

Koppel requests that this Court redact from the Recommendation, Doc 146:

(i)    Page 16 bottom, "In another response" through page 17, top, end of the quote.

Koppel requests two related redactions to assure that the Recommendation does not convey the gist of the impounded email. These are:

(ii)    Page 48 in the middle in the sentence starting with "Turning to the first statement," redact starting with "and as reported" to the end of the sentence "in or around 2016."

(iii)   Page 50, first paragraph, in the sentence starting with the words "Whereas Moses" ending with "February 2020," delete the reference to "2016."

(iv)    In the same page, same paragraph, in the sentence starting with the word "Bolstering" delete the date "2016."

***

Respectfully submitted,

James Koppel,
by his attorneys,

*/s/ Paul G. Boylan*
Paul G. Boylan, BBO 052320
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, Massachusetts 02109
pboylan@fmglaw.com
Dated: January 3, 2024                        Tel: (617) 963-5972

Certification as to L. R. 7.2

Counsel for the plaintiff Koppel hereby certifies that counsel for both parties conferred on Thursday December 28, 2023 as to the issues raised by this motion and could not resolve any dispute.

Dated: January 3, 2023                  */s/ Paul G. Boylan*
                                        Paul G. Boylan

Certificate of Service

I hereby certify that the within document was served on opposing counsel Jeffrey Pyle by email.

Dated: January 3, 2024                  */s/ Paul G. Boylan*
                                        Paul G. Boylan